FILED
AUG 30 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DAVID S. LITMAN**
**and MALIA A. LITMAN**

**Plaintiffs,**

**V.** **No. 05- 956T**

**THE UNITED STATES OF AMERICA**

**Defendant.**

**COMPLAINT**

1. David S. Litman and Malia A. Litman are the Plaintiffs in this suit. Plaintiffs are citizens of the United States of America and reside at 10710 Strait Lane, Dallas, Texas 75229.

2. The Defendant is the United States of America.

**I.**
**JURISDICTION**

3. This is a suit arising under the internal revenue laws of the United States for the refund of income taxes and penalties that have been erroneously and illegally assessed against and collected from Plaintiffs.

4. Jurisdiction is conferred on this Court by Title 28, United States Code, Sections 6532 and 7422.

**II.**
**ADMINISTRATIVE PROCEDURES**

5. Plaintiffs have complied with all administrative procedures and other precedent to filing this cause of action under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(f)(1).

6. On or about October 15, 2001, Plaintiffs timely filed their federal income tax return for the tax year ending December 31, 2000, with the Internal Revenue Service, Austin Service Center, at Austin, Texas (the "Austin Service Center"). The Plaintiffs timely paid a total

of $9,749,859 in federal income tax with respect to their tax year ending December 31, 2000, such amount being the amount shown on the return. The names and address of the taxpayers shown on the federal income tax return are David S. and Malia A. Litman, 10710 Strait Lane, Dallas, Texas 75229. On October 8, 2004, the Commissioner of the Internal Revenue Service (the "Commissioner"), mailed a notice of deficiency for the tax year ended December 31, 2000 to Plaintiffs asserting a deficiency in the amount of $15,101,991.60 (based upon an income tax assessment of $12,584,993 and a penalty of $2,516,998.60). On January 4, 2005, Plaintiffs paid the sum of $15,101,991.60 to the Internal Revenue Service, Wage & Investment Area, Five Director and Farmers Branch, Texas. On February 18, 2005, Plaintiffs filed a Form 843, Claim for Refund and Request for Abatement (the "2000 Claim for Refund"), with the Austin Service Center. The names and address of the taxpayers shown on the 2000 Claim for Refund are David S. and Malia A. Litman, 14275 Midway, Suite 450, Addison, Texas 75001.

7. Plaintiffs, who are married, jointly file their federal income tax returns. David S. Litman's identification number is 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. Malia A. Litman's identification number is 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.

8. No action on the claims for refund has been taken by Congress or by any department or agency of the United States or any judicial proceeding, including any proceeding in the United States Tax Court.

## III.
## COUNT 1

### (Taxable Year Ending December 31, 2000)

**(Fair Market Value of the HRN, Inc. Stock)**
**(Compensation Deduction)**
**(Penalty)**
**(Statute of Limitations)**

9. In May of 1999, all of the assets of TMF, Inc, a Subchapter S corporation in which Plaintiffs owned a fifty percent interest, were sold to USA (the "1999 Contract"). During 1999, TMF, Inc. was liquidated and its assets (including, without limitation, the sales proceeds and other rights under the 1999 Contract) and its liabilities were transferred to a liquidating trust ("TMF Liquidating Trust") in which Plaintiffs (including trusts which Plaintiffs are treated as grantors under I.R.C. §§ 671-678) owned a fifty percent interest. TMF Liquidating Trust was a flow through entity taxed as a grantor type trust. Accordingly, all income and loss of TMF Liquidating Trust were taxable to its grantors under I.R.C. § 671-678.

10. Effective February 2, 2000, the 1999 Contract was amended (the "2000 Amendment"). As a part of the 2000 Amendment (the "Transaction"), the sellers exchanged certain earn-out rights under the 1999 Contract for the right to receive restricted equity interests in an anticipated initial public offering of Hotel Reservations Network ("HRN").

11. The shares of stock to be received by TMF Liquidating Trust from the Transaction were subject to onerous sale restrictions (the "Shares"). These sale restrictions included, among other things, (1) contractual holding periods, (2) SEC Rule 144 volume restrictions on the number of shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any stock could be sold, (4) the practical market restriction on sale due to the fact that TMF Liquidating Trust was owned

by the CEO and President of HRN (any sale might be considered to be a lack of confidence in the company), and (5) the public float was initially only half the size of the stock issued to TMF Liquidating Trust, so practically it could not be sold without drastically lowering the market price. The contractual sale restrictions are set forth in detail in the 2000 Amendment, which has been provided to the Commissioner. These sale restrictions produced significant risk, particularly given the volatility of the NASDAQ and, more specific, the volatility of dot.com and travel industry stocks during the relevant period. NASDAQ, for example, fell 65% during the relevant period. Many dot.com entities went entirely out of business.

12. The fair market value of the Shares used to determine the consideration received by TMF Liquidating Trust and the capital gains taxes paid by Plaintiffs from the exchange of the earn-out rights under the 1999 Contract for the right to receive the restricted equity interests in the anticipated initial public offering was based upon an independent determination of the lack of marketability discount applicable to the valuation of the Shares as of February 24, 2000, prepared by Business Valuation Services, Inc. ("BVS"). The BVS valuation analysis considered, among other things, the relevant sale restrictions on the Shares and the factors listed in Revenue Rulings 59-60 and 77-287.

13. Giving consideration to relevant sale restrictions, BVS determined that the appropriate lack of marketability discount to be applied to the anticipated initial public offering price of the HRN stock to determine the fair market value of the stock was

| Contractual Restriction Period | Discount |
|---|---|
| One year | 49.5% |
| Two years | 61.5% |
| Three years | 63.5% |
| Four years | 79.0% |

14. Applying these lack of marketability discounts to the $16 per share initial public offering price of the HRN stock, the following values were derived:

| Contractual Restriction Period | IPO Price | Numbered of Shares Received | BVS Discount | Value | Per Share Value |
|---|---|---|---|---|---|
| One year | $16 | 1,959,960 | 49.5% | $15,836,477 | $8.08 |
| Two years | $16 | 489,990 | 61.5% | 3,018,338 | $6.16 |
| Three years | $16 | 489,990 | 63.5% | 2,861,542 | $5.84 |
| Four years | $16 | 7,059,960 | 79.0% | 23,721,465 | $3.36 |
| Total | | 9,999,900 | | $45,437,822 | |

15. A second independent analysis of the value of the Shares was also obtained by Plaintiffs. The second appraiser's opinion actually resulted in a lower fair market value of the Shares than the BVS analysis. Using the conservative approach, Plaintiffs reported the consideration received at the higher value set forth using the BVS appraisal.

16. During 2000, TMF Liquidating Trust reported employee compensation, including cash and stock, of $6,844,136. This included $2,924,215.50 of wages reported to Andrew Pells on a Form W-2 and $3,919,920 of Miscellaneous Income reported to Mr. Pells on a Form 1099-Misc. The amounts reported on the Form W-2 were for cash payments to Mr. Pells. The Miscellaneous Income resulted from the March 1, 2000 assignment of 244,995 shares of one year restricted stock to Mr. Pells. TMF Liquidating Trust had a basis in these shares of $1,979,560 (244,995 * 8.08). Upon the transfer of these shares, TMF Liquidating Trust reported a gain of $1,940,360.

17. The cash and stock compensation paid to Mr. Pells was fair and reasonable and commensurate with the services Mr. Pells provided to TMF Liquidating Trust and its predecessor, TMF, Inc.

18. The 2000 Amendment resulted in the capital gains reflected on Line 12 of Schedule D of Plaintiffs' U.S. Individual Income Tax Return, Form 1040, for calendar year 2000 (the "2000 Form 1040").

