# EXHIBIT C

## TO

## PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS

(Rev. September 2001)

Department of the Treasury-Internal Revenue Service

# Income Tax Examination Changes

Page 1 of

| Name and address of Taxpayer | Taxpayer Identification Number | | Return Form No. |
|---|---|---|---|
| David S. and Malia A. Litman<br>10710 Strait Lane<br>Dallas, TX 75229 | 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 | | 1040 |
| | Person with whom examination changes were discussed | Name and Title: John Porter, POA | |

| 1. Adjustments to Income | Tax Period: 12/31/2000 | Tax Period: | Tax Period: |
|---|---|---|---|
| a. Capital Gain or Loss | 57,280,289 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| I. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| 2. Total Adjustments | 57,280,289 | | [redacted] |
| 3. Taxable Income Per Return or as Previously Adjusted | 48,754,188 | | |
| 4. Corrected Taxable Income | 106,034,477 | | |
| | Sch D | | |
| Filing Status | Joint | | |
| 5. Tax | 21,202,510 | | |
| 6. Alternative Taxes, If Applicable | 3,789 | | |
| 7. Alternative minimum tax (Starting tax year 2000) | | | |
| 8. Corrected Tax Liability | 21,206,299 | | |
| 9. Less Credits a. Foreign Tax Credit | 22,624 | | |
| b. | | | |
| c. | | | |
| d. Total credits *(See attached schedule)* | | | |
| 10. Balance - *(Line 8 less total of Lines 9a- 9d)* | 21,183,675 | | |
| 11. Plus Other Taxes a. Household Employment Taxes | 22,241 | | |
| b. | | | |
| c. | | | |
| d. Other Taxes *(See attached schedule)* | | | |
| 12. Total Corrected Tax Liability - (Line 10 plus Lines 11a- 11d) | 21,205,916 | | |
| 13. Total tax Shown on Return or as Previously Adjusted | 9,749,859 | | |
| 14. Adjustments to: | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| 15. Deficiency - Increase in Tax or (Overassessment - Decrease in Tax) - *(Line 12 less line 13 adjusted by lines 14a - 14b)* | 11,456,057 | | |
| 16. Adjustments to Prepayment Credits - *increase (decrease)* | | | |
| 17. Balance Due or (Overpayment) - *(Line 15 adjusted by Line 16)* Excluding interest and penalties | 11,456,057 | | |

LFOIA 000484

Department of the Treasury-Internal Revenue Service

(Rev. September 2001)

# Income Tax Examination Changes



| Name and address of Taxpayer | Taxpayer Identification Number | | Return Form No. |
|---|---|---|---|
| David S. and Malia A. Litman | 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 | | 1,040 |

| 18. Penalties Code Section | Tax Period: 12/31/2000 | Tax Period: | Tax Period: |
|---|---|---|---|
| a. Accuracy - IRC 6662 | 2,291,211 | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| 19. Total Penalties | 2,291,211 | | |
| Underpayment attributable to negligence: (1981-1987) A tax addition of 50 percent of the interest due on the underpayment will accrue until paid or assessed. | | | |
| Underpayment attributable to fraud: (1981 – 1987) A tax addition of 50 percent of the interest due on the underpayment will accrue until paid or assessed. | | | |
| Underpayment attributable to tax motivated Transactions *(TMT)*: The interest will accrue and be assessed at 120% of the underpayment in accordance with IRC § 6621(c). | | | |
| 20. Summary of Taxes, Penalties and Interest | | | |
| a. Balance due or (Overpayment) of Taxes - *(Line 17, Page 1)* | 11,456,057 | | |
| b. Penalties (Line 19) - computed to | 2,291,211 | | |
| c. Interest (IRC § 6601) – computed to | | | |
| d. TMT interest – computed to on TMT underpayment | | | |
| e. Amount due or (refund) – *(sum of Lines a, b, c and d)* | 13,747,268 | | |

Other Information

| Examiner's Signature | | |
|---|---|---|
| Name Susan Weiss Employee ID 75-11121 | Office Farmers Branch TX (LMSB) | Date |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases and decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income and do not pay the required tax. Once the tax has been assessed, you will be issued four notices over a 120-day period. If you don't pay the assessed tax, the IRS may require payers to withhold a percentage of your dividend and or interest payments.

