IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | |
| **Plaintiffs-Counterdefendants** | **No. 05-956 T** |
| **vs.** | |
| **THE UNITED STATES,** | |
| **Defendant-Counterplaintiffs.** | |

| | |
|---|---|
| **ROBERT B. DEINER and MICHELLE S. DEINER,** | |
| **Plaintiffs-Counterdefendants** | **No. 05-971 T** |
| **vs.** | **(Judge Christine O. C. Miller)** |
| **THE UNITED STATES,** | |
| **Defendant-Counterplaintiff.** | |

**THE UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE OR CONTINUE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiffs respond to the United States' motion to strike or continue their summary judgment motions by claiming that this case involves an "abuse of process" by the IRS and that the United States has known for four years that it needed to gather evidence to rebut plaintiffs' valuation of the HRN restricted stock, but has failed to do so. (*See*, Plaintiffs' Response, pp. 1 and 5). Both these claims are demonstrably false. These cases present straightforward income

tax refund claims centered on a dispute about the distinctly factual issue of the value of restricted stock. And both cases were filed less than four months ago.[1]

Plaintiffs' hyperbole is no substitute for an explanation why, in this *de novo* proceeding, the United States should not be allowed time to conduct discovery regarding their claims. It also is quickly deflated by the simple facts that neither plaintiffs or their liquidating trust filed the required IRS Form 8594 with their 2000 income tax returns, and did not disclose at all in their 2000 tax returns that the reported capital gains were based on an estimated value of the restricted stock received in 2000. *See*, 26 U.S.C. §1060(b); Treas. Reg. §1.1060-1(e) (*See*, Plaintiff's Response, Exhibit A, p. 8). A completed Form 8594 would have disclosed their claimed valuation of the restricted stock and that their valuation was inconsistent with that of Hotel Reservations Network, Inc. ("HRN"), the issuer of the stock. Plaintiffs' disputed stock valuation was, therefore, not disclosed to the IRS until the IRS' audit of their 2000 tax returns in the second half of 2004. (*See* Exhibit B to Plaintiffs' Response, June 2004 letter transmitting purported valuation report to the IRS). Now that plaintiffs have filed a refund action in this Court based on that disputed valuation, the United States must be given time to develop, through formal discovery, a complete record of admissible evidence in order to defend plaintiffs' claims and demonstrate that their valuation of the restricted stock is wrong.[2]

---

[1] Plaintiffs evidently begin their alleged four-year period on October 15, 2001, the day they filed their tax returns

[2] The IRS audit ended by October 8, 2004, when the notices of deficiency were sent to plaintiffs. Plaintiffs refused to extend the statute of limitations.

## I. THE UNITED STATES IS MOVING PURSUANT TO RCFC 56(f) TO STRIKE OR CONTINUE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

On December 12, 2005, this Court entered an order continuing the date for the United States' response to plaintiffs' motions for summary judgment while the parties brief, and the Court considers, the United States' Motion to Strike Plaintiffs' Motions for Summary Judgment. The Court stated in the order, however, that the United States "would be expected to respond to plaintiffs' summary judgment motions with a motion filed pursuant to RCFC 56(f)."

The United States is moving pursuant to RCFC 56(f) to set aside plaintiffs' summary judgment motions. In its motion filed on November 29th, the United States attempted to explain why plaintiffs' summary judgment motions are premature and should not be heard until the United States has had an opportunity to obtain necessary discovery. The United States moved to strike plaintiffs' motions because of the very early stage of this case, the significant amount of discovery that needed to be done, and had not, at that time, even been started, and the likelihood that after discovery was conducted plaintiff would need to redraft their summary judgment motions anyway (they currently seek an improper advisory ruling). Rule 56(f) provides that the Court may "refuse the [summary judgment] application" when it is premature. "Striking" was counsel's term for this procedure. (Some courts refer to striking the motion, others deny it without prejudice.) As an alternative to striking the motion, the United States also expressly requested that the Court, "pursuant to RCFC 56(f), order a continuance and revise the deadlines for the United States' response to the motions" so that it could obtain necessary discovery. (United States' Motion to Strike Plaintiffs' Motions for Summary Judgment, ¶13). *See* RCFC

56(f) ("the court may .... order a continuance to permit...discovery to be had...")[3]

## II THE UNITED STATES SHOULD BE ALLOWED TIME TO CONDUCT DISCOVERY BEFORE RESPONDING TO PLAINTIFFS' SUMMARY JUDGMENT MOTIONS

