**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| DAVID S. and MALIA A. LITMAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-956T |
| ROBERT B. and MICHELLE S. DIENER,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-971T |
| HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.)<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 06-285T<br>Judge Christine O. C. Miller |

**HOTELS.COM'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL TMF LIQUIDATING TRUST'S RESPONSE TO SUBPOENA REQUEST NO. 11**

Pursuant to RCFCs 26 and 45, plaintiffs Hotels.com, Inc. and Subsidiaries ("Hotels.com"), reply to TMF Liquidating Trust's ("TMF") Response to Hotels.com's Motion to

Compel TMF Liquidating Trust to respond to Request No. 11 contained in the subpoena served on it on May 24, 2006.

**TMF'S REFUSAL TO COMPLY WITH THE SUBPOENA IS BASELESS**

**A. The subpoena power afforded by this Court is broad.**

The subpoena power afforded by RCFC 45 is broad and none of the limited exceptions to this broad power are applicable here. The Court may quash or modify a subpoena that:

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place; or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.[1]

Despite TMF's protestations, the subpoena at issue does not offend any of the above limitations. As we explain below, Hotels.com's motion should be granted and TMF should be required to respond to Request No. 11.

**1. TMF had ample time to produce the requested documents and failed to assert this objection in a timely manner.**

TMF has baselessly objected that it lacked sufficient time within which to respond to Request No. 11. As a preliminary matter, Hotels.com notes that this is not a situation where TMF failed to respond to an entire subpoena. Rather, TMF did respond to all but one of the

---

[1] RCFC 45(c)(3)(A).

other requests set forth in the subpoena.[2] Clearly TMF had sufficient time to respond to the subpoena because it, in fact, responded.

TMF belatedly raised this objection to Request No. 11 in its response to Hotels.com's Motion to Compel. As a result, this objection was not timely made and, therefore, is waived.[3]

Finally, any complaint that a 14 day response period is, in and of itself, impermissibly short is specious. RCFC 45 itself sanctions subpoena return dates of less than 14 days following service – "a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or *before the time specified for compliance if such time is less than 14 days after service*, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises."[4] Indeed, such an argument is particularly inappropriate given that Hotels.com did not move to compel TMF's response to Request No. 11 until the close of discovery. Thus, TMF's argument with respect to timeliness is wholly without merit and should be disregarded in its entirety.

---

2 See TMF Liquidating Trust's Responses and Objections to Hotels.com's Subpoena attached as Exhibit B to Hotels.com's Motion to Compel.

3 RCFC 45(c)(2)(B) (requiring written objections to be made within 14 days of service, or before the time specified for compliance if that date is less than 14 days after service). *See also Judicial Watch, Inc. v. United States Dep't of Commerce*, 196 F.R.D. 1, at 2 (D.D.C. 2000) (holding that failure to assert objection to subpoena results in waiver of that objection); *In re: Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 350 (D.W.Va. 1999) (granting motion to compel subpoena response where recipient waived objections by failing to timely assert them). See also TMF Liquidating Trust's Responses and Objections to Hotels.com's Subpoena attached as Exhibit B to Hotels.com's Motion to Compel.

4 RCFC 45 (c)(2)(B) (emphasis added).

**2. TMF cannot avail itself of the 100 mile limitation under RCFC 45.**

TMF asserts that it can avoid responding to the subpoena because it requires the production of documents at a place more than 100 miles from TMF's place of business in Dallas. This objection too is without merit.

In connection with its argument that Hotels.com failed to grant TMF sufficient time to respond to the subpoena, TMF essentially argues that it should be viewed as if it were a party to this action. This is apparently because as a grantor trust its income and deductions flow through to its grantors' tax returns. TMF's grantors are Robert Diener and David Litman – parties to this suit.[5] Messrs. Diener and Litman also are TMF's trustees and are therefore the persons responsible for complying with this subpoena.[6] If TMF were viewed as if it were a party to this suit, then its 100 mile rule objection would be likewise misguided because RCFC 45 protects only *non-parties* from certain travel and expense in connection with responding to a subpoena – this protection does not extend to parties to the suit.[7]

In addition, as noted above, TMF has already produced all but one of the other categories of documents requested by the subpoena. By complying with portions of the subpoena, TMF has mooted this objection.

---

5 See Robert and Michelle Diener Complaint, ¶ 9. See also David and Malia Litman Complaint, ¶ 9. The stock at issue in this case was held by TMF, not by the Litmans and Dieners.

6 See TMF Liquidating Trust's Response to Hotels.com's Motion to Compel, ¶ 2. Counsel for the Trust, John Porter, agreed to waive personal service on trustee David Litman and instead accepted service on Litman's behalf. See confirming e-mail attached to Subpoena to TMF Liquidating Trust, which was attached to Hotels.com's Motion to Compel as Exhibit A.

