and commonly is the larger company. The acquired company may, however, survive as the corporate entity, and the nature of the negotiations sometimes clearly indicates that a smaller corporation acquires a larger company. The Board concludes that presumptive evidence of the acquiring corporation in combinations effected by an exchange of stock is obtained by identifying the former common stockholder interests of a combining company which either retain or receive the larger portion of the voting rights in the combined corporation. That corporation should be treated as the acquirer unless other evidence clearly indicates that another corporation is the acquirer. For example, a substantial investment of one company in common stock of another before the combination may be evidence that the investor is the acquiring corporation.

71. If a new corporation is formed to issue stock to effect a business combination to be accounted for by the purchase method, one of the existing combining companies should be considered the acquirer on the basis of the evidence available.

**Determining Cost of an Acquired Company**

72. The same accounting principles apply to determining the cost of assets acquired individually, those acquired in a group, and those acquired in a business combination. A cash payment by a corporation measures the cost of acquired assets less liabilities assumed. Similarly, the fair values of other assets distributed, such as marketable securities or properties, and the fair value of liabilities incurred by an acquiring corporation measure the cost of an acquired company. The present value of a debt security represents the fair value of the liability, and a premium or discount should be recorded for a debt security issued with an interest rate fixed materially above or below the effective rate or current yield for an otherwise comparable security.

73. The distinctive attributes of preferred stocks make some issues similar to a debt security while others possess common stock characteristics, with many gradations between the extremes. Determining cost of an acquired company may be affected by those characteristics. For example, the fair value of a nonvoting, nonconvertible preferred stock which lacks characteristics of common stock may be determined by comparing the specified dividend and redemption terms with comparable securities and by assessing market factors. Thus although the principle of recording the fair value of consideration received for stock issued applies to all equity securities, senior as well as common stock, the cost of a company acquired by issuing senior equity securities may be determined in practice on the same basis as for debt securities.

74. The fair value of securities traded in the market is normally more clearly evident than the fair value of an acquired company (paragraph 67). Thus, the quoted market price of an equity security issued to effect a business combination may usually be used to approximate the fair value of an acquired company after recognizing possible effects of price fluctuations, quantities traded, issue costs, and the like (paragraph 23). The market price for a reasonable period before and after the date the terms of the acquisition are agreed to and announced should be considered in determining the fair value of securities issued.

75. If the quoted market price is not the fair value of stock, either preferred or common, the consideration received should be estimated even though measuring directly the fair values of assets received is difficult. Both the consideration received, including goodwill, and the extent of the adjustment of the quoted market price of the stock issued should be weighed to determine the amount to be recorded. All aspects of the acquisition, including the negotiations, should be studied, and independent appraisals may be used as an aid in determining the fair value of securities issued. Consideration other than stock distributed to effect an acquisition may provide evidence of the total fair value received.

76. *Costs of acquisition.* The cost of a company acquired in a business combination accounted for by the purchase method includes the direct costs of acquisition. Costs of registering and issuing equity securities are a reduction of the otherwise determinable fair value of the securities. However, indirect and general expenses related to acquisitions are deducted as incurred in determining net income.

**Contingent Consideration**

77. A business combination agreement may provide for the issuance of additional shares of a security or the transfer of cash or other consideration contingent on specified events or transactions in the future. Some agreements provide that a portion of the consideration be placed in escrow to be distributed or to be returned to the transferor when specified events occur. Either debt or equity securities may be placed in escrow, and amounts equal to interest or dividends on the securities during the contingency period may be paid to the escrow agent or to the potential security holder.

78. The Board concludes that cash and other assets distributed and securities issued unconditionally and amounts of contingent consideration which are determinable at the date of acquisition should be included in determining the cost of an acquired company and recorded at that date. Consideration which is issued or issuable at the expiration of the contingency period or which is held in escrow pending the outcome

of the contingency should be disclosed but not recorded as a liability or shown as outstanding securities unless the outcome of the contingency is determinable beyond reasonable doubt.

79. Contingent consideration should usually be recorded when the contingency is resolved and consideration is issued or becomes issuable. In general, the issue of additional securities or distribution of other consideration at resolution of contingencies based on earnings should result in an additional element of cost of an acquired company. In contrast, the issue of additional securities or distribution of other consideration at resolution of contingencies based on security prices should not change the recorded cost of an acquired company.

