IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN**<br>**Plaintiffs-Counterdefendants,**<br>**V.**<br>**THE UNITED STATES**<br>**Defendant-Counterplaintiff.** | ) | **No. 05-956T** |
| **ROBERT B. DIENER and MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br>**V.**<br>**THE UNITED STATES**<br>**Defendant-Counterplaintiff.** | ) | **No. 05-971T**<br>**(Judge Christine O.C. Miller)** |

**PLAINTIFFS DAVID S. AND MALIA A. LITMAN'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

TO: The United States, by and through its Attorney of Record, Cory A. Johnson, Tax Division, United States Department of Justice, 555 4th Street N.W., Judiciary Center Building, Washington, DC 20530.

David S. and Malia A. Litman, Plaintiffs-Counterdefendants (the "Plaintiffs") respond to Defendant The United States' First Set of Interrogatories pursuant to Rule 33 of the Rules of the Court of Federal Claims, as follows:

**OBJECTIONS TO ALL INTERROGATORIES**

(1) Plaintiffs object to each interrogatory to the extent it seeks information regarding communications with its attorneys and tax practitioners after April 6, 2004 (the date the audit began) as such information is privileged under the attorney-client privilege, the attorney-work product privilege, and the tax-practitioner's privilege.

(2) Plaintiffs object to each interrogatory to the extent it requires plaintiffs to provide information which is beyond the scope Rule 26 and Rule 33 of the Rules of the Court of Federal Claims ("RCFC").

Subject to, without waiving these objections, Plaintiffs respond as follows:

**INTERROGATORY NO. 1:**

**With regard to the HRN restricted stock, state the following:**

**(a) the date originally issued by HRN;**

**RESPONSE:**

February 24, 2000.

**(b) the total number of shares issued, the number of "Section 7.15 Shares" issued, the number of "Section 7.11.3 Shares" issued and the restrictions applicable to the respective shares;**

**RESPONSE:**

5.1 million shares were issued under Section 7.15 of the 2000 Amendment. 4,899,900 shares were issued under Section 7.11.3 of the 2000 Amendment. The shares issued under Section 7.15 and 7.11.3 shall be referred to in these interrogatory responses as the "Restricted Shares."

The Restricted Shares were subject to (1) contractual holding periods ranging from one to four years (most of the stock was four year restricted), (2) S.E.C. Rule 144 volume restrictions on the number of Restricted Shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any stock could be sold, (4) the practical market restriction on sale due to the fact that the TMF Liquidating Trust

was owned by the CEO and President of HRN (any sale might be considered to be a lack of confidence in the company), and (5) blockage restrictions due to the size of the block of stock compared to the number of freely traded shares. All of the Section 7.15 Restricted Shares were subject to a four year contractual holding period. Forty percent of the Section 7.11.3 Restricted Shares were subject to a one year contractual holding period, ten percent of the Section 7.11.3 Restricted Shares were subject to a two year contractual holding period, ten percent of the Section 7.11.3 Restricted Shares were subject to a three year contractual holding period, and forty percent of the Section 7.11.3 Restricted Shares were subject to a four year contractual holding period. The total number of Restricted Shares received, and the length of the contractual holding periods, are set forth in the following chart:

| Contractual Holding Period | Number of Restricted Shares |
|---|---|
| One year | 1,959,960 |
| Two years | 489,990 |
| Three years | 489,990 |
| Four years | 7,059,960 |
| Total | 9,999,900 |

Plaintiffs incorporate by reference the terms of the 2000 Amended and Restated Asset Purchase Agreement dated February 2, 2000 (the "2000 Amendment") and S.E.C. Rule 144 as permitted by RCFC 33(d). Plaintiffs also incorporate by reference a memorandum attached as Exhibit 1 (Bates-labeled LD003647 – LD003659), which summarizes the contractual and Rule 144 restrictions as those restrictions were explained to Plaintiffs.

**(c) the calculations made and figures used to determine the number of "Section 7.15 Shares" and "Section 7.11.3 Shares" issued;**

**RESPONSE:**

Plaintiffs object to this interrogatory as vague. Subject to and without waiving this objection, the Section 7.15 Shares were determined pursuant to the formula set forth in Section 7.15.1(a) of the 2000 Amendment, which is incorporated by reference pursuant to RCFC 33(d). The mathematical computation was 81.6 million divided by 16, which equals 5.1 million. The formula for the Section 7.15 Shares was based upon the initial public offering price of the HRN stock, which was determined by USA Networks. Thus, USA Networks could control the number of shares issued under Section 7.15 by its determined IPO price -- the higher the IPO price, the fewer shares HRN was required to issue under Section 7.15. The 7.11.3 Shares were determined pursuant to the formula set forth in Section 7.11.3 of the 2000 Amendment, which is incorporated by reference pursuant to RCFC 33(d). The mathematical computation was 48,999,000 x 10% = 4,899,900.

