**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN And MALIA A. LITMAN,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-956T** |
| **ROBERT B. DIENER And MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a**<br>**HOTEL RESERVATIONS NETWORK, INC.)**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant** | ) | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**HOTELS.COM, INC.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO ALLEGED KPMG REVIEW OF THE MITCHELL VALUATION**

## INTRODUCTION

David S. and Malia A. Litman ("Litmans") and Robert B. and Michelle S. Diener ("Dieners") have argued, and are expected to continue to argue, that KPMG, LLP ("KPMG") reviewed and concurred with Mark Mitchell's 2000 valuation of the IPO shares. As explained below, any evidence relating to KPMG's purported "review" of Mitchell's valuation is inadmissible hearsay (on multiple levels), lacks proper foundation, and must be excluded.

## BACKGROUND

As discussed in Hotels.com's pretrial memorandum, the Litmans and Dieners hired Mark Mitchell, who then worked for Business Valuation Service, Inc., to appraise the HRN restricted stock they received as additional contingent consideration pursuant to the Amended and Restated Asset Purchase Agreement. Mitchell's 2000 valuation determined an average discount of over 70%, but did not set forth the price to which such discount should be applied. In fact, Mitchell testified that the base price was not addressed by his 2000 valuation, *see* Mitchell Dep. at 64-65, but it was Mr. Diener's understanding that Mitchell's computed discount should be applied to a $16 base price. R. Diener Dep. at 214-16. The application of Mitchell's computed discount against the $16 per share IPO price of HRN stock served as the basis for the tax reporting position taken in 2000 by the grantor trust ("TMF Liquidating Trust" or "the Trust") controlled by the Litmans and Dieners and for the improper positions asserted in their individual tax returns. The discount computed in Mitchell's 2000 appraisal applied against the $16 IPO price selected by Mr. Diener also established the value of "tracking interests" in the Trust that Mr. Litman and Mr. Diener sold to various members of their families.

James Horan of KPMG, the Dieners' tax advisor, was deposed in this case. Mr. Horan did not testify that he personally reviewed Mitchell's 2000 valuation for reasonableness. Instead, he apparently faxed a draft version of the valuation to Ray Nicholson, a member of KPMG's valuation group based in Atlanta, Georgia. Horan faxed the valuation to a Wichita Airport Hilton hotel where Nicholson was allegedly attending a conference. Horan Dep. at 15, 89-91.[1] There is no evidence that Nicholson received any documents relating to the transaction except

[1] A copy of Mr. Horan's deposition transcript was attached to Plaintiffs' Motion for Leave to File Deposition Testimony under RCFC 32(a)(3) and Appendix A ¶14(A)(3), filed Feb. 26, 2007, as Exhibit 4.

for Mitchell's valuation report. *Id.* at 56-57, 91. While Nicholson was still at the conference, and most likely the very next day, Nicholson allegedly told Horan by phone that he thought Mitchell's valuation was "reasonable." *Id.* at 92-95.

Horan has never met Ray Nicholson and has never asked him to review a valuation except in connection with the Litmans' and Dieners' sale of TMF, Inc. and HRN Marketing. Horan Dep. at 15, 17-18, 59. Horan does not know what, if anything, Nicholson did to evaluate Mitchell's 2000 valuation. *Id.* at 59-60, 93. He has no idea how much time Nicholson spent reviewing the valuation, if anyone else was involved in the review, or if Mr. Nicholson, in fact, even reviewed the valuation. Mr. Nicholson did not provide Horan with any written analysis or documentation of his review. *Id.* at 16-17. Further, there is no evidence of Mr. Nicholson's background, education, or experience for the Court to determine whether he even could be qualified as an expert on valuation matters.

The Litmans and Dieners are seeking to introduce portions of Horan's deposition testimony as substantive evidence in this case. *See* Motion for Leave to File Transcript of Deposition Testimony of James Horan, filed Feb. 26, 2007. They may also attempt to introduce as evidence a KPMG memorandum that references Mitchell's valuation and incorporates discussion of its alleged review by the KPMG-Atlanta valuation group. All of this evidence should be excluded.[2]

[2] To the extent Hotels.com has designated portions of Mr. Horan's testimony to which we now object, such designations were protective in nature in the event our expected objections were overruled.

