**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DAVID S. LITMAN And MALIA A. LITMAN,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | **No. 05-956T** |
| **ROBERT B. DIENER And MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.)**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant** | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**HOTELS.COM, INC.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ADMINISTRATIVE SETTLEMENT NEGOTIATIONS PRIOR TO ISSUANCE OF NOTICE OF DEFICIENCY**

## INTRODUCTION

Hotels.com anticipates that David S. and Malia A. Litman ("Litmans") and Robert B. and Michelle S. Diener ("Dieners") will attempt to introduce evidence relating to administrative settlement negotiations that took place before the issuance of the Notice of Deficiency to Hotels.com. Any evidence of this sort should be excluded. It is well-settled that courts do not

look behind the notice of deficiency in conducting a *de novo* review. Moreover, such evidence of compromise negotiations is inadmissible under Federal Rule of Evidence 408.

**BACKGROUND**

As discussed in Hotels.com's pretrial memorandum, HRN, Inc. became deconsolidated from its parent company USA Networks, Inc. ("USA") on March 1, 2000 as a result of the trust controlled by the Litmans and Dieners ("TMF Liquidating Trust" or "the Trust") receipt of HRN restricted stock representing 20.4 percent of the total shares of HRN stock then outstanding. In its 2000 federal tax return for the short taxable year March 1, 2000 to December 31, 2000 (the "HRN 2000 Return"), HRN reported amortization deductions based on the $159,998,400 of additional purchase price negotiated under the Amended and Restated Asset Purchase Agreement, paid to the Litmans and Dieners, and disclosed to the SEC and the public in HRN's SEC filings.

Around the time the HRN 2000 return was filed, USA learned that the Litmans and Dieners were not reporting on their tax returns the agreed-to value of the restricted stock, in contravention of the parties' agreement and the express provision of the Amended and Restated Asset Purchase Agreement mandating tax reporting consistent with the Agreement (Section 3.4). Because the parties were not reporting the same value, USA knew that the IRS would focus on this issue. Eric DeGraw, USA's tax director from 1998 through 2002, retained Deloitte and Touche to perform a valuation of the stock. The valuation was performed in less than a week and contains numerous errors (for example, it used February 25, 2000 as the valuation date and assumed the IPO price was $16.50 per share). Moreover, the valuation did not set forth the share price from which the determined discount should be subtracted. Mr. DeGraw, who admitted in his deposition that he has no valuation experience, *see* DeGraw Dep. at 58, testified that he could

not opine as to whether the discount computed by Deloitte and Touche was reasonable. DeGraw Dep. at 66-67.

The IRS did, indeed, audit the Litmans, Dieners, and Hotels.com. The Litmans and Dieners refused to extend the statute of limitations on assessment, and therefore the IRS issued to them a notice of deficiency. Hotels.com proceeded in an entirely different manner with the IRS. Hotels.com engaged in substantial and lengthy negotiations with the IRS in an effort to resolve this case without the need for litigation. Unfortunately, settlement discussions were ultimately unsuccessful. Importantly, the negotiating positions put forth by Hotels.com and by the United States in connection with the IRS audit are *not* the litigating positions of either of those parties.[1]

**ARGUMENT**

Hotels.com maintains that the Amended and Restated Asset Purchase Agreement ("Agreement") is dispositive as to the proper value of the contingent purchase price paid to the Litmans and Dieners in the form of HRN restricted stock. Any other reading would render

---

[1] In the settlement discussions, the valuation's computed discount was erroneously applied against the $16 IPO price. This error was compounded in later years. In certain later year HRN returns, HRN's claimed amortization deductions are substantially below the amount to which Hotels.com would be entitled under either the clear terms of the Amended and Restated Asset Purchase Agreement or, in the alternative, a valuation using the proper valuation date and/or the proper stock price from which to subtract the computed discount. The position taken on these later returns is not determinative of value. A tax return position, while an admission, may not be resorted to for determining market value unless there is an absence of other evidence to the contrary. *Grill v. United States*, 157 Ct. Cl. 804, 812-13 (1962). In this case, there is determinative evidence to the contrary. Moreover, Hotels.com has filed protective refund claims reflecting the basis in the additional goodwill as $159,998,400, as dictated by the terms of the Amended and Restated Asset Purchase Agreement, and as reflected in the HRN 2000 Return and HRN's SEC public filings. Further, Hotels.com disputes that HRN's later year returns are even relevant and admissible in this case. *Cf. Sundstrand Corp. v. Comm'r,* 89 T.C. 810, 815 (1987) ("In cases with extensive records, we must attempt to limit our consideration to those facts ascertainable at the close of the taxable years before the Court."), *citing S. Pacific Trans. Co. v. Comm'r,* 75 T.C. 497, 668 (1980). Also, because Mr. Diener was ultimately in charge of taxes at HRN during 2000 and he directed the actions of the HRN employee who signed the HRN 2000 Return, the position taken on that return (*i.e.*, the value of the additional purchase price paid was $159,998,400) is an admission against him.

