**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br><br>**Plaintiffs-Counterdefendants,**<br><br>**V.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiff.** | ) | **No. 05-956T** |
| **ROBERT B. DIENER and MICHELLE S. DIENER,**<br><br>**Plaintiffs-Counterdefendants,**<br><br>**V.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiff.** | ) | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.),**<br><br>**Plaintiffs,**<br><br>**V.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | ) | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**PLAINTIFFS-COUNTERDEFENDANTS, DAVID S. LITMAN, MALIA A. LITMAN, ROBERT B. DIENER, AND MICHELLE S. DIENER'S RESPONSE TO HOTELS.COM'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ADMINISTRATIVE SETTLEMENT NEGOTIATIONS PRIOR TO ISSUANCE OF NOTICE OF DEFICIENCY**

Plaintiffs-Counterdefendants, David S. Litman, Malia A. Litman, Robert B. Diener, and Michelle S. Diener ("Plaintiffs"), file this Response to Hotels.com's Motion *in Limine* to Exclude Evidence of Administrative Settlement Negotiations Prior to Issuance of

Notice of Deficiency (this "Response") pursuant to the Court's Order dated November 16, 2006. Plaintiffs respond as follows:

Hotels.com's Motion *in Limine* ("Motion in Limine") is a transparent attempt to avoid the introduction of evidence and numerous admissions made by Hotels.com that contradict the basic positions taken by Hotels.com in this case; namely, that (1) an agreement to value the Restricted Shares (defined below) at $16 per share for tax purposes existed; (2) unrestricted shares sold in HRN'S initial public offering ("IPO") at $16 per share had a value greater than $16 per share; (3) the Restricted Shares were issued on March 1, 2000; and (4) the value of the Restricted Shares was $23.25. Each of these positions was first asserted by Hotels.com mid-way through this litigation and is contradicted by Hotels.com's tax filings, admissions made during the audit, and the testimony of Eric DeGraw that Hotels.com now seeks to exclude from consideration. Hotels.com's motion should be denied.

**A. The Admissions Hotels.com Seeks to Exclude Go Directly to the Heart of the Principal Issue in This Case -- the Valuation of the Restricted Shares.**

The principal issue in this case involves the fair market value of 9,999,900 shares of common stock of Hotels Reservation Network, Inc. ("HRN") issued to the TMF Liquidating Trust on February 24, 2000 (the "Restricted Shares"). The Restricted Shares had onerous transfer restrictions contractually imposed on them by HRN, and most of the shares could not be sold for a four-year period. The Litmans and the Dieners, who owned interests in the TMF Liquidating Trust, recognized and paid millions of dollars of capital gains taxes for the year 2000 based upon the value of the Restricted Shares received by the TMF Liquidating Trust as determined by Mark Mitchell of Business Valuation Services, Inc.

HRN had the right to amortize the value of the Restricted Shares for tax purposes over a 15 year period. HRN originally filed its 2000 tax return using the initial public offering

price of $16 per share for unrestricted stock as the fair market value for the Restricted Shares. HRN and USA Networks (HRN's parent company, which subsequently became InterActiveCorp ("IAC")) were aware that this $16 value was erroneous, as the $16 per share IPO price failed to take into account the onerous transfer restrictions imposed on the Restricted Shares. HRN and USA Networks promptly obtained an appraisal analysis from Deloitte & Touche (the "Deloitte Analysis"), who utilized the same valuation methodology employed by BVS and determined that lack of marketability discounts ranging from 40% (for the 7 million shares of four-year restricted stock) to 25% (for the one-year restricted stock) should be applied to determine the value of the Restricted Shares. HRN applied the lack of marketability discounts from the Deloitte Analysis to the $16 per share IPO price to determine the value of the Restricted Shares, a $10.18 per share weighted average value. The valuation date used by the Deloitte Analysis was February 25, 2000. HRN adopted that valuation approach and the valuation date in the audit of its 2000 income tax return and in reporting the value of the Restricted Shares for amortization purposes in its tax returns for years 2001 through 2004.

HRN and USA Networks intended to amend HRN's 2000 tax return to reflect the Deloitte Analysis. Several draft amended tax returns were prepared by HRN's accountants to report the value of the shares based on the Deloitte Analysis, but for some unexplained reason the amendment was never filed. But during the audit of its 2000 tax return, HRN (by then known as "Hotels.com") strenuously asserted that the value of the Restricted Shares should be based on the Deloitte Analysis (a position consistent with its 2001-2004 tax filings). For example, when HRN provided a copy of the Deloitte Analysis to IRS Agent Susan Weiss on

October 20, 2004, Eric DeGraw, Vice President of Taxation of Hotels.com's parent company,[1] stated as follows:

> Enclosed is the valuation for the Hotels.com transaction. IAC had this valuation prepared specifically because the sellers took a different valuation than IAC. IAC is very comfortable with this valuation as we told Deloitte & Touche that it would be challenged by the IRS and to prepare the valuation to stand up to a review by the IRS. A great deal of time, effort and expense was taken to arrive at the proper valuation.

