**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-956T** |
| **ROBERT B. DIENER and MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a**<br>**HOTEL RESERVATIONS NETWORK, INC.)**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant** | ) | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**HOTELS.COM'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ADMINISTRATIVE SETTLEMENT NEGOTIATIONS PRIOR TO ISSUANCE OF NOTICE OF DEFICIENCY**

Plaintiffs Hotels.com and Subsidiaries ("Hotels.com") moved, on April 5, 2007, for an order excluding all evidence concerning administrative settlement negotiations prior to the issuance of the Notice of Deficiency in this case, under long-standing Court of Federal Claims authority, and Federal Rule of Evidence 408. Defendant United States and Plaintiffs-Counterdefendants David S. Litman, Malia A. Litman, Robert B. Diener and Michelle S. Diener (the "Litmans and Dieners") have objected to Hotels.com's Motion on various grounds. We

address their misstatements and misleading statements of fact below, we continue to rely on the argument set forth in our Motion *in Limine*, and we conclude that their objections are lacking in merit and that Hotels.com's motion should be granted for the reasons explained below.

**ARGUMENT**

As a preliminary matter, Hotels.com maintains that the Amended and Restated Asset Purchase Agreement ("Agreement") is dispositive as to the proper value of the contingent purchase price paid to the Litmans and Dieners in the form of HRN restricted stock. Any other reading would render Section 3.4 of the Agreement meaningless and would ignore the clear language of Sections 7.11.3 and 7.15 which set forth the method for computing the number of shares, the value or method of valuation of those shares, and the timing of the receipt of those shares.[1] However, should the Court find that the clear terms of the Agreement do not control, it would then consider expert valuation testimony in determining the value of the HRN restricted shares.

The United States' criticisms of Hotels.com's Motion contain misstatements of fact, and are dubious in light of its own motion to limit the testimony of IRS Agent Susan Weiss.[2] The United States begins its objections with the misguided assertion that no settlement negotiations

---

[1] Section 7.15 specifically states the $81.6 million value, which is the amount reported on the HRN 2000 Return and to the SEC and the world by HRN in its public filings as the value of the 5,100,000 shares received pursuant to that section. Section 7.11.3 specifically provides for: "a number of shares of common stock of [HRN] *having an aggregate value (based on the price per share in the IPO)* equal to the product of (x)(i) the total issued and outstanding shares of [HRN] immediately prior to the IPO (which shall include the shares issued under Section 7.15 simultaneous with the IPO) times the IPO price minus (ii) the Net Debt Capital multiplied by (y) 10%." (emphasis added). Thus, that section sets forth the method of valuation. Again, the value of the 4,899,900 shares issued pursuant to Section 7.11.3 was reported on the HRN 2000 Return and to the SEC and the world at the value mandated by the Amended and Restated Asset Purchase Agreement. Both section 7.11.5 and 7.15 also set forth the timing of receipt of those shares.

[2] See United States' Motion *in Limine* to Preclude Examination by Plaintiffs of IRS Agent Susan Weiss on Certain Subjects at Trial, filed with the Court on April 5, 2007.

took place during the audit of Hotels.com's 2000 Form 1120, and that "…the IRS viewed its audit of Hotels.com as a routine audit during which Hotels.com was requested to provide information to substantiate its return position." Defendant's own documents produced during discovery belie this claim. By Information Document Request dated January 5, 2005, the examining agent requested that Hotels.com consider and propose a means for the parties to reach a settlement (a very non-routine request during an exam):[3]

> Attached is the Service's preliminary valuation of the HRN, Inc. restricted stock issued in connection with the acquisition of the assets of TMF, Inc. and HRN Marketing Corporation. *Please review the valuation and let me know how you would like to proceed in order to determine a value to which all parties involved would agree.*

(emphasis added). For the government to claim that it is unaware of any settlement negotiations, when IRS agent Weiss requested such negotiations, is surprising and misleading. Simply because a settlement was not reached does not mean that the discussions between the IRS and Hotels.com are admissible. Federal Rule of Evidence 408 protects compromising statements made in anticipation of settlement as well.

