INTERNAL REVENUE SERVICE
4050 ALPHA RD
MC:4627NWSAT
FARMERS BRANCH, TX. 75244

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Eric DeGraw | FROM: Susan Weiss |
| COMPANY: IAC Interactive Corp | DATE: 1/5/2005 |
| FAX NUMBER: 212.632.9512 | TOTAL NO. OF PAGES INCLUDING COVER: 5 |
| PHONE NUMBER: 212.314.7380 | SENDER'S TELEPHONE NUMBER: 972.308.1287 |
| RE: HRN, Inc. Information Document Request #7 | YOUR REFERENCE NUMBER: |

☐ URGENT ☑ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

NOTES/COMMENTS:

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by a telephone call, and return the communication at the address via the United States Postal Service. Thank you.

| Form 4564 Rev. Apr 2003 | Department of the Treasury<br>Internal Revenue Service<br>INFORMATION DOCUMENT REQUEST | | Request Number<br>007 |
|---|---|---|---|
| TO: (Name of Taxpayer and Co. Div. or Branch)<br>(Include Entity Number)<br><br>HRN, Inc. & Subsidiary<br>75-2817683 | | Subject<br>Intangible assets and amortization expense | |
| | | Sain No.<br>526 | Submitted to:<br>Eric DeGraw, VP Tax<br>IAC Interactive |
| Please return with requested documents to agent named below. | | Dates of Previous Requests<br><br>Various | |

**Description of Documents Requested**

Attached is the Service's preliminary valuation of the HRN, Inc. restricted stock issued in connection with the acquisition of the assets of TMF, Inc. and HRN Marketing Corporation. Please review the valuation and let me know how you would like to proceed in order to determine a value to which all parties involved would agree.

*IDR Response Due Date:* *January 26, 2005*

*Date Information Received by IRS:* ______________________________

*(Initials)* *(Date)*

| From: | Name and Title of Requester<br>Susan Weiss, Internal Revenue Agent | Date<br>January 5, 2005 |
|---|---|---|
| | Office Location-IRS Telephone No. 972-308-1287<br>4050 Alpha Rd, MC4627NWSAT<br><br>Farmers Branch, Texas 75244 | |

Form 4564 - LMSB

**INTERNAL REVENUE SERVICE**
**MEMORANDUM**

DATE: December 21, 2004

TO: Susan Weiss

FROM: Ruth Haney
Economist

RE: Consultation Referral - HRN Inc. & Subsidiary

---

The purpose of this report is to provide a limited scope valuation of restricted stock. This analysis is limited to a determination of an appropriate marketability discount on stock issued in connection with the sale of assets and liabilities of TMF, Inc. and HRN Marketing Corp., with a Feb. 24, 2000 valuation date. Analysis of the appropriate discount is required to estimate the fair market value of the restricted stock. This memorandum summarizes my findings. A full report would be required to further develop and refine all of the issues.

For the purposes of this report, fair market value is defined as the price at which property would change hands between a willing buyer and a willing seller when the former is not under compulsion to buy and the latter is not under compulsion to sell, both parties having reasonable knowledge of the relevant facts.

Based on my analysis, the fair market value of the 9,999,990 shares as of the February 24, 2000 valuation date is $87,109,035. This is based on a Black Scholes Options Pricing Model analysis reflecting the holding periods stipulated for the restricted shares. The Black Scholes model provides a proxy for marketability discounts on restricted stock.

Since the restricted stock is not liquid, a marketability discount is appropriate. At issue is the appropriate level of discount given the facts in this case. As part of my due diligence, I reviewed valuation appraisals prepared by Business Valuation Services on behalf of the seller, and Deloitte & Touche on behalf of the buyer. My analysis is generally in line with the Deloitte & Touche study although the resulting discounts calculated are slightly higher. The following is a summary of the valuation estimate I compiled after reviewing the facts of this case, using Black Scholes inputs:

| Year after Initial Public Offering | Shares Available For Sale | Value at IPO Price | Average Holding Period | Options Discount per Black Scholes | Marketability Discount | Adjusted Value Net of Discount | Resulting Price Per Share |
|---|---|---|---|---|---|---|---|
| One | 1,959,960 | $ 31,359,360 | 1 | 33.89% | $ 10,627,687 | $ 20,731,673 | $ 10.58 |
| Two | 489,990 | $ 7,839,840 | 2 | 42.71% | $ 3,348,621 | $ 4,491,219 | $ 9.17 |
| Three | 489,990 | $ 7,839,840 | 3 | 46.97% | $ 3,682,401 | $ 4,157,439 | $ 8.48 |
| Four | 7,059,960 | $ 112,959,360 | 4 | 48.89% | $ 55,230,657 | $ 57,728,703 | $ 8.18 |
| *Sum* | *9,999,900* | *$ 159,998,400* | | | *$ 72,889,365* | *$ 87,109,035* | $ 8.71 |

