**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DAVID S. LITMAN and**
**MALIA A. LITMAN,**

**Plaintiffs-Counterdefendants**

**vs.**

**THE UNITED STATES,**

**Defendant-Counterplaintiffs.**

**No. 05-956 T**

---

**ROBERT B. DEINER and**
**MICHELLE S. DEINER,**

**Plaintiffs-Counterdefendants**

**vs.**

**THE UNITED STATES,**

**Defendant-Counterplaintiff.**

**No. 05-971 T**

---

**HOTELS.COM, INC. AND SUBSIDIARIES**
**(f/k/a HOTEL RESERVATIONS NETWORK,**
**INC.**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**No. 06-285 T**

**(Christine O. C. Miller)**

**THE UNITED STATES' POST-TRIAL BRIEF**
**REGARDING THE VARIANCE DOCTRINE**
**AND HOTELS.COM'S JUDICIAL ADMISSIONS**

**Introduction**

As counsel for the United States stated at the beginning of trial, these cases concern the Litmans, Dieners and Hotels.com's "agreement to disagree" about the valuation for 10 million shares of HRN restricted stock. In 2001, the plaintiffs knowingly decided to use different values for the HRN restricted stock in reporting their respective incomes, and also decided not to tell the IRS (in completed Forms 8594) about their differing valuations.

Although they disagreed – and still disagree – about the appropriate discount for the HRN restricted stock, there was, nevertheless, no dispute about two fundamental points. First, the HRN restricted stock was actually issued to the Litmans and Dieners as of February 24, 2000. The Litmans, Dieners and Hotels.com all state in their pleadings or discovery responses that the stock was issued on that date, and the evidence presented at trial confirms this fact.

Second, plaintiffs also had long-agreed – at least from 2001 until final expert reports were exchanged in this case – that the HRN restricted stock is properly valued at a discount from the $16 per share IPO price for HRN unrestricted stock, set on February 24th. The Litmans and Dieners filed their 2000 tax returns based on a value discounted from the $16 IPO price, and Hotels.com also valued the stock at a (smaller) discount from the $16 IPO price in its 2001, 2002, 2003 and 2004 tax returns. In fact, every person to examine the issue over the past six years – except Hotels.com's new trial expert – has valued the HRN restricted stock at a discount from the $16 IPO price.

The facts regarding these considered and long-standing valuation positions were presented at trial. Pursuant to the Court's Order of May 16, 2007, the United States now submits this post-trial brief addressing the effect of Hotels.com's admissions, and the variance doctrine,

on the Court's determination of one, consistent value for the HRN restricted stock.

**Background**

**I. ISSUANCE OF THE HRN RESTRICTED STOCK**

Over a year ago, on April 10, 2006, Hotels.com filed its Complaint seeking a tax refund. In the claim for refund attached to its Complaint, Hotels.com stated, as a matter of fact, as follows:

> 2. On February 2, 2000, the asset purchase agreement was amended and restated ("Amended Purchase Agreement"). Pursuant to the Amended Purchase Agreement, Hotels.com also agreed to issue Hotels.com class A common stock ("Section 7.15 Shares") to the seller in exchange for the sellers' release of any remaining contingent payment obligations based on the Company's performance. *Pursuant to the Amended Purchase Agreement, on February 24, 2000, Hotels.com issued the sellers 5,1000,000 shares of class A common stock.*
>
> 3. On March 1, 2000, Hotels.com completed an initial public offering for 6.2 million shares of its class A common stock at $16.00 per share. *On February 24, 2000, Hotels.com issued the sellers 4,899,900 shares of class A common stock ("Section 7.13.1 Shares").*

(See Complaint, Exhibit 6, p. 110, emphasis added) These allegations are, of course, part of Hotels.com's pleadings in this case. *See,* RCFC 9(h)(6) and 10(c).

Hotels.com then alleges in its Complaint, as it did in its claim for refund, that it is due a refund based on a valuation of the HRN restricted stock at $16 per share, or, in the alternative, "in amounts consistent with such other evidence of the fair market value of the IPO Shares *as of the date of issuance*, which value may be greater than or less than the basis used in connection with the original 2000 Federal Income Tax Return or herein." (See Complaint, pp. 5 - 6, emphasis added)

Hotels.com's pleadings regarding the February 24th issuance date of the stock are supported by the evidence introduced at trial. Most significantly, the HRN restricted stock certificates, along with the accompanying memoranda of Chase Mellon Shareholder Services and Paul, Weiss, Rifkind, Wharton & Garrison, HRN's stock transfer agent and registrar and legal counsel, respectively, were admitted into evidence. (See Joint Exhibit 13.) These demonstrate that the stock was, in fact, issued on February 24th, and that the Litmans and Dieners became the registered owners of the stock on that date. Hotels.com's protective refund claims for the years 2001 and 2002 also were introduced into evidence. (See Joint Exhibits 29 and 30.) Each of these claims, filed with the IRS on May 12, 2006, (during the discovery phase of these cases) again states that the HRN restricted stock was issued to the Litmans and Dieners on February 24, 2000. (See Joint Exhibits 29, p. HC001626, and 30, p. HC001659.)

