**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **v.** | ) | **No. 05-956T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **ROBERT B. DIENER and MICHELLE S. DIENER,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **v.** | ) | **No. 05-971T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.),** | ) | **No. 06-285T (Judge Christine O.C. Miller)** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' RESPONSE TO THE UNITED STATES' POST-TRIAL BRIEF**
**PURSUANT TO THE COURT'S ORDER DATED MAY 16, 2007**

Pursuant to the Court's order of May 16, 2007, Plaintiffs-Counterdefendants, David S. Litman, Malia A. Litman, Robert B. Diener, and Michelle S. Diener ("Plaintiffs" or the "the Litmans and the Dieners"), file this Response to the United States' Post-Trial Brief. Plaintiffs state as follows:

## I. Summary.

The principal issue in this case is the fair market value of almost 10 million shares of stock, most of which were prohibited from being sold for four years, issued to the Litmans and the Dieners ("the Restricted Shares") by Hotels Reservation Networks ("HRN") in 2000.

The Litmans' and the Dieners' valuation position from 2000 to the present date has remained consistent and correct; namely, that (1) the Restricted Shares were issued on February 24, 2000; (2) the starting point for determining the value of the Restricted Shares is the $16 per share IPO price; and (3) the $16 per share IPO price should be reduced by the lack of marketability discount determined for each of the four traunches of Restricted Shares based upon the valuation analysis performed by Mark Mitchell of Business Valuation Services, Inc. ("BVS").

Hotels.com, on the other hand, has thrown numerous "alternative" positions up against the wall hoping that one would stick. Each of these positions is inconsistent with positions taken and assertions made in its tax returns and claims for refund. Thus, despite the fact that (1) HRN had issued and delivered share certificates to Plaintiffs dated February 24, 2000, and (2) Hotels.com's Complaint and claims for refund assert that the Restricted Shares were issued on February 24, 2000, Hotels.com asserted at trial that the Restricted Shares were issued on some date other than February 24 (either February 25, 2000, or March 1, 2000). Likewise, despite the fact that HRN repeatedly filed tax returns reporting the fair market value of the Restricted Shares at a discount from the $16 per share IPO price based on the Deloitte & Touche ("Deloitte") appraisal,[1] Hotels.com abandoned its long-standing tax reporting position and asserted that (1) the value of the Restricted Shares was $16 per share based upon an alleged

[1] As demonstrated by the testimony of IRS Agent Susan Weiss and Eric DeGraw, Hotels.com also took this position with IRS at audit with regard to its 2000 tax return, which Hotels.com maintained inadvertently had not been amended to reflect a value based on the Deloitte appraisal.

"agreement" by the parties; or alternatively (1) the starting point for determining the value of the Restricted Shares should be either $26 per share or $23 per share; and (2) the value of the Restricted Shares should be substantially above the IPO price, regardless of the valuation date.

The Litmans and the Dieners agree with the United States that Hotels.com has judicially admitted that February 24, 2000, is the date the Restricted Shares were issued and that Hotels.com has made numerous other evidentiary admissions that discredit the valuation positions taken by Hotels.com at trial. Hotels.com's "new" valuation positions are disingenuous, lack credibility, and are completely at odds with the positions taken by Hotels.com during the six years before this litigation was filed. As stated in opening arguments, Hotels.com's "new" litigation positions are simply an attempt to obtain a financial windfall -- an increase to the amount of goodwill to be deducted over a fifteen year period that is approximately ***$110 million greater*** than the goodwill claimed in its tax returns using the Deloitte analysis. Hotels.com's tax return positions should have consequences, and cannot be ignored.

## II. February 24, 2000, is the Date of Issuance and the Valuation Date for the Restricted Shares.

### (a) Hotels.com Has Judicially Admitted that the Restricted Shares Were Issued on February 24, 2000.

Hotels.com's 2000 claim for refund, attached to its Complaint and incorporated by reference, unambiguously acknowledges that:

> Pursuant to the Amended Purchase Agreement, ***on February 24, 2000***, Hotels.com issued the sellers 5,100,000 shares of class A common stock.
>
> * * *
>
> ***On February 24, 2000***, Hotels.com issued the sellers 4,899,900 shares of class A common stock ("Section 7.13.1 Shares").

