**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-956T** |
| **ROBERT B. DIENER and MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a**<br>**HOTEL RESERVATIONS NETWORK, INC.)**<br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br>**Defendant** | ) | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**HOTELS.COM, INC.'S RESPONSE IN OPPOSITION TO**
**THE UNITED STATES' POST-TRIAL BRIEF**

Claims by the United States that (1) Hotels.com "long-agreed" that the restricted HRN stock should be valued at a discount from the $16 IPO price, and (2) that Hotels.com is barred from asserting a valuation date other than February 24th, are simply incorrect. First, Hotels.com has always maintained that the restricted stock paid to the Litmans and Dieners had an agreed value of $160 million. This value is reflected in its 2000 tax return, which was never amended,

and in public filings.[1] Second, the proper valuation date to be used under Hotels.com's alternative position is a legal issue. As such, Hotels.com has not and could not judicially admit the proper valuation date. One can only judicially admit a fact, not a legal conclusion.

## ARGUMENT

### I. The HRN stock should not be valued at a discount from the $16 IPO price.

HRN's 2000 return reported the restricted stock's value at approximately $160 million, and this return was never amended.[2] Tr. 650. Hotels.com's administrative and litigating position has been consistent on this point—the stock's value is determined under the Amended Agreement and, if the Court were to find otherwise, the per share value is not limited to $16. Further, Messrs. Litman and Diener, as CEO and President, admitted to the SEC that the stock was worth $160 million. JX 17 at HC00503-04, HC00522. This comports with the parties' agreement and Messrs. Litman's and Diener's admissions to the Federal Trade Commission—the exchange of 5.1 million shares for earn out rights valued at $81.6 million (JX 4 at LD002294; JX 3; Tr. 782-87; HC Ex. 538 at LIJ014778; HC Ex. 539 at LIJ0014797) and 4.9 million shares valued at "the price per share in the IPO" (JX 4 at LD002293), for a total share value of $160 million. Thus, contrary to the United States' claim, "…every person to examine the issue over the past six years has" ***not*** "valued the HRN restricted stock at a discount from the $16 IPO price." Moreover, Deloitte & Touche ("Deloitte") did not apply their discounts against any value. LD Ex. 51. Long after the fact, in 2002, Mr. Robinson, Hotels.com's CFO, who lacks

---

[1] Further, as discussed below, case law is clear that the valuation position taken in Hotels.com's later year tax returns is not determinative because it has been overcome by other evidence.

[2] The United States asserts that Hotels.com's Form 8594 was deficient. In fact, (1) HRN did file a Form 8594 (JX 16 at HC002067-68), (2) it attempted to file the Form with the proper information (JX 23), and (3) Mr. Diener directed that the correct information reflecting the $160 million value be whited out (HC Ex. 200-K (Response 11); HC Ex. 200-O (Response 11)). Therefore, any negative inference to be drawn from Hotels.com's Form 8594 as filed should be drawn against Mr. Diener, not Hotels.com.

valuation experience (Tr. 488-90), decided to apply the Deloitte discount against the IPO price, thereby incorrectly reducing Hotels.com's later years' amortization deductions. LD Ex. 65; JX 29; JX 30; Tr. 508-10. As discussed below, this erroneous return position is not a *judicial* admission, nor does it control the issues before the Court. Even Mr. Mitchell did not apply his computed discount against the $16 IPO price in his original 2000 report. HC Ex. 502. The Litmans and Dieners, who also have no valuation expertise (Tr. 107, 351, 562, 636-37), made that decision to reduce their tax bill and implement their estate planning strategy. HC Ex. 98A; HC Ex. 98B; HC Ex. 114A; HC Ex. 115A; HC Ex. 115B; Tr. 175-81, 346-47.

## II. The valuation position taken in Hotels.com's later year tax returns does not control.

It is well settled, as the United States asserts, that a tax return position is an *evidentiary* admission in the sense of Federal Rule of Evidence 801(d)(2). It is not a binding *judicial* admission: "[I]t is equally well settled that such an [evidentiary tax return] admission is not conclusive, and that the trier of fact is entitled to determine, based on all the evidence, what weight, if any, should be given to the admission." *Estate of Hinz v. Comm'r*, 79 T.C.M. (CCH) 1289, 1295-96 (2000), *citing McShain v. Comm'r*, 71 T.C. 998, 1010 (1979).

A return position does not determine an assets' economic value unless there is an absence of contrary evidence. *See Grill v. United States*, 157 Ct. Cl. 804, 812-13 (1962). Here, there is overwhelming contrary evidence. JX 4 at LD002293-94; JX 3; JX 17 at HC00503-04, HC00522; HC Ex. 538 at LIJ014778; HC Ex. 539 at LIJ0014797; Tr. 782-87.[3] All three experts also opined that if parties agree at arm's length to the value of stock, that agreed value is the stock's fair market value. Tr. 1151-52 (Mitchell), 1326-27 (Bajaj), 1679-80 (Burns).

