**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiffs.** | **No. 05-956 T** |
| **ROBERT B. DEINER and MICHELLE S. DEINER,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiff.** | **No. 05-971 T** |
| **HOTELS.COM, INC. AND SUBSIDIARIES (f/k/a HOTEL RESERVATIONS NETWORK, INC.**<br><br>**Plaintiff**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant** | **No. 06-285 T**<br><br>**(Christine O. C. Miller)** |

**THE UNITED STATES'**
**POST-TRIAL REPLY BRIEF**

## I. BASED ON UNDISPUTED FACTS, THE HRN RESTRICTED STOCK MUST BE VALUED AS OF FEBRUARY 24, 2000

Hotels.com states in its post-trial brief that it "agrees that the HRN stock was issued to the Litmans and Dieners as of February 24, 2000." (Hotels.com post-trial brief, p. 5.) This is, therefore, the date on which the stock must be valued – the Litmans and Dieners became the registered owners of the stock and acquired the benefits and burdens of ownership on that date.

Despite the undisputed date on which the Litmans and Dieners actually became owners of the stock, Hotels.com argues that this Court should determine when they would have been legally entitled to the stock under the terms of the Amended and Restated Asset Purchase Agreement. Hotels.com would use that valuation date in this case, and argues that it is March 1, 2000. Hotels.com's argument is not supported by the facts or the law. First, this Court does not need to, and should not, redetermine when the Litmans and Dieners were legally entitled to the HRN restricted stock under the agreement. Although the agreement is ambiguous on this point, the parties' own actions in 2000 settled the issue. *See, e.g. Commissioner v. National Alfalfa Dehydrating and Milling Co.,* 417 U.S. 134, 149 (1974).

Second, the case law Hotels.com cites does not support determining a valuation date after the date on which the Litmans and Dieners actually became owners of the stock. The court in *United States v. Roush*, 466 F.3d 380 (5th Cir. 2006), in fact, states the general rule that "Typically, stock is valued on the date the shares are issued." *Roush*, 466 F.3d at 385. Of course, in that case, the court found that Roush had "constructively received" the stock months *before* it was formally issued because he had the right to request issuance of the stock. *Roush* does not support, however, a finding here that the stock should be valued on a date *after* the actual registration and issuance of it to the Litmans and Dieners.

Indeed, *Jupiter v. United States*, 2 Cl. Ct. 58 (1983), also cited by Hotels.com, undermines its argument that the court should value the stock on a date subsequent to the actual issuance date. As the court stated, "Ownership of shares in a corporation is a contractual relationship created by the agreement and consent of the corporation and the shareholder." *Jupiter*, 2 Cl. Ct. at 64. Here, Hotels.com and the Litmans and Dieners agreed in 2000 to the Litmans and Dieners ownership of the shares as of February 24, 2000 – Hotels.com issued the stock and registered it in the Litmans and Diener's name as of that date, and the Litmans and Dieners accepted those shares. In *Jupiter*, in fact, this Court held that the plaintiff acquired ownership on the date of issuance. *Jupiter*, 2 Cl. Ct. at 65.

Finally, the inconsistent subsequent reporting of the acquisition date of the stock as February 25th in other documents by the Litmans and Dieners, and the occurrence of other events on March 1st, cannot change the undisputed fact of the actual issuance of the stock as of February 24th. (Hotels.com brief, pp. 6 - 7.)[1] Thus, this Court can, and should, determine that February 24th is the proper valuation date without resorting to the variance doctrine.

## II. THE STOCK'S VALUE AS OF FEBRUARY 24, 2000

Hotels.com argues that this Court should ignore the admissions in its 2001, 2002, 2003 and 2004 tax returns (that the HRN restricted stock is properly valued at a discount from the $16 IPO price set by HRN and its bankers on February 24th) and ignore the admissions in its own stock option agreements (that the IPO price of $16 was the fair market value of the unrestricted

---

[1] For example, the acknowledgment of receipt of the HRN restricted stock and release of HRN's obligation to pay the earn-out payments on March 1, 2000, which Hotels.com cites in support of a March 1st valuation date, does not void the February 24th issuance. A transfer can be complete despite the failure to complete all formalities, or the existence of future contingencies. *See, e.g., Herbert J. Investment Corp. v. United States*, 360 F.Supp. 825 (E.D. Wisc. 1973)

stock at that time). Instead, Hotels.com asks this Court to rely on its new trial expert who now opines that, in order to value the HRN restricted stock as of February 24th, the Court should begin with the closing price for the unrestricted stock on February 25th, the first day of trading in HRN stock.

It is inappropriate to use the unrestricted stock's closing price on February 25th as a starting point for a February 24th valuation. The general rule is that stock valuations should be determined without consideration of events occurring after the valuation date. *Okerlund v. United States*, 53 Fed. Cl. 341, 355 (2002). While the admission of post-valuation date evidence was deemed not to be error in *Krapf v. United States*, 977 F.2d 1454, 1458 - 60 (Fed. Cir. 1992), the court also stated that the necessity for, and probative value of, such evidence must be critically examined.[2] In this case, the closing price for HRN stock on its first day of trading, at the peak of the "post-IPO bump," is not an appropriate starting point for a valuation, and has limited probative value. This Court has, in fact, recognized that the "first trades in a green security, newly issued" are not the type of market prices typically relied upon by courts. *American Steel Foundries v. United States*, 153 Ct. Cl. 234, 1961 WL 8687, p. 15 -16 (1961).

The HRN stock post-IPO prices demonstrate the problem: the price initially shot-up, but soon decreased just as much, and then traded around $16 per share for about one month. (See Joint Exhibit 230.) And about nine million shares (twice the float) were traded on February 25th alone. (See Joint Exhibit 231.) As Dr. Bajaj acknowledged, and Mr. Mitchell testified, this roller-coaster market immediately after an IPO is often caused by transitory and unique reasons

---

[2] In *Krapf*, the court looked to post-valuation date evidence because it did not have such evidence from the valuation date. Here, in contrast, the $16 price for unrestricted stock was set by HRN on the valuation date.

that do not last. Accordingly, even if post-valuation date evidence were considered, the February 25th closing price is not an appropriate benchmark for the HRN restricted stock. Instead, *if* any such post-valuation date evidence is considered, the prices realized once the market stabilized would seem more probative as a benchmark for the restricted stock, which could not have been sold during the "post-IPO bump." Rather than looking beyond the valuation date, however, and trying to determine the probative value of the various, and dramatically different, post-IPO prices, this Court should follow the general rule and use the $16 price set by HRN on the valuation date as the benchmark starting price for the valuation. Hotels.com's admissions in its tax returns and stock options agreements, as well as the opinions of the United States' and the Litmans and Dieners' respective valuation experts, also support following the general rule here.

Respectfully submitted,

*s/ Cory A. Johnson*
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Eileen J. O'Connor
Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Steven I. Frahm*
Of Counsel

Attorney for The United States

Dated: June 22, 2007