**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-956T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **ROBERT B. DIENER and MICHELLE S. DIENER,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-971T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.),** | ) | |
| **Plaintiffs,** | ) | |
| **V.** | ) | **No. 06-285T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS-COUNTERDEFENDANTS,**
**DAVID S. LITMAN, MALIA A. LITMAN,**
**ROBERT B. DIENER AND MICHELLE S. DIENER'S**
**MOTION FOR RECONSIDERATION**

Plaintiffs-Counterdefendants, David S. Litman and Malia A. Litman (the "Litmans") and Robert B. Diener and Michelle S. Diener (the "Dieners")[1] file this Motion for Reconsideration in accordance with Rule 59 of the Rules of the Court of Federal Claims.

**A. The 7.5% Key Person Discount Determined by Defendant's Expert Should be Added to the Lack of Marketability Discount Determined by the Court Because of the Importance of Messrs. Litman and Diener to HRN and the Depressing Effect That a Sale of Their Large Block of Stock Would Have on the Market Price of HRN Shares.**

Plaintiffs respectfully request the Court to reconsider a portion of its August 22, 2007 Opinion (the "Opinion"), as the discounts applied to the $16 per share initial public offering price do not adequately include the onerous transfer restrictions imposed on the 9,999,900 shares of restricted stock issued to the TMF Liquidating Trust on February 24, 2000 (the "Restricted Shares"). Importantly, the discounts determined by the Court do not reflect the undisputed "key person" valuation impact resulting from the importance of Messrs. Litman and Diener to HRN and the negative impact a sale of a substantial portion of the public float stock would have on the Restricted Shares.

A key person discount "is appropriate where the value of a corporation is dependent upon the services of an individual." *Babin v. Comm'r*, 64 T.C.M. (CCH) 1357, 1362 (1992); *see also Furman v. Comm'r*, 75 T.C.M. (CCH) 2206, 2219 (1998) (ten percent key person discount waranted where key person's "contacts, experience, and managerial expertise were critically important to the success" of the company); *Estate of Feldman v. Comm'r*, T.C. Memo. 1988-429, 56 T.C.M. (CCH) 118, 130 (1988) (applying a 35% key person discount); *Babin v. Comm'r.*, 64 T.C.M. (CCH) at 1362 (substantial key person discount effectively applied in valuing stock where taxpayer's "ability to leave the employ of the [business] at will and set up a competing business . . . would substantially depress the amount a

[1] Collectively, the Litmans and the Dieners are referred to herein as "Plaintiffs."

buyer would be willing to pay" for the stock). While the Court acknowledged the appropriateness of a key person discount and the negative valuation impact a large sale of stock by the CEO and President of HRN would have, this discount did not impact the Court's determination of the value of the Restricted Shares because Mr. Mitchell's determination of his lack of marketability discount did not include a key person discount.[2]

It is undisputed that Messrs. Litman and Diener were critical to HRN and that their departure and/or their sale of a large block of stock would negatively impact the value of HRN's stock. Importantly, neither Mr. Litman nor Mr. Diener had an employment agreement with HRN tying them to the company. The Court recognized, and each of the key neutral and adverse fact witnesses acknowledged, the importance of Messrs. Litman and Diener to HRN:

**Dara Khosrowshahi – Expedia's CEO**

> Q. . . . – was it important to keep Bob and Dave with the company?
>
> A. Absolutely. Absolutely. They had – they were very important to us.
>
> Q. And if Bob and Dave left the company, would that have a negative impact on the fair market value, the traded value of the shares, based on your understanding of their importance to the company?
>
> A. We believe that it would. They're great operators, if they left the company – they were very important assets of the company. Absolutely.

Tr. at 828-29.

[2] This omission of a key person discount can be rectified by the Court's reconsideration of its judgment. *See Holland v. United States*, 75 Fed. Cl. 492, 494 (2007).

**Tom Kuhn – USA Network's Former General Counsel**

> A. These were the two men who had built the business and part of being able to take it public was, of course, the continuity of management.

Tr. at 893.

**Mel Robinson – HRN's Former Chief Financial Officer**

> Q. Okay. Mr. Robinson, how important were Dave Litman and Bob Diener to HRN?
>
> A. The words heart and soul come to mind.
>
> Q. Would you –
>
> A. Critical.
>
> Q. – critical? Why do you say that?
>
> A. They drove the business. They – between the two of them, they dealt with leading every strategic and operational and marketing initiative that the company undertook.

Tr. at 520-21.

Defendant's expert witness, Francis X. Burns, explicitly recognized the valuation impact associated with Messrs. Litman and Diener's potential sale of a large block of Restricted Shares. Mr. Burns opined that a key person discount in the range of 5 to 10 percent should be added on top of the lack of marketability discounted he determined. In his testimony in support of his 7.5% key person discount, Mr. Burns testified that

> In this case, we have effectively a publicly traded share price, because we have the $16, and therefore there was a sense that the market price would have incorporated the key-person factor into the price, because it's all in the prospectus and everything else, and yet I was troubled by the fact that these shares are owned by Mr. Litman and Mr. Diener, and if they were to sell their shares, the buyer of those shares would know that one of the company insiders is selling their shares. . . . And so I tried to take that into account by making an adjustment of 7-1/2 percent to the discount

> based on research that's been done which indicates 5 to 10 percent is really the range of the key-person impact.

