**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiffs.** | **No. 05-956 T** |
| **ROBERT B. DEINER and MICHELLE S. DEINER,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiff.** | **No. 05-971 T** |
| **HOTELS.COM, INC. AND SUBSIDIARIES (f/k/a HOTEL RESERVATIONS NETWORK, INC.**<br><br>**Plaintiff**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant** | **No. 06-285 T**<br><br>**(Christine O. C. Miller)** |

**THE UNITED STATES' RESPONSE**
**TO THE LITMANS AND DIENERS'**
**MOTION FOR RECONSIDERATION**

2743386.1

The Litmans and Dieners have asked this Court to reconsider the value for the HRN Restricted Stock determined in the Court's Memorandum and Opinion, dated August 22, 2007. As a basis, the Litmans and Dieners claim that the Court failed to add a separately stated "key person" discount to the discount the Court determined, with adjustments, pursuant to the methodology of the Litmans and Dieners' own expert. For the reasons below, their motion should be denied.

## I. THE STANDARDS FOR MOTIONS FOR RECONSIDERATION

In their motion, the Litmans and Dieners correctly state that a motion for consideration allows a Court to address any omissions in its rulings. (*See* Motion for Reconsideration, p. 3 fn. 2, *citing Holland v. United States*, 75 Fed. Cl. 492, 494 (2007) ("A motion for reconsideration enables a trial court to address oversights....")) They neglect, however, to go on and state the applicable standards, also set forth in *Holland*: "To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact." 75 Fed. Cl. at 494. *See also, Stockton East Water District v. United States*, 76 Fed. Cl. 497, 499 - 500 (2007) Motions for reconsideration are "not intended to give an unhappy litigant an additional chance to sway the court." *Stockton East Water District*, 76 Fed. Cl. at 499.

## II. NO EXPERT WHO USED OR ADVOCATED THE VALUATION METHODOLOGY ADOPTED BY THE COURT ADDS A SEPARATE KEY PERSON DISCOUNT

### A. The Court's Valuation Analysis and Conclusion

In its opinion, the Court set forth and analyzed at length the facts and expert valuation opinions offered in this case. Faced with three competing valuation approaches, the Court ultimately concluded that the quantitative methodologies of the Litmans and Diener's expert,

Mark Mitchell, "carry the most weight." (*See* Memorandum and Opinion, p. 77.) In making this determination, the Court found particularly compelling the fact that both the IRS and Hotels.com's previous valuation expert, Delloite & Touche, had also used the same put option valuation method that Mr. Mitchell used. The Court thus found it an "accepted method in the appraisal community of valuing restricted shares." (*See* Memorandum and Opinion, p. 81.)[1]

The Court found significant problems with Mr. Mitchell's implementation of the methodology in this case, however. In particular, the Court found weaknesses with some of the assumptions and inputs Mr. Mitchell used to calculate the various hypothetical put option prices that are used to determine applicable discounts. (*See* Memorandum and Opinion, p. 81.) For example, the Court questioned the use of an assumed 100% volatility for all the hypothetical options of varying lengths, and the failure to take into account the possibility of an early lifting of the stock transfer restrictions, which would have shortened the length of the hypothetical options, and decreased the resulting discount. In fact, just slightly changing these inputs leads to very different put option prices, and resulting applicable discounts. (*See e.g.* Defendant's Exhibit 73 and L/D Exhibits 13, 15, 16 and 51)[2] In order to account for the problems with Mr. Mitchell's assumptions, the Court adjusted each of his discounts for the four tranches by 25%. (*See* Memorandum and Opinion, p. 82.)

---

[1] As the Court is aware, both the United States trial expert, Francis Burns, and Hotels.com's trial expert, Mukesh Bajaj, criticized the put option approach. In part, they both thought that this "one-sided" approach led to inappropriately large discounts.

[2] Mr. Mitchell acknowledged at trial that an assumed volatility of 70 - 90 % would not be unreasonable. (*See* Transcript, pp. 1160 - 61, 1174)

### B. No Expert Employing the Put Option Approach Adds a Key Person Discount

As the Court noted, the IRS, Deloitte & Touche and Mr. Mitchell all employed the put option approach in valuing the HRN restricted stock. Significantly, *none* of them added to the discount determined pursuant to that methodology a separate, additional “key person” discount, as the Litmans and Dieners now claim should be done in their motion for reconsideration. That is, despite all three of these experts valuing the HRN restricted stock held by Mr. Litman and Mr. Diener (the “key men”), none of them concluded that an additional, separate key person discount should be added to a value determined under the put option methodology.

In the case of Mr. Mitchell this is particularly significant. Mr. Mitchell did not include a key person discount in his valuation report in 2000, and did not include one in his initial report in this case in 2006. (*See* L/D Exhibits 58 and 60) In fact, even after Mr. Burns included a key man discount in his report in this case, in connection with his different valuation methodology, Mr. Mitchell did not then include a key person discount in his rebuttal report. (*See* L/D Exhibit 61) Most importantly, Mr. Mitchell, the only expert who advocated the put option method at trial, did *not* testify that an additional key person discount should be added to his discounts. He was not even asked.[3]

---

[3] In their pre-trial memorandum, the Litmans and Dieners also did not claim an additional key person discount was warranted. To the contrary, they claimed that the value they reported pursuant to Mr. Mitchell’s valuation (which did not include a key man discount) was accurate. Clearly, their new claim that a separate key person discount should be added is result-driven. Only now that the valuation result derived from Mr. Mitchell’s method has changed, due to the Court’s adjustment of the assumptions and inputs, do they claim that that method is somehow lacking.

