**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | |
| | ) | **No. 05-956 T** |
| **vs.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiffs.** | ) | |

| | | |
|---|---|---|
| **ROBERT B. DEINER and MICHELLE S. DEINER,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | |
| | ) | **No. 05-971 T** |
| **vs.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |

| | | |
|---|---|---|
| **HOTELS.COM, INC. AND SUBSIDIARIES (f/k/a HOTEL RESERVATIONS NETWORK, INC.** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **No. 06-285 T** |
| **THE UNITED STATES,** | ) | **(Christine O. C. Miller)** |
| **Defendant** | ) | |

**THE UNITED STATES' RESPONSE**
**TO HOTELS.COM'S MOTION FOR RECONSIDERATION**

2765123.1

## Introduction

In response to the Litmans and Dieners' motion for reconsideration, Hotels.com now also asks the Court to reconsider the valuation of the HRN restricted stock. Hotels.com claims that it will suffer "manifest injustice" if the Court does not adjust its valuation of the stock to take into account three additional purported errors in Mr. Mark Mitchell's valuation analyses.

This Court should not make the changes sought by Hotels.com. In brief, the new adjustments are based on an impermissible attempt to introduce evidence that was not presented at trial, a misunderstanding of the valuation analyses, and/ or an inappropriate combining of adjustments for separate valuation approaches.[1]

### I. HOTELS.COM'S NEW CAPM CALCULATIONS DO NOT WARRANT RECONSIDERATION OF THIS COURT'S VALUATION CONCLUSION

#### A. Hotels.com Cannot Now Present New Evidence of Alternative CAPM Discounts Based on Different Beta Assumptions

Hotels.com first claims that Mr. Mitchell erred by using a Beta value of one in his CAPM calculations, and that the Court's failure to account for this error in its August 22, 2007, opinion justifies a reconsideration of the value for the HRN restricted stock. (*See* Motion for Reconsideration, p. 8 - 10) In support, Hotels.com submits calculations – for the first time – of the discounts that result from Beta values of two and three. (*See* Motion for Reconsideration , p. 10)

[1] Hotels.com's claim of "manifest injustice" also rings a bit hollow. This Court determined that the HRN restricted stock had a value of approximately $90 million – a value that is only about 10% less than the value of approximately $100 million reported by Hotels.com in its 2001 through 2003 tax returns, based on the Deloitte & Touche valuation.

This is improper on a motion for reconsideration. No such evidence concerning alleged alternative discounts resulting from different Beta value assumptions was introduced at trial of these cases.[2] Dr. Bajaj, the only expert to critique Mr. Mitchell's CAPM analysis, did not even include any such calculations in his written reports. (*See* HC Exhibit 197, pp. 37 - 40, 65 - 74) To be sure, Mr. Mitchell testified, on cross-examination, that Beta values greater than one would lead to a lesser discount, and that it "would not surprise him" that certain internet companies had a Beta greater than one. (*See* Transcript, p. 1144) The evidence stopped there, however. No expert opinion was offered that a Beta of two or three was, in fact, appropriate in the circumstances of this case, nor were any calculations of discounts resulting from alternative Beta values offered. A motion for reconsideration is not the time to present such new expert opinion evidence. *See e.g. Publishers Resource., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (a motion for reconsideration is not a vehicle for introducing new evidence or legal theories that could have been made previously) and *Corrigan v. United States*, 70 Fed. Cl. 665, 667 - 69 (2006).

**B. The CAPM and Put Option Valuations Are Separate Methods and Any Respective Adjustments Should Not be Added Together in a Combined Adjustment Amount**

The United States reads the Court's August 22 opinion as principally relying upon the put option valuation method of Mr. Mitchell, and then adjusting his valuation conclusions to account for certain errors and other factors. The Court stated that it found the put option method to be an accepted valuation approach, in part, because both the IRS and Deloitte & Touche used it, and

[2] Dr. Bajaj's testimony concerning the CAPM approach is at pages 1311 - 1316 of the trial transcript.

that it agreed with Mr. Mitchell's reasoning for using this approach. (*See* Opinion and Memorandum, p. 81) The Court did not make similar findings or statements regarding Mr. Mitchell's CAPM methodology. Additionally, the primary weaknesses with Mr. Mitchell's valuation that the Court identified as supporting its 25 percentage point reduction of Mr. Mitchell's discounts (*i.e*. an assumed 100% volatility and failure to take into account early termination of the restrictions), reflect the criticisms made by Hotels.com and the United States of Mr. Mitchell's implementation of the put option method. [3]