19. On its 2000 Form 1041 (the "2000 Form 1040"), TMF Liquidating reported a total non-passive loss of $7,144,467. A portion of this amount ($6,844,136) was related to the compensation paid to Andrew Pells.

20. Plaintiffs' 2000 Form 1040 (the "2000 Form 1040") was timely filed by Plaintiffs on or about October 15, 2001. TMF Liquidating Trust reported the fair market value of the Shares acquired in the Transaction at a collective value of $45,437,822, based upon the valuation analysis of the Shares by BVS. The value resulted in total net long term gain to Plaintiffs of $22,718,911. The gain from the Stock received in the Transaction, plus other gains recognized by Plaintiffs in 2000, resulted in Plaintiffs reporting total net long term gain the amount of $49,816,356 on Line 12 of Schedule D of the 2000 Form 1040. Plaintiffs also reported a non-passive loss from the TMF Liquidating Trust in the amount of $3,572,234. Plaintiffs paid income taxes of $9,749,859 in connection with their 2000 Form 1040. Of the income tax paid, $4,543,782 resulted from the gain recognized on receipt of the Shares.

21. Plaintiffs' 2000 Form 1040 was audited by the Commissioner of Internal Revenue (the "Commissioner"). During the audit, the BVS Appraisal was provided to the Commissioner's Examining Agent and the BVS analysis was discussed in detail with the Examining Agent during a June 9, 2004, meeting between the Examining Agent, Plaintiffs' counsel, and Plaintiffs' accountant.

22. In 2004, Plaintiffs began transitioning their bookkeeping function from their home to their office at 14275 Midway Road, Suite 450, Addison, Texas. On September 30,

2004, Plaintiffs mailed a change of address form (Form 8822) to the Commissioner by certified mail, return receipt requested. The address on the change of address form is 14275 Midway, Suite 450, Addison, Texas 75001. The Commissioner received the change of address form on October 4, 2004.

23. On October 8, 2004, the Commissioner mailed a notice of deficiency to Plaintiffs to 10710 Strain (sic) Lane, Dallas, Texas 75229-5427. The Commissioner did not send the Notice of Deficiency to Plaintiffs' last known address within three years of the filing of Plaintiffs' 2000 income tax return as required by I.R.C. § 6212.

24. In the Notice of Deficiency, the Commissioner asserted that the capital gain resulting from the Shares received in the Transaction was $79,999,200 rather than $22,718,911, as reported. The Commissioner asserted that the total capital gains reported on Line 12 of Schedule D for 2000 were $107,096,645, rather than $49,816,356, as reported. Despite the fact that Plaintiffs relied upon two independent appraisals to determine the value of the Shares, the Commissioner asserted a deficiency in income taxes against Plaintiffs for the tax year 2000 in the amount of $12,584,993 and a penalty under I.R.C. § 6662(a) in the amount of $2,516,998.60.

25. The Commissioner's explanation for its assessment of additional income taxes for 2000 and a penalty under I.R.C. § 6662(c) is as follows:

1. Fair Market Value of HRN, Inc. Stock Received.

> "It has been determined that you did not correctly report the fair market value of the HRN, Inc. stocks received upon the sale of the assets and liabilities of TMF Incorporation and HRN Marketing Corporation. Accordingly, we have adjusted the net gain reported from the receipt of the stocks as shown on the attached schedule."

2. Disallowance of Employee Compensation.

> "We have disallowed a portion of the loss claimed from the TMF Liquidating Trust. The amount deducted as employee

compensation has not been substantiated as to amount or deductibility."

3. Accuracy-related Penalty IRC section 6662(a).

"Since all or part of the underpayment of tax for the taxable year(s) is attributable to one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement, an addition to the tax is charged as provided by section 6662(a) of the Internal Revenue Code. The penalty is twenty (20) percent of the portion of the underpayment of tax attributable to each component of this penalty. In addition, interest is computed on this penalty from the due date of the return (including any extensions)."

26. The Commissioner asserted a penalty against Plaintiffs under I.R.C. § 6662(a) even though the Commissioner (1) was fully aware that Plaintiffs had reasonably relied upon two independent appraisals from reputable appraisal firms and reported the transaction using a conservative approach based upon the higher value of the two appraisals, (2) was provided with a copy of the BVS Appraisal on June 9, 2004, and (3) obtained no independent appraisal of the Shares. Moreover, the Commissioner asserted a penalty despite the fact that BVS is often (1) employed by the Commissioner to provide the Commissioner with opinions regarding valuation issues, and (2) BVS's opinions are relied upon by the Commissioner in valuation disputes with other taxpayers.

27. Thus, the Commissioner erroneously takes the position in the Notice of Deficiency that in spite of the onerous sale restrictions, the Shares received by Plaintiffs as a result of the 2000 Amendment had a value equal to that of the stock being openly traded on the market which had no restrictions on sale. It is the $16 per share anticipated initial public offering price of the stock—the value of the stock as traded on the open market with no restrictions whatsoever—that the IRS used to determine the amount assessed as a deficiency and the penalty assessed.

28. On January 4, 2005, Plaintiffs paid the income tax assessment of $12,584,993 and the penalty of $2,516,998.60 to the Commissioner. As noted above, the Commissioner's assessment of the additional tax and penalty was based upon the Commissioner's erroneous assumption that the Stock, with its substantial restrictions on sale, had the same $16 per share value possessed by freely traded HRN stock lacking any sale restrictions.

29. On February 18, 2005, Plaintiffs timely filed the 2000 Claim for Refund with the Austin Service Center. A true and correct copy of the 2000 Claim for Refund is attached to this Complaint as **Exhibit 1**.

30. The Commissioner has neither approved nor disallowed the 2000 Claim for Refund. Pursuant to I.R.C. § 6532, the 2000 Claim for Refund was deemed rejected by operation of law by the Commissioner on August 18, 2005.

31. As grounds for recovery of the amount claimed in the 2000 Claim for Refund, Plaintiffs incorporate by reference the averments contained in the 2000 Claim for Refund.

32. As set forth in the 2000 Claim for Refund, Plaintiffs are entitled to a refund of the entire income tax assessment and penalty paid because (1) each allegation raised by the Commissioner in the Notice of Deficiency was erroneous; (2) the Commissioner's claims raised in the Notice of Deficiency are barred because the statute of limitations has run on Claimant's 2000 Form 1040 and the IRS is barred from assessing any additional tax liability; and (3) the Commissioner's penalty allegations in the notice are erroneous and are barred under the reasonable cause exception provisions of I.R.C. § 6664(c).

33. The Commissioner erred in determining that additional income tax and a penalty is due from Plaintiffs under the basic assertions made by the Commissioner in the deficiency notice. The Commissioner asserts the following: (1) that Plaintiffs did not correctly report the

fair market value of the HRN stock received upon the sale of the assets and liabilities of TMF Inc. and HRN Marketing Corporation; (2) that the fair market value of the Shares received in the Transaction was $16 per share; (3) that a portion of the loss claimed from the TMF Liquidating Trust should be disallowed; (4) that the amount deducted as employee compensation has not been substantiated as to amount or deductibility; and (5) that Plaintiffs are liable for a penalty under I.R.C. § 6662(a). Plaintiffs' determination of the net long term capital gains at Schedule D, Line 12 of the 2000 Form 1041 was correct and based upon the fair market value of the Shares received in the Transaction.