LFOIA 000485

# David and Maria Litman
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
From 1040 12/31/2000
Attachment to RAR
Schedule D Tax Computation

**PART IV Tax Computation Using Maximum Capital Gains Rates**

| Line | Description | Line | Amount | Line | Amount |
|---|---|---|---|---|---|
| 19 | Enter your taxable income from Form 1040, line 39 | | | 19 | 106,034,477 |
| 20 | Enter the smaller of line 16 or line 17 of Schedule D | 20 | 107,073,842 | | |
| 21 | If you are filing Form 4952, enter the amount from 4952, line 4e | 21 | - | | |
| 22 | Subtract line 21 from line 20. If zero or less, enter -0- | 22 | 107,073,842 | | |
| 23 | Combine lines 7 and 15. If zero or less, enter -0- | 23 | 16,770 | | |
| 24 | Enter the smaller of line 15 or 23, but not less than zero | 24 | - | | |
| 25 | Enter your unrecaptured section 1250 gain, if any, from line 16 of the worksheet on page D-7 | 25 | 84,970 | | |
| 26 | Add lines 24 and 25 | 26 | 84,970 | | |
| 27 | Subtract line 26 from line 22. If zero or less, enter -0- | | | 27 | 106,988,872 |
| 28 | Subtract line 27 from line 19. If zero or less, enter -0- | | | 28 | - |
| 29 | Enter the smaller of: • The amount on line 19, or • $26,250 if single; $43,850 if married filing jointly or qualifying widow(er); $21,925 if married filing separately; or $35,150 if head of household | | | 29 | 43,850 |
| 30 | Enter the smaller of line 28 or line 29 | 30 | - | | |
| 31 | Subtract line 22 from 19. If zero or less, enter -0- | 31 | - | | |
| 32 | Enter the larger of line 30 or 31 ➡ | 32 | - | | |
| 33 | Figure the tax on the amount on line 32. Use the tax Table or Tax Rate Schedule, whichever applies. **Note:** If line 29 is less than line 28, go to line 38. | | | 33 | - |
| 34 | Enter the amount from line 29 | 34 | 43,850 | | |
| 35 | Enter the amount from line 28 | 35 | - | | |
| 36 | Subtract line 35 from 34. If zero or less, enter -0- ➡ | 36 | 43,850 | | |
| 37 | Multiply line 36 by 10% (.10) **Note:** If line 27 is more than zero and equal to line 36, go to line 52. | | | 37 | 4,385 |
| 38 | Enter the smaller of line 19 or line 27 | 38 | 106,034,477 | | |
| 39 | Enter the amount from line 36 | 39 | 43,850 | | |
| 40 | Subtract line 39 from line 38 ➡ | 40 | 105,990,627 | | |
| 41 | Multiply line 40 by 20% (.20) **Note.** If line 26 is zero or blank, skip lines 42 to 47 and read the note above line 48. | | | 41 | 21,198,125 |
| 42 | Enter the smaller of line 22 or line 25 | 42 | 84,970 | | |
| 43 | Add lines 22 and 32. (43: 107,073,842) | | | | |
| 44 | Enter the amount from Line 19 (44: 106,034,477) | | | | |
| 45 | Subtract line 44 from line 43. If zero or less, enter -0- | 45 | 1,039,365 | | |
| 46 | Subtract line 45 from line 42. If zero or less, enter -0- ➡ | 46 | - | | |
| 47 | Multiply line 46 by 25% (.25) **Note.** If line 24 is zero or blank, go to line 52. | | | 47 | - |
| 48 | Enter the amount from line 19 | 48 | 106,034,477 | | |
| 49 | Add lines 32, 36, 40 and 46 | 49 | 106,034,477 | | |
| 50 | Subtract line 49 from line 48 | 50 | - | | |
| 51 | Multiply line 50 by 28% (.28) | | | 51 | - |
| 52 | Add lines 33, 37, 41, 47, and 51 | | | 52 | 21,202,510 |
| 53 | Figure the tax on the amount on line 19. Use the tax table or Tax Rate Schedules whichever applies. | | | 53 | 41,962,321 |
| 54 | **Tax on all taxable income (including capital gains).** Enter the **smaller** of line 52 or 53 here and on line 1040, line 40 | | | 54 | 21,202,510 |