As explained in the United States' motion, this case concerns distinctly factual issues such as the fair market value of restricted stock and plaintiffs' purported "good faith" reliance on an expert appraisal of the stock, among many others. (Plaintiffs do not dispute that their claims present issues of fact.) These issues arise from complicated corporate transactions, including plaintiffs' sale of all the assets of their company, TMF, Inc., to USA Network, Inc., an initial public offering by HRN, the amendment of the sale of assets agreement, and plaintiffs' receipt of restricted stock in HRN. (Plaintiffs submitted some*, but not all*, of the documents related to these transactions in support of their motion.) In this *de novo* proceeding, the United States should be allowed to conduct discovery regarding these events and transactions so that it can present a complete record of admissible evidence in defense of plaintiffs' claims. *See, e.g., Cook v. United States,* 46 Fed.Cl. 110, 113-15 (2000) ("In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings....[C]ourts have repeatedly held that the government may support a tax assessment based on any admissible evidence, including that first disclosed in discovery, and conversely, need not rely solely, or at all, on the evidence reviewed administratively by the Service"). Of course, plaintiffs did not, and could not, cite in their response any law holding that, in a tax refund suit, the United States is not allowed any time for

---

[3] Contrary to plaintiffs' implication, the United States did not move to strike their motions pursuant RCFC 10(f). Nowhere in its motion does the United States cite RCFC 10(f) or argue that plaintiffs' motions are redundant, immaterial, impertinent or scandalous.

discovery, and is limited to only the IRS audit records in defending the claims against it.[4]

### A. Discovery Needed by the United States

Contrary to Plaintiffs' claims, the United States is not seeking a continuance only in order to obtain an expert stock valuation opinion. The United States needs discovery from many different sources on many of the different issues presented in this case. On December 7, 2005, the United States served interrogatories and document requests on the Litmans and Deiners. (*See*, Exhibit A, Affidavit of Cory A. Johnson with attached discovery requests). The United States needs plaintiffs' responses to these requests, and needs time to review the responses and documents.[5]

Some of the interrogatories to plaintiffs, for example, seek the identities of third parties who have relevant information. One interrogatory seeks the identity of individuals who were involved in the initial public offering of HRN stock. Because plaintiffs rely on the IPO price of HRN's unrestricted stock as the benchmark for their discounted valuation of the restricted stock, the United States' needs to determine how this price was set. Other interrogatories seek the identity of individuals with whom plaintiffs communicated regarding valuation of the restricted

---

[4] The cases plaintiffs cite in which the assessment was alleged to be without "rational foundation" and concerning the presumption of correctness are inapposite. (Plaintiffs' Response, p. 10-11) As explained in *Cook*, whether an assessment is without foundation, or "naked," is determined after discovery is conducted and the court examines the admissible evidence developed by the government. Moreover, even if an assessment is naked, it does not shift the burden of proof from plaintiffs. *Cook*, 46 Fed.Cl. at 114-18.

[5] Plaintiffs complain that the United States did not serve this discovery until December 7, 2005. The parties were precluded from serving discovery, however, until after counsel's conference pursuant to RCFC Appendix A, ¶ 3. *See,* RCFC 26(d). Counsel held this conference on November 21, 2005. After the Thanksgiving holiday, the United States served discovery on December 7th. (See Exhibit A, ¶ 2).

stock and removal of the restrictions on the stock. (The restrictions as described in the agreements given to the IRS during the audit were not actually implemented in full; they were apparently removed early.) In order to determine the actual restrictions on the stock and evaluate plaintiffs' claims of good faith reliance on expert advice, the United States must be allowed to obtain testimony from the participants to these events. Only after plaintiff identifies them, however, can the United States seek the necessary documents and testimony. (Obviously, because the United States does not know their identities, it cannot obtain affidavits from them.) At this time, the United States expects to seek documents and deposition testimony from:

- HRN - relating to the purchase of TMF, Inc. assets, negotiation of the purchase consideration and issuance and value of HRN restricted and non-restricted stock;
- USA Network, Inc. (HRN's parent) - relating to the purchase of TMF, Inc. assets, negotiation of the purchase consideration, failure to file IRS Form 8594, and issuance and value of HRN stock;
- underwriters and bankers involved in the initial public offering of HRN stock and setting of the IPO price;
- NASDAQ custodian of records - relating to historical market price of HRN stock;
- Mark Mitchell - plaintiffs' valuation expert;
- David Bohlmann - valuation expert purportedly consulted by plaintiffs;
- plaintiffs' tax return preparers and advisors - relating to valuation of HRN restricted stock, reliance on expert valuation, and failure to file required

IRS Form 8594; and

- Andrew Pells - relating to the stock and money he received from TMF, Inc. and the services he purportedly performed. (A deduction for his compensation was disallowed by the IRS.)

The United States will likely seek additional information from those listed above, as well as information from others. The United States cannot complete this discovery, however, in the next thirty, or even sixty, days. Much of the discovery involves serving subpoenas on third parties, and that process cannot begin until after the United States has obtained information from plaintiffs. Additionally, the discovery responses received from plaintiffs will determine, in part, the scope of the discovery sought from third-parties and provide a basis for the questioning of these witnesses on deposition. The United States is, therefore, awaiting plaintiffs' responses to its document requests and interrogatories before serving document and deposition subpoenas on third parties. (Plaintiffs' responses to the United States' discovery are due January 9, 2006).