7 *See* RCFC 45 (c)(3)(A)(ii).

**3. Subpoena Request No. 11 does not seek privileged or other protected information.**

TMF has made no attempt to argue that the information sought, *i.e.*, "brokerage, investment, bank and other statements of any kind reflecting assets held directly or indirectly by TMF Liquidating Trust for the period 1999 through 2004," is privileged or otherwise protected. Why? Because it is clear beyond cavil that the requested documents are not privileged or otherwise protected. Instead, TMF resorts to what has become the Litmans' and Dieners' response to any discovery request with which it does not want to comply – bald allegations that the information should not be produced simply because it is "confidential and personal financial information."

The facts belie this proposition. As a preliminary matter, the Litmans and Dieners chose to put their personal finances in the public sphere when they filed this suit. Not only did they allege detailed financial information in their Complaint, but they also filed a variety of personal financial documents with the Court, including federal income tax returns, and for none of these did they even request the protection of filing under seal. Their argument that this subpoena request is invasive, in light of their own willingness to disclose their private information, is simply grandstanding.[8]

Even before filing this suit, the Litmans and Dieners knowingly invited eventual public scrutiny of their finances by valuing the shares at issue in this case (the "IPO Shares") at something other than the $16.00 per share price they agreed to in the Amended and Restated

---

8 Regardless, Hotels.com would willingly agree to keep such information confidential, and further agree that if such information were to be filed with the Court, portions of otherwise relevant documents that contained financial information not relevant to the issues in suit could be filed in redacted form or under seal.

Asset Purchase Agreement.[9] In choosing to violate the terms of the Amended and Restated Asset Purchase Agreement by filing federal income tax returns based on something other than the $16.00 value, and refusing to settle the matter administratively with the Internal Revenue Service (the "Service"), David and Malia Litman and Robert Diener, all of whom are lawyers, and Michelle Diener, who is a former tax professional, knowingly initiated the present controversy.

Moreover, by refusing to comply with the clear terms of the Amended and Restated Asset Purchase Agreement (and the $16 value), the Litmans and Dieners – not Hotels.com – first placed valuation of the IPO Shares squarely at issue. Under the Litmans' and Dieners' theory of the case, the Court would have to determine (1) the proper valuation date; (2) the proper discount (if any) to attribute to the purported restrictions; and (3) the price against which to apply any discount.

The requested information is reasonably calculated to lead to admissible evidence with respect to the date on which TMF was entitled to receive the stock at issue (and, therefore, the price against which to apply any discount), as well as to the significance of any restrictions to which the stock was subject. While the stock certificates bear a date of February 24, 2000, such date is not controlling *for purposes of valuation* if TMF was not in fact *legally* entitled to such shares until a later date. Hotels.com believes that is the case. For example, the Amended and Restated Asset Purchase Agreement provides that 5.1 million of the shares at issue were to be issued "*simultaneously* with the initial closing of the 2000 IPO."[10] This occurred on March 1, 2000 – not February 24, 2000. The remaining 4,999,900 shares were to be issued in the event

---

9 Amended and Restated Asset Purchase Agreement by and among HRN, Inc., USA Networks, Inc., TMF, Inc., HRN Marketing Corp., Robert Diener and David Litman as of February 2, 2000.

10 *Id.* at Section 7.15.1 (emphasis added).

the "Buyer *consummates* an initial public offering."[11] The IPO did not begin trading until February 25, 2000. It defies logic that an initial public offering can be consummated before it even begins. Numerous other documents also support Hotels.com's view that TMF was not legally entitled to the shares at issue until after February 24, 2000 and did not receive the shares until well after that date. Because the documents sought in Request No. 11 bear directly on the date TMF actually received the shares at issue, such documents are clearly calculated to lead to the discovery of admissible evidence.

The Litmans and Dieners also have asserted that the stock received by TMF was subject to "onerous sale restrictions." Evidence has been uncovered that TMF either transferred "tracking shares" to various other trusts or the Trustees transferred portions of TMF to other trusts. Any transfer of tracking shares or of TMF itself and information on portfolio diversity bear on the issue of how onerous the "restrictions" really were. To determine a proper valuation, assuming as the Litmans and Dieners do that they are not bound to the $16 share price, a complete understanding of the restrictions placed on the stock is essential. Accordingly, the documents sought are clearly calculated to lead to the discovery of admissible evidence. Again, given that the Litmans and Dieners put these questions directly at issue by failing to comply with the clear terms of the Amended and Restated Asset Purchase Agreement, the trust that they control, TMF, should be required to comply with Request No. 11.