80. *Contingency based on earnings.* Additional consideration may be contingent on maintaining or achieving specified earnings levels in future periods. When the contingency is resolved and additional consideration is distributable, the acquiring corporation should record the current fair value of the consideration issued or issuable as additional cost of the acquired company. The additional costs of affected assets, usually goodwill, should be amortized over the remaining life of the asset.

81. *Contingency based on security prices.* Additional consideration may be contingent on the market price of a specified security issued to effect a business combination. Unless the price of the security at least equals the specified amount on a specified date or dates, the acquiring corporation is required to issue additional equity or debt securities or transfer cash or other assets sufficient to make the current value of the total consideration equal to the specified amount. The securities issued unconditionally at the date the combination is consummated should be recorded at that date at the specified amount.

82. The cost of an acquired company recorded at the date of acquisition represents the entire payment, including contingent consideration. Therefore, the issuance of additional securities or distribution of other consideration does not affect the cost of the acquired company, regardless of whether the amount specified is a security price to be maintained or a higher security price to be achieved. On a later date when the contingency is resolved and additional consideration is distributable, the acquiring corporation should record the current fair value of the additional consideration issued or issuable. However, the amount previously recorded for securities issued at the date of acquisition should simultaneously be reduced to the lower current value of those securities. Reducing the value of debt securities previously issued to their later fair value results in recording a discount on debt securities. The discount should be amortized from the date the additional securities are issued.

83. Accounting for contingent consideration based on conditions other than those described should be inferred from the procedures outlined. For example, if the consideration contingently issuable depends on both future earnings and future security prices, additional cost of the acquired company should be recorded for the additional consideration contingent on earnings, and previously recorded consideration should be reduced to current value of the consideration contingent on security prices. Similarly, if the consideration contingently issuable depends on later settlement of a contingency, an increase in the cost of acquired assets, if any, should be amortized over the remaining life of the assets.

84. *Interest or dividends during contingency period.* Amounts paid to an escrow agent representing interest and dividends on securities held in escrow should be accounted for according to the accounting for the securities. That is, until the disposition of the securities in escrow is resolved, payments to the escrow agent should not be recorded as interest expense or dividend distributions. An amount equal to interest and dividends later distributed by the escrow agent to the former stockholders should be added to the cost of the acquired assets at the date distributed and amortized over the remaining life of the assets.

85. *Tax effect of imputed interest.* A tax reduction resulting from imputed interest on contingently issuable stock reduces the fair value recorded for contingent consideration based on earnings and increases additional capital recorded for contingent consideration based on security prices.

86. *Compensation in contingent agreements.* The substance of some agreements for contingent consideration is to provide compensation for services or use of property or profit sharing, and the additional consideration given should be accounted for as expenses of the appropriate periods.

**Recording Assets Acquired and Liabilities Assumed**

87. An acquiring corporation should allocate the cost of an acquired company to the assets acquired and liabilities assumed. Allocation should follow the principles described in paragraph 68.

> First, all identifiable assets acquired, either individually or by type, and liabilities assumed in a business combination, whether or not shown in the financial statements of the acquired company, should be assigned a portion of the cost of the acquired company, normally equal to their fair values at date of acquisition.

> Second, the excess of the cost of the acquired company over the sum of the amounts assigned to identifiable assets acquired less liabilities assumed should be recorded as goodwill. The sum of the market or appraisal values of identifiable assets acquired less liabilities assumed may sometimes exceed the cost of the acquired company. If so, the values otherwise assignable to noncurrent assets acquired (except long-term investments in marketable securities) should be reduced by a proportionate part of the excess to determine the assigned values. A deferred credit for an excess of assigned value of identifiable assets over cost of an acquired company (sometimes called "negative goodwill") should not be recorded unless those assets are reduced to zero value.

Independent appraisals may be used as an aid in determining the fair values of some assets and liabilities. Subsequent sales of assets may also provide evidence of values. The effect of taxes may be a factor in assigning amounts to identifiable assets and liabilities (paragraph 89).

88. General guides for assigning amounts to the individual assets acquired and liabilities assumed, except goodwill, are:

a. Marketable securities at current net realizable values.
b. Receivables at present values of amounts to be received determined at appropriate current interest rates, less allowances for uncollectibility and collection costs, if necessary.
c. Inventories:
   (1) Finished goods and merchandise at estimated selling prices less the sum of (a) costs of disposal and (b) a reasonable profit allowance for the selling effort of the acquiring corporation.
   (2) Work in process at estimated selling prices of finished goods less the sum of (a) costs to complete, (b) costs of disposal, and (c) a reasonable profit allowance for the completing and selling effort of the acquiring corporation based on profit for similar finished goods.
   (3) Raw materials at current replacement costs.
d. Plant and equipment: (1) to be used, at current replacement costs for similar capacity[11] unless the expected future use of the assets indicates a lower value to the acquirer, (2) to be sold or held for later sale rather than used, at current net realizable value, and (3) to be used temporarily, at current net realizable value recognizing future depreciation for the expected period of use.