**(d) the record or registered owner(s) of the shares, and beneficial owners, if different, and the dates of such ownership;**

**RESPONSE:**

Plaintiffs object to this interrogatory to the extent it purports to require Plaintiffs to state at varying dates from February 24, 2000 to the present date all legal and beneficial owners of the restricted shares as this request is overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in this case. Subject to and without waiving these objections, as of February 24, 2000, HRN issued the following shares pursuant to the terms of the 2000 Amendment and TMF Liquidating Trust's instructions: (1) TMF Liquidating Trust: (a) 5.1 million shares of the Section 7.15 Shares represented by certificate number HRN0007, and (b) 4,645,905 shares of Section 7.11.3 Shares represented by

certificate number HRN0006; and (2) Andy Pells: 244,995 shares of one year restricted stock represented by certificate number HRN0008.

The beneficial interests in the Restricted Shares are set forth in the Form 13D filed by TMF Liquidating Trust with the S.E.C. on March 3, 2000, which is available as a matter of public record from the S.E.C. and at "hoovers.com." Plaintiffs incorporate the Form 13D by reference under RCFC 33(d). Plaintiffs also incorporate by reference those documents filed with the S.E.C. by TMF Liquidating Trust, David Litman, and Robert Diener with respect to the ownership and sale of the Restricted Shares. Those documents, which include Form 4, Form 4/A, Schedule 13D, and Schedule 13 D/A, are public records and as easily accessible by Defendant as they are by Plaintiffs. The S.E.C. Forms incorporated by reference include the following:

(1) Form 13D filed by TMF Liquidating Trust on March 3, 2000;

(2) Form 13D/A filed by TMF Liquidating Trust on August 9, 2001;

(3) Form 13D/A filed by TMF Liquidating Trust on April 15, 2002;

(4) Form 4 filed by David Litman on October 23, 2002;

(5) Form 4 filed by Robert Diener on October 29, 2002;

(6) Form 4 filed by David Litman on October 29, 2002;

(7) Form 4 filed by David Litman on November 8, 2002;

(8) Schedule 13D/A, filed by TMF Liquidating Trust on November 22, 2002;

(9) Form 4 filed by Robert Diener on November 25, 2002;

(10) Form 4 filed by David Litman on November 25, 2002;

(11) Form 4 filed by Robert Diener on December 4, 2002;

(12) Forms 4 filed by David Litman on December 4, 2002, December 11, 2002, December 18, 2002, December 30, 2002;

(13) Schedule 13D/A filed by TMF Liquidating Trust on January 6, 2003;

(14) Forms 4 filed by Robert Diener, David Litman and TMF Liquidating Trust on March 3, 2003;

(15) Forms 5 filed by Robert Diener and David Litman on March 14, 2003;

(16) Forms 4/A filed by Robert Diener and David Litman on April 2, 2003;

(17) Schedule 13D filed by TMF Liquidating Trust on April 2, 2003;

(18) Forms 4 filed by Robert Diener, David Litman, and TMF Liquidating Trust on June 23, 2003, and

(19) Form 4 filed by David Litman on June 24, 2003.

Copies of these documents are attached as Exhibit 2 (Bates-labeled LD005652 – LD005800) and incorporated by reference pursuant to RCFC 33 (d).

**(e) the dates shares were sold, exchanged or otherwise disposed of, the number of shares sold, exchanged or disposed of on those dates, and the restrictions that were applicable to those shares;**

**RESPONSE:**

Plaintiffs object to this interrogatory as it is overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Plaintiffs have attempted to compile all of the sales of Restricted Shares that have occurred. That compilation is attached as Exhibit 3 (Bates-labeled LD005844 – LD005855), and is incorporated by reference. In addition, the Forms 4, 4/A and 5, and Schedules 13D and 13 D/A filed with the S.E.C., referred to above in response to interrogatory 1(e), which are incorporated by reference pursuant to RCFC 33(d). During 2001 and 2002, the only Restricted Shares sold were those subject to a one year contractual holding period (in addition to the other restrictions listed above in response to interrogatory 1(c)). During 2003, Restricted Shares subject to one, two, three and four year contractual holding

periods (in addition to the other restrictions listed above in response to interrogatory 1(c)) were sold.