## ARGUMENT

### A. Testimony about KPMG's alleged "review" of Mitchell's valuation

Any testimony relating to KPMG's purported "review" of Mitchell's 2000 valuation is classic inadmissible hearsay. The Litmans and Dieners do not intend to call Mr. Nicholson at trial. Therefore, Nicholson's alleged conclusion that Mitchell's valuation was "reasonable" is an out of court statement, made by someone other than a testifying witness, and offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Such testimony does not fall within any hearsay exception and may not be admitted into evidence. *See* Fed. R. Evid. 802.

The Litmans and Dieners have not offered the testimony of anyone at KPMG directly involved in reviewing Mitchell's 2000 valuation. Further, because Mr. Horan testified that he lacks personal knowledge concerning the scope and methods of Nicholson's review, his testimony lacks proper foundation. Thus, it is inadmissible on that ground as well. Horan testified that he did not know and had never met Nicholson. He also testified that he had no idea how much time, if any, Nicholson spent reviewing Mitchell's valuation, or what, if anything, he did to evaluate it. Finally, there is no evidence in the record of Nicholson's background or experience and therefore no evidence to determine whether he is even qualified to render an opinion about Mitchell's valuation. Neither Horan nor Nicholson has been qualified as an expert in this case.

### B. KPMG memorandum incorporating KPMG-Atlanta valuation group's alleged review

The Litmans and Dieners also may attempt to introduce an April 2001 KPMG memorandum that discusses the review of Mitchell's valuation allegedly performed by Nicholson and/or the KPMG-Atlanta valuation group. *See* Horan Dep. Ex. 76 at 3. The memorandum itself is inadmissible hearsay. It was authored by Madeline Fernandez in KPMG's

Miami, Florida office. It does not qualify as a business record under Fed. R. Evid. 803(6) because the Litmans and Dieners have not established that it was made contemporaneous to the events that it records, or that it was made by or from information transmitted by a person with knowledge acting in the regular course of business.

Even if the several requirements for the business record exception could be satisfied, the memorandum would still contain inadmissible "double hearsay" concerning alleged third party conversations with Nicholson and/or the KPMG-Atlanta valuation group. This portion of the document (as well as any testimony regarding this portion) is inadmissible. *E.g.*, *Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333, 338 (2003) (court would consider hearsay within hearsay challenges to statements incorporated within document otherwise admissible under hearsay exception). There is no evidence that Ms. Fernandez was personally involved in the alleged review of Mitchell's valuation or that she received information from any KPMG employee who was. Again, there is also no evidence that Nicholson or any other KPMG employees alleged to have reviewed Mitchell's valuation possess any of the qualifications necessary to opine on that valuation's reasonableness.

**CONCLUSION**

The valuation experts for both Hotels.com and the United States are in complete agreement that an approximately 20% discount should be applied in valuing the HRN restricted stock, while Mitchell's calculation applying an average discount of over 70% is an outlier. The Litmans and Dieners are clearly attempting to bolster the credibility of Mitchell's enormous discount, applied against a price determined by the one of the litigants (Mr. Diener), by characterizing it as KPMG-approved. They may not do so, however, through inadmissible and incomplete evidence.

For the reasons set forth above, Hotels.com respectfully requests that the Court exclude any and all evidence relating to KPMG's purported "review" of Mark Mitchell's 2000 valuation of the HRN shares as inadmissible hearsay evidence and/or lacking in proper foundation.[3]

April 5, 2007

Respectfully submitted,

s/ Kim Marie K. Boylan___
Kim Marie K. Boylan
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
(202) 637-2235
Attorney of Record

Kari M. Larson
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel

Jennifer S. Crone
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel

[3] If the Court were to deny this motion, Hotels.com would request that its protective designations be admitted.