Section 3.4 of the Agreement meaningless and would ignore the clear language of Sections 7.11.3 and 7.15 which set forth *both* a method for computing the number of shares *and* the value or method of valuation of those shares.[2] However, should the Court find that the clear terms of the Agreement do not control, it would then consider expert valuation testimony in determining the value of the HRN restricted shares.

In doing so, the Court should not consider evidence relating to Hotels.com's and the United States' settlement negotiations during the IRS audit. Such evidence would include any testimony related to such settlement negotiations and any documents prepared in connection with and utilized during such settlement negotiations. In addition, the Court should exclude much of the deposition testimony of Eric DeGraw. As explained below, DeGraw's testimony lacks foundation, is inadmissible hearsay, and is improper opinion testimony by a lay witness.

### A. Evidence relating to administrative settlement negotiations is irrelevant to the Court's *de novo* review.

"It is well-settled that a tax refund suit in the Court of Federal Claims 'is a *de novo* proceeding . . . .'" *Int'l Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996), *quoting Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993); *see also George E. Warren Corp. v. United States*, 135 Ct. Cl. 305, 314 (1956). Thus, what happened administratively is simply not relevant. For that reason, it has long been established that courts do not look behind the notice of

---

[2] Section 7.15 specifically states $81.6 million, which is the amount reported on the HRN 2000 Return and to the SEC and the world by HRN in its public filings as the value of the 5,100,000 shares received pursuant to that section. Section 7.11.3 specifically provides for: "a number of shares of common stock of [HRN] *having an aggregate value (based on the price per share in the IPO)* equal to the product of (x)(i) the total issued and outstanding shares of [HRN] immediately prior to the IPO (which shall include the shares issued under Section 7.15 simultaneous with the IPO) times the IPO price minus (ii) the Net Debt Capital multiplied by (y) 10%." (emphasis added). Thus, that section sets forth the method of valuation. Again, the value of the 4,899,900 shares issued pursuant to Section 7.11.3 was reported on the HRN 2000 Return and to the SEC and the world at the value mandated by the Amended and Restated Asset Purchase Agreement.

deficiency. *See, e.g.*, *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-28 (1974) ("our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level").

The principle of *Greenberg's Express* applies equally to the procedures and evidence used by the IRS in making an assessment. *See Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987); *Bennett v. Commissioner*, 74 T.C.M. 1144 (1997) ("As a general rule, this Court will not look behind a deficiency notice to examine the evidence used by the Commissioner in making the determination . . . ."). The Court of Federal Claims has adopted this view as well. *See, e.g.*, *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000) (recognizing that "[i]n tax refund suits, factual issues are tried *de novo* in this court, with no weight given to the subsidiary factual findings made by the Service in its internal administrative proceedings").

Because this Court's determination of HRN's tax liability must not be based on the record developed at the administrative level, earlier valuations performed in connection with the IRS audit and any related evidence are irrelevant and should be excluded. This is especially true where, as here, the positions taken by Hotels.com and the United States at the administrative level do not represent the litigating positions of either of those parties. Allowing such evidence at trial would be improper and would run contrary to this Court's duty to try the issues in this case *de novo*.

**B. Evidence relating to administrative settlement negotiations is inadmissible under Federal Rule of Evidence 408.**

Any evidence relating to the parties' settlement negotiations in connection with Hotels.com's IRS audit must also be excluded under Federal Rule of Evidence 408. Fed. R. Evid. 408(a) states, in relevant part, that when offered to prove liability for, invalidity of, or the amount of a claim that was disputed as to validity or amount, or when offered to impeach

through a prior inconsistent statement or contradiction, evidence of "(1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim . . ." is not admissible. Rule 408 applies with "full weight" in circumstances, as here, where a party may attempt to introduce evidence relating to compromise negotiations between an opposing party and a third party. *See Abundis v. United States*, 15 Cl. Ct. 619, 620-21 (1988).

The Rule reflects the dual purposes of excluding evidence likely irrelevant to the parties' litigating positions and promoting public policy in favor of compromising and settling disputes. *See United States v. Contra Costa County Water District*, 678 F.2d 90, 92 (9th Cir. 1982) (citing Advisory Committee's Notes); *see also Abundis*, 15 Cl. Ct. at 620-21. Both purposes are served here by excluding evidence of Hotels.com's and the United States' administrative settlement negotiations.