Weiss Depo. Ex. 17 at US1021.

Hotels.com now takes the position that the value of the Restricted Shares should be $16 per share, based on a claim that it first asserted mid-way through this litigation that an agreement existed which required both the Plaintiffs and Hotels.com to report the value of the Restricted Shares at $16 per share. The fact that Hotels.com obtained an appraisal of the Restricted Shares from Deloitte & Touche and used the weighted average of $10.18 per share value during the audit and in it tax returns for 2001-2004 (and not the $16 per share value, which would have minimized its taxes and thus been more beneficial to it) demonstrates that no such agreement existed. Hotels.com also takes the alternate position that the fair market value of the Restricted Shares was $23.625 – 50% ***above*** the IPO price set by HRN. Hotels.com's alternate position is based upon a "new" appraisal obtained in this litigation and its assertion -- first raised six years after the Restricted Shares were issued and contrary to its tax returns, its Claim for Refund, its Complaint, and all of the evidence in this case -- that the Restricted Shares were issued on March 1, 2000. Hotels.com's new litigation positions are disingenuous, lack credibility, and are completely at odds with the facts of this case. It is no wonder that Hotels.com seeks to exclude all evidence of its prior positions.

---

[1] In 2004, Hotels.com was a wholly owned subsidiary of InterActiveCorp ("IAC"), which was formerly known as USA Networks, Inc.

**B. The Admissions Made By Hotels.com in Audit and in its Tax Returns Contradict its Litigation Position and Should Not Be Excluded Based On a Rule Designed to Protect the IRS's Internal Administrative Analysis.**

Hotels.com mistakenly argues that its statements at audit and on its tax returns for years 2001, 2002, 2003, and 2004 should be excluded. While it is true that, as a general rule, that courts "will not look behind a deficiency notice to examine the evidence used, the propriety of ***the Commissioner's motive***, or the administrative policy or procedure in making his determinations," (*Vallone v. Comm'r*, 88 T.C. 794, 806 (1987) (emphasis added)), this general rule applies only when attempting to examine ***the actions of the IRS*** at the audit level. None of the cases relied upon by Hotels.com apply this rule to exclude evidence provided by or admissions made by a taxpayer during audit or in its tax returns. *Id.*; *see also Jackson v. Comm'r*, 73 T.C. 394, 400 (1979); *Greenberg's Express, Inc. v. Comm'r*, 62 T.C. 324, 327 (1974); *Human Eng'g Inst. v. Comm'r*, 61 T.C. 61, 66 (1973); *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000) ("In tax refund suits, factual issues are tried *de novo* in this court, with no weight given to subsidiary ***factual findings made by the Service*** in its internal administrative proceedings.") (second emphasis added).

Hotels.com fails to explain how or why this rule should be extended to admissions made by a taxpayer at the audit level or in the taxpayer's tax returns with respect to the valuation issues in this action. The evidence Hotels.com seeks to exclude from consideration is not the factual findings of the IRS; Hotels.com wants the Court to disregard the admissions made by and the positions taken by Hotels.com -- a taxpayer who voluntarily intervened as a party to this case. *See, e.g.*, *LeBouef v. Comm'r*, 82 T.C.M. (CCH) 685, 687 (2001); *see also Lare v. Comm'r*, 62 T.C. 739, 750 (1974), *aff'd*, 521 F.2d 1399 (3d Cir. 1975) (a taxpayer's statements on a tax return ***are*** admissions against the taxpayer); F.R.E. 801(d)(2) (an admission by a party opponent under the rules is a "statement . . . offered against a party and is (A) the party's own statement, in

either an individual or a representative capacity . . ."). Accordingly, Hotels.com's attempt to avoid its own admissions through a rule designed to protect the IRS administrative analysis should be rejected.[2]

**C. Hotels.com's Offering of its Valuation Report was a Statement of its Position, Not a Part of Any Settlement Negotiations.**

Hotels.com also argues that Federal Rule of Evidence 408 ("Rule 408") bars the introduction of evidence related to the audit. Rule 408 provides:

> Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: (1) furnishing or offering or promising to furnish -- or accepting or offering or promising to accept -- a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim . . . .

F.R.E. 408. In *Froehlich v. Commissioner*, the Court used a "totality of the circumstances" test to determine whether statements made by a taxpayer to the IRS during a meeting were statements made during settlement negotiations. *Froehlich v. Comm'r*, 72 T.C.M. (CCH) 1130, 1133-35 (1996). Hotels.com offers no evidence that its discussion with the IRS during the audit were settlement negotiations and, thus, Rule 408 does not apply and any statements are party admissions under Rule 801.

Hotels.com was represented at audit by sophisticated and experienced in-house tax practitioners. As evidenced by the statement of Eric DeGraw, Hotels.com went into audit

[2] Hotels.com erroneously claims that the $16 per share value reported by Hotels.com in its 2000 income tax return should be considered an admission against Mr. Diener. A September 24, 2001 email from Mr. Diener demonstrates that both Mr. Diener and Mr. Litman objected to the use of the $16 per share value and informed both Viren Ghandi (HRN's Senior Director of Finance) and Mel Robinson (HRN's Chief Financial Officer) of that objection. Diener Depo. Exhibit 63. Mr. Robinson then worked with Eric DeGraw, Director of Tax of HRN's parent company, to obtain a valuation of the Restricted Shares from Deloitte & Touche.

fully prepared to defend its position that $10.18 was the value of the Restricted Shares for tax purposes. Hotels.com made these admissions knowing that they might later be used against it. Hotels.com's admissions at audit were not a part of settlement negotiations, and Hotels.com provides no evidence to show otherwise. Rather, the statements made by Hotels.com at audit were assertions of its positions related to the tax value of the Restricted Shares, and Hotels.com communicated these positions (and provided a copy of the Deloitte Analysis) to IRS Agent Susan Weiss orally and in writing. Hotels.com adopted the Deloitte Analysis as its valuation position in its 2001-2004 tax returns, never asserted that an agreement existed that required Hotels.com and the Plaintiffs to value the Restricted Shares at $16 per share for tax purposes, asserted that a date other than the March 1, 2000, was the proper date on which the Restricted Shares were issued, and asserted that the $16 IPO price was the proper starting point against which to apply lack of marketability discounts. All of these positions conflict with Hotels.com's current litigation position.[3]

Even if the statements made by Hotels.com at audit are considered part of settlement negotiations, the "other purpose" exception to Rule 408 applies, and the statements are admissible. Rule 408 states that evidence of offers to compromise is not admissible "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity

[3] None of the exhibits introduced at Mr. DeGraw's deposition and included on Plaintiffs' Exhibit List concern or were created for "settlement negotiations." For example, Plaintiffs' Exhibit 48 is the 2001 Deloitte & Touche engagement letter with USA Networks, Inc. (HRN's parent), Plaintiffs' Exhibit 51 is a draft of the Deloitte Analysis from 2001, and Plaintiffs' Exhibit 9 is the 2001 Deloitte Analysis sent by Eric DeGraw to the IRS to substantiate HRN's position ($10.18 per share), and his cover letter. These documents, created or used for purposes of valuing the HRN restricted stock in 2000, 2001, 2002, 2003 and 2004, are not now inadmissible in this case merely because they may have also subsequently been sent to the IRS during the audit to substantiate Hotels.com's return positions. *See* Rule 408, Federal Rules of Evidence, Advisory Committee Notes (2006 Amendment) (..."the Rule cannot be read to protect pre-existing information simply because it as presented to the adversary in compromise negotiations.").

or amount . . . ." F.R.E. 408(a). But if the evidence is offered for another purpose, Rule 408 does not require its exclusion. F.R.E. 408(b); F.R.E. 408 Advisory Comm. Note ("Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule."). *See also United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1994) (evidence of settlement negotiations admitted under "other purpose" exception for purpose of showing taxpayer's "knowledge and intent regarding his obligation to report and pay taxes" on earnings).

Hotels.com's statements are admissible under the "other purpose" exception for three reasons. First, Hotels.com's statements are admissions by a party-opponent under Federal Rule of Evidence 801(d)(2) (discussed above). Second, the statements are admissible to rebut Hotels.com's claim that an agreement existed to report the fair market value of the Restricted Shares at $16 per share. Third, Hotels.com's statements are admissible under the "other purpose" exception because the statements provide evidence of the reasonableness of Plaintiffs' reliance on the BVS analysis in reporting the value of the Restricted Shares. As discussed more fully in Plaintiffs' Responses to Motions in Limine regarding KPMG's review of the BVS Valuation, Defendant has asserted $5 million in penalties against Plaintiffs under § 6662.[4] Section 6662 provides a defense -- if Plaintiffs acted in good faith and in reasonable reliance on the advice of professional advisors and appraisers in reporting the fair market value of the shares on their income tax returns, Plaintiffs are not liable for § 6662 penalties. Defendant argues that the facts and circumstances that should be considered in the § 6664 reasonable reliance analysis include the "obvious flaws in the [BVS] valuation." United States' Pretrial Mem. of Contentions of Fact and Law at 27. While Plaintiffs dispute that characterization, both the $10.18 per share

[4] References to "Section" or "§" are to the Internal Revenue Code of 1986, as amended, unless otherwise noted.

valuation position taken by Hotels.com and its reliance on the Deloitte Analysis -- which employed the same valuation methodology relied upon by BVS -- is relevant to the penalty issue. *See, e.g.*, *Estate of Thompson v. Comm'r.*, 88 T.C.M. (CCH) 48, 64 (2004) (court held that both valuation methodology and valuation positions of other parties to the case and their experts are relevant factors to consider in determining whether taxpayer acted reasonably and in good faith with respect to the valuation of property). Consequently, statements by Hotels.com are admissible under the "other purpose" exception to Rule 408.

"It is well settled that the valuation of an asset in a tax return [based on an appraisal] is an admission by the taxpayer when that valuation is inconsistent with a subsequent position taken by the taxpayer." *Estate of Hatchett v. Comm'r,* 58 T.C.M. (CCH) 801, 806 (1989); *Estate of Ford v. Comm'r*, 66 T.C.M. (CCH) 1507, 1511 (1993), *aff'd*, 53 F.3d 924 (8th Cir. 1995) ("A valuation stated on a tax return constitutes an admission, which can be overcome only by cogent evidence that it is wrong."). Hotels.com's reliance on *Grill* and *Sundstrand Corp.* does not support its claim that Hotels.com's prior inconsistent valuation position should be excluded from evidence. *See Grill v. United States*, 303 F.2d 922 (Ct. Cl. 1962); *Sundstrand Corp. v. Comm'r*, 89 T.C. 810 (1987). In *Grill*, the Court noted that "[i]t is well settled that the valuation of an asset by a taxpayer in his tax return is an admission against interest which, in the absence of other impugning evidence, may be resorted to for determining market value." *Grill*, 303 F.2d at 927. The *Grill* Court did not hold, as Hotels.com asserts, that the simple introduction of valuation evidence inconsistent with a prior valuation position can overcome the party's admission and make the prior inconsistent valuation position inadmissible. Likewise, the *Sundstrand* Court refused to allow the admission of post-taxable years' financial data because the later years' sales and profit figures did not bear a direct relationship to prices,

sales, and profits associated with the sale of any individual product in a previous year. The Court thus found that the proffered evidence "had low, if any, probative value." *Sundstrand*, 89 T.C. at 815. In the present case, however, Hotels.com amortized the value of the Restricted Shares over a 15-year period. Each year's amortization is dependant on the original value of the Restricted Shares. The fact that Hotels.com changed its valuation position regarding the value of the Restricted Shares for amortization purposes in its 2001, 2002, and 2003, and 2004 income tax returns in a manner inconsistent with its current litigation position is highly relevant to this case.

**D. Eric DeGraw's Testimony Constitutes Party Admissions and Should Be Admitted.**

Hotels.com also erroneously argues that the testimony of Eric DeGraw should not be admitted as "inadmissible hearsay and/or improper opinion testimony by a lay witness." Mr. DeGraw's testimony is not hearsay. It reflects statements and actions of an agent of Hotels.com -- the very definition of a party admission. F.R.E. 801(d)(2).

Mr. DeGraw was the Director of Tax for IAC at all relevant times. He worked with and directed Mel Robinson, HRN's Chief Financial Officer, to obtain the Deloitte Analysis in 2001 and in formulating HRN's tax reporting position with respect to the value of the Restricted Shares. Mr. DeGraw represented Hotels.com during the audit of HRN's 2000 tax return in connection with the issues related to the value of the Restricted Shares. Mr. DeGraw's statements on behalf of Hotels.com to the IRS were clearly within the scope of his authority and, as such, are party admissions.

Furthermore, Hotels.com's argument that Mr. DeGraw's testimony constitutes opinion testimony is entirely without merit. Mr. DeGraw was testifying regarding actions taken by Hotels.com and its parent company. No opinion was involved. When Mr. DeGraw stated that Hotels.com was "comfortable" with the Deloitte Analysis, he was not expressing an opinion -- he was stating the position of Hotels.com.

For all of the above-mentioned reasons, Hotels.com's admissions made at audit and in its tax returns should be admitted into evidence. Hotels.com cannot hide from these admissions behind rules designed to protect the IRS or settlement negotiations.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request Hotels.com's Motion in Limine be denied and evidence of admissions by Hotels.com to the IRS in its tax returns and at audit be admitted.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated: April 13, 2007

By: John W. Porter

John W. Porter
Attorney of Record
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1597
(713) 229-1522 (FAX)

Stephanie Loomis-Price (Of Counsel)
J. Graham Kenney (Of Counsel)

COUNSEL FOR PLAINTIFFS-COUNTERDEFENDANTS, DAVID S. LITMAN, MALIA A. LITMAN, ROBERT B. DIENER, AND MICHELLE S. DIENER