Further, the United States' position on this point is inconsistent vis-à-vis the parties. On the one hand, the government objects to the Litmans' and Dieners' proposed examination of Ms. Weiss about the IRS' audit valuation of the HRN restricted stock and about the audits generally as irrelevant under *Greenberg's Express* and its progeny, and that it is also unnecessary and cumulative. On the other hand, the government's objections to the present motion fail to even address Hotels.com's argument that the Court should not look behind the notice of deficiency to

---

[3] A copy of that IDR is attached hereto as Exhibit 1.

consider audit evidence, and instead focus solely on the issue of whether the evidence falls within Federal Rule of Evidence 408.[4] The United States simply cannot have it both ways.

The Litmans' and Dieners' response contains similar misstatements or misleading statements of fact, most of these in connection with Eric DeGraw. First, despite DeGraw testifying that he did not know whether he had authority to speak on behalf of Hotels.com during the audit, and that he was not handling the audit on behalf of Hotels.com, Litmans and Dieners incorrectly portray DeGraw as Hotels.com's "representative" before the IRS. His testimony makes clear that he was not Hotels.com's "representative" or agent in the audit. DeGraw was asked this very question in his deposition in this case:

> Q: Did you have authority to speak on behalf of Hotels.com with respect to the issues involving -- involved in the 2000 return's audit?
>
> A: I am not sure I -- I'm not sure of that answer.

DeGraw Dep. at 99:3-7. Moreover, DeGraw plainly did not "direct" HRN's CFO, or "formulat[e] HRN's tax reporting position with respect to the value of the Restricted Shares," as DeGraw testified in his deposition that he learned for the first time during the audit exactly how the value of those shares was reported on HRN's federal income tax return for the year 2000.[5] He also learned from the agent how HRN reported the value of the stock on its original tax

---

[4] The Litmans and Dieners have argued that this Court's long-standing practice of refusing to look behind the notice of deficiency in tax refund suits is not applicable here. This argument is misguided. The principle of *Greenberg's Express* does not operate on a party-by-party basis, but rather prevents entirely consideration of the record that was developed at the administrative level. Moreover, Hotels.com disputes Litmans' and Dieners' characterization of any evidence concerning the audit as a taxpayer admission against it.

[5] *See* DeGraw Dep. at 87:9-18. On the contrary, Diener formulated HRN's tax reporting position concerning the shares at issue when he directed Gandhi and Robinson to file HRN's 2000 Form 1120 with white-out obscuring information concerning the share value, rather than as prepared by Ernst & Young.

returns for 2001, 2002, and 2003. *See* DeGraw Dep. at 90:16-22. Hotels.com has filed protective refund claims for all of these years. Finally, Mr. DeGraw testified that he did not sign HRN's 2000 return, *see* DeGraw Dep. at 42:2-13, and that he did not make the decision to apply a marketability discount against the $16 per share IPO price in calculating HRN's amortization deduction for that return. *See* DeGraw Dep. at 73:4-13.

## CONCLUSION

For the reasons explained in its motion and restated above, Hotels.com respectfully requests that the Court grant its Motion *in Limine* to Exclude Evidence of Administrative Settlement Negotiations Prior to Issuance of Notice of Deficiency. Exhibit A of that motion set forth those portions of Eric DeGraw's deposition testimony designated by the Litmans and Dieners that should be excluded as either lacking in foundation, inadmissible hearsay, testimony relating to settlement negotiations, or improper opinion testimony by a lay witness.[6] Documents relating to the IRS administrative negotiations that should be excluded were set forth on Exhibit B. Hotels.com also reiterates its request that any trial testimony relating to administrative settlement negotiations be excluded by the Court.

April 19, 2007

Respectfully submitted,

s/ Kim Marie K. Boylan____
Kim Marie K. Boylan
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
(202) 637-2235
Attorney of Record

---

6 Again, to the extent the Court grants Hotels.com's Motion, these sections also should be excluded from Hotels.com's and the United States' designations as well. However, to the extent Hotels.com's Motion is denied, Hotels.com would request that its protective designations of Mr. DeGraw's testimony be admitted. *See* Plaintiffs' Motion for Leave to File Deposition Testimony under RCFC 32(a)(3) and Appendix A ¶14(A)(3), filed Feb. 26, 2007, Ex. 3.

Kari M. Larson
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel

Jennifer S. Crone
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
Of Counsel