My analysis assumes a constant per share and exercise price at $16.00, which is the reported IPO price. Also included in the calculations is an annual riskless rate of return at 6.69%, which corresponds to the yields for government bonds over an intermediate (5 year) time horizon.[1]

Additionally, volatility for the stock is assumed to be 100% based on an analysis of similar stocks during the same time horizon. To determine volatility, stock price data was collected for twelve weeks prior to the valuation date for eBay, Egghead, Expedia, Amazon, Priceline, Cnet, Doubleclick, and Network Solutions. These are representative of stock volatility trends with respect to internet companies conducting transactions online. D&T selected volatility rates ranging from 70 to 90%, and BVS used 100% in their analysis.

As part of their Black Scholes calculations, BVS captures the future value of the current price (IPO price of $16.00).[2] In the BVS appraisal, the stock price is compounded annually by the risk-free rate for each period evaluated. BVS states that this is done in order to reflect a fully hedged price for the stock. The effect of this treatment is that the discounts are driven higher than they would otherwise have been. It is my opinion that this step taken by BVS is not appropriate and explains the relatively high discounts generated by the BVS model. Deloitte & Touche does not compound the stock price but uses a lower risk free rate which is tied to T-bills. This results in lower marketability discounts.

BVS results also reflect assumptions on the timing of sales for the restricted stock based on SEC 144A rules. SEC rules apply to market or public sales - this additional layer of complexity is not necessary since the restricted shares may be privately sold at any time.

Court decisions vary in terms of the percent allowed for marketability. Cases cited by the appraisers in this case ranged between 30 and 40% although cases involving lower percentages also exist.

Other empirical studies reviewed as part of my analysis include one done by Bajaj, which addresses marketability discounts.[3] Although IPO studies have been widely used as a basis for determining marketability discounts, Dr. Bajaj's analysis suggests that they are not reflective of an arms' length transaction and therefore do not reflect fair market value. Dr. Bajaj's justification for this position stems from his observation that pre-IPO buyers are usually insiders, venture capitalists who provide expertise and services to the firm. Therefore, the IPO discount may reflect compensation for the relationship rather than purely lack of marketability. Dr. Bajaj concludes that "controlling for all other factors influencing private discounts, an issuer would have to concede an additional discount of 7.23% simply to compensate the buyer for lack of marketability." (Bajaj p.107).

An earlier study done by Hertzel and Smith estimates the marketability discount at 13.5%.[4] Dr. Bajaj references this study's shortcomings which include the relative age of the data (pre 1990s), and degree

---

[1] Ibbotson, 2004 Valuation Book, table B-13, pg 243
[2] Business Valuation Services Appraisal, pg 30
[3] Bajaj, Mukesh, Dennis, David, Ferris, Stephen, and Sarin, Atulya, *Firm Value and Marketability Discounts*, Journal of Corporation Law, Vol. 27, No. 1, p. 98
[4] Hertzel, Michael and Smith, Richard. L., *Market Discounts and Shareholder Gains for Placing Equity Privately* 48 J. Fin. 459, 459-469 (1993)

of uncertainty due to lack of cross-sectional determinants of the discount. An additional study by Wruck concluded that for the period under review (1979-1985), the discount averaged 17.6%.[5]

These studies do not capture the impact of the holding periods on the restricted stock in this case and therefore they understate the marketability discounts. To recap, discounts on the restricted stock ranging from 33 to 48% would appear to be reasonable based on the holding periods and other key assumptions relevant to this case.

[5] Wruck, K.H., *Equity Ownership Concentration and Firm Value: Evidence From Private Equity Financings,* Journal of Financial Economics, pages 3-28 (1989)