## II. HRN'S PREVIOUS VALUATIONS OF ITS STOCK

As noted, the Litmans, Dieners and Hotels.com's disagreement about the valuation of the HRN restricted stock had been limited to the appropriate valuation discount to be applied to the $16 IPO price. In 2001, upon learning of the Litmans and Dieners' $4.54 per share valuation, HRN hired its own appraiser, Deloitte & Touche, to value the stock. Deloitte determined that discounts of 25% - 40% were appropriate for the four tranches of stock – discounts significantly lower than the 50% - 79% used by the Litmans and Dieners. (See LD Exhibit 51). The lower Deloitte discounts were presented to HRN's board of directors**,** which, in addition to discussing the reduction in tax deductions this fair market valuation would cause, expressed a concern that using a different valuation than the Litmans and Dieners would trigger an IRS audit. (See LD Exhibits 64 and 65.) HRN nevertheless adopted the Deloitte valuation, applied the discount to



2488525.1

the $16 IPO price for the unrestricted stock and reported a value for the HRN restricted stock of $10.15 per share in its tax returns for the years 2001, 2002, 2003 and 2004. (See LD Exhibit 125, ¶ 5(a).) Although an amended return for 2000 was never filed by HRN adopting the Deloitte valuation, both Eric DeGraw and Mel Robinson, the two people then responsible for HRN's tax reporting, testified that an amended return should have been filed using the same $10.15 per share value. (See Trial Transcript, pp. 498, 519 -20; DeGraw Dep. p. 87.)

Consistent with the valuation determinations described above, HRN also took the position, in another context, that, before public trading began, the $16 IPO price was the fair market value of HRN's *unrestricted* stock. In brief, HRN agreed, before the IPO, pursuant to certain stock option plans and agreements, to grant options to certain directors and employees. In each case, it determined that the exercise price for the options would be the "fair market value" of HRN's unrestricted stock on the date of grant, and that this fair market value was the $16 IPO price. (See LD Exhibit 22, ¶ 1 and Joint Exhibit 7, pp. 49 - 51.) From a pre-IPO standpoint, therefore, the $16 IPO price was HRN's estimate of the unrestricted stock's fair market value, both for its options and as the starting point for a discounted value of the restricted stock.

## Argument

### I. THE DATE OF ISSUANCE FOR THE HRN RESTRICTED STOCK IS UNDISPUTED

#### A. The HRN Restricted Stock Must be Valued as of February 24

Hotels.com has judicially admitted, in its Complaint, that the HRN restricted stock was issued on February 24, 2000. This admission is binding on Hotels.com, and withdraws the issue from any possible contention. *See e.g. Rhone Poulenc Agro, S.A. v. Dekalb Genetics Corp.,* 272

F.3d 1335, 1353 (Fed. Cir. 2001) and *Keller v. United States*, 58 F3d 1194, 1199 fn. 8 (7th Cir. 1995). Of course, Hotels.com has not even tried to contest this fact. No evidence was introduced at trial tending to support any other actual issuance date, and Hotels.com has never sought to withdraw or amend this admission in its Complaint.

Because the issuance of the HRN restricted stock on February 24th is established beyond dispute, the stock must be valued as of that date. *See e.g., United States v. Roush*, 466 F.3d 380, 385 (5th Cir. 2006). The fact that the stock might have been issued, or registered to the Litmans and Dieners, as of a different date is irrelevant. *See e.g. Commissioner v. National Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 149 (1974) ("...while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not.")

**B. Applicability of the Variance Doctrine**

Because Hotels.com's expert, Dr. Bajaj, initially valued the HRN restricted stock as of March 1, rather than February 24th, in his first written report, the issue of whether the variance doctrine might limit Hotlels.com's claims has been raised. The variance doctrine is based on the requirement that a taxpayer must file a claim for refund with the IRS, in accordance with the relevant regulations, before he or she can sue the United States for a refund in court. 26 U.S.C. § 7422(a). The applicable regulation provides as follows:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is

> claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

Treas. Reg. § 301.6402-2(b)(1). Courts have long found these provisions to state a "substantial variance rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corporation v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). Accordingly, any legal theory not expressly or impliedly contained in a claim for refund cannot be considered by a court, and a taxpayer cannot substantially vary at trial the factual bases presented to the IRS as support for a claim for refund. *Lockheed*, 210 F.3d at 1371.

Here, as noted above, Hotels.com has judicially admitted that the HRN stock was issued on February 24, 2000, and the stock certificates show that the Litmans and Dieners became the registered owners of the stock on that date. No evidence was introduced at trial contradicting these facts. In light of this conclusive factual evidence, the United States believes that there is no need to reach the legal question of whether the variance doctrine would bar Hotels.com from seeking to claim a different issuance and valuation date. The predicates for application of the variance doctrine – new or different facts or viable theories – were simply not presented at trial. Indeed, Hotels.com has never sought to amend its Complaint, which seeks a refund based on a valuation as of February 24, and the Court stated at trial that no factual basis or foundation had been presented for the March 1, 2000, valuation date used by Hotels.com's trial expert, Dr. Bajaj, in his first written report. His opinion as to a March 1 value was excluded. (See Trial Transcript, pp. 1247 - 49, 1251 - 54.)[1] At this point, therefore, the United States does not believe that the

[1] The Court stated that the date of issuance – February 24th – was the "most valid date" for a valuation but that it would allow testimony regarding February 25th as well for

Court needs to reach the variance doctrine to determine that the issuance and valuation date for the HRN restricted stock is February 24, 2000.[2]

With the February 24th issuance date conclusively established, the United States does not believe that the variance doctrine bars Hotels.com from claiming a value *on that date* for the HRN restricted stock greater than $16 per share. Hotels.com stated in its claim for refund that the stock could be worth in excess of $16 per share as of the February 24th issuance date. (See Complaint, Exhibit 6, p. 111.) The United States believes that a value above $16 for the HRN restricted stock as of February 24th would be both factually and legally wrong, but it is not asserting that Hotels.com is barred, under the variance doctrine, form trying to make that claim.

## II. HOTELS.COM'S ADMISSIONS REGARDING THE VALUE OF THE HRN RESTRICTED STOCK

In addition to the judicial admissions in its pleadings regarding the stock's issuance date, Hotels.com has made several evidentiary admissions relevant to the Court's determination of the HRN restricted stock's value. First, after obtaining a valuation from Deloitte & Touche, and review of that valuation by HRN's officers and directors, HRN (now Hotels.com) filed tax

---

"completeness." (See Trial Transcript, p. 1249). There is no factual basis for valuing the stock as of February 25, however. The use of February 25th by Mr. Mitchell, the Litmans and Dieners' expert, in a *draft* report, and by Mr. Bohlmann, in his significantly flawed, and unused, report cannot trump the primary evidence of the date of issuance of the HRN restricted stock – Hotels.com's admissions and the stock certificates themselves.

[2] A variance issue would be presented if Hotels.com were presenting new evidence or a colorable new theory. In *Lockheed*, for example, the plaintiff filed a motion, which the court deemed a motion to amend its complaint, seeking to introduce evidence of additional research expenses for which it sought a credit, but which had not been disclosed to the IRS with its claim for refund. The court found that these new expenses would constitute a substantial variance of the factual basis of Lockheed's claim. *Lockheed,* 210 F.3d at 1370 - 72. Here, Hotels.com's expert's opinion about value as of March 1 and February 25 was "dead upon arrival" – it can be rejected, without resort to the variance doctrine, because its lacks any factual predicate or basis.

returns for the years 2001, 2002, 2003 and 2004 stating, under penalty of perjury, that the HRN restricted stock is properly valued at an average of $10.15 per share. To arrive at this fair market valuation, HRN also took the position in those returns that the restricted stock is properly valued at a discount from the $16 per share IPO price for unrestricted HRN stock. (See LD Exhibit 125) These admissions, based on expert advice, and made before this litigation commenced, are persuasive evidence which this Court should consider. *See e.g., Grill v. United States*, 303 F.2d 922, 926 (Ct. Cl. 1962); *Waring v. United States*, 412 F.2d 800, 801 (3rd Cir. 1969) ("The valuation given in the return was an admission, and although it is not conclusive, the Tax Court was entitled to judge its weight as evidence."); and *Estate of Marsack v. Commissioner*, 288 F.2d 533, 536 (7th Cir. 1961) ("It was also proper for the Tax Court to consider that in 1951 and again in 1952, Sam Marsack himself had set a fair market value of $22,500 on the licensing agreements as of 1951. This was at a time which predates the present tax controversy.")

Second, HRN's use of the Deloitte fair market valuation for the HRN restricted stock in its 2001 - 2004 tax returns also contradicts Hotels.com's claim that the Amended and Restated Asset Purchase Agreement contained an agreement to value the stock at $16 per share. If there were such an agreement, there would have been no need to obtain separate fair market valuations. See e.g. *See, e.g., Marden Corporation v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986); *Gresham, Smith & Partners v. United States*, 24 Cl. Ct. 796, 801 (Cl. Ct. 1991); and *Northbridge Electronics, Inc. v. United States*, 175 Ct. Cl. 426 (Ct. Cl. 1966) ("The action of the parties in performing and accepting performance of a contract before a controversy arises is highly relevant in determining what the parties intended....").

Finally, HRN's use of the $16 per share IPO price as the "fair market value" exercise

price for HRN unrestricted stock options it structured, and agreed to, before the IPO occurred, is an admission that that same IPO price is also the appropriate price against which to apply a discount to determine the value of the HRN restricted stock in this case.

**Conclusion**

Based on the above admissions of Hotels.com, and other evidence presented at trial, the Court should determine that February 24, 2000, is the proper valuation date for the HRN restricted stock, without invoking the variance doctrine, and should also determine values for the four tranches of HRN restricted stock, as of that date, at discounts from the $16 IPO price for HRN unrestricted stock.

Respectfully submitted,

*s/ Cory A. Johnson*
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Eileen J. O'Connor
Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Steven I. Frahm*
Of Counsel

Attorney for The United States

Dated: May 31, 2007