(*See* Complaint, Exhibit 6, emphasis added.)

Hotels.com's judicial admission is consistent with the evidence submitted in this case. Consistent with Hotels.com's admission in its claim for refund, the Restricted Share certificates, which were prepared by HRN's stock transfer agent and forwarded to Brian Lidji by USA Networks' counsel at Paul Weiss, bear a February 24, 2000, issuance date. (Joint Ex. 13.) Likewise, Hotels.com's protective claims for refund, filed with the IRS on May 12, 2006 (well after Hotels.com filed this suit), state that the Restricted Shares were issued on February 24, 2000. (*See* Joint Ex. 29 at HC001626; Joint Ex. 30 at HC001659.)

Hotels.com's 2000 Claim for Refund was signed under penalty of perjury by its Chief Financial Officer and forwarded to the IRS by Donna Suhadolnik, the U.S. Income Tax Director for Expedia. The protective claims for refund were signed under penalty of perjury by Fran Erskine, Senior Director of Tax and Assistant Treasurer of Hotels.com. (*See* Joint Ex. 29 at HC001624 and Joint Ex. 30 at HC001657.) Not surprisingly, none of these officers was called by Hotels.com to testify to contradict the admissions contained in the claims for refund. And Plaintiffs agree with the United States that no evidence was introduced at trial supporting any other actual issuance date.

Thus, Hotels.com has judicially admitted that the correct valuation date for the Restricted Shares was February 24, 2000. *See* RCFC 10(c) (stating that an "exhibit to a pleading is a part thereof for all purposes"); *Filtration Dev. Co., LLC v. United States*, 60 Fed. Cl. 371, 381 (Fed. Cl. 2004) (finding that "'pleadings are judicial admissions and a party may invoke the language of the opponent's pleading to render the facts contained therein indisputable'") (*quoting E.C. McAfee A/C Bristol Metal Indus. of Canada, Ltd. v. United States*, 832 F.2d 152, 154 n. (Fed. Cir. 1987)).

(b) **The Variance Doctrine Prevents Hotels.com from Asserting a Stock Issuance Date of Other Than February 24, 2000.**

The Litmans and the Dieners agree with the United States that Hotels.com's judicial admission regarding the February 24, 2000, date of issuance renders it unnecessary for the Court to address the variance issue. But the variance doctrine also prohibits Hotels.com from contradicting the factual assertion of a February 24, 2000, issuance date contained in Claim for Refund. *See, e.g., Union Pacific R.R. Co. v. United States*, 389 F.2d 437 (Ct. Cl. 1968); *Boddie-Noell Enters., Inc. v. United States*, 36 Fed. Cl. 722 (1996), *aff'd*, 132 F.3d 54 (Fed. Cir. 1997).

A taxpayer's claim for refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b); *see also Mobil Corp. v. United States,* 52 Fed. Cl. 327, 331 (2002). The taxpayer cannot substantially vary at trial from the factual bases raised in the claim for refund. *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). Because Hotels.com's 2000 Claim for Refund unambiguously acknowledged that the Restricted Shares were issued "on February 24," Hotels.com cannot now assert that a date other than February 24, 2000, was the proper date to value the Restricted Shares. *See Mobil*, 52 Fed. Cl. at 331-32.

## III. Hotel.com Cannot Avoid its Admissions Regarding the Value of the Restricted Shares.

The Litman and the Dieners also agree with the United States that Hotels.com has made numerous evidentiary admissions relevant to the Court's determination of the value of the Restricted Shares. Those evidentiary admissions undermine both Hotels.com's litigation position and its expert's valuation positions.

First, HRN (now Hotels.com) obtained an appraisal of the Restricted Shares from Deloitte, the appraisal was reviewed and analyzed by senior officers of HRN (Mel Robinson, HRN's Chief Financial Officer) and USA Networks (Eric DeGraw, its Director of Tax) and members of HRN's board of directors who sat on HRN's audit committee. The valuation methodology used by Deloitte was identical to that used by Mark Mitchell (and ultimately by Ruth Haney, the IRS in-house valuation expert). The valuation discounts determined for HRN by Deloitte ranged from 40% for the four-year restricted stock to 25% for the one-year restricted stock. HRN applied these discounts to the $16 per share IPO price, which produced values for the Restricted Shares ranging from $9.60 per share for the four-year restricted stock to $12 per share for the one-year restricted stock (a weighted average value of $10.18 per share). HRN filed its tax returns for 2001, 2002, 2003, and 2004 using the $10.18 weighted average value, and Eric DeGraw strenuously argued at audit that the Restricted Shares should be valued by applying the Deloitte analysis to the $16 per share IPO price. Hotels.com's admissions, based on expert analysis and made by key corporate representatives, stand in sharp contrast to Hotels.com's current litigation positions and should be given great weight when analyzing the credibility of Hotels.com's litigation positions and the opinion of its valuation expert. *See Estate of Hatchett v. Comm'r*, 58 T.C.M. (CCH) 801, 806 (1989)("It is well settled that the valuation of an asset in a tax return [based on an appraisal] is an admission by the taxpayer when that valuation is inconsistent with a subsequent position taken by the taxpayer."); *Estate of Ford v. Comm'r*, 66 T.C.M. (CCH) 1507, 1511 (1993), *aff'd*, 53 F.3d 924 (8th Cir. 1995) ("A valuation stated on a tax return constitutes an admission, which can be overcome only by cogent evidence that it is wrong."); *Estate of Marsack v. Comm'r*, 288 F. 2d 533, 536 (7th Cir. 1961), *aff'g* 19 T.C.M. (CCH) 398 (1960); *Lare v. Comm'r*, 62 T.C. 739, 750 (1974), *aff'd*, 521 F.2d 1399 (3d Cir.

1975) (holding that a taxpayer's statements on a tax return are admissions against the taxpayer); F.R.E. 801(d)(2) (stating that an admission by a party opponent under the rules is a "statement . . . offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . .").

Second, while Hotels.com now takes the position that the value of the Restricted Shares should be $16 per share, based on a claim that it first asserted mid-way through this litigation that an agreement existed which required both the Plaintiffs and Hotels.com to report the value of the Restricted Shares at $16 per share, the fact that Hotels.com obtained an appraisal of the Restricted Shares from Deloitte and used the weighted average of $10.18 per share value during the audit and in its tax returns for 2001-2004 (and not the $16 per share value, which would have minimized its taxes and thus been more beneficial to it) demonstrates that no such agreement existed. Importantly, the evidence demonstrates that Eric DeGraw discussed the need to obtain the Deloitte appraisal to report values of the Restricted Shares for tax purposes with Dara Khosrowshahi, the principal negotiator of the Amended and Restated Asset Purchase Agreement. (DeGraw Depo. at 107:7-107:13) If Mr. Khosrowshahi truly believed -- as Hotels.com now asserts -- that he had reached an agreement with Plaintiffs to report the Restricted Shares at $16 per share, there would have been no need to obtain a fair market value appraisal from Deloitte.

Finally, the Litmans and the Dieners agree with the United States that HRN's use of the $16 per share IPO price as the "fair market value" exercise price for the numerous HRN unrestricted stock options that HRN structured and agreed to is an admission that the $16 per share IPO price is also the proper price at which to apply a discount to determine the value of the Restricted Shares.

**Conclusion**

Based on the admissions of Hotels.com and the other evidence submitted at trial, the Court should determine that February 24, 2000, is the proper valuation date for the Restricted Shares, and should also determine values for the four tranches of the Restricted Shares by applying the lack of marketability discounts determined by Mark Mitchell to the $16 per share IPO price as Mr. Mitchell did in his analysis.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated: June 11, 2007

By: s/ John W. Porter

John W. Porter
Attorney of Record
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002
(713) 229-1597
(713) 229-1522 (FAX)

COUNSEL FOR PLAINTIFFS-COUNTERDEFENDANTS, DAVID S. LITMAN, MALIA A. LITMAN, ROBERT B. DIENER AND MICHELLE S. DIENER