---

[3] Mr. Burns also testified that the per share value of the HRN stock agreed to by the parties, *including all of the restrictions*, was in the range of $11-16 (Tr. 1688-89, 1695-96), which range includes both Hotels.com's primary $16 position and the United States' $12.75 value, but not Mr. Mitchell's "outlier" position of $4.53.

Further, courts give less weight to a taxpayer's return position and instead focus on the asset's proper economic value when, as here, the government's position is more favorable to the taxpayer than its own return position, or where the government has changed its position. For example, the *Hinz* court noted that, although tax return positions are evidentiary admissions, they do not control where the government's trial position is more favorable to the taxpayer than the taxpayer's own return position. 79 T.C.M. at 1296. *Hinz* is especially relevant here. Mr. Burns' $12.75 value is substantially higher than the $10.18 used by Hotels.com on its later year returns and, as in *Hinz*, produces a more favorable result for Hotels.com than its own return position. *See also McShain v. Comm'r*, 71 T.C. 998, 1010 (1979) (rejecting taxpayers' less favorable return position where Commissioner's experts valued the asset more favorably to the taxpayer).

The amount reported in a tax return also will not control where the government rejects its notice of deficiency position and there is other evidence to establish value. *See, e.g, Garwood Irrigation Co. v. Comm'r*, 88 T.C.M. (CCH) 173, 177 (2004). In *Garwood*, the Tax Court rejected both the taxpayer's return position (based on a contemporaneous valuation) and the government's trial position, and determined a value more favorable to the taxpayer than its own return position. Not binding the taxpayer to its return position, the court noted that the government's trial position represented a significant, and more favorable to the taxpayer, departure from its notice of deficiency. *Id.* The same is true here, where the government's trial position of $12.75 per share is a significant departure from the $4.53 value asserted by the government in Hotels.com's notice of deficiency (JX 28).[4]

The cases cited by the United States are readily distinguishable. In each, the taxpayer reported a value for an asset on a return, yet argued in court that the asset had <u>no</u> ascertainable

[4] The United States' litigating position also is substantially higher than the values set forth in the Haney valuation analyses (LD Ex. 13; LD Ex. 15; LD Ex. 16).

fair market value. *See Grill*, 157 Ct. Cl. 804; *Waring v. United States*, 412 F.2d 800 (3rd Cir. 1969); *Estate of Marsack v. Comm'r*, 288 F.2d 533 (7th Cir. 1961). Those courts found that a tax return reporting a valuation position was relevant because it directly contradicted the taxpayer's trial contention that there was no ascertainable value. By contrast, the issue here is not whether the stock's value can be determined, but rather what the stock's value is based on all of the evidence. For the reasons discussed above, this Court should give little, if any, weight to Hotels.com's later year return position, for which amended returns have been filed, and instead determine the stock's proper economic value.

## III. The proper valuation date is a legal question that cannot be judicially admitted.

As a question of law, Hotels.com has not, and could not have, judicially admitted the proper valuation date.[5] A judicial admission is a "formal act, done in the course of judicial proceedings, which waives or dispenses with *the production of evidence*, by conceding for purposes of litigation that *the proposition of fact* alleged by the opponent is true." *Int'l Paper Co. v. United States*, 39 Fed. Cl. 478, 482 (1997) (quotations omitted); *Gary v. United States*, 67 Fed. Cl. 202, 209 n.8 (2005) (citations omitted). A judicial admission is not dispositive as to issues of law. *Int'l Paper*, 39 Fed. Cl. at 482; *see also* 29A Am. Jur. 2d *Evidence* § 770.

Hotels.com agrees that the HRN stock was issued to the Litmans and Dieners as of February 24, 2000. However, when they were legally entitled to the stock determines the proper valuation date—a question of law to which Hotels.com did not and could not judicially admit. *See* 18A Am. Jur. 2d *Corporations* § 619 (actual ownership of stock to be determined from all the facts and circumstances); *Jupiter Corp. v. United States*, 2 Cl. Ct. 58, 64 (1983) ("stock certificate is merely 'a muniment of title'"). *United States v. Roush*, 466 F.3d 380 (5th Cir.

[5] Again, the valuation date is only relevant to Hotels.com's alternative argument.

2006), cited by the United States, also supports Hotels.com's position. There, the Fifth Circuit rejected the stock issuance date (September 30, 1998), and, instead, valued the stock as of the date beneficial legal ownership was obtained (February 5, 1998). Here, the evidence establishes that the Litmans and Dieners did _not_ obtain beneficial ownership of the stock on the 24th.[6] Ample evidence supports a February 25th valuation date. The IPO began trading on that date. In addition, the Dieners admitted in their original *and* amended 2003 tax returns to acquiring the stock on February 25th. HC Ex. 342 at LD000242; HC Ex. 343 at LD000320-21. The 2003 Trust return made this same admission. HC Ex. 117 at LD000968.[7] And the tracking interest agreements required the stock to be valued as of the February 25th IPO offering date. HC Ex. 114A; HC Ex. 115A; HC Ex. 115B. February 25th also was the valuation date used by Deloitte, Mr. Mitchell (in a draft 2000 report), and Mr. Bohlmann. LD Ex. 51; HC Ex. 365; HC Ex. 502.

Hotels.com continues to contend, however, that the Litmans and Dieners did not obtain beneficial legal ownership – as a matter of law – until the IPO actually closed on March 1, 2000, as mandated by the parties' agreement. JX 4 at LD002293-94. Consistent with this, the Litmans, Dieners, and the Trust acknowledged receipt of the HRN stock, and released HRN of its obligations under the Amended Agreement, on March 1, 2000. JX 12. Their lawyer's analysis of the stock restrictions' duration used March 1st, the IPO's initial closing date. HC Ex. 102. The Trust assigned to Mr. Pells, on March 1st, the shares to which he was entitled. Litman

[6] The United States insinuates that Hotels.com was required to amend its Complaint to allege other valuation dates. The correct valuation date was clearly an issue that was tried. To the extent this gives the Court any pause, this Court's rules treat the pleadings as amended to conform to the evidence. *See* RCFC 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). No actual amendment of the Complaint is required.

[7] The United States ignores all three of these admissions in its brief. It also overlooks that because Mr. Diener was ultimately in charge of taxes at HRN during 2000 and directed the actions of the HRN employee who signed the 2000 return, the $160 million valuation position taken on that return is akin to an admission by him.

Complaint ¶ 16; Diener Complaint ¶ 16. And, Hotels.com deconsolidated from its parent company and began filing a separate tax return on March 1st, when the Litmans and Dieners obtained beneficial ownership of more than 20 percent of the HRN common stock. JX 16; JX 17 at HC00502 (note 5), HC00521.

However, contrary to the United States' claim, even if February 24th were used as the valuation date, the $16 IPO price is not the proper starting price against which to apply a discount because it does not represent the fair market value of a share of unrestricted HRN stock on that date.[8] In determining fair market value, courts consider information foreseeable to a willing seller and a willing buyer, having knowledge of all relevant facts, on the valuation date. *See, e.g.*, *Estate of Gimbel v. Comm'r*, 92 T.C.M. (CCH) 504, 507 (2006) ("subsequent events which are reasonably foreseeable as of the valuation date may be considered because they would be foreseeable by a willing buyer and a willing seller, and they therefore would affect the valuation of the property"); *accord*, *Krapf v. United States*, 977 F.2d 1454, 1458-60 (Fed. Cir. 1992) (no legal error in admitting and considering post-donation evidence when determining value of donated stock). See also HC Ex. 2; Tr. 1283-98.

Dr. Bajaj, the only expert with IPO-related expertise, testified in his report and at trial on how IPO prices are set and how pre-open pricing activity occurs. HC Ex. 1; HC Ex. 2; HC Ex. 197; Tr. 1283-98. Messrs. Bozalis and Kuhn confirmed the HRN IPO pricing and pre-bid pricing activity. Tr. 613-17, 901-10, 918-20. These events were reasonably foreseeable on the 24th, mere hours before the HRN stock began to trade publicly and, thus establish that the IPO price does not represent the fair market value of a freely-tradable share of HRN stock.[9]

---

[8] Hotels.com is not bound to a maximum $16 value. See variance doctrine discussion, below.

[9] The United States misapprehends the significance of the February 22, 2000 option grant to Mr. Pells (LD Ex. 125). On February 22, the underwriters anticipated an $11 - $13 IPO price. The

**IV. The variance doctrine is not applicable.**

The United States' decision to not affirmatively raise a variance defense should be dispositive of this issue. In any event, however, the government waived any variance defense when it agreed to an expedited denial of Hotels.com's refund claim.

As articulated by the Federal Circuit, the variance doctrine serves three purposes: (1) ensuring the IRS has notice of the nature and factual basis of the claim; (2) giving the IRS an opportunity to correct any errors; and (3) limiting any subsequent litigation to those grounds that the IRS has had an opportunity to consider and is willing to defend. *E.g.*, *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). Here, the IRS never intended to consider Hotels.com's refund claim at the administrative level. Hotels.com paid its deficiency on March 9, 2006, filed a refund claim on March 16th, and, by letter of the same date, requested an immediate claim denial under Internal Revenue News Release IR 1600. The IRS issued an expedited denial on March 30th under IR 1600. Hotels.com Complaint Ex. 7. It is therefore not surprising that the government does not claim variance when it knew the IRS was not going to consider the refund claim, agreed to an expedited denial, and supported and benefited from having these cases consolidated.[10] *E.g.*, SALTZMAN, IRS PRACTICE AND PROCEDURE ¶ 11.09[5] (rev. 2d ed. 2005) ("courts have found waiver [of variance] where the Service notified the taxpayer that his claim would be rejected as soon as it was filed"); *cf. Angelus Milling Co. v. United States*, 325 U.S. 293, 297 (1945) (in analyzing sufficiency of refund claim: "If the

---

company's February 22nd statement that the stock's per share value was $16 <u>*supports*</u> Hotels.com's position here. If Hotels.com believed that the IPO price established the stock's fair market value, the option grant on February 22nd would have been at between $11 and $13, <u>*not*</u> $16. A fair market value approximately 33 percent greater than the $12 average expected IPO price comports with Dr. Bajaj's opinion that the February 24th unrestricted HRN stock's fair market value was $21-23, or 37.5 percent higher than the $16 per share IPO price.

[10] *See* The United States' Response to Hotels.com's Motion to Consolidate, filed April 14, 2006.

Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard of a regulation to allow the Commissioner to invoke technical objections"); *Zeeman v. United States*, 395 F.2d 861, 869 (2d Cir. 1968) ("it follows a fortiori that the government should not be permitted to assert a technical objection where, as here, it has stated that the taxpayer's claim would be rejected as soon as it was submitted to the IRS").

Post-trial briefing also would be too late for the government to make its first formal request for a ruling on variance. *See, e.g.*, *Goulding v. United States*, 929 F.2d 329, 333 (7th Cir. 1991) (variance waived where not raised until motion for summary judgment filed eighteen months after refund suit had commenced); *United States v. Smith*, 418 F.2d 589, 598 (5th Cir. 1969) (government waived variance where it failed to object at trial, cross-examined taxpayer witnesses on the issues in dispute, and failed to move after trial to strike witness testimony); *cf. Principal Life Ins. Co. v. United States*, __ Fed. Cl. __, 2007 WL 914757, *2 (Feb. 14, 2007) (government not entitled to raise setoff at "last possible moment": "To hold otherwise would encourage a lack of due diligence by defendant in timely asserting defenses and leave plaintiffs in refund suits guessing as to the true litigating hazards associated with their cases").

Moreover, Hotels.com has not varied from its refund claim on the stock's value under either its primary or alternative positions. There is no dispute with respect to Hotels.com's primary position and, as the government acknowledges, Hotels.com's refund claim put the IRS on notice of a valuation conclusion above $16 per share. U.S. Post-Trial Br. at 8; Hotels.com Claim For Refund at ¶ 14. *E.g.*, *Parma v. United States*, 45 Fed. Cl. 124, 128-29 (1999) (Federal Circuit does not require specificity, but simply adequate notice). Hotels.com's alternative valuation position also is no surprise, and has resulted in no prejudice, to any party. In fact, the

United States amended its counterclaim against the Litmans and Dieners on August 3, 2006, specifically to protect itself in light Dr. Bajaj's valuation conclusions. Further, every expert testified that his discount conclusion would remain virtually the same, regardless of the valuation date. Tr. 1113-14 (Mitchell), 1266-67 (Bajaj), 1678-79 (Burns).

One final point on variance deserves mention. As a matter of law, the Litmans and Dieners lack standing to assert variance. The Code, regulations, and case law make clear that the purpose of the variance doctrine is to protect the government, not third parties. As third parties to Hotels.com's litigation, the Litmans and Dieners had no right to be involved in evaluating Hotels.com's refund claim, the decision to immediately deny that refund claim, or in formulating the United States' litigating position. The Litmans and Dieners have no standing to assert variance. Any argument to the contrary should be rejected.

**CONCLUSION**

For the reasons set forth above, Hotels.com respectfully requests that the Court reject arguments by any party that Hotels.com made any judicial admissions relevant to the determination of the proper valuation date or proper value for the HRN restricted stock or that the variance doctrine is applicable.

June 11, 2007

Respectfully submitted,

s/ Kim Marie K. Boylan_____
Kim Marie K. Boylan
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
(202) 637-2235
Attorney of Record

Kari M. Larson
Jennifer S. Crone
Latham & Watkins, LLP
Of Counsel