Op. at 71. This result would occur not just because Messrs. Litman and Diener were the CEO and President of HRN, but would exist with any shareholder like Messrs. Litman and Diener who owned a block of stock, like the Restricted Shares, that comprised 20% of the outstanding shares of the company and was almost twice the public float.

Consistent with Mr. Burns's testimony, the Court found that the marketability of the Restricted Shares would likely "be depressed due to the signal that a big sell-out by these officers would portend." Op. at 79. The Court's findings and the undisputed testimony demonstrate the importance of Messrs. Litman and Diener to HRN and the negative impact a sale of a substantial portion of their shares would have on the value of HRN stock, the lack of marketability discounts applied by the Court do not take this undisputed fact into account.[3] Accordingly, Plaintiffs respectfully request the Court to reconsider its Opinion and apply the additional 7.5% key person discount determined by Mr. Burns to each tranche of the Restricted Shares. The effect of adding the 7.5% key person discount to the discounts determined by the Court in the Opinion would result in the following conclusions regarding the fair market value of the Restricted Shares:

| Block Size | Restriction Period | Discount in Opinion | Value per Share in Opinion | Discount Including 7.5% Key Person Discount | Value per Share Including 7.5% Key Person Discount |
|---|---|---|---|---|---|
| Block One (1,959,960) | One year | 22% | $12.48 | 29.5% | $11.28 |
| Block Two (489,990) | Two years | 36% | $10.24 | 43.5% | $9.04 |
| Block Three (489,990) | Three years | 38% | $9.92 | 45.5% | $8.72 |
| Block Four (7,059,960) | Four years | 50% | $8.00 | 57.5% | $6.80 |

The discounts derived by the addition of the key person discount determined by Defendant's expert would be well within the range of discounts illustrated in the empirical data

[3] Mr. Mitchell's lack of marketability discounts were computed under the assumption that Messrs. Litman and Diener would continue to run HRN.

cited by each of the experts – which involved transactions in stock with substantially fewer transfer restrictions than the Restricted Shares. Op. at 77-80.

**B. The Court's Application of Lack of Marketability Discounts Ranging from 22% for One-Year Contractually Restricted Stock to 50% for Four-Year Contractually Restricted Stock Do Not Adequately Reflect the Risks Resulting From the Onerous Transfer Restrictions Imposed on the Restricted Shares.**

As the Court found, the Restricted Shares had contractual, statutory and practical restrictions on their sale. While the shares issued in the HRN IPO were freely tradable on the NASDAQ market, none of the Restricted Shares issued on February 24, 2000, could be immediately sold. Over seven million of the Restricted Shares could not be sold for four years. The sale restrictions included, among other things, (1) contractual holding periods, (2) S.E.C. Rule 144 volume restrictions on the number of Restricted Shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any Restricted Shares could be sold, (4) that the public float was initially only half the size of the Restricted Shares issued to the TMF Liquidating Trust, so practically the Restricted Shares could not be sold without drastically lowering the market price, and (5) the practical market restriction on sale due to the fact that the TMF Liquidating Trust was owned by the CEO and President of HRN and any sale by Messrs. Litman and Diener would erode investor confidence. These sale restrictions produced significant risk, particularly given the volatility of the NASDAQ and, more specifically, the volatility of dot.com and travel industry stocks during the relevant period.

The Court recognized that each of these onerous restrictions existed and further recognized that the restrictions warranted a discount from the $16 per share IPO price. Op. at 77-82. The Court also found that among the three experts, "Mr. Mitchell's methodology

of determining a marketability discount" carried the most weight. Op. at 77. The Court's findings regarding the volatility of internet stocks like HRN and the onerous contractual, statutory and practical restrictions imposed on the Restricted Shares demonstrate the reasonableness of the lack of marketability discounts determined by Mr. Mitchell. But the Court's determination of lack of marketability discounts through a 25% across-the-board reduction from the lower end of Mr. Mitchell's range of discounts effectively reduced his concluded lack of marketability discounts by almost half. Op. at 82. Plaintiffs respectfully assert that the Court's 25% across-the-board reduction substantially underestimates the valuation impact of the onerous restrictions imposed upon the Restricted Shares. This is particularly true in light of the Court's finding (consistent with the testimony of virtually every witness) that Messrs. Litman and Diener were critical to HRN – thus warranting at a minimum the additional 7.5% key person discount advocated by Mr. Burns.

**C. Conclusion.**

Plaintiffs respectfully request the Court to reconsider the Opinion and increase the lack of marketability discount by at least the 7.5% key man discount determined by Defendant's expert. Plaintiffs request such other and further relief to which they may be justly entitled.

Respectfully submitted,

Dated: September 6, 2007

By: s/ John W. Porter

John W. Porter
Attorney of Record
BAKER BOTTS L.L.P.
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
(713) 229-1597
(713) 229-2797 (Fax)

Jeffrey A. Lamken
Of Counsel
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7978
(202) 585-4060 (Fax)

COUNSEL FOR PLAINTIFFS-COUNTERDEFENDANTS DAVID S. LITMAN, MALIA A. LITMAN, ROBERT B. DIENER AND MICHELLE S. DIENER