The failure of all the experts employing the put option approach to also add a separate key person discount should not be assumed to be an oversight. Both Mr. Mitchell and Deloitte & Touche expressly stated that they considered in their analyses the factors set forth in IRS Revenue Ruling 77-287. (*See* L/D Exhibits 58, 60 and 51) These factors include, among many others, whether any of the parties subject to the restrictions are "officers or directors of the company" and "whether the interest being valued represents a majority or minority ownership." *See* Rev. Rul. 77-287, 1977 C.B. 319. (*See also* Memorandum and Opinion, p. 47 fn. 13) Thus, experts employing this approach, including Mr. Mitchell, considered whether Litman and Diener were key persons and the impact of the size of their holdings. The experts nevertheless decided not to add a separately stated, additional key person discount. The Court could reasonably conclude from this unanimity among the put option partisans that it is inappropriate to add a separate key person discount.[4]

Finally, as the Court knows, although Mr. Burns disagrees fundamentally with the put option approach, and did not include that approach as part of his opinions, he was asked, as a hypothetical on cross-examination, whether he would add the key person discount, that he used in his different approach, to a discount determined under the put option method. He testified that he would. (*See* Transcript, pp. 1651) Presumably the Court either rejected this, in light of the fact that no expert who actually employed the put option approach did what Mr. Burns stated he might do, or simply incorporated it as one of the factors it considered in deciding to adjust Mr.

---

[4] Dr. Bajaj expressly disputed that a key person discount was appropriate in this case. (*See* Memorandum and Opinion, p. 79) Given Dr. Bajaj's disagreement, and Mr. Mitchell's failure to express an opinion that it is warranted, despite many chances, the Litmans and Dieners' characterization of a key person discount as "undisputed" is not accurate.

Mitchell's discounts by only 25%.[5]

**III. THE COURT ADDRESSED THE FACTORS THAT THE LITMANS AND DIENERS CLAIM WERE OMITTED**

The Litmans and Dieners also complain generally that the Court's valuation conclusion fails to reflect the lengthy transfer restrictions on the HRN restricted stock, and the impact the eventual sale of their large bloc of stock might have on the price. (See Motion to Reconsider, p. 6) In adopting the Litman's and Dieners' own expert's valuation methodology, with adjustments, however, the Court's analysis addressed these factors. For example, the Court recognized that Mr. Mitchell's analysis took into account both the contractual restrictions and restrictions under SEC Rule 144. (*See* Memorandum and Opinion, p. 31, 46 - 49) Mr. Mitchell, in fact, assumed that the Litmans and Dieners were not able to sell the stock for between two and five and one-half years, and that they sold the stock only in small quarterly batches of 170,000 to 500,000 shares, pursuant to the requirements of SEC Rule 144. (*See* Memorandum and Opinion, p. 51 - 52 and Transcript pp. 1157 - 58) The assumption of small sales over a three and one-half year period essentially obviates the need for any discount due to a fire-sale of the entire bloc of stock at once, with the attendant risk of creating downward pressure on prices. The Court (and Mr. Mitchell) did not, therefore, fail to take into account the size of the bloc of shares compared to the public float, as the Litmans and Dieners now claim. (*See* Motion for Reconsideration, p. 2 and 5)

Additionally, Mr. Mitchell's approach incorporates the length of the restrictions as one of the "key drivers" for valuation. (*See* Memorandum and Opinion, p. 48) Mr. Mitchell, however,

---

[5] The Litmans and Dieners do not mention this testimony by Mr. Burns in their motion for reconsideration.

failed to consider the possible impact of any of the terms of the Amended and Restated Asset Purschase Agreement ("ARAPA") that would permit the lifting of the restrictions early – he assumed the worst-case scenario in terms of the length of restrictions. The Court specifically found this to be inappropriate, and adjusted his discounts to allow for the possibility of the restrictions being shortened pursuant to the terms of the ARAPA. (*See* Memorandum and Opinion, p. 82). (As the Court knows, the contractual restrictions were, in fact, terminated early, in 2003.)

The Litimans and Dieners obviously disagree with the Court's adjustments of their expert's valuation assumptions. The Court's adjustments, however, are not the result of omissions or a failure to consider relevant factors. Moreover, the addition of a separate key person discount is not an appropriate trade-off for these adjustments, in order to compensate the Litmans and Dieners for the resulting decrease in the applicable discount.

**Conclusion**

For all the above reasons, this Court should deny the Litmans and Dieners' motion to reconsider.

Respectfully submitted,

*s/ Cory A. Johnson*
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Eileen J. O'Connor
Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Steven I. Frahm*
Of Counsel

Attorney for The United States

Dated: September 20, 2007