To the extent the Court relied upon the put option method, Hotels.com's new criticisms of Mr. Mitchell's assumptions for the separate CAPM methodology are irrelevant. That is, even if Hotels.com is correct that a different Beta value is more appropriate in a CAPM analysis, that would not affect calculations under the put option method, or the amount of the Court's adjustments to discounts determined under that approach. They are separate and independent ways to value the stock, and flaws in one don't require adjustments to a value derived from utilizing the other. Accordingly, any purported adjustment amount to reflect a different Beta,

---

[3] The Court need not, of course, rely upon any particular method proposed by the experts. "The Court may either accept the expert opinion in its entirety, accept portions of the expert's opinion, or reject the opinion altogether and reach a determination on its own after examining the evidence in the record." *Okerlund v. United States*, 53 Fed. Cl. 341, 345 (2002). Valuations are an "inexact science" based on approximations, and a value within the "range of figures that may be deduced from the evidence" cannot be said to be a manifest error. *Okerlund*, 53 Fed. Cl. at 345 - 46. The Court's valuation here clearly falls within the wide range of figures presented in this case. *See also, United States v. Northern Paiute Nation et al.*, 393 F.2d 786, 800 (Ct. Cl. 1968) (The court need not "take up the reasoning of [the] appraisers step by step, and either accept each step or show reasons for rejecting it....[It can] synthesize in its mind the immense record before it, determine to what extent opinion evidence rested on facts, consider and weigh it all, and come up with figures supported by all the evidence, perhaps, though not identified with any of it.")

should not be added together with adjustments relevant to the separate put option method. This would lead to irrelevant adjustments and double counting. Specifically, if the 25 percentage point adjustment made by the Court reflects its corrections to Mr. Mitchell's put option method, the Court should not add to that amount the 8 - 20 percentage point adjustment that Hotels.com claims reflects the use of a correct Beta value. (*See* Hotels.com's Response and Motion for Reconsideration, p. 10)

When considered as a possible adjustment to a separate valuation conclusion under the CAPM method, the use of a different Beta value does not demonstrate that this Court's valuation conclusion is manifestly erroneous. The discounts resulting from assuming a Beta of two or three are greater than those determined by the Court. According to Hotels.com's new calculations, the discounts based on a Beta of two would be 39%, 52%, 55% and 74% for the four tranches, and the discounts based on a Beta of three would be 29%, 40%, 42% and 61%. (*See* Hotels.com's Response and Motion for Reconsideration, p. 10) The discounts the Court determined are less than both these ranges: 22%, 36%, 38% and 50%. (*See* Memorandum and Opinion, p. 82)

Hotels.com's new CAPM discount ranges, however, would then also need to be adjusted to reflect the Court's criticisms of Mr. Mitchell's volatility and holding period assumptions. Like the put option approach, the CAPM approach uses volatility assumptions and holding period assumptions, and Mr. Mitchell assumed the same 100% volatility and long holding periods for both. Reducing the volatility and holding periods, as the Court deemed appropriate for the put option approach, will lower Hotels.com's newly calculated CAPM discounts, moving them

closer to the discounts determined by the Court. As with the new alternative Beta values, however, Hotels.com did not offer any testimony or calculations at trial concerning the marginal changes in discounts resulting from different volatility and holding period assumptions in CAPM calculations. And, it cannot be assumed that similar changes in volatility and holding period assumptions for the CAPM and put option methods will necessarily cause marginal changes in the respective discounts under the two methods in exactly the same amounts.[4]

Nevertheless, the significant problems with Mr. Mitchell's CAPM calculations, and the reduction in discounts resulting from their correction, provide further support and corroboration for this Court's valuation conclusion.

## II. MR. MITCHELL DID NOT PREDICT A RISE IN THE HRN STOCK PRICE FOR PURPOSES OF HIS PUT OPTION METHOD

Hotels.com next claims that Mr. Mitchell improperly anticipated future events, after the February 24, 2000, valuation date, by increasing the exercise (or strike) price of the hypothetical options over time. As the Court knows, the exercise price, along with volatility and other inputs, are used in the Black-Scholes formula to determine the price of the hypothetical options used in this valuation method. (*See* L/D Exhibit 60, p. 20) The hypothetical option price is then used to determine a discount.

---

[4] In contrast, the Court did have evidence of the discounts, and marginal changes in discounts, resulting from different volatility and holding period assumptions under the put option approach. (See e.g. LD Exhibits 13, 15, 16 and 51, and Defendant's Exhibit 73). Dr. Bajaj set forth some calculations in an appendix to his written report regarding alternative volatility and holding period assumptions in the CAPM approach. (*See* HC Exhibit pp. 65 - 74) These were not addressed or explained at all at trial, however, and Dr. Bajaj was not, therefore, cross-examined about them. (*See* Transcript, p. 1255 (report admitted only to the extent it is referred to at trial))

It is true that the *exercise prices* of the hypothetical options Mr. Mitchell uses increase by the risk-free interest rate over time. (*See* L/D Exhibit 60, pp. 20) These exercise prices, however, are the prices at which the option holder is entitled to sell ("put") the HRN stock to his or her counter-party at the various expiration dates, and these prices are determined as a matter of agreement in the hypothetical option contracts at the time the option contracts are entered into – here, February 24. The exercise prices are not a prediction of future stock prices.[5]

Hotels.com is correct that Deloitte & Touche and the IRS did not use increasing exercise prices in their hypothetical put options, and that Mr. Mitchell's use of increasing exercise prices increased his calculated discounts.[6] According to Mr. Mitchell, he used increasing exercise prices so that the options would reflect the cost of "fully hedging" the HRN stock held by the Litmans and Dieners. (*See* L/D Exhibit 60, p. 20) The problem Hotels.com highlights, therefore, is not an impermissible anticipation of future events, but the fundamental problem with this method itself, about which both Dr. Bajaj and Mr. Burns testified. That is, rather than measuring the cost of sale restrictions, the put option method measures much more – the cost of insuring, or hedging, against any stock price decline (in the case of Deloitte & Touche and the IRS' calculations) or the cost of insuring, or hedging, against any price increase less than risk-free rate

---

[5] For example, in the case of the two-year put option, that option contract would give the holder the right to sell a share of HRN stock in two years at the price of $16 plus the interest on that $16 compounded over the two-year period. Adding the interest to the exercise price makes it "fully hedged." The holder would exercise the option if the market price for the stock was less then $16 plus the interest; he would not exercise the option, and would instead sell the stock on the open market, if the market price was greater than the exercise price of $16 plus interest.

[6] The higher the exercise price, the more expensive the option is. Under the put option method, the more expensive the hypothetical option is, the greater the discount.

of return (in the case of Mr. Mitchell's calculations). (*See* Defendant's Exhibit 39 and HC Exhibit 197) This issue of the applicability of the put option method, however, was presented to, and specifically decided, by the Court. Moreover, as a result of the adjustment of Mr. Mitchell's discounts by 25 percentage points, the Court's discounts are already close to those determined by the IRS and Deloitte & Touche, who both assumed a constant $16 exercise price in their hypothetical options. (*See* L/D Exhibits 13 and 51).

Finally, it should be noted that, once again, Hotels.com is attempting to present in its motion for reconsideration calculations that were not offered at trial. Although the reports of Deloitte & Touche and the IRS were admitted at trial, the calculations of option prices and discounts set forth in Hotels.com's motion for reconsideration were not. (*See* Hotels.com's Response and Motion for Reconsideration, p. 11 - 12)

## III. THIS COURT ADJUSTED MR. MITCHELL'S DISCOUNT TO REFLECT TAG-ALONG RIGHTS

Hotels.com's third argument for reconsideration is that Mr. Mitchell failed to take into account in his analysis the possibility that the Litmans and Dieners could have the HRN restricted stock registered with the SEC after the four years of contractual restrictions ended. Hotels.com claims that the Court failed to recognize this, and adjust its discount for this fact.

The Court explicitly stated in its opinion, however, that Mr. Mitchell erred by not considering the possibility of the restrictions being terminated early and "the possible value of tag-along rights." (*See* Memorandum and Opinion, p. 82) The United States understands "tag-along rights" in this instance to refer to registration rights. The Court reduced Mitchell's discount by 25 percentage points to account, in part, for these possibilities. There is no need to

reconsider this issue.

**Conclusion**

For all the above reasons, this Court should deny Hotels.com's motion for reconsideration.

Respectfully submitted,

*s/ Cory A. Johnson*
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Eileen J. O'Connor
Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Steven I. Frahm*
Of Counsel

Attorney for The United States

Dated: October 1, 2007



2765123.1