34. The Commissioner also erred in asserting a penalty under I.R.C. § 6662(a) because (1) no underpayment of tax occurred; (2) no substantial underpayment of income tax occurred; (3) no substantial valuation overstatement occurred; and (4) Plaintiffs were not negligent and did not disregard rules or regulations with respect to their 2000 Form 1040. In the alternative, if it is determined by settlement or by a court of competent jurisdiction that a substantial underpayment of income tax or a substantial valuation overstatement occurred, the Commissioner erred in asserting a penalty under I.R.C. § 6662(a) because Plaintiffs had reasonable cause with respect to the determination of the capital gains resulting from the 2000 Amendment and Plaintiffs acted in good faith and in reliance on their tax advisors in preparing and filing their 2000 Form 1040 and upon qualified appraisals in connection with the valuation of the Shares under I.R.C. § 6664(c).

35. The Commissioner also erred in assessing additional income tax on the grounds that such assessment is barred by the statute of limitations under I.R.C. § 6501 because the Commissioner did not mail a statutory notice of deficiency to Plaintiffs' last known address

within three years of the date the 2000 federal income tax return was filed as is required by I.R.C. § 6503.

36. In the alternative to paragraph 33(1) above, if as a result of the resolution of this case the value of the Shares received in the Transaction is increased, the income tax basis of the Shares would be correspondingly increased under the Internal Revenue Code. In the event of such an increase in value (and a corresponding increase in basis), Plaintiffs would be entitled to a refund based upon an additional deduction on Schedule D of the 2000 Form 1040 to reduce the gain recognized on the transfer of stock by TMF Liquidating Trust to Andrew Pells as part of his compensation referred to above. The specific dollar amount of the refund is unknown and unknowable until the final determination on the issues raised in this case. However, based upon the Notice of Deficiency as issued, Plaintiffs' basis in the Shares would be $16 per share, the initial public offering price, with no discount applied despite the onerous restrictions on the sale of the stock. Using a $16 per share basis, the amount of the reduction of capital gains on Schedule D of the 2000 Form 1040 would be $970,180.

37. Plaintiffs are the legal and beneficial owners of the 2000 Claim for Refund and have not assigned or transferred it, or any part thereof.

## IV.
## PRAYER

**WHEREFORE,** Plaintiffs hereby claim that they are entitled to a refund of the $12,584,993 income tax and the penalty of $2,516,998.60 assessed and paid on their 2000 Form 1040, or such greater amount as is legally refundable, plus additional allowable interest.

**WHEREFORE,** Plaintiffs also request the Court award costs, attorney's fees, and other relief the Court deems appropriate.

Dated: August 29, 2005

John W. Porter, Attorney of Record
Baker Botts, L.L.P.
One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1597
(713) 229-1522 (FAX)

Stephanie Loomis-Price, Of Counsel
Baker Botts, L.L.P.
One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1801
(713) 229-1522 (FAX)

J. Graham Kenney, Of Counsel
Baker Botts, L.L.P.
One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1286
(713) 229-1522 (FAX)

ATTORNEYS FOR PLAINTIFFS
DAVID S. LITMAN and
MALIA A. LITMAN

Form **843** (Rev. November 2002)
Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

► See separate instructions.

OMB No. 1545-00[redacted]

*Use Form 843 only if your claim involves* ***(a)*** *one of the taxes shown on line 3a or* ***(b)*** *a refund or abatement of interest, penalties, or additions to tax on line 4a.*
***Do not*** *use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant<br>DAVID S. & MALIA A. LITMAN | Your SSN or ITIN<br>115 : 54 : 3724 |
| Address (number, street, and room or suite no.)<br>14275 MIDWAY, SUTE 450 | Spouse's SSN or ITIN<br>447 : 60 : 5845 |
| City or town, state, and ZIP code<br>ADDISON, TX 75001 | Employer identification number (EIN)<br>: |
| Name and address shown on return if different from above<br>DAVID S. & MALIA A. LITMAN; 10710 STRAIT LANE, DALLAS TX 75229 | Daytime telephone number<br>( 214 ) 239-2666 |
| 1 Period. Prepare a separate Form 843 for each tax period<br>From 01 / 01 / 2000 to 12 / 31 / 2000 | 2 Amount to be refunded or abated<br>$ See attached Exhibit A |

3a Type of tax, penalty, or addition to tax:
☐ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☑ Penalty—IRC section ► 6662 (a)

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☑ Other (specify) 1040

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ► JANUARY 4, 2005

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

SEE ATTACHED EXHIBIT A

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) ........ Date 2/14/05

Signature ........ Date 2-14-05

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions. Cat. No. 10180R Form **843** (Rev. 11-2002)

**EXHIBIT 1**

# EXHIBIT A

## to Claim for Refund

**David S. and Malia A. Litman**
**SSN: 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**

EXHIBIT A – EXPLANATION STATEMENT

Attached to and made a part of the
Claim for Refund and Request for Abatement (Form 843)
for the year ended December 31, 2000

**GROUNDS FOR CLAIM FOR REFUND**

David S. and Malia A. Litman (the "**Claimants**") assert that they are entitled to a refund of income taxes and penalty for the following reasons:

1. In May of 1999, all of the assets of TMF, Inc, a Subchapter S corporation in which Claimants owned a fifty percent interest, were sold to USA (the "**1999 Contract**"). During 1999, TMF, Inc. was liquidated and its assets (including, without limitation, the sales proceeds and other rights under the 1999 Contract) and its liabilities were transferred to a liquidating trust ("**TMF Liquidating Trust**") in which Claimants (including trusts which Claimants are treated as grantors under I.R.C. §§ 671-678) owned a fifty percent interest. TMF Liquidating Trust was a flow through entity taxed as a grantor type trust. Accordingly, all income and loss of TMF Liquidating Trust were taxable to its grantors under I.R.C. § 671-678.

2. Effective February 2, 2000, the 1999 Contract was amended (the "2000 Amendment"). As a part of the 2000 Amendment (the "**Transaction**"), the sellers exchanged certain earn-out rights under the 1999 Contract for the right to receive restricted equity interests in an anticipated initial public offering of Hotel Reservations Network ("**HRN**"). The shares of stock to be received by TMF Liquidating Trust from the Transaction were subject to onerous sale restrictions (the "**Shares**"). These sale restrictions included, among other things, (1) contractual holding periods, (2) SEC Rule

144 volume restrictions on the number of shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any stock could be sold, (4) the practical market restriction on sale due to the fact that TMF Liquidating Trust was owned by the CEO and President of HRN (any sale might be considered to be a lack of confidence in the company), and (5) the public float was initially only half the size of the stock issued to TMF Liquidating Trust, so practically it could not be sold without drastically lowering the market price. The contractual sale restrictions are set forth in detail in the 2000 Amendment, which has been provided to the Commissioner and is incorporated in this Claim for Refund by reference. These sale restrictions produced significant risk, particularly given the volatility of the NASDAQ and, more specific, the volatility of dot.com and travel industry stocks during the relevant period. NASDAQ, for example, fell 65% during the relevant period. Many dot.com entities went entirely out of business.

3. The 2000 Amendment resulted in the capital gains reflected on Line 12 of Schedule D of Claimants' U.S. Individual Income Tax Return, Form 1040, for calendar year 2000 (the "**2000 Form 1040**"). The fair market value of the Shares used to determine the consideration received by TMF Liquidating Trust and the capital gains taxes paid by Claimants from the exchange of the earn-out rights under the 1999 Contract for the right to receive the restricted equity interests in the anticipated initial public offering was based upon an independent determination of the lack of marketability discount applicable to the valuation of the Shares as of February 24, 2000, prepared by Business Valuation Services, Inc. ("**BVS**"). The BVS valuation analysis considered,

among other things, the relevant sale restrictions on the Shares and the factors listed in Revenue Rulings 59-60 and 77-287.

4. Giving consideration to relevant sale restrictions, BVS determined that the appropriate lack of marketability discount to be applied to the anticipated initial public offering price of the HRN stock to determine the fair market value of the stock was

| Contractual Restriction Period | Discount |
|---|---|
| One year | 49.5% |
| Two years | 61.5% |
| Three years | 63.5% |
| Four years | 79.0% |

Applying these lack of marketability discounts to the $16 per share initial public offering price of the HRN stock, the following values were derived:

| Contractual Restriction Period | IPO Price | Numbered of Shares Received | BVS Discount | Value | Per Share Value |
|---|---|---|---|---|---|
| One year | $16 | 1,959,960 | 49.5% | $15,836,477 | $8.08 |
| Two years | $16 | 489,990 | 61.5% | 3,018,338 | $6.16 |
| Three years | $16 | 489,990 | 63.5% | 2,861,542 | $5.84 |
| Four years | $16 | 7,059,960 | 79.0% | 23,721,465 | $3.36 |
| Total | | 9,999,900 | | $45,437,822 | |

5. Claimants also obtained a second independent analysis of the value of the Shares. The second appraiser's opinion actually resulted in a lower fair market value of the Shares than the BVS analysis. Using the conservative approach, Claimants reported the consideration received at the higher value set forth using the BVS appraisal.

6. During 2000, TMF Liquidating Trust reported employee compensation, including cash and stock, of $6,844,136. This included $2,924,215.50 of wages reported to Andrew Pells on a Form W-2 and $3,919,920 of Miscellaneous Income reported to Mr.

Pells on a Form 1099-Misc. The amounts reported on the Form W-2 were for cash payments to Mr. Pells. The Miscellaneous Income resulted from the March 1, 2000 assignment of 244,995 shares of one year restricted stock to Mr. Pells. TMF Liquidating Trust had a basis in these shares of $1,979,560 (244,995 * 8.08). Upon the transfer of these shares, TMF Liquidating Trust reported a gain of $1,940,360.

7. The cash and stock compensation paid to Mr. Pells was fair and reasonable and commensurate with the services Mr. Pells provided to TMF Liquidating Trust and its predecessor, TMF, Inc. On its 2000 Form 1041, TMF Liquidating reported a total non-passive loss of $7,144,467. A portion of this amount ($6,844,136) was related to the compensation paid to Andrew Pells.

8. Claimants' 2000 Form 1040 was timely filed by Claimants on or about October 15, 2001. TMF Liquidating Trust reported the fair market value of the Shares acquired in the Transaction at a collective value of $45,437,822, based upon the valuation analysis of the Shares by BVS. The value resulted in total net long term gain to Claimants of $22,718,911. The gain from the Stock received in the Transaction, plus other gains recognized by Claimants in 2000, resulted in Claimants reporting total net long term gain the amount of $49,816,356 on Line 12 of Schedule D of the 2000 Form 1040. Claimants also reported a non-passive loss from the TMF Liquidating Trust in the amount of $3,572,234. Claimants paid income taxes of $9,749,859 in connection with their 2000 Form 1040. Of the income tax paid, $4,543,782 resulted from the gain recognized on receipt of the Shares.

9. Claimants' 2000 Form 1040 was audited by the Commissioner. The Commissioner issued a notice of deficiency to Claimants dated October 8, 2004, asserting

that the capital gain resulting from the Shares received in the Transaction was $79,999,200 rather than $22,718,911, as reported. The Commissioner asserted that the total capital gains reported on Line 12 of Schedule D for 2000 were $107,096,645, rather than $49,816,356, as reported. Despite the fact that Claimants relied upon two independent appraisals to determine the value of the Shares, the Commissioner asserted a deficiency in income taxes against Claimants for the tax year 2000 in the amount of $12,584,993 and a penalty under I.R.C. § 6662(a) in the amount of $2,516,998.60. A copy of the notice of deficiency is attached as Exhibit 1 and is incorporated by reference (the "**Notice of Deficiency**"). However, the Commissioner did not send the Notice of Deficiency to Claimants' last known address within three years of the filing of Claimants' 2000 income tax return as required by I.R.C. § 6212.

10. The Commissioner's explanation for its assessment of additional income taxes for 2000 and a penalty under I.R.C. § 6662(c) is as follows:

1. <u>Fair Market Value of HRN, Inc. Stock Received.</u>

> "It has been determined that you did not correctly report the fair market value of the HRN, Inc. stocks received upon the sale of the assets and liabilities of TMF Incorporation and HRN Marketing Corporation. Accordingly, we have adjusted the net gain reported from the receipt of the stocks as shown on the attached schedule."

2. <u>Disallowance of Employee Compensation.</u>

> "We have disallowed a portion of the loss claimed from the TMF Liquidating Trust. The amount deducted as employee compensation has not been substantiated as to amount or deductibility."

3. <u>Accuracy-related Penalty IRC section 6662(a).</u>

> "Since all or part of the underpayment of tax for the taxable year(s) is attributable to one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement, an addition to the tax

> is charged as provided by section 6662(a) of the Internal Revenue Code. The penalty is twenty (20) percent of the portion of the underpayment of tax attributable to each component of this penalty. In addition, interest is computed on this penalty from the due date of the return (including any extensions)."

11. The Commissioner asserted a penalty against Claimants under I.R.C. § 6662(a) even though the Commissioner (1) was fully aware that Claimants had reasonably relied upon two independent appraisals from reputable appraisal firms and reported the transaction using a conservative approach based upon the higher value of the two appraisals, and (2) submitted no independent appraisal of the Shares to Claimants. Moreover, the Commissioner asserted a penalty despite the fact that BVS is often (1) employed by the Commissioner to provide the Commissioner with opinions regarding valuation issues, and (2) BVS's opinions are relied upon by the Commissioner in valuation disputes with other taxpayers.

12. Thus, the Commissioner erroneously takes the position in the Notice of Deficiency that in spite of the onerous sale restrictions, the Shares received by Claimants as a result of the 2000 Amendment had a value equal to that of the stock being openly traded on the market which had no restrictions on its resale. It is the $16 per share anticipated initial public offering price of the stock -- the value of the stock as traded on the open market with no restrictions whatsoever -- that the IRS uses to determine the amount assessed as a deficiency, and therefore the dollar figure used to calculate the penalty assessed.

13. On January 4, 2005, Claimants paid the income tax assessment of $12,584,993 and the penalty of $2,516,998.60 to the Commissioner. A copy of the cover letter and check to the Department of Treasury is attached as Exhibit 2 and is incorporated by reference.

14. Claimants file this refund claim on the grounds that (1) each allegation raised by the Commissioner in the Notice of Deficiency was erroneous; (2) the Commissioner's claims raised in the Notice of Deficiency are barred because the statute of limitations has run on Claimant's 2000 income tax return and the IRS is barred from assessing any tax liability; and (3) the Commissioner's penalty allegations in the notice are erroneous and are barred under the reasonable cause exception provisions of I.R.C. § 6664(c).

15. The Commissioner erred in determining that additional income tax and a penalty is due from Claimants under the basic assertions made by the Commissioner in the deficiency notice. The Commissioner's basic assumptions are as follows: (1) that Claimants did not correctly report the fair market value of the HRN stock received upon the sale of the assets and liabilities of TMF Inc. and HRN Marketing Corporation; (2) that a portion of the loss claimed from the TMF Liquidating Trust should be disallowed; (3) that the amount deducted as employee compensation has not been substantiated as to amount or deductibility; and (4) that Claimants are liable for a penalty under I.R.C. § 6662(a). Claimants' determination of the net long term capital gains at Schedule D, Line 12 of the 2000 Form 1041 was correct and based upon the fair market value of the Shares received in the Transaction. Likewise, the loss claimed from the TMF Liquidating Trust was proper and the compensation paid to Andrew Pells was fair and reasonable and commensurate with the services Mr. Pells provided to TMF Liquidating Trust and its predecessor, TMF, Inc.

16. The Commissioner also erred in asserting a penalty under I.R.C. § 6662(a) because (1) no underpayment of tax occurred; (2) no substantial underpayment of

income tax occurred; (3) no substantial valuation overstatement occurred; and (4) Claimants were not negligent and did not disregard rules or regulations with respect to their 2000 Form 1040. In the alternative, if it is determined by settlement or by a court of competent jurisdiction that a substantial underpayment of income tax or a substantial valuation overstatement occurred, the Commissioner erred in asserting a penalty under I.R.C. § 6662(a) because Claimants had reasonable cause with respect to the determination of the capital gains resulting from the 2000 Amendment and Claimants acted in good faith and in reliance on their tax advisors in preparing and filing their 2000 Form 1040 and upon qualified appraisals in connection with the valuation of the Shares under I.R.C. § 6664(c)

17. The Commissioner also erred in assessing additional income tax on the grounds that such assessment is barred by the statute of limitations.

18. In the alternative to 15(1) above, if as a result of the resolution of this Claim for Refund, either by settlement or judgment, the value of the Shares received in the Transaction is increased, the income tax basis of the Shares would be correspondingly increased under the Internal Revenue Code. In the event of such an increase in value (and a corresponding increase in basis), Claimants would be entitled to a refund based upon an additional deduction on Schedule D of the 2000 Form 1040 to reduce the gain recognized on the transfer of stock by TMF Liquidating Trust to Andrew Pells as part of his compensation referred to paragraph 6 above. The specific dollar amount of the refund is unknown and unknowable until the Commissioner or a court of competent jurisdiction makes a final determination on the issues raised in this Refund Claim. However, based upon the Notice of Deficiency as issued, Claimants' basis in the Shares would be $16 per

share, the initial public offering price, with no discount applied despite the onerous restrictions on the sale of the stock. Using a $16 per share basis, the amount of the reduction of capital gains on Schedule D of the 2000 Form 1040 would be $970,180.

19. Claimants are the legal and beneficial owners of this claim and have not assigned or transferred any part of it.

WHEREFORE, Claimants hereby claim that they are entitled to a refund of the $12,584,993 income tax and the penalty of $2,516,998.60 assessed and paid, or such greater amount as is legally refundable, plus additional allowable interest.

# EXHIBIT 1

## to Exhibit A to Claim for Refund

CERTIFIED MAIL

**Department of the Treasury**
**Internal Revenue Service**
1100 Commerce Street, MC 4019 DAL
Dallas, TX 75242

Letter Number: 531 (DO)
Form Number:
1040
Taxpayer Identifying Number:
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
Person to Contact:
Notices Clerk
Telephone Number:
(214) 413-5162
Employee Identification Number:

Refer Reply To:
SE:S:C:F:TS:W:10:8:EXAM
Last Day to File a Petition With the United States Tax Court:
JAN 06 2005

CERTIFIED MAIL

Date: OCT 08 2004

David S. & Malia A. Litman
10710 Strain Lane
Dallas, TX 75229-5427

| | |
|---|---|
| Tax Year Ended: | December 31, 2000 |
| Deficiency: | |
| Increase in tax | $12,584,993.00 |
| Penalties or Additions to Tax | |
| IRC 6662(a) | 2,516,998.60 |

Dear David S. & Malia A. Litman:

**NOTICE OF DEFICIENCY**

We have determined that you owe additional tax or other amounts, or both, for the tax year(s) identified above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have 90 days from the date of this letter (150 days if this letter is addressed to you outside of the United States) to file a petition with the United States Tax Court for a redetermination of the deficiency. You can get a copy of the rules for filing a petition and a petition form you can use by writing to the address below.

United States Tax Court, 400 Second Street, NW, Washington, DC 20217

The Tax Court has a simplified procedure for small tax cases when the amount in dispute for each tax year is $50,000 or less. If you intend to file a petition for multiple tax years and the amount in dispute for any one or more of the tax years exceeds $50,000, this simplified procedure is not available to you. If you use this simplified procedure, you cannot appeal the Tax Court's decision. You can get information pertaining to the simplified procedure for small cases from the Tax Court by writing to the court at the above address or from the court's internet site at www.ustaxcourt.gov.

Send the completed petition fo..., a copy of this letter, and copies of all st...ments and/or schedules you received with this letter to the Tax Court at the above address. The Court cannot consider your case if the petition is filed late. The petition is considered timely filed if the postmark date falls within the prescribed 90 or 150 day period and the envelope containing the petition is properly addressed with the correct postage.

The time you have to file a petition with the court is set by law and cannot be extended or suspended. Thus, contacting the Internal Revenue Service (IRS) for more information, or receiving other correspondence from the IRS won't change the allowable period for filing a petition with the Tax Court.

As required by law, separate notices are sent to husbands and wives. If this letter is addressed to both husband and wife, and both want to petition the Tax Court, both must sign and file the petition or each must file a separate, signed petition. If more than one tax year is shown above, you may file one petition form showing all of the years you are contesting.

You may represent yourself before the Tax Court, or you may be represented by anyone admitted to practice before the Tax Court.

If you decide not to file a petition with the Tax Court, please sign the enclosed waiver form and return it to us at the IRS address on the top of the first page of this letter. This will permit us to assess the deficiency quickly and can help limit the accumulation of interest.

If you decide not to sign and return the waiver, and you do not file a petition with the Tax Court within the time limit, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

NOTE: If you are a C-corporation, section 6621(c) of the Internal Revenue Code requires that we charge an interest rate two percent higher than the normal rate on corporate underpayments in excess of $100,000.

If you have questions about this letter, you may write to or call the contact person whose name, telephone number, and IRS address are shown on the front of this letter. If you write, please include your telephone number, the best time for us to call you if we need more information, and a copy of this letter to help us identify your account. Keep the original letter for your records. If you prefer to call and the telephone number is outside your local calling area, there will be a long distance charge to you.

The contact person can access your tax information and help you get answers. You also have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process. The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the U.S. Tax Court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate assistance, please contact the Taxpayer Advocate for the IRS office that issued this notice of deficiency. See the enclosed Notice 1214, *Helpful Contacts for Your "Notice of Deficiency"*, for Taxpayer Advocate telephone numbers and addresses.

Thank you for your cooperation.

Sincerely,

Mark W. Everson

Commissioner

By

Cherry Elder, by jw

Cherry Elder, Acting Territory Manager

Gulf States Technical Services

Enclosures:
Explanation of tax changes
Waiver
Notice 1214

**Letter 531 (DO) (Rev. 6-2003)**
Catalog Number 40222A

OCT 0 6 2005

Form **4089-B** (October 1999)

Department of the Treasury — Internal Revenue Service

# Notice of Deficiency-Waiver

Symbols

SE:S:C:F:TS:W:10:8:EXAM

Name and address of taxpayer(s)

David S. and Malia A. Litman
10710 Strain Lane
Dallas, TX 75229-5427

Social Security or Employer Identification Number

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

Kind of tax

Income

☑ Copy to authorized representative

John W. Porter, Baker Botts, L.L.P.
910 Louisiana Street, Suite 3000
Houston, TX 77002-4995

Lisa Florentino
5550 LBJ Freeway, Suite 650
Dallas, TX 75240-2340

**DEFICIENCY — Increase in Tax and Penalties**

| | |
|---|---|
| Tax Year Ended: | December 31, 2000 |
| Deficiency: Increase in tax | $12,584,993.00 |
| Penalties | |
| IRC 6662(a) | 2,516,998.60 |

**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

**Your Signature** ➤ ____________________ *(Date signed)*

**Spouse's Signature *(If A Joint Return Was Filed)*** ➤ ____________________ *(Date signed)*

**Taxpayer's Representative Sign Here** ➤ ____________________ *(Date signed)*

**Corporate Name** ➤ ____________________

**Corporate Officers Sign Here** ➤ ____________________ *(Signature)* *(Title)* *(Date signed)*

➤ ____________________ *(Signature)* *(Title)* *(Date signed)*

**If you agree, please sign one copy and return it; keep the other copy for your records.**

Form **4089-B** (October 1999)

Department of the Treasury — Internal Revenue Service

# Notice of Deficiency-Waiver

Symbols

SE:S:C:F:TS:W:10:8:EXAM

Name and address of taxpayer(s)

David S. and Malia A. Litman
10710 Strain Lane
Dallas, TX 75229-5427

Social Security or Employer Identification Number

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

Kind of tax

Income

☑ Copy to authorized representative

John W. Porter, Baker Botts, L.L.P.
910 Louisiana Street, Suite 3000
Houston, TX 77002-4995

Lisa Florentino
5550 LBJ Freeway, Suite 650
Dallas, TX 75240-2340

**DEFICIENCY — Increase in Tax and Penalties**

| | |
|---|---|
| Tax Year Ended: | December 31, 2000 |
| Deficiency: Increase in tax | $12,584,993.00 |
| Penalties | |
| IRC 6662(a) | 2,516,998.60 |

**See the attached explanation for the above deficiencies**

I consent to the immediate assessment and collection of the deficiencies (increase in tax and penalties) shown above, plus any interest provided by law.

**Your Signature** ➔ ____________________ *(Date signed)*

**Spouse's Signature *(If A Joint Return Was Filed)*** ➔ ____________________ *(Date signed)*

**Taxpayer's Representative Sign Here** ➔ ____________________ *(Date signed)*

**Corporate Name** ➔ ____________________

**Corporate Officers Sign Here** ➔ ____________________ *(Signature)* *(Title)* *(Date signed)*

➔ ____________________ *(Signature)* *(Title)* *(Date signed)*

**If you agree, please sign one copy and return it; keep the other copy for your records.**

# Instructions for Form 4089 B

**Note:**

If you consent to the assessment of the amounts shown in this waiver, please sign and return it in order to limit the accumulation of interest and expedite our bill to you. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are entitled to a refund. It will not prevent us from later determining, if necessary, that you owe additional tax; nor will it extend the time provided by law for either action.

If you later file a claim and the Internal Revenue Service disallows it, you may file suit for refund in a district court or in the United States Claims Court, but you may not file a petition with the United States Tax Court.

**Who Must Sign**

If this waiver is for any year(s) for which you filed a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

**Optional Paragraphs**

A check in the block to the left of a paragraph below indicates that the paragraph applies to your situation.

- ☐ The amount shown as the deficiency may not be billed, since all or part of the refund due has been held to offset all or a portion of the amount of the deficiency. The amount that will be billed, if any, is shown on the attached examination report.

- ☐ The amount shown as a deficiency may not be billed, since the refund due will be reduced by the amount of the deficiency. The net refund due is shown on the attached examination report.

Continuation Sheet

| NAME: David S. and Malia A. Litman | TIN: 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 |
|---|---|

Interest on Deficiencies

Interest on Deficiencies will accrue from the due date of the return until paid.

Accuracy-related Penalty IRC section 6662(a)

Since all or part of the underpayment of tax for the taxable year(s) is attributable to one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement, an addition to the tax is charged as provided by section 6662(a) of the Internal Revenue Code. The penalty is twenty (20) percent of the portion of the underpayment of tax attributable to each component of this penalty. In addition, interest is computed on this penalty from the due date of the return (including any extensions).

Name of Taxpayer: David S. & Malia A. Litman
Identification Number: 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 Total

## SUMMARY OF THE ACCURACY-RELATED PENALTY

### 2000 - 20% PENALTY ISSUES - Section 6662(a) and 6662(b)

It has been determined that the underpayment of tax shown on line 5 below is attributable to one or more of the following elements of the accuracy-related penalty: (1) negligence or disregard of rules or regulations, (2) substantial understatement of income tax, or (3) substantial valuation overstatement, therefore, an addition to tax is imposed as provided by Section 6662(a) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total tax computed with non-penalty adjustments and adjustments subject to penalty under Section 6662(b) | 12,584,993.00 |
| 2. Total tax computed with non-penalty adjustments only | 0.00 |
| 3. Line 1 less line 2 - Underpayment to which Section 6662(a) applies | 12,584,993.00 |
| 4. Allocable Prepayment Credits (other than EIC and Special Fuels Credits included in lines 1 & 2) | 0.00 |
| 5. Line 3 less line 4 - Underpayment subject to penalty | 12,584,993.00 |
| 6. Applicable penalty rate | 20.00% |
| 7. Line 5 multiplied by line 6 | 2,516,998.60 |
| 8. Previously assessed 20% Accuracy Penalty | 0.00 |
| 9. Line 7 less line 8 - 20% Accuracy-related penalty | 2,516,998.60 |

### 2000 - 40% PENALTY ISSUES - Section 6662(h)

It has been determined that the underpayment of tax shown on line 14 below is attributable to a gross valuation misstatement, therefore, an addition to tax is imposed as provided by Section 6662(h) of the Internal Revenue Code.

| | |
|---|---|
| 10. Total tax computed with non-penalty adjustments, adjustments subject to penalty under IRC 6662(a) and adjustments subject to penalty under IRC 6662(h) | 0.00 |
| 11. Total tax from line 1 above | 12,584,993.00 |
| 12. Line 10 less line 11 - Underpayment to which Section 6662(h) applies | 0.00 |
| 13. Allocable Prepayment Credits (other than EIC and Special Fuels Credits included in lines 10 & 11) | 0.00 |
| 14. Line 10 less line 11 - Underpayment subject to penalty | 0.00 |
| 15. Applicable penalty rate | 0.00% |
| 16. Line 14 multiplied by line 15 | 0.00 |
| 17. Previously assessed 40% Accuracy Penalty | 0.00 |
| 18. Line 16 less line 17 - 40% Accuracy-related penalty | 0.00 |
| 19. Line 9 plus line 18 - Total ACCURACY-RELATED PENALTY | 2,516,998.60 |

| Substitute for Form 5278 | Department of the Treasury - Internal Revenue Service **Income Tax Examination Changes** | 1. Office Symbols: SE:S:C:F:TS:W:10:8:EXAM |
|---|---|---|

2. Name(s) of Taxpayer(s)
David S. & Malia A. Litman

3. ☑ Notice of Deficiency
☐ Settlement Computation
☐ Other (Specify)

4. TIN 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 | 5. Form Number 1040 | 6. Court docket number

| | Tax Years Ended: | | |
|---|---|---|---|
| 7. Adjustments to Income | Year: 12/31/2000 | Year: | Year: |
| a. Capital Gain or Loss | 57,280,289.00 | | |
| b. Sch E - Trust Loss | 3,422,068.00 | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| 8. Total Adjustments | 60,702,357.00 | | |
| 9. a. Taxable Income<br>b. As shown in:<br>☐ Preliminary letter dated<br>☐ Notice of deficiency date<br>☑ Return as filed | 48,754,188.00 | | |
| 10. Taxable Income as Revised | 109,456,545.00 | | |
| 11. Tax | 22,335,235.00 | | |
| 12. Alternative Tax, If Applicable | 0.00 | | |
| 13. Corrected Tax Liability | 22,335,235.00 | | |
| 14. Less Credits (Specify) a. Foreign Tax Credit | 22,624.00 | | |
| b. | | | |
| c. | | | |
| 15. Balance (Line 13 less amounts on lines 14a – 14c) | 22,312,611.00 | | |
| 16. Plus a. Household Employment Tax | 22,241.00 | | |
| b. | | | |
| c. | | | |
| 17. Total Corrected Income Tax Liability (Line 15 plus total of lines 16a through 16c) | 22,334,852.00 | | |
| 18. Total Tax Shown on Return or as Previously Adjusted | 9,749,859.00 | | |
| 19. Adjustment to: a. Credit – Federal Tax Paid on Fuels | | | |
| b. | | | |
| c. | | | |
| 20. Increase in Tax or (Overassessment – Decrease in Tax) (Line 17 adjusted by Lines 18 and 19) | 12,584,993.00 | | |

21. Additions/Adjustments to the Tax:

| | |
|---|---|
| Accuracy-IRC 6662 | 2,516,998.60 |

SEE ATTACHMENT FOR NOTICES AND OTHER INFORMATION

Taxpayer: David S. & Malia A. Litman
TIN: 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 Tax Periods: 12/31/2000

## OTHER INFORMATION

The Internal Revenue Service has agreements with State tax agencies under which information about Federal tax, including increases or decreases, is exchanged with the States. If this change affects the amount of your State income tax, you should file the required State form.

---

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. The IRS may order backup withholding at 20 percent after four notices have been issued to you over a 120-day period and the tax has been assessed and remains unpaid.

---

**TAXPAYER: David S. and Malia A. Litman** **TAX YEAR: December 31, 2000**

## EXPLANATION OF ADJUSTMENTS

7a.
It has been determined that you did not correctly report the fair market value of the HRN, Inc. stocks received upon the sale of the assets and liabilities of TMF Incorporation and HRN Marketing Corporation. Accordingly, we have adjusted the net gain reported from the receipt of the stocks as shown on the attached schedule.

7b.
We have disallowed a portion of the loss claimed from the TMF Liquidating Trust. The amount deducted as employee compensation has not been substantiated as to amount or deductibility.

11.
Your tax has been computed using the rates that apply to married individuals filing jointly.

After May 6, 1997 the maximum rate of tax on your net capital gain may be 10 percent, 20 percent, 25 percent, 28 percent or a combination of those rates. Thus, your taxes have been adjusted accordingly as shown on the attached schedule.

12.
Due to other adjustments on your return, you no longer owe alternative minimum tax as shown on the attached schedule.

TAXPAYER: David S. and Malia A. Litman TAX YEAR: December 31, 2

**Computation of Sch D, Line 12 Net Long-Term Gains from Trusts**

| | Ownership Percentage | Capital Gain per Return (1) | Capital Gain per Exam (2) | Adjustment |
|---|---|---|---|---|
| **Gain on receipt of HRN, Inc. stock** | | | | |
| David Litman | 44.900% | 20,401,582.00 | 71,839,284.00 | |
| Anna Litman, Exempt GS Trust | 1.700% | 772,443.00 | 2,719,972.00 | |
| Zachary Litman, Exempt GS Trust | 1.700% | 772,443.00 | 2,719,972.00 | |
| Katherine Litman | 1.700% | 772,443.00 | 2,719,972.00 | |
| | 50.000% | 22,718,911.00 | 79,999,200.00 | 57,280,289. |
| **Other nonexamined long-term gains** | | | | |
| Installment gain | | 26,024,975.00 | 26,024,975.00 | 0. |
| Other flow-through capital gains | | 1,072,470.00 | 1,072,470.00 | 0. |
| **Sch D, line 12** | | **49,816,356.00** | **107,096,645.00** **a.** | **57,280,289.** |

1 Gain based on FMV determined by taxpayer (50% of 9,999,900 shares @ $4.5438 per share)
2 Gain based on FMV determined by HRN, Inc. (50% of 9,999,900 @ $16.00 per share)

**Sch D, Part II Long-Term Capital Gain and Losses per Exam**

| | Total Long-Term Capital Gains/(Loss) | |
|---|---|---|
| Line 8 | (430,910.00) | |
| Line 11 | 146,352.00 | |
| Line 12 | 107,096,645.00 | **a.** |
| Line 13 | 261,755.00 | |
| Total Long-Term Capital Gain | **107,073,842.00** | |

Name of Taxpayer: David S. & Malia A. Litman
Identification Number: 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 Total

2000 - SCHEDULE D - CAPITAL GAINS AND LOSSES

| | |
|---|---|
| 1. Short-term capital gain or loss | 16,770.00 |
| 2. Short-term capital loss carryover | 0.00 |
| 3. Net Short-term Gain or Loss (Add line 1 and 2) | 16,770.00 |
| 4. Long-term capital gain or loss | 107,073,842.00 |
| 5. Long-term capital gain or loss carryover | 0.00 |
| 6. Net long-term Gain or Loss (Add line 4 and 5) | 107,073,842.00 |
| 7. Sum of lines 3 and 6 - Net Capital Gain or Loss | 107,090,612.00 |
| 8. Capital loss limitation | 0.00 |
| 9. Capital Gain or Loss - As Corrected | 107,090,612.00 |
| 10. Capital Gain or Loss - Per Return | 49,810,323.00 |
| 11. Line 9 less line 10 - Adjustment to Income | 57,280,289.00 |

**CORRECTED CARRYOVER**

| | |
|---|---|
| 12. Short-term Carryover to Subsequent Year | 0.00 |
| 13. Long-term Carryover to Subsequent Year | 0.00 |

**COMPUTATION OF ALTERNATE TAX**

| | |
|---|---|
| 14. Taxable Income | 109,456,545.00 |
| 15. Smaller of line 6 or line 7 | 107,073,842.00 |
| 16. Form 4952, line 4e | 0.00 |
| 17. Subtract line 16 from line 15 | 107,073,842.00 |
| 18. Combine line 3 and Total 28% Rate Gain (not less than 0) | 16,770.00 |
| 19. Smaller of line 18 and Total 28% Rate Gain | 0.00 |
| 20. Unrecaptured Section 1250 Gain | 84,970.00 |
| 21. Add line 19 and 20 | 84,970.00 |
| 22. Subtract line 21 from line 17 (not less than 0) | 106,988,872.00 |
| 23. Subtract line 22 from line 14 (not less than 0) | 2,467,673.00 |
| 24. Smaller of line 14 or 43,850.00 | 43,850.00 |
| 25. Smaller of line 23 or line 24 | 43,850.00 |
| 26. Subtract line 17 from line 14 (not less than 0) | 2,382,703.00 |
| 27. Larger of line 25 or line 26 | 2,382,703.00 |
| 28. Tax on amount on line 27 | 916,218.00 |
| 29. Amount from line 24 | 43,850.00 |
| 30. Amount from line 23 | 2,467,673.00 |
| 31. Subtract line 30 from line 29 (not less than 0) | 0.00 |
| 32. Multiply line 31 by 10% | 0.00 |
| 33. Smaller of line 14 or line 22 | 106,988,872.00 |
| 34. Amount from line 31 | 0.00 |
| 35. Subtract line 34 from line 33 (not less than 0) | 106,988,872.00 |
| 36. Multiply line 35 by 20% | 21,397,774.00 |
| 37. Smaller of line 17 or line 20 | 84,970.00 |
| 38. Add lines 17 and 27 | 109,456,545.00 |
| 39. Amount from line 14 | 109,456,545.00 |
| 40. Subtract line 39 from line 38 | 0.00 |
| 41. Subtract line 40 from line 37 | 84,970.00 |
| 42. Multiply line 41 by 25% | 21,243.00 |
| 43. Amount from line 14 | 109,456,545.00 |
| 44. Add lines 27, 31, 35, and 41 | 109,456,545.00 |
| 45. Subtract line 44 from line 43 | 0.00 |
| 46. Multiply line 45 by 28% | 0.00 |
| 47. Add lines 28, 32, 36, 42, and 46 - Alternative Tax | 22,335,235.00 |

Name of Taxpayer: David S. & Malia A. Litman
Identification Number: 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 Total

2000 - FORM 6251 - ALTERNATIVE MINIMUM TAX COMPUTATION

| | |
|---|---|
| 1. Total Adjustments and Preferences | 59,640.00 |
| 2. Tax Table Income (from Form 1040, line 37) | 109,456,545.00 |
| 3. Net Operating Loss Deduction | 0.00 |
| 4. Itemized Deduction Limitation (from Schedule A Worksheet) | ($40,691.00) |
| 5. Combine lines 1 through 4 | 109,475,494.00 |
| 6. Alternative Tax Net Operating Loss Deduction | 0.00 |
| 7. Alternative Minimum Taxable Income | 109,475,494.00 |
| 8. Exemption Amount | 0.00 |
| 9. Subtract line 8 from line 7 (if 0 or less, enter 0) | 109,475,494.00 |
| 10. If line 9 is $175,000 or less ($87,500 or less if married filing separate) multiply line 9 by 26% | 22,087,980.00 |
| 11. Alternative Minimum Tax Foreign Tax Credit | 22,624.00 |
| 12. Tentative Minimum Tax (Subtract 11 form 10) | 22,065,356.00 |
| 13. Regular Tax Before Credits (less Foreign Tax Credit) | 22,312,611.00 |
| 14. Alternative Minimum Tax (before credit) | 0.00 |
| 15. Empowerment Zone Employment Credit | 0.00 |
| 16. Net Alternative Minimum Tax (line 14 less line 15) | 0.00 |

EXEMPTION WORKSHEET (Line 8)

| | |
|---|---|
| A. Exemption amount based on filing status | 45,000.00 |
| B. Alternative Minimum Taxable Income (line 7) | 109,475,494.00 |
| C. Enter $112,500 ($150,000 if married filing jointly or qualifying widow(er), $75,000 if married filing separate) | 150,000.00 |
| D. Subtract line C from line B | 109,325,494.00 |
| E. Multiply line D by 25% | 27,331,374.00 |
| F. Subtract line E from line A (if zero or less, enter 0) | 0.00 |

Name of Taxpayer: David S. & Malia A. Litman
Identification Number: 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 Total

2000 - FORM 6251 - CONTINUATION, USING MAXIMUM CAPITAL GAINS RATES
COMPUTATION OF LINE 10 WHEN SCHEDULE D IS COMPLETED

| | |
|---|---|
| 1. Amount from Form 6251 Report, line 9 | 109,475,494.00 |
| 2. Amount from Schedule D Report, line 22 (refigured for AMT) | 106,988,872.00 |
| 3. Amount from Schedule D Report, line 20 (refigured for AMT) | 84,970.00 |
| 4. Add line 2 and 3 | 107,073,842.00 |
| 5. Amount from Schedule D Report, line 17 (refigured for AMT) | 107,073,842.00 |
| 6. Smaller of line 4 or line 5 | 107,073,842.00 |
| 7. Subtract line 6 from line 1 | 2,401,652.00 |
| 8. If line 7 is $175,000 or less ($87,500 if MFS) multiply line 7 by 26%. Otherwise, multiply line 7 by 28% and subtract $3,500 ($1,750 if MFS) from result | 668,963.00 |
| 9. Amount from Schedule D Report, line 31 | 0.00 |
| 10. Smallest of line 1, 2, or line 9 | 0.00 |
| 11. Multiply line 10 by 10% | 0.00 |
| 12. Smaller of line 1 or line 2 | 106,988,872.00 |
| 13. Amount from line 10 | 0.00 |
| 14. Subtract line 13 from line 12 (not less than 0) | 106,988,872.00 |
| 15. Multiply line 14 by 20% | 21,397,774.00 |
| 16. Amount from line 1 | 109,475,494.00 |
| 17. Add lines 7, 10, and 14 | 109,390,524.00 |
| 18. Subtract line 17 from line 16 | 84,970.00 |
| 19. Multiply line 18 by 25% | 21,243.00 |
| 20. Add lines 8, 11, 15, and 19 | 22,087,980.00 |
| 21. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%. Otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) from result | 30,649,638.00 |
| 22. Smaller of line 20 or 21, enter here and on line 10 of Form 6251 Report | 22,087,980.00 |

# EXHIBIT 2

## to Exhibit A to Claim for Refund

**David and Malia Litman**
14275 Midway Road, #450
Addison, TX 75001
214-239-2666
Fax 214-239-2665

January 4, 2005

Internal Revenue Service
Department of the Treasury
1100 Commerce Street, MC 4019 DAL
Dallas, TX 75242

RECEIVED
JAN 04 2005
Wage & Investment Area 5 Director
INTERNAL REVENUE SERVICE
Farmers Branch, TX 0503150Z

Re: David S. And Malia A. Litman
2000 Form 1040
SSN 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

Dear Internal Revenue Service:

On October 8, 2004, the Internal Revenue Service forwarded to David S. and Malia A. Litman a Notice of Deficiency for income taxes for the calendar year ending December 31, 2000. A copy of the Notice of Deficiency is attached. The Notice of Deficiency asserted an increase in tax of $12,584,993 and a penalty under I.R.C. section 6662(a) in the amount of $2,516,998.60. All of these amounts are in dispute.

Enclosed please find a check from David S. and Malia A. Litman in the amount of $15,101,991.60 in payment of the total increase in income tax and penalty for David S. and Malia A. Litman for the calendar year 2000. Please apply this payment to tax first and then to penalty, rather than interest, so that the entire amount of increase in tax and penalty is paid.

If you have any questions, please contact the undersigned at the telephone number and address listed above.

Very truly yours,

David S. Litman

Malia A. Litman

HOU01:879822.1

EXHIBIT 2

DAVID LITMAN
MALIA A LITMAN
5001 SWISS AVE
DALLAS, TX 75214

351

Date Jan. 4, 2005 55-7265/212

Pay to the Order of ~~Department of the Treasury~~ United States Treasury $ 15,101,991.60

Fifteen million one hundred one thousand nine hundred ninety one & 60/00 Dollars

SMITH BARNEY
FINANCIAL MANAGEMENT ACCOUNT
800-634-9855
Citibank F.S.B. Englewood Cliffs, N.J.

For Form 1040 For 2000 SSN 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

⑆021272655⑆ 1000720723⑈ ~~0351~~

PROOF OF DELIVERY ONLY-
THIS IS NOT AN OFFICIAL RECEIPT
JAN 04 2005
Farmers Branch, TX
05031502