482

**David and Malia Litman**
**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**
**1040 12/31/2000**
**Attachment to RAR**

Form **6251**

Department of the Treasury
Internal Revenue Service

# Alternative Minimum Tax - Individuals

See Separate Instructions.
Attach to form 1040 or 1040NR

**2000**

Name(s) shown on Form 1040: **David S. and Malia A. Litman**

Your Social Security Number: **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**

## Part I Adjustments and Preferences

| | | |
|---|---|---|
| 1. If you itemized deductions on Schedule A (Form 1040), go to line 2. Otherwise, enter your standard deduction from 1040, line 36, here and go to line 6. | 1 | - |
| 2. Medical and dental. Enter the smaller of Schedule A (Form 1040), line 4 or 2½% of Form 1040, line 34 | 2 | - |
| 3. Taxes. Enter the amount from Schedule A (Form 1040), line 9 | 3 | 22,689 |
| 4. Certain interest on a home mortgage **not** used to buy, build, or improve your home | 4 | |
| 5. Miscellaneous itemized deductions. Enter the amount from Schedule A (Form 1040), line 26 | 5 | - |
| 6. Refund of taxes. Enter any tax refund from Form 1040, line 10 or line 21 | 6 | - |
| 7. Investment Interest. Enter difference between regular tax and AMT deduction | 7 | |
| 8. Post-1986 depreciation. Enter the difference between regular tax and AMT depreciation | 8 | |
| 9. Adjusted gain or loss. Enter difference between AMT and regular tax gain or loss | 9 | |
| 10. Incentive stock options. Enter excess of AMT income over regular tax income | 10 | - |
| 11. Passive activities. Enter difference between AMT and regular tax income or loss | 11 | 121 |
| 12. Beneficiaries of estates and trusts. Enter the amount from schedule K-1 (Form 1041), line 9 | 12 | |
| 13. Tax-exempt interest from private activity bonds issued after 8/7/86 | 13 | 36,830 |
| 14. Other. Enter the amount, if any, for each item below and enter the total on line 14. | | |

| | | | |
|---|---|---|---|
| a Circulation expenditures | | h Loss limitations | |
| b Depletion | | I Mining costs | |
| c Depreciation (pre-1987) | | j Patron's adjustment | |
| d Installment sales | | k Pollution control facilities | |
| e Intangible drilling costs | | l Research and experimental | |
| f Large partnerships | | m Section 1202 exclusion | |
| g Long-term contracts | | n Tax shelter farm activities | |
| | | o Related adjustments | |

| | | |
|---|---|---|
| | 14 | - |
| 15. **Total Adjustments and Preferences.** Combine lines 1 through 14 | 15 | 59,640 |

## Part II Alternative Minimum Taxable Income

| | | |
|---|---|---|
| 16. Enter the amount from **Form 1040, line 37.** If less than zero, enter as a loss | 16 | 106,034,477 |
| 17. Net operating loss deduction, if any, from Form 1040, line 21. Enter as a positive amount | 17 | |
| 18. If Form 1040, line 34, is over $128,950 (over $64,475 if married filing separately), and you itemized deductions, enter the amount, if any, from line 9 of the worksheet for Schedule A (Form 1040), line 28 | 18 | 40,691 |
| 19. Combine lines 15 through 18 | 19 | 106,053,426 |
| 20. Alternative tax net operating loss. See page 6 of the instructions | 20 | |
| 21. **Alternative Minimum Taxable Income.** Subtract line 20 from line 19. (If married filing separately and line 21 is more than $165,000, see page 7 of the Instructions) | 21 | 106,053,426 |

## Part III Exemption amount and Alternative Minimum Tax

22. **Exemption Amount** (if this form is for a child under 14, see page 7 of the instructions)

| **If your filing status is** | **AND line 21 is not over** | **THEN enter on line 22** |
|---|---|---|
| Single or head of household | $112,500 | $33,750 |
| Married filing jointly or qualifying widow(er) | 150,000 | 45,000 |
| Married filing separately | 75,000 | 22,500 |

If line 21 is over the amount shown above for your filing status, see page 7 of the instructions

| | | |
|---|---|---|
| 22. | 22 | - |
| 23. Subtract line 22 from line 21. If zero or less, enter -0- here and on lines 26 and 28 | 23 | 106,053,426 |
| 24. If you reported capital gains distributions directly on Form 1040, line 13, **or** you completed Schedule D (Form 1040) and have an amount on line 25 or 27 (or would have had an amount on either line if you had completed Part IV) (as refigured for AMT, if necessary), go to Part IV of Form 6251 to figure line 24. **All others:** If line 23 is $175,000 or less ($87,500 or less if married filing separately), multiply line 23 by 26% (.26). Otherwise, multiply line 23 by 28% and subtract $3,500 ($1,750 if married filing separately) from the result | 24 | 21,206,300 |
| 25. Alternative minimum tax foreign tax credit. See page 7 of the instructions | 25 | 22,624 |
| 26. Tentative minimum tax. Subtract line 25 from line 24 | 26 | 21,183,676 |
| 27. Enter your tax from Form 1040, line 40, (minus any tax from Form 4972 and any foreign tax credit from Form 1040, line 43) | 27 | 21,179,887 |
| 28. Alternative Minimum Tax. Subtract line 27 from line 26. If zero or less enter -0-. Enter here and Form 1040, line41 | 28 | 3,789 |

**For Paperwork Reduction Act Notice, see page 8 of the instructions**

Form **6251** (2000)

**David and Malia Litman**
**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**
**1040 12/31/2000**
**Attachment to RAR**

## Part IV Line 24 Computation using Maximum Capital Gains Rates

**Caution:** *If you did not complete Part IV of Schedule D (Form 1040), see page 8 of the instructions before you complete this part.*

| Line | Description | Box | Amount | Box | Amount |
|---|---|---|---|---|---|
| 29. | Enter the amount from Form 6251, line 23 | | | 29 | 106,053,426 |
| 30. | Enter the amount from Schedule D (Form 1040), line 27 (as refigured for the AMT, if necessary). See page 8 of the instructions | 30 | 106,988,872 | | |
| 31. | Enter the amount from Schedule D (Form 1040), line 25 (as refigured for the AMT, if necessary). See page 8 of the instructions | 31 | 84,970 | | |
| 32. | Add lines 30 and 31 | 32 | 107,073,842 | | |
| 33. | Enter the amount from Schedule D (Form 1040), line 22 (as refigured for the AMT, if necessary). See page 8 of the instructions | 33 | 107,073,842 | | |
| 34. | Enter the **smaller** of line 32 or line 33 | | | 34 | 107,073,842 |
| 35. | Subtract line 34 from line 29. If zero or less, enter -0- | | | 35 | -0- |
| 36. | If line 35 is $175,000 or less ($87,500 or less if married filing separately), multiply line 35 by 26% (.26). Otherwise, multiply line 35 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result | | | 36 | - |
| 37. | Enter the amount from Schedule D (Form 1040), line 36 (as figured for regular tax). See page 8 of the instructions | 37 | 43,850 | | |
| 38. | Enter the **smallest** of line 29, line 30, or line 37 ➡ | 38 | 43,850 | | |
| 39. | Multiply line 38 by 10% | | | 39 | 4,385 |
| 40. | Enter the **smaller** of line 29 or 30 | 40 | 106,053,426 | | |
| 41. | Enter the amount from line 38 | 41 | 43,850 | | |
| 42. | Subtract line 41 from line 40 ➡ | 42 | 106,009,576 | | |
| 43. | Multiply line 42 by 20% (.20) | | | 43 | 21,201,915 |
| | **Note:** *If line 31 is zero or blank, go to line 48* | | | | |
| 44. | Enter the amount from line 29 | 44 | 106,053,426 | | |
| 45. | Add lines 35, 38 and 42 | 45 | 106,053,426 | | |
| 46. | Subtract line 45 from line 44 | 46 | | | |
| 47. | Multiply line 46 by 25% (.25) | | | 47 | |
| 48. | Add lines 36, 39, 43, and 47 | | | 48 | 21,206,300 |
| 49. | If line 29 is $175,000 or less ($87,500 or less if married filing separately), multiply line 29 by 26% (.26). Otherwise, multiply line 29 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result | | | 49 | 29,691,459 |
| 50. | Enter the **smaller** of line 48 or line 49 here and on line 24 | | | 50 | 21,206,300 |

Form **6251** (2000)

| FORM 886-A (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | | SCHEDULE NO. OR EXHIBIT Form 4549 |
|---|---|---|---|
| NAME OF TAXPAYER David S. and Malia A. Litman | | TAX IDENTIFICATION NUMBER 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 | YEAR/PERIOD ENDED December 31, 2000 |

| | 12/31/2000 |
|---|---|
| **Gain per return on the receipt of HRN stock** | **22,718,911** |
| **Gain per examination on the receipt of HRN stock** | **79,999,200** |
| **Examination adjustment to income** | **57,280,289** |

[redacted]

## Issue

Whether the taxpayer's taxable income from capital gains should be increased for the additional value determined of stock received in exchange for the sale of business assets.

## Facts

David Litman is the co-founder of TMF Incorporation (TMF) and HRN Marketing Corporation (Marketing).[1] TMF operated Hotel Reservations Network; an internet business through which on-line discount hotel reservations could be booked. Marketing provided marketing, advertising, promotional activities and public relations for TMF on a contract basis. David Litman, as 50% shareholder of each Subchapter S corporation, reported his portion of the business results of TMF and Marketing on his individual income tax return.

In 1999 the assets and liabilities of TMF and Marketing were purchased by HRN, Inc. (HRN), a wholly-owned subsidiary of Interactive Corporation f/k/a "USA Interactive" and "USA Networks, Incorporated". In return for the sale of their assets and liabilities TMF and Marketing received cash and the right to contingent cash payments over a three year period following the acquisition. The amount of these contingent payments depended on the performance of HRN during the twelve month periods ending March 31, 2000, 2001 and 2002, respectively. Additionally, TMF and Marketing were entitled to receive stock equal to approximately 10% of HRN's equity in the event HRN initiated an initial public offering (IPO).

To facilitate the liquidation of the remaining assets of TMF and Marketing, in May of 1999 Messrs. Litman and Diener formed TMF Liquidating Trust (Trust), a grantor trust, solely for the purpose of liquidating certain property for the benefit of its beneficiaries. Property to be liquidated included the contingent payments due from HRN and/or the right to any HRN stock in the event of HRN's IPO. Messrs Diener and Litman are co-trustees of Trust and, together with certain trusts for the benefit of their children, are beneficiaries of the Trust.[2]

* * * *

[1] TMF was formed in 1991, Marketing was formed in 1998. David Litman was 50% shareholder of each entity. Co-founder Robert Diener owned the other 50%. Both entities were Subchapter S corporations during relevant tax periods.

[2] The Litman 2000 tax return includes 50% of the liquidating trust's activity for the year. This includes David Litman's direct portion and the portions allocable to grantor trusts established for his three children.
footnote continues next page

In February 2000, HRN sought to issue an IPO and, as a result, HRN and the Trust entered into an amended and restated asset purchase agreement pursuant to which HRN's contingent cash payment obligations for the 12 month periods ending March 31, 2001 and 2002 were extinguished in exchange for HRN's agreement to issue to the Trust shares of HRN's stock. A total of 9,999,900 shares of class A common stock of HRN were acquired by the Trust on February 24, 2000, immediately prior to HRN's IPO on February 25, 2000. Although issued to and held in trust, Messrs. Diener and Litman (or related entities) each owned 4,999,950 shares of the class A common stock subsequent to the HRN's offering.

All 9,999,900 shares issued to the Trust on 2/24/2000 were subject to contractual restrictions on resale or transfer. The restricted shares were not registered under the Securities Act of 1933, as amended, and the Trust did not have the right to cause such shares to be registered until the fourth anniversary of the Issuer's initial public offering.[3] Generally, no sales or transfers were permitted during the first year following the Issuer's initial public offering. After the first anniversary of the initial public offering, certain transfers were permitted to the Trust beneficiaries and members of their families, and sales or other transfers could occur for up to 1,714,966 of the total number of shares held by the Trust. After the second anniversary of the initial public offering, sales or other transfers could occur for up to an additional 489,990 shares. After the third anniversary of the initial public offering, sales or other transfers could occur for up to an additional 489,990 shares. After the fourth anniversary of the initial public offering, all restrictions expired and the Trust had a one time right to demand registration of all of the class A shares initially issued to the Trust.

On February 25, 2000, HRN completed the IPO in which it sold 6,210,000 shares of class A common stock for $16 per share, raising $90 million in proceeds net of offering expenses. HRN's public reports to the SEC indicate through 12/31/2000 the total amount paid to acquire the assets of TMF and Marketing totaled $406 million. This total is based on cash payments of $246 million and stock valued at $159,998,400 (9,999,900 shares @ $16 per share).

Although the stock was issued to the public for $16 per share, the stock issued to Trust immediately prior to the IPO differed in that it was restricted. As a result, Mr. Litman sought and obtained two separate appraisals to determine the fair market value of the restricted stock at the date of receipt. The two valuations differed; both valuations determined a FMV substantially less than $16/share.

Mr. Litman sought to come to an agreement with HRN as to the value of the restricted stock but HRN would not agree to less than $16/share. Mr. Litman reported the gain from the receipt of HRN stock using the higher of his two valuations which determined a total FMV of $45,437,824 for the 9,999,900 shares or an average value of $4.5438/share[4]. Mr. Litman reported his 50% portion of the proceeds, or $22,718,912.

continued footnote

[3] These restrictions are commonly known as "Rule 144" restrictions.
[4] Figures is rounded from $4.54382783827/share.

LFOIA 000490

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
|---|---|---|
| David S. and Malia A. Litman | 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 | December 31, 2000 |

The position taken by the purchasing corporation, HRN, is that the fair market value of the 9,999,900 share of restricted stock at the date of issuance was $159,998,400 or $16 per share based on the IPO value. It is the position of Mr. Litman that the value of the stock at the time of issuance was an average of $4.5438 per share based on the valuation report obtained by him. Since 4,999,950 of the shares were issued (in trust) to Mr. Litman, the difference between the two valuations results in a whip-saw issue. Unless resolved, the inconsistency in fair market values results in an understatement of taxable income of $57,280,288 [($16.00 - $4.54382783827) X 4,999,950] between the tax returns of David and Malia Litman and HRN.

During the course of this examination efforts were made once again by the taxpayer to reach an agreement with HRN as to the value of the restricted stock. HRN was not willing to negotiate. As a result of HRN's unwillingness to discuss the FMV issue, the taxpayer refused to extend the statute of limitations. Since the statute of limitations expires for the 2000 tax return on October 15, 2004, a statutory notice of deficiency is necessary to protect the government's interest until the whipsaw issue can be resolved.

## Law

I.R.C. § 1001 provides that the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain.

I.R.C. § 1001(b) provides that the amount realized from the sale or other disposition of property is the sum of any money received plus the fair market value of property received.

Rev. Rul. 77-287, 1977-2 C.B. 319 sets forth guidelines for valuing securities that cannot be immediately resold because they are restricted from resale pursuant to Federal securities law.

## Government's Position:

This issue results from the inability of the parties to the transaction to reach an agreement as to the proper FMV of restricted stock issued in connection with a taxable asset acquisition.

It is the Service's position that an issue of this nature should not be required to be addressed during the course of an examination because the transaction was completed between two independent taxpayers in an arms-length transaction. An agreement as to the FMV of the stock should have established between the parties prior to tax returns being filed.

Mr. Litman sought an independent, outside appraisal to determine the FMV of the restricted stock while HRN refused to accept the values determined by Mr. Litman's valuations yet sought no valuation to support their claimed FMV. The valuation issue was never resolved between the parties and the inconsistent, whipsaw, positions ultimately result in a net understatement of income tax.

LFOIA 000491

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
|---|---|---|
| **David S. and Malia A. Litman** | 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 | December 31, 2000 |

IRC Section 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis of the property.

I.R.C. § 1001(b) provides that the amount realized from the sale or other disposition of property is the sum of any money received plus the fair market value of property received. The amount realized by Mr. Litman from the sale includes cash and restricted stock from HRN however the amount realized cannot be definitively computed without the parties to the transaction coming to an agreement on the FMV of the restricted stock.

It is well settled that restrictions on the public sale of stock reduce the stock's fair market value; Estate of Piper v. Commissioner, 72 T.C. 1062, 1087, 1979 WL 3788 (1979); Bolles v. Commissioner, 69 T.C. 342 (1977); Hirsch v. Commissioner, 51 T.C. 121 (1968); Husted v. Commissioner, 47 T.C. 664 (1967). Revenue Ruling 77-287, 1977-2 C.B. 319 was issued to provide guidance to taxpayers, Internal Revenue Service personnel, and others concerned with the valuation, for Federal tax purposes, of securities that cannot be immediately resold because they are restricted from resale pursuant to Federal securities laws.

Since the HRN stock was unregistered and subject to resale restrictions of SEC Rule 144, this restriction limited their sale in the public marketplace and would generally justify a discount. However, since the statute of limitation is imminent and the taxpayer has decline to extent the statute, time does not permit a valuation to be prepared by the Service or for the parties to further attempt to come to an agreement on the FMV of the restricted stock. As a result, the portion of the gain from the receipt of HRN restricted stock is computed based on the FMV asserted by HRN, or $16 per share.

## Conclusion:

Taxable income is increased by $57,280,288 for the gain determined per exam on the taxpayer's receipt of HRN restricted stock. In order to protect the government's interest from the inconsistent, whipsaw positions reported by the taxpayer and HRN, the adjustment is based on the receipt of 4,999,950 shares at $16/share, which is the higher value asserted by the parties to the transaction.

LFOIA 000492

| (REV JANUARY 1994) | EXPLANATIONS OF ITEMS | SCHEDULE NO. OR EXHIBIT Form 4549 |
|---|---|---|
| NAME OF TAXPAYER David S. and Malia A. Litman | TAX IDENTIFICATION NUMBER 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 | YEAR/PERIOD ENDED December 31, 2000 |

**Substantial Understatement Penalty** **$2,291,211**

## Issue

Whether the accuracy related penalty provided by § 6662 applies to the deficiency resulting from the increase in income attributable to the receipt of HRN stock.

## Facts

An adjustment is proposed to increase the taxpayer's capital gain based on additional fair market value determined on HRN stock. An understatement of income tax exists for a taxable year if the amount of understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000 ($10,000 in the case of corporations other than S corporations or personal holding companies). I.R.C. §6662(d)(1). As proposed, the adjustment results in an understatement of income tax greater than 10% of the tax required to be shown on the tax return.

David Litman is the co-founder and 50% shareholder of TMF Incorporation (TMF) and HRN Marketing Corporation (Marketing). TMF and Marketing sold their assets to HRN Corporation in 1999. Mr. Litman assigned the rights to his 50% of the sales proceeds to a liquidating trust (Trust) in which he controlled 50%. During the 2000 tax year Mr. Litman, through the liquidating trust, received cash and 4,999,950 shares of restricted stock of HRN Corporation in connection with the 1999 asset sale.

The taxpayer sought and obtained two separate appraisals to determine the fair market value of the restricted stock on February 24, 2000, the date of receipt. The two valuations differed however; both valuations determined a FMV substantially less than the $16/share figure at which the stock went public on February 25, 2000. HRN valued the stock at $16/share for purposes of establishing the total cost of the asset acquisition.

Mr. Litman and HRN were not able to reach an agreement as to the FMV of the restricted stock. As a result, a precise total sales price was never established between the parties to the transaction. No Form 8594, Asset Acquisition Statement Under Section 1060 was attached to the 1999 or 2000 tax returns of TMF, Marketing or Trust to indicate the allocation of or the total consideration received for the sale of assets.

Mr. Litman reported the gain on the receipt of HRN stock using the higher of his two valuations which indicated a total FMV of 45,437,824 or an average value of $4.5438/share[1]. Mr. Litman reported his 50% portion of the proceeds, or $22,718,912.

The inconsistency in the fair market value reported by Mr. Litman and HRN has resulted in an understatement of taxable income of $57,280,288 [($16.00 - $4.5438) X 4,999,950] between the tax returns

* * * *

[1] Rounded.

LFOIA 000493

489

of David and Malia Litman and HRN. As proposed, the adjustment results in a substantial understatement of income tax.

## Law

I.R.C. §§ 6662(a) and 6662(d) impose an accuracy-related penalty in an amount equal to 20 percent of the portion of an underpayment attributable to any substantial understatement of income tax. See Treas. Reg. §§ 1.6662-1 through 1.6662-4.

An understatement is substantial if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See §6662(d)(1)(A).

The term "understatement" generally means the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return. §6662(d)(2)(A).

In calculating the understatement, the taxpayer is permitted a reduction for that portion attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment," 26 U.S.C. § 6662(d)(2)(B)(i), or "any item if the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer." 26 U.S.C. § 6662(d)(2)(B)(ii)(I & II).

Section 6664(c) provides a "reasonable cause exception to penalties imposed under §6662. Under § 6664(c), "no penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." I.R.C. § 6664(c)(1).

## Government's Position:

This issue results from the inability of the parties to the transaction to reach an agreement as to the proper FMV of restricted stock issued in connection with a taxable asset acquisition.

It is the Service's position that, in a transaction between two independent parties to an arm's-length transaction, a valuation issue of this nature should not be required to be addressed during the course of an examination. The government should not be burdened with the task of resolving a dispute between independent parties to a transaction of this nature. An agreement as to the FMV of the stock should have established between the parties prior to tax returns being filed. As the result of the taxpayer's failure to do so, a substantial understatement of income tax has been determined.

Section 6662(d)(2)(B) provides that the amount of the understatement is reduced by any portion of the understatement attributable to an item if (1) the tax treatment of any item by the taxpayer is or was supported by substantial authority for such treatment, or (2) the facts relevant to the tax treatment of the item were adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer. The taxpayers have not shown that they had substantial authority for the treatment of the gain nor did they disclose in the return the relevant facts related to the gain.

LFOIA 000494

490

| NAME OF TAXPAYER | TAX IDENTIFICATION NUMBER | YEAR/PERIOD ENDED |
|---|---|---|
| David S. and Malia A. Litman | 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 | December 31, 2000 |

The accuracy-related penalty does not apply to any portion of an underpayment with respect to which it is shown that there was reasonable cause and that the Taxpayer acted in good faith. I.R.C. § 6664(c)(1). The determination of whether a Taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1).

The taxpayers have not shown that there was reasonable cause nor have they shown that they acted in good faith with regard to the gain reported on the receipt of stock. The Litmans sought two appraisals to determine the FMV of the stock however, the FMV determined in both appraisals differed from the FMV determined by HRN. The taxpayer filed their tax return using the higher of their two valuations but knowing that the valuation issue had not been resolved between the two parties.

Section 1060(b) requires the seller and the purchaser to report certain information in connection with an applicable asset acquisition. Form 8594, Asset Acquisition Statement is the information return to be used in reporting these transactions. Total sales price is required on Line 3 of the form and serves as the starting point in allocating the sales price among the various classes of assets. The information reporting requirements are intended to encourage compliance with the substantive rules of section 1060 and to assist the Internal Revenue Service in identifying returns which are likely to involve an attempt to amortize goodwill or going concern value.[2] Verification of consistency in the value of amortizable goodwill or going concern between the buyer and seller can be accomplished by comparing Forms 8594 prepared by each party to the transaction. Both parties to the transaction are identified on the form.

The primary purpose of Form 8594 is not to disclose discrepancies in the total sales price of a transaction although this can be determined based on figures provided on line 3 of the form. It is a given that this figure should be consistent between two independent parties to a transaction. However, since Mr. Litman did not cause either of his corporations nor his liquidating trust to file Form 8594, the inconsistency in reporting was discovered by chance, only as the result of an examination of the tax return.

## Conclusion:

The accuracy related penalty under section 6662(a) and 6662(c) should be applied if a substantial understatement is determined. The taxpayer has not shown they had substantial authority for their computation of the gain nor did they disclose the inconsistency in determining the gain on their tax return. Finally, since the taxpayer has not shown they acted with reasonable cause and good faith in reporting the transaction, the penalty should be assessed to the extent a substantial understatement is determined.

* * * *

[2] T.D. 8215, 1988-2 C.B. 304 (1988).

491

LFOIA 000495