Of course, the United States also needs to depose the plaintiffs and their expert, Mark Mitchell. The plaintiffs submitted affidavits and Mr. Mitchell submitted an affidavit and 42-page report in support of the summary judgment motions. The United States must be given an opportunity to cross-examine them about their self-serving affidavits and the report, before having to respond to the motions. For example, the United States must be given an opportunity to discover exactly what information Mr. Mitchell considered in forming his opinion and whether he gave any oral opinions to plaintiffs. Additionally, the United States should be permitted to examine plaintiffs about how they arrived at a $4.54 per share value for the HRN stock (a value not specified in Mr. Mitchell's report). Before these examinations, however, the United States

also should have an opportunity to obtain documents and testimony from the third parties listed above that will enable it to then effectively cross-examine plaintiffs and Mr. Mitchell. (Simply being able to depose plaintiffs and Mr. Mitchell now, before it obtains information from these third parties, therefore, is not sufficient.)

The United States believes that production of the documents and information it is seeking, and intends to seek, from plaintiffs, HRN, USA Networks, Inc., NASDAQ and others will demonstrate that plaintiffs' valuation of the restricted shares is erroneous. Indeed, as plaintiffs are well aware, HRN valued the HRN restricted stock received by plaintiffs at $16 per share in 2000, not the $4.54 per share value declared by plaintiffs in their 2000 tax returns.[6] Before this Court is asked to attempt to resolve this dispute, however, the United should be given the opportunity to conduct necessary discovery. Both parties can then present to the court a record of admissible fact and expert opinion evidence that will allow it to determine whether this case can be disposed of by motion, or must proceed to trial. *See, e.g., Okerlund v. United States*, 53 Fed.Cl. 341, 345 (2002) ("In valuation cases, the Court relies heavily on expert testimony about fair market value of closely-held stock.... The Court weighs the credibility of an expert's testimony in light of his or her qualifications and the evidence before the Court. The Court may either accept the expert opinion in its entirety, accept portions of the expert's opinion, or reject the opinion altogether and reach a determination on its own after examining the evidence in the record.")

---

[6] These inconsistent valuations created a "whipsaw" problem for the United States. Plaintiffs included the stock in their income and paid capital gains taxes based on a value of only $4.54 per share, but HRN amortized the assets it received (and therefore reduced its taxable income) based on a $16 per share value in 2000.

### B. The Parties Have Agreed to a Short Discovery Schedule, and the Court Should Allow the Parties to Complete this Discovery Before Hearing Plaintiffs' Summary Judgment Motions

During a November 21, 2005, conference between counsel for the United States and plaintiffs, pursuant to RCFC Appendix A, ¶ 3, counsel agreed to a discovery schedule under which all discovery would be completed by November 30, 2006. The schedule agreed to is as follows:

| | |
|---|---|
| Deadline for completion of fact discovery: | June 31, 2006 |
| Deadline for submission of Plaintiffs' expert(s) report: | July 31, 2006 |
| Deadline for deposition of Plaintiffs' expert(s) by Defendant: | August 31, 2006 |
| Deadline for submission of Defendant's expert(s) report: | October 31, 2005 |
| Deadline for deposition of Defendant's experts by Plaintiff: | November 30, 2005 |

(See, Exhibit A, ¶ 2). As is typical, and logical, the schedule provides for conducting fact discovery before expert reports are due. *See, e.g.*, RCFC 26 and Appendix A. The factual record should be fully developed before experts are required to give an opinion and submit reports pursuant to RCFC 26(a)(2) based on that record. Because plaintiffs seek summary judgment on an ultimate issue in this case - the value of the restricted stock - the parties will need to complete both the fact and expert discovery under the above schedule before the Court considers plaintiffs' motions.



1474750.1

The parties already have begun fact discovery. The Deiners and Litmans each have served requests to admit and document requests on the United States. And, as noted above, the United States has served interrogatories and document requests on plaintiffs. Fact discovery has just begun, however, and, for that reason, the United States has not yet retained an expert to provide expert opinion testimony in this case - a record for the expert to review is not yet complete. (Exhibit A, ¶¶4 -5) Unlike plaintiffs, who, as the owners of TMF, Inc., grantors of the liquidating trust, and officers of HRN, had easy access to relevant information and documents, the United States does not have such access to the same information outside of the formal discovery process in this case. The United States needs additional time, therefore, to complete discovery in this case in order to provide a complete evidentiary record to an expert for evaluation and preparation of an opinion. It would be unfair, severely prejudicial, and contrary to RCFC 56(f), therefore, to force the United States to respond to plaintiffs' motions at this time.

**Conclusion**

For all the reasons above, and those set forth in the United States' motion, this Court should (i) strike, or deny, without prejudice, plaintiffs' motions for summary judgment; or (ii) order a continuance of the motions so that the parties can complete discovery according to the schedule set forth above.

Respectfully submitted,

s/ Cory A. Johnson
CORY A. JOHNSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section

s/ David Gustafson
Of Counsel

Dated: December 27, 2005