**4. Subpoena Request No. 11 is not unduly burdensome.**

TMF alleges that it would be unfairly burdened by having to produce its brokerage and investment statements. As a practical matter, producing such statements involves a call to one's bankers or brokers and simple photocopying. Both tasks involve far less effort that defending

---

[11] *Id.* at Section 7.11.3 (emphasis added).

against a motion to compel. TMF has not alleged any attempt to contact its banker or broker to inquire as to the availability of the requested documents. Likewise, it has made no allegation that such documents cannot be located in its files.

The number of years for which brokerage statements and similar documents were requested also is not unduly burdensome. Given that the expert retained by the Litmans and Dieners has opined that the restrictions lasted for more than 4 years, Hotels.com fails to see how its seeking information beyond "February and March of [2000]"[12] is unduly burdensome. In addition, in an attempt to avoid any further disputes, by letter dated July 14, 2006 Hotels.com proposed limiting the scope of Request No. 11 to those statements from January 2000 through December 2000.[13] As such, Hotels.com was willing to reduce dramatically any purported burden, yet TMF has still refused to produce even a smaller subset of the originally-requested documents.

**B. TMF lacks standing to assert its ill-informed variance defense.**

TMF's assertion that the variance doctrine prohibits the finding of a valuation date other than February 24, 2000, and that as a result, Hotels.com is not entitled to documents responsive to Request Number 11 is simply wrong. Most importantly, a claim of variance is a *defense* and can only be asserted by the Government. The defense is grounded in concepts of sovereign immunity and, as a result, the central purpose of this defense is to protect the *United States* (should it choose to assert the defense) from surprise and to give the *Service* adequate notice of

---

12 In its response, TMF used the year 2004. Hotels.com believes that this is a typographical error. See TMF Response, page 3.

13 See July 14, 2006 Letter from Kari Larson to John Porter, attached hereto as Exhibit C.

the nature of the taxpayer's claim.[14] Thus, the Litmans and Dieners are without standing to raise any variance defense.

Moreover, Hotels.com has provided more than adequate notice to the government of the possibility that the value claimed in connection with the IPO shares may be greater than $16.00 per share. Hotels.com's refund claim, a copy of which was filed with its Complaint, alerted the Service to this position: "Hotels.com reserves the right to offer additional evidence of the fair market value of the IPO Shares as of the date of issuance, *which value may be greater than* or less than the basis used in connection with the original 2000 Federal Income Tax Return or herein."[15] This position was again asserted in Hotels.com's Complaint in virtually identical language: "In the alternative, Hotels.com is entitled to a refund of tax, penalties and interest paid, and interest provided by law, in amounts consistent with such other evidence of the fair market value of the IPO Shares as of the date of issuance, which value may be greater than or less than the basis used in connection with the original 2000 Federal Income Tax Return or herein."[16] Indeed, the United States has recently sought to amend its counterclaim to the Litmans' and Dieners' Complaints to assert Hotels.com's alternative position. As a result, Hotels.com's alternative position cannot properly be characterized as surprise to any of the parties. Because

---

14 *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Fed. Cir. 2006) ("The requirement for filing a proper refund claim 'is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination.'"), citing *Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. 219, 454 F.2d 1379, 1383, quoting *Union Pac. R.R. v. United States*, 182 Ct. Cl. 103, 389 F.2d 437, 442 (1968), *cert. denied* 395 U.S. 944 (1969). *See also First Nat'l Bank v. United States*, 727 F.2d 741, 744 (8th Cir. 1984); *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983).

15 See Hotels.com Complaint Ex. 6 (emphasis added).

16 See Hotels.com Complaint ¶ 31.

the documents sought bear directly on the Litmans' and Dieners' primary argument and Hotels.com's alternative argument, they are reasonably calculated to lead to admissible evidence.

**CONCLUSION**

The request to which TMF objects is plainly designed to lead to the discovery of the above-described relevant information. It is clear that TMF wants to have its cake and eat it too. The Litmans and Dieners, and therefore TMF, put at issue the value of IPO shares and now are unwilling to provide documents that are directly relevant to the theories that they raised. Hotels.com is entitled to documents that are relevant to those issues and it respectfully requests that its Motion to Compel be granted.

Dated: August 9, 2006

By s/ Kim Marie K. Boylan

KIM MARIE K. BOYLAN
Attorney of Record
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
(202) 637-2235
(202) 637-2201
Kim.Boylan@lw.com

Of Counsel:

KARI M. LARSON
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
(202) 637-1018
(202) 637-2201
Kari.Larson@lw.com