[11] Replacement cost may be determined directly if a used asset market exists for the assets acquired. Otherwise, the replacement cost should be approximated from replacement cost new less estimated accumulated depreciation.

e. Intangible assets which can be identified and named, including contracts, patents, franchises, customer and supplier lists, and favorable leases, at appraised values.[12]

f. Other assets, including land, natural resources, and nonmarketable securities, at appraised values.

g. Accounts and notes payable, long-term debt, and other claims payable at present values of amounts to be paid determined at appropriate current interest rates.

h. Liabilities and accruals—for example, accruals for pension cost,[13] warranties, vacation pay, deferred compensation—at present values of amounts to be paid determined at appropriate current interest rates.

i. Other liabilities and commitments, including unfavorable leases, contracts, and commitments and plant closing expense incident to the acquisition, at present values of amounts to be paid determined at appropriate current interest rates.

An acquiring corporation should record periodically as a part of income the accrual of interest on assets and liabilities recorded at acquisition date at the discounted values of amounts to be received or paid. An acquiring corporation should not record as a separate asset the goodwill previously recorded by an acquired company and should not record deferred income taxes recorded by an acquired company before its acquisition. An acquiring corporation should reduce the acquired goodwill retroactively for the realized tax benefits of loss carryforwards of an acquired company not previously recorded by the acquiring corporation.

89. The market or appraisal values of specific assets and liabilities determined in paragraph 88 may differ from the income tax bases of those items. Estimated future tax effects of differences between the tax bases and amounts otherwise appropriate to assign to an asset or a liability are one of the variables in estimating fair value. Amounts assigned to identifiable assets and liabilities should, for example, recognize that the fair value of an asset to an acquirer is less than its market or appraisal value if all or a portion of the market or appraisal value is not deductible for income taxes. The impact of tax effects on amounts assigned to individual assets and liabilities depends on numerous factors, including imminence or delay of realization of the asset value and the possible timing of tax consequences. Since differences between amounts assigned and tax bases are not timing differences (APB Opinion No. 11,

[12] Fair values should be ascribed to specific assets; identifiable assets should not be included in goodwill.

[13] An accrual for pension cost should be the greater of (1) accrued pension cost computed in conformity with the accounting policies of the acquiring corporation for one or more of its pension plans or (2) the excess, if any, of the actuarially computed value of vested benefits over the amount of the pension fund.

*Accounting for Income Taxes,* paragraph 13), the acquiring corporation should not record deferred tax accounts at the date of acquisition.

**Amortization of Goodwill**

90. Goodwill recorded in a business combination accounted for by the purchase method should be amortized in accordance with the provisions in paragraphs 27 to 31 of APB Opinion No. 17, *Intangible Assets*.

**Excess of Acquired Net Assets Over Cost**

91. The value assigned to net assets acquired should not exceed the cost of an acquired company because the general presumption in historical-cost based accounting is that net assets acquired should be recorded at not more than cost. The total market or appraisal values of identifiable assets acquired less liabilities assumed in a few business combinations may exceed the cost of the acquired company. An excess over cost should be allocated to reduce proportionately the values assigned to noncurrent assets (except long-term investments in marketable securities) in determining their fair values (paragraph 87). If the allocation reduces the noncurrent assets to zero value, the remainder of the excess over cost should be classified as a deferred credit and should be amortized systematically to income over the period estimated to be benefited but not in excess of forty years. The method and period of amortization should be disclosed.

92. No part of the excess of acquired net assets over cost should be added directly to stockholders' equity at the date of acquisition.

**Acquisition Date**

93. The Board believes that the date of acquisition of a company should ordinarily be the date assets are received and other assets are given or securities are issued. However, the parties may for convenience designate as the effective date the end of an accounting period between the dates a business combination is initiated and consummated. The designated date should ordinarily be the date of acquisition for accounting purposes if a written agreement provides that effective control of the acquired company is transferred to the acquiring corporation on that date without restrictions except those required to protect the stockholders or other owners of the acquired company—for example, restrictions on significant changes in the operations, permission to pay dividends equal to those regularly paid before the effective date, and the like. Designating an effective date other than the date assets or securities are transferred requires adjusting the cost of an acquired company and net

income otherwise reported to compensate for recognizing income before consideration is transferred. The cost of an acquired company and net income should therefore be reduced by imputed interest at an appropriate current rate on assets given, liabilities incurred, or preferred stock distributed as of the transfer date to acquire the company.

94. The cost of an acquired company and the values assigned to assets acquired and liabilities assumed should be determined as of the date of acquisition. The statement of income of an acquiring corporation for the period in which a business combination occurs should include income of the acquired company after the date of acquisition by including the revenue and expenses of the acquired operations based on the cost to the acquiring corporation.

**Disclosure in Financial Statements**

95. Notes to the financial statements of an acquiring corporation should disclose the following for the period in which a business combination occurs and is accounted for by the purchase method.

a. Name and a brief description of the acquired company.
b. Method of accounting for the combination—that is, by the purchase method.
c. Period for which results of operations of the acquired company are included in the income statement of the acquiring corporation.
d. Cost of the acquired company and, if applicable, the number of shares of stock issued or issuable, and the amount assigned to the issued and issuable shares.
e. Description of the plan for amortization of acquired goodwill, the amortization method, and period (APB Opinion No. 17, paragraphs 27 to 31).
f. Contingent payments, options, or commitments specified in the acquisition agreement and their proposed accounting treatment.

Information relating to several relatively minor acquisitions may be combined for disclosure.

96. Notes to the financial statements of the acquiring corporation for the period in which a business combination occurs and is accounted for by the purchase method should include as supplemental information the following results of operations on a pro forma basis:

a. Results of operations for the current period as though the companies had combined at the beginning of the period, unless the acquisition was at or near the beginning of the period.

b. Results of operations for the immediately preceding period as though the companies had combined at the beginning of that period if comparative financial statements are presented.

The supplemental pro forma information should as a minimum show revenue, income before extraordinary items, net income, and earnings per share. To present pro forma information, income taxes, interest expense, preferred stock dividends, depreciation and amortization of assets, including goodwill, should be adjusted to their accounting bases recognized in recording the combination. Pro forma presentation of results of operations of periods prior to the combination transaction should be limited to the immediately preceding period.

## EFFECTIVE DATE

97. The provisions of this Opinion shall be effective to account for business combinations initiated[14] after October 31, 1970. Business combinations initiated before November 1, 1970 and consummated on or after that date under the terms prevailing on October 31, 1970 (paragraph 47-a) may be accounted for in accordance with this Opinion or the applicable previous pronouncements of the Board and its predecessor committee.

98. The provisions of this Opinion should not be applied retroactively for business combinations consummated before November 1, 1970.

99. If a corporation holds as an investment on October 31, 1970 a minority interest in or exactly 50 percent of the common stock of another company and the corporation initiates after October 31, 1970 a plan of combination with that company, the resulting business combination may be accounted for by the pooling of interests method provided

the combination is completed within five years after October 31, 1970 and the combination meets all conditions specified in paragraphs 45 to 48, except that

(i) the minority interest in the voting common stock of the combining company held on October 31, 1970 may exceed 10 percent of the outstanding voting common stock of the combining company (paragraph 46-b), and

(ii) the corporation which effects the combination issues voting common stock for at least 90 percent of the outstanding voting common stock

[14] Initiated is defined in paragraph 46-a whether the combination is accounted for by the pooling of interests method or by the purchase method.

interest, as described in paragraph 47-b, of the other combining company not already held on October 31, 1970 (rather than 90 percent of all of the common stock interest of the combining company).

The investment in common stock held on October 31, 1970 should not be accounted for as treasury stock or retired stock at the date of the combination. Instead, the excess of cost over the investor corporation's proportionate equity in the net assets of the combining company at or near the date the stock investment was acquired should be allocated to identifiable assets of the combining company at the date the combination is consummated on the basis of the fair values of those assets at the combination date. The unallocated portion of the excess should be assigned to an unidentified intangible asset (goodwill) and should be accounted for according to applicable previous pronouncements of the Board and its predecessor committee. The cost of goodwill should not be amortized retroactively but may be amortized prospectively under the provision of APB Opinion No. 17, paragraph 35. If the cost of the investment is less than the investor's equity in the net assets of the combining company, that difference should reduce proportionately the recorded amounts of noncurrent assets (except long-term investments in marketable securities) of the combining company.

*The Opinion entitled "Business Combinations" was adopted by the assenting votes of twelve members of the Board. Messrs. Broeker, Burger, Davidson, Horngren, Seidman, and Weston dissented.*

Messrs. Broeker, Burger, and Weston dissent to issuance of this Opinion because they believe that it is not a sound or logical solution of the problem of accounting for business combinations. They believe that, except for combinations of companies whose relative size is such as to indicate a significant sharing of ownership risks and benefits, business combinations represent the acquisition or purchase of one company by another and that accounting should reflect that fact. While they agree that the criteria specified in this Opinion for the pooling of interests method represent, in most cases, an improvement over present criteria in practice, this action does not, in their opinion, represent a substantive response by the Accounting Principles Board to the overall problem.

Messrs. Davidson, Horngren, and Seidman dissent to the Opinion because it seeks to patch up some of the abuses of pooling. The real abuse is pooling itself. On that, the only answer is to eliminate pooling. Paragraphs 35 to 41 set forth some of the defects of pooling. The fundamental one is that pooling ignores the asset values on which the parties have traded, and substitutes a wholly irrelevant figure—the amount on the seller's books. Such nonaccounting for bargained acquisition values permits the reporting of profits upon subsequent disposition of such assets when

there really may be less profit or perhaps a loss. Had the assets been acquired from the seller for cash, the buyer's cost would be the amount of the cash. Acquisition for stock should make no difference. The accounting essence is the amount of consideration, not its nature. Payment in cash or stock can be a matter of form, not substance. Suppose the seller wants cash. The buyer can first sell stock and turn over the proceeds to the seller, or the seller can take stock and promptly sell the stock for cash.

The following deal with some arguments made in the Opinion for pooling: (1) Pooling is described in paragraph 28 as a fusion resulting from "pooling equity interests". But it is the sort of fusion where a significant exchange transaction takes place. The seller parts with control over its assets and operations. In return the buyer issues stock representing an interest in its assets and operations. That interest has value and is a measure of the cost of the acquisition to the buyer. (2) Paragraph 29 declares that pooling is really a transaction among the stockholders. That just is not the fact. The buyer is always a company. (3) Paragraph 25 decries purchase accounting because it results in a write-up of only seller's assets. There is no write-up. There is only a recording of cost to the buyer. That cost is measured by the value of the assets acquired from the seller. (4) Pooling is said to avoid the difficulty of valuing assets or stock (paragraph 22). Difficulty of valuation should not be permitted to defeat fair presentation. Besides, the parties do determine values in their bargaining for the amount of stock to be issued.

Some say that to eliminate pooling will impede mergers. Mergers were prevalent before pooling, and will continue after. Accounting does not exist to aid or discourage mergers, but to account for them fairly. Elimination of pooling will remove the confusion that comes from the coexistence of pooling and purchase accounting. Above all, the elimination of pooling would remove an aberration in historical-cost accounting that permits an acquisition to be accounted for on the basis of the seller's cost rather than the buyer's cost of the assets obtained in a bargained exchange.

## NOTES

*Opinions of the Accounting Principles Board present the conclusions of at least two-thirds of the members of the Board, which is the senior technical body of the Institute authorized to issue pronouncements on accounting principles.*

*Board Opinions are considered appropriate in all circumstances covered but need not be applied to immaterial items.*

*Covering all possible conditions and circumstances in an Opinion of the Accounting Principles Board is usually impracticable. The substance of transactions and the principles, guides, rules, and criteria described in Opinions should control the accounting for transactions not expressly covered.*

*Unless otherwise stated, Opinions of the Board are not intended to be retroactive.*

*Council of the Institute has resolved that Institute members should disclose departures from Board Opinions in their reports as independent auditors when the effect*

*of the departures on the financial statements is material or see to it that such departures are disclosed in notes to the financial statements and, where practicable, should disclose their effects on the financial statements (Special Bulletin,* Disclosure of Departures from Opinions of the Accounting Principles Board, *October 1964). Members of the Institute must assume the burden of justifying any such departures.*

**Accounting Principles Board (1970)**

| | | |
|---|---|---|
| LeRoy Layton, *Chairman* | George R. Catlett | Charles B. Hellerson |
| Kenneth S. Axelson | Joseph P. Cummings | Charles T. Horngren |
| Donald J. Bevis | Sidney Davidson | Oral L. Luper |
| Milton M. Broeker | Philip L. Defliese | J. S. Seidman |
| Leo E. Burger | Newman T. Halvorson | George C. Watt |
| | Robert Hampton, III | Frank T. Weston |
| | Emmett S. Harrington | |