On June 23, 2003, Hotels.com (HRN's name was changed to "Hotels.com" during 2002) was merged with Hermitage Merger Corporation. Owners of shares of Hotels.com received 2.4 shares of stock of Interactive Corp. stock in exchange for each share of Hotels.com stock in the merger.

For sales of Restricted Shares before June 23, 2003, the contractual holding period to which each group of Restricted Shares was subject can be determined by reference to the cost basis per share reflected on Exhibit 3 (as determined under the BVS Appraisal). The cost basis for Restricted Shares sold before June 23, 2003 was as follows:

| Contractual Restriction Period | Cost Basis in HRN (Hotels.com) Shares (Based on BVS Appraisal) |
|---|---|
| One year | 8.08 |
| Two years | 6.16 |
| Three years | 5.84 |
| Four years | 3.36 |

As noted, after the merger, each of the Restricted Shares was exchanged for 2.4 shares of similarly restricted IAC stock. To determine the basis for each IAC share received, we divided the original cost basis by 2.4. For example, the basis for a share of one year contractually restricted stock in IAC would be 3.37 (8.08 ÷ 2.4). Thus, for Restricted Shares sold after June 23, 2003, the contractual restrictions applying and the cost basis was as follows:

| Contractual Restriction Period | Post-Merger Cost Basis in IAC Shares |
|---|---|
| One year | 3.37 |
| Two years | 2.57 |
| Three years | 2.43 |
| Four years | 1.4 |

(f) **whether the shares were ever registered under the Securities Act of 1933 and, if so, when;**

**RESPONSE:**

To Plaintiffs' knowledge, the Restricted Shares were not registered.

(g) **the consideration received for the shares, including the per share price at which shares were sold or the specific property received in exchange;**

**RESPONSE:**

*See* attached Exhibit 3, which is incorporated by reference. When sold, cash was received in exchange for the Restricted Shares. The sales price referenced on Exhibit 3 is net of sales commissions.

(h) **the persons to whom the shares were sold or transferred; and**

**RESPONSE:**

Plaintiffs do not know the persons to whom the Restricted Shares were sold.

(i) **the per share basis used to calculate gain or loss on each sale or transfer of shares, and the total capital gain or loss realized on each sale or transfer.**

**RESPONSE:**

*See* Exhibit 3, which is incorporated by reference.

**INTERROGATORY NO. 2:**

**Identify all persons who you believe have information or knowledge, or claim to have information or knowledge, about the value of, or marketability discount applicable to, the HRN restricted stock. Describe in detail the nature of that knowledge or information.**

**RESPONSE:**

Plaintiffs object to this request as vague and overbroad. Plaintiffs also object to this request to the extent it purports to compel disclosure of experts used solely for consulting purposes as such information is beyond the scope of permissible discovery. Subject to and without waiving these objections, Plaintiffs believe that the following persons may have specific knowledge of facts that may be relevant to the issues involving the value of or the lack of marketability discount applicable to the Restricted Shares:

(1) Mark L. Mitchell, CFA, ASA
Clothier & Head, P.S. Inc.
1301 Fifth Avenue, Suite 28000
Seattle, WA 98101
(206) 344-7530
(Formerly of Business Valuation Services, Inc.)

Mr. Mitchell prepared a valuation report dated February 24, 2000 determining the lack of marketability discount applicable to the Restricted Shares.

(2) David J. Bohlmann
3529 St. Gaudens Road
Miami, FL 33133
(305) 569-9339

Mr. Bohlmann prepared a valuation report dated July 21, 2000 determining the fair market value and lack of marketability discount applicable to the Restricted Shares.

(3) Brian M. Lidji
Lidji & Dorey
500 North Akard, Suite 3500
Dallas, TX 75201-6657
(214) 774-1220

Mr. Lidji was aware of the specific transfer restrictions applicable to the Restricted Shares.

(4) James M. Mincey Jr.
Mincey-Carter, P.C.
Three Forest Plaza
12221 Merit Drive, Suite 200
Dallas, TX 75251
(469) 916-1980

Mr. Mincey discussed the fair market value and lack of marketability discount applicable to the Restricted Shares with Mr. Mitchell, with David Litman and with Robert Diener.

(5) David S. Litman
Wildflower Investments
3010 LBJ Freeway, Suite 712
Dallas, TX 75234
(214) 239-2666

David Litman was aware of the specific restrictions applicable to the Restricted Shares, and reviewed the appraisals of Mark Mitchell and David Bohlmann.

(6) Malia A. Litman
Wildflower Investments
3010 LBJ Freeway, Suite 712
Dallas, TX 75234
(214) 239-2666

Malia Litman was aware of the restrictions applicable to the Restricted Shares, and reviewed the appraisals of Mark Mitchell and David Bohlmann.

(7) Robert B. Diener
8 Indian Creek Island Road
Indian Creek Village, FL 33154
(305) 865-9300

Robert Diener was aware of the specific restrictions applicable to the Restricted Shares, and reviewed the appraisals of Mark Mitchell and David Bohlmann.

(8) Michelle S. Diener
8 Indian Creek Island Road
Indian Creek Village, FL 33154
(305) 865-9300

Michelle Diener was aware of the restrictions applicable to the Restricted Shares, and reviewed the appraisals of Mark Mitchell and David Bohlmann.

(9) Jim Horan, Partner
KPMG, L.L.P.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2800
Miami FL 33131
(305) 358 2300

KPMG Valuation Group
Suite 2000
303 Peachtree Street, NE
Atlanta GA 30308-3210
(404) 222 3000

Mr. Horan advised Robert and Michelle Diener that the KPMG Valuation Group in Atlanta reviewed the BVS Appraisal for reasonableness and concurred that the lack of marketability the discounts applied and the valuation methods used were reasonable.

(10) Ruth Haney – Internal Revenue Service
Address Unknown

Plaintiffs believe Ms. Haney, an employee of the Internal Revenue Service, prepared several valuation analyses for the IRS, Plaintiffs do not have any knowledge of Ms. Haney's credentials. To the best of Plaintiffs' knowledge, Ms. Haney's analysis was prepaid after the notice of Deficiency was issued, and considered information related to conditions after the initial public offering of the Restricted Shares. To the best of Plaintiffs' knowledge, Ms. Haney was asked by the IRS to address the lack of marketability discount applicable to the

Restricted Shares. Plaintiffs attorney was informed that Ms. Haney originally determined that an average lack of marketability discount of approximately 50% should be applied when determining the fair market value of the Restricted Shares (which is 50% lower than the $16 per share value asserted by the Internal Revenue Service's position in the Notice of Deficiency). Ms. Haney subsequently changed her position and provided a memorandum to Susan Weiss at the Internal Revenue Service, dated April 28, 2005, applying an average lack of marketability discount of approximately 37%

(11) Deloitte & Touche LLP
Two Hillcrest Green
12720 Hillcrest Road, Suite 500
Dallas, TX 75230
(214) 840-7000

It was reported to Plaintiffs that Deloitte & Touche prepared an appraisal of the Restricted Shares for IAC. The IRS apparently had that report available when it issued the Notice of Deficiency, as Susan Weiss provided a copy of that report to Plaintiffs on May 18, 2005. The Deloitte & Touche analysis presented by IAC to the IRS shows a substantially lower value for the Restricted Shares than the $16 per share reflected in the IRS's Notice of Deficiency.

There are numerous individuals who have knowledge of the volatility of the stock market in general, and the volatility of the NASDAQ and dot.com companies in specific during the relative time frame. Further, there are individuals at IAC who have specific knowledge of the applicable restrictions placed upon the Restricted Shares. Those persons might include, among others, Barry Diller, Victor Kaufman, and Dara Khosrowshahi.

**INTERROGATORY NO. 3:**

**Identify all persons who were involved in or assisted in:**

**(a) setting the offering price for HRN stock in the Initial Public Offering ("IPO") in February 2000;**

**RESPONSE:**

The offering price for HRN stock in the IPO was set by USA Networks. Specifically, Plaintiffs believe that the following persons at USA Networks had the final approval in determining the IPO price:

(1) Barry Diller
Chairman
Interactive Corp.
152 W. 57th Street, 42nd Floor
New York, N.Y. 10019
(212) 314-7344

(2) Victor Kaufman
Vice Chairman
Interactive Corp.
152 W. 57th Street, 42nd Floor
New York, N.Y. 10019
(212) 314-7344

(3) Dara Khosrowshahi
President
Interactive Corp.
152 W. 57th Street, 42nd Floor
New York, N.Y. 10019
(212) 314-7440

Plaintiffs believe that USA Networks was assisted by the following persons at Donaldson Lufkin & Jenrette ("DLJ"):

(1) Christopher Morris
Managing Director
Donaldson, Lufkin & Jenrette
277 Park Avenue
New York, N.Y. 10172
(212) 892-3675

(2) Andy Sriubas
Vice President
Donaldson, Lufkin & Jenrette
277 Park Avenue
New York, N.Y. 10172
(212) 892-3675

(3) John Kennedy
Managing Director
Donaldson, Lufkin & Jenrette
277 Park Avenue
Donaldson, Lufkin & Jenrette
(212) 892-4530

Plaintiffs do not know the current location of the DLJ employees.

**(b) offering, promoting or marketing HRN stock for the initial public offering in February 2000;**

**RESPONSE:**

The persons identified in Response to Interrogatory No. 3(a) above were involved in offering, promoting and marketing HRN stock for the initial public offering. In addition, David Litman, Robert Diener, and the following individuals were also involved in the HRN "road show":

(1) John R. Bozalis, Jr.
ORIX Capital Markets, L.L.C.
1717 Main Street, Suite 900
Dallas, Texas 75201
(214) 237-2183

Mr. Bozalis was a Vice President of DLJ.

(2) Jack Rubin
6602 Forestshire Dr.
Dallas, Texas 75230
(214) 265-9990

Mr. Rubin was the Chief Financial Officer and Strategic Officer of Hotel Reservations Network.

Attached as Exhibit 4 (Bates-labeled LD005830 – LD005843) and incorporated by reference in these responses in the "Working Group List," which contains the names of those individuals involved in the initial public offering for HRN.

**(c) receiving offers to purchase or indications of interest in purchasing HRN stock in the initial public offering in February 2000; and**

**RESPONSE:**

Donaldson, Lufkin & Jenrette was responsible for receiving offers to purchase or indications of interest in purchasing HRN stock in the IPO. Plaintiffs believe that the Donaldson, Lufkin & Jenrette individuals identified in response to (3)(a) above were the persons primarily responsible.

**(d) allocating shares or determining the successful purchasers of HRN stock in the initial public offering in February 2000.**

**RESPONSE:**

Plaintiffs believe that Donaldson, Lufkin & Jenrette was responsible for allocating shares and determining the successful purchasers of HRN stock in the IPO.

**INTERROGATORY NO. 4:**

**Identify all persons who purchased or were allocated shares, and all persons who indicated an interest in purchasing shares but whose request for shares was either denied in whole or part, in the HRN initial public offering in February 2000. State the number of shares purchased, requested to be purchased and price.**

**RESPONSE:**

Plaintiffs object to this request as it is overly broad, unduly burdensome, and irrelevant to the issues in this case and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs also object to this interrogatory to the extent it purports to require Plaintiffs to provide the addresses and phone numbers of each person identified, as such request is unduly burdensome. Over a thousand persons and other investors acquired stock in the IPO, and requiring Plaintiffs to provide the names and addresses of each of these persons is unduly burdensome. Subject to and without waiving these objections, (1) a list of persons who indicated an interest and were allocated shares in the IPO is attached as Exhibit 5 (Bates-labeled LD005244 – LD005255), and (2) a list of the persons who were contacted in the HRN "Roadshow" is attached as Exhibit 6 (Bates-labeled LD004126 – LD004138). Both of these documents are incorporated by reference under RCFC 33(d). At this time, which is almost six years after the HRN initial public offering, Plaintiffs are unable to determine through the exercise of reasonable diligence all persons who purchased shares in the initial public offering or the number of shares purchased. Plaintiffs are aware that the following individuals did purchase shares in the IPO, but do not know the number of shares purchased:

(1) Rich Barton

(2) Erik Blachford

(3) Simon Breakwell

(4) Larry Burnett

(5) Nelda Campeau

(6) Brian Connery

(7) Frank Connery

(8) Patricia Connery

(9) Phil Connery

(10) Scott Connery

(11) Steve Connery

(12) Brian Crummy

(13) Robert Danial

(14) Robert Deutschman

(15) Ashley Diener

(16) Brenda Diener

(17) Esther Diener

(18) Michael Eisner

(19) Mike Hoefeld

(20) James Horan

(21) Barbara Fox

(22) Lois Fuhr

(23) Denise Gold

(24) Kendal Hanft

(25) Charles Kessler

(26) Leah Beth Kolni

(27) Brian M. Lidji

(28) Richard Linevsky

(29) Benjamin Litman

(30) Gloria Litman

(31) Jack Litman

(32) John Litman

(33) Jonathan Litman Trust

(34) Sacha Litman

(35) Rick Long

(36) Eric Matheson

(37) Nicole Matheson

(38) James M. Mincey Jr.

(39) Scott Mubarik

(40) Paul Nelson

(41) Harry Pacht

(42) Tom Parsons

(43) Cindy Rolen

(44) Ethan Rolen

(45) Scott Rosuck

(46) Aaron Sainer

(47) Joel Sainer

(48) Madeline Sater

(49) John Schwartz

(50) Gabrielle von Simson

(51) Rob Weiss

(52) Jeff Werbalowsky

**INTERROGATORY NO. 5:**

**State whether you or any of your immediate family members have owned, or had a beneficial or other interest in, any HRN stock other than the HRN restricted stock, including any options or warrants related to such stock. If so, describe in detail the acquisition of the stock or other interest and its disposition, if any.**

**RESPONSE:**

Plaintiffs object to the term "immediate family" as vague. Subject to and without waiving this objection, Plaintiffs assume by the use of the term "immediate family" you mean Plaintiffs or their children. Based on this definition, the answer is yes. David Litman received the following options to purchase shares: (1) February 25,2000 – 200,000 shares; (2) April 25, 2002 – 50,000 shares; and (3) February 22, 2003 – 75,000 shares of stock. The sale of the shares acquired pursuant to the options is reflected in Exhibit 3, which is incorporated by reference.

**INTERROGATORY NO. 6:**

**Identify all persons with whom you, or your attorneys, accountants or other agents, communicated concerning:**

**(a) the value of the HRN restricted stock;**

**RESPONSE:**

Plaintiffs object to this interrogatory as it is overbroad and seeks information which is subject to both the attorney client privilege and the attorney work product privilege. Subject to and without waiving these objections, Plaintiffs assume that your request is limited to those persons consulted concerning the value of the Restricted Shares prior to filing Plaintiffs' 2000 Form 1040. Those persons are as follows:

(1) Mark L. Mitchell

(2) David J. Bohlmann

(3) Brian Lidji

(4) James M. Mincey Jr.

(5) James Horan

(6) Robert Diener

(7) Plaintiffs discussed it with each other

**(b) the filing or possible filing of an IRS Form 8594 in connection with the purchase and sale of the assets of TMF, Inc. and HRN Marketing Corp;**

**RESPONSE:**

Plaintiffs object to this request as it assumes that Plaintiffs had an obligation to file a Form 8594 with their Form 1040 in connection with the purchase and sale of the assets of TMF, Inc. and HRN Marketing Corp. as no such obligation existed. Any such obligation, if it existed, was an obligation of TMF, Inc. or TMF Liquidating Trust. TMF, Inc. did file a Form 8594 with its 1999 Form 1120S, which reflected its sale of assets to Hotel Reservations Network, Inc. Neither TMF, Inc. nor TMF Liquidating Trust is a party to this proceeding. Subject to and without waiving this obligation, Plaintiffs did not have any discussions with any person concerning whether they had the obligation to file a Form 8594 with their individual income tax returns.

**(c) the removal of restrictions on the sale or transfer of HRN restricted stock;**

**RESPONSE:**

(1) Brian M. Lidji

(2) Victor Kaufman

(3) Janet M. Clements
Smith Barney
13455 Noel Road
Suite 1800
Dallas, Texas

(4) Robert Diener

(5) Plaintiffs discussed it with each other

**(d) obtaining permission from HRN or USA to sell or transfer HRN restricted stock.**

**RESPONSE:**

(1) Brian M. Lidji

(2) Thomas J. Kuhn, Esq.
Senior Vice President and General Counsel
Interactive Corp.
152 West 57th Street, 42nd Floor
New York, NY 10019

(3) Julius Genachowski
General Counsel
Interactive Corp.
152 West 57th Street, 42nd Floor
New York, NY 10019

(4) Robert Diener

(5) Plaintiffs discussed it with each other

Current addresses for Messrs. Kuhn and Genachowski are unknown.

**INTERROGATORY NO. 7:**

**State the date on which you first became aware of the issuance of the Notice of Deficiency, dated October 8, 2004, and addressed to "David S. and Malia A. Litman, 10710 Strain Lane, Dallas, TX 75229-5426," a copy of which is attached to your Complaint. Describe the circumstances of your becoming aware of the Notice of Deficiency, including the date on which you, or your attorney, accountant or other agent, obtained possession of a copy. If you cannot specify the exact date, please state the general time period, with starting and ending dates.**

**RESPONSE:**

Plaintiffs object to this request as it seeks information which is privileged from discovery under the attorney work product and the attorney-client privilege. Subject to and without waiving this objection, Plaintiffs learned of the existence of the notice of deficiency on October 12, 2004. Our attorney, John W. Porter, received a copy of the notices on October 12, 2004.

**INTERROGATORY NO. 8:**

**Identify all persons with whom you consulted or on whom you relied in completing your income tax return for the year ending December 31, 2000. Describe in detail each person's role.**

**RESPONSE:**

(1) David Vink - Mr. Vink prepared Plaintiffs' Form 1040 for the year ending December 31, 2000 (the "2000 Form 1040").

(2) Lisa Florentino - Ms. Florentino worked with Mr. Vink and assisted in connection with the preparation of Plaintiffs' 2000 Form 1040.

(3) Mark L. Mitchell - Mr. Mitchell prepared a valuation report determining the fair market value of the Restricted Shares. Mr. Mitchell's report formed the basis on which Plaintiffs reported the gain on receipt of the Restricted Shares.

(4) David J. Bohlmann - Mr. Bohlmann prepared a valuation report determining the fair market value of the Restricted Shares.

(5) James M. Mincey Jr. - Plaintiffs consulted with Mr. Mincey with respect to the value of the Restricted Shares.

(6) Robert B. Diener - Plaintiffs consulted with Mr. Diener regarding the value of the Restricted Shares.

(7) KPMG - KPMG's Valuation Group in Atlanta reviewed the BVS report for reasonableness and concurred that the lack of marketability the discounts applied and the valuation methods used were reasonable

**<u>INTERROGATORY NO. 9:</u>**

**Identify all persons who were authorized to act on your behalf or receive communications and notices from the IRS on your behalf in connection with the examination by the IRS of your income tax return for the year ending December 31, 2000.**

**<u>RESPONSE:</u>**

Plaintiffs object to this interrogatory to the extent it seeks to characterize the authority of the persons identified in the power of attorney, Form 2848 on file with the Internal Revenue Service. A copy of our Form 2848, which specifies the authority of the individuals named therein, is attached as Exhibit 7 (Bates-labeled LD005500 – LD005503) and is incorporated by reference. The representatives named in the Form 2848 are John W. Porter, David Vink, and Lisa Florentino.

**<u>INTERROGATORY NO. 10:</u>**

**State whether BVS and/or Mark L. Mitchell gave you or anyone else any oral opinions or written opinions, other than the report dated February 24, 2000, concerning the marketability discount applicable to or valuation of HRN restricted stock. If so, describe those opinions in detail, including when and to whom they were given.**

**RESPONSE:**

After finalizing his analysis and the preparation of his report dated February 29, 2000, with respect to the lack of marketability discount to be applied in determining the fair market value of the Restricted Shares, Plaintiffs understand that Mr. Mitchell orally reported to James Mincey his conclusions of value. The conclusions of value were those as stated in the report. Neither BVS nor Mark Mitchell gave Plaintiffs any other oral or written opinions with respect to the fair market value or marketability discount applicable to the Restricted Shares at the time it was received. Plaintiffs are aware that BVS prepared an analysis with respect to the fair market value of the Restricted Shares as of October 2000. A copy of the draft opinion is has been produced in response to Defendant's request for production and is incorporated by reference pursuant to RCFC 33(d). After the exercise of reasonable diligence, Plaintiffs are unaware of whether BVS or Mark Mitchell gave anyone else oral opinions or written opinions, other than those contained in their report dated February 24, 2000, concerning the fair market value or the marketability discount applicable to the Restricted Shares.

**INTERROGATORY NO. 11:**

**State whether David J. Bohlmann gave you or anyone else any oral opinions or written opinions, other than the report dated July 21, 2000, concerning the marketability discount applicable to or valuation of HRN restricted stock. If so, describe those opinions in detail, including when and to whom they were given.**

**RESPONSE:**

To the best of Plaintiffs' knowledge David J. Bohlmann did not give Plaintiffs any other oral or written opinions concerning the fair market value or the lack of marketability discount applicable to the Restricted Shares other than those stated in his report dated July 21,

2000. Plaintiffs incorporate by reference the documents produced in response to Defendant's request for production numbers 15 and 17 by reference pursuant to RCFC 33(d). After the exercise of reasonable diligence, Plaintiffs are unaware if Mr. Bohlmann gave anyone else any oral opinions or written opinions, other than the report dated July 21, 2000, concerning the fair market value or the lack of marketability discount applicable to the HRN Restricted Shares.

**INTERROGATORY NO. 12:**

**Identify all persons who you believe have or had knowledge of (i) the alleged agreement with Andrew Pells that resulted in the cash payment of $2,924,215.50 and transfer of 244,995 shares of HRN restricted stock to him in 2000; and (ii) the determination or calculation of the amounts and number of shares Mr. Pells purportedly was given pursuant to this agreement. Describe in detail each person's knowledge and involvement.**

**RESPONSE:**

Plaintiffs object to this interrogatory as it is vague as it does not specifically state a timeframe. Subject to and without waiving this objection, Plaintiffs state that prior to 1999, David Litman, Malia Litman, Robert Diener, Michelle Diener, Brian Lidji and Andrew Pells were aware of the agreement. David Litman and Robert Diener (on behalf of TMF, Inc.), and Andrew Pells were the parties who entered into the agreement. David Litman and Robert Diener discussed the existence of the agreement with Malia Litman and Michelle Diener. Brian Lidji was aware of the agreement as a result of his role as counsel for the Litmans, the Dieners and TMF, Inc. and TMF Liquidating Trust. Mr. Lidji also drafted the documents that reduced to writing the oral agreement with Mr. Pells.

Both HRN and Donaldson, Lufkin & Jenrette were made aware of the agreement. Hotel Reservations Network Inc. and Chase Mellon Shareholder Services were also aware of the agreement. Numerous other individuals at HRN were aware that an agreement existed with Mr. Pells, although they may not have known the details. Reference to the agreement with Mr. Pells is reflected in numerous public filings with the S.E.C., including the Schedule 13D filed by TMF Liquidating on March 3, 2003, the Amendment No. 2 to the Form S-1 filed by HRN on February 3, 2000, Amendment No. 3 to the Form S-1 of HRN filed on February 7, 2000, and Amendment No. 5 to the Form S-1 filed by HRN on February 17, 2000.

**INTERROGATORY NO. 13:**

**Describe in detail the total consideration paid or given by, or on behalf of, HRN under the Asset Purchase Agreement, dated April 13, 1999, and Amended and Restated Asset Purchase Agreement, dated February 2, 2000. Describe the date and form of the consideration, the recipient and the specific paragraph of the agreements under which the consideration was paid or given.**

**RESPONSE:**

Pursuant to RCFC 33(d), Plaintiffs incorporate by reference the Form S-1 and the amendments thereto filed by HRN with the S.E.C., the Asset Purchase Agreement dated April 13, 1999, 2000 Amendment, the BVS appraisal reported dated February 24, 2000 and the schedule attached as Exhibit 8 (Bates-labeled LD005863), which describe in detail the consideration received by TMF, Inc. and TMF Liquidating Trust.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated: January 9, 2006

By: ______________________
John W. Porter
Attorney of Record

BAKER BOTTS, L.L.P.
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1597
(713) 229-1522 (FAX)

Stephanie Loomis-Price (Of Counsel)
J. Graham Kenney (Of Counsel)

ATTORNEYS FOR PLAINTIFFS-COUNTERDEFENDANTS
DAVID S. LITMAN AND MALIA A. LITMAN

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was sent by email (without exhibits attached) and by federal express (with exhibits attached) on this 9th day of January, 2006, to Cory A. Johnson, Tax Division, United States Department of Justice, 555 4th Street N.W., Judiciary Center Building, Washington, DC 20530.

______________________
John W. Porter

**VERIFICATION**

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared David S. Litman, known to me to be the person whose name is subscribed hereto, who, after being duly sworn by me, on oath stated that the answers to the foregoing Interrogatories are true and correct.

DAVID S. LITMAN

SUBSCRIBED AND SWORN TO this 9th day of January, 2006.

Carol Doremus
Notary Public
State of Texas

CAROL DOREMUS
MY COMMISSION EXPIRES
December 5, 2008

**VERIFICATION**

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared Malia A. Litman, known to me to be the person whose name is subscribed hereto, who, after being duly sworn by me, on oath stated that the answers to the foregoing Interrogatories are true and correct.

MALIA A. LITMAN

SUBSCRIBED AND SWORN TO this 9th day of January, 2006.

CAROL DOREMUS
MY COMMISSION EXPIRES
December 5, 2008

Carol Doremus
Notary Public
State of Texas