First, it is clear that any evidence relating to valuations put forth by either Hotels.com or the United States during the audit, as well as evidence of any discussions between Hotels.com and the IRS, is irrelevant to the parties' current positions. As discussed above, the positions taken by Hotels.com and the United States during the audit do not represent their litigating positions.

Second, permitting the Litmans and Dieners to introduce evidence of Hotels.com's administrative settlement negotiations at trial is contrary to public policy. Admission of documents and testimony relating to such negotiations is contrary to the goal of encouraging the settlement of disputes prior to litigation.

This Court has before applied Fed. R. Evid. 408 in a tax refund suit to exclude evidence relating to IRS negotiations with taxpayers where it concluded that admitting such evidence would "unnecessarily broaden the issues to be considered at trial" — a result that "would tend to confuse and obfuscate the central issues" in the case. *McPike, Inc. v. United States*, 15 Cl. Ct. 94, 99 (1988). Moreover, this Court has recognized that when the applicability of Rule 408 is a close call, the better practice is to exclude evidence. *See Power Authority of New York v. United States*, 62 Fed. Cl. 376, 379 (2004).

**C. Testimony by Eric DeGraw lacks foundation, is inadmissible hearsay and/or is improper opinion testimony by a lay witness.**

As part of their evidence relating to Hotels.com's administrative settlement negotiations, the Litmans and Dieners have designated certain portions of testimony from the deposition of Eric DeGraw to be admitted as substantive evidence in this case. As noted above, Mr. DeGraw was USA's tax director from 1998 through 2002. Much of his deposition testimony, including all of his testimony concerning a valuation of the additional contingent consideration paid to the Litmans and Dieners under the terms of the Amended and Restated Asset Purchase Agreement, lacks foundation, is inadmissible hearsay, and/or is improper opinion testimony by a lay witness.

DeGraw testified that he lacks personal knowledge regarding all aspects of the Asset Purchase Agreement other than the tax due diligence, and all aspects of the Amended and Restated Asset Purchase Agreement. *See* DeGraw Dep. 18-19, 27-28. His testimony concerning HRN's preparation for the IRS audit and any communications during that audit is hearsay. In addition, DeGraw's testimony, to the extent that it relates to settlement negotiations, including his preparation therefore and any related communications, must be excluded under Fed. R. Evid. 408 as well.

Finally, any testimony by DeGraw as to the reasonableness of a valuation lacks foundation and is improper opinion testimony by a lay witness. DeGraw admitted during his deposition that he has no valuation experience. *See* DeGraw Dep. at 58. He also testified that he could not opine as to what valuation discount would be reasonable. *See* DeGraw Dep. at 66-67. Mr. DeGraw is not an attorney, and there is no evidence that he consulted with an attorney about HRN's legal position at any point during the audit process. To the extent that any party attempts to introduce testimony by Mr. DeGraw that he or "the company" were "comfortable" with the Deloitte and Touche valuation's computed discount as applied against the $16 IPO price, such testimony is improper opinion testimony by a lay person, impermissibly vague, and without foundation.

**CONCLUSION**

Attached hereto as Exhibit A is a listing of those portions of Mr. DeGraw's deposition testimony designated by the Litmans and Dieners in their Motion for Leave to File Transcript of Deposition Testimony of Eric DeGraw, filed on February 26, 2007, that should be excluded.[3] In addition, documents related to the IRS settlement negotiations that should be excluded are set forth on Exhibit B. Finally, any trial testimony relating to the topics discussed herein also should be excluded by the Court.

Excluding the evidence discussed above is the only way to ensure that this Court's decision is "based on the merits of the case and not any previous record developed at the administrative level." *Cook*, 46 Fed. Cl. at 114 n.8, *quoting Greenberg's Express*, 62 T.C. at

---

[3] Hotels.com has designated certain portions of Mr. DeGraw's deposition testimony in the event that the Court allows his testimony. *See* Plaintiffs' Motion for Leave to File Deposition Testimony under RCFC 32(a)(3) and Appendix A ¶14(A)(3), filed Feb. 26, 2007, Ex. 3. To the extent that the Court grants this motion, those sections should be excluded from Hotels.com's designations (and the United States' designations, if made) as well. However, to the extent that this motion is denied, Hotels.com would request that its protective designations be admitted.

328. It is also the only means of protecting the parties' expectations about their negotiations during the audit period.

For the reasons set forth above, Hotels.com respectfully requests that the Court exclude at trial any and all evidence relating to Hotels.com's administrative settlement negotiations.

April 5, 2007

Respectfully submitted,

s/ Kim Marie K. Boylan____
Kim Marie K. Boylan
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
(202) 637-2235
Attorney of Record

Kari M. Larson
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel

Jennifer S. Crone
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel