**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-956T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **ROBERT B. DIENER and MICHELLE S. DIENER,** | ) | |
| **Plaintiffs-Counterdefendants,** | ) | |
| **V.** | ) | **No. 05-971T** |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a HOTEL RESERVATIONS NETWORK, INC.),** | ) | |
| **Plaintiffs,** | ) | |
| **V.** | ) | **No. 06-285T** |
| | ) | **(Judge Christine O.C. Miller)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS-COUNTERDEFENDANTS,**
**DAVID S. LITMAN, MALIA A. LITMAN,**
**ROBERT B. DIENER AND MICHELLE S. DIENER'S**
**RESPONSE TO HOTELS.COM'S**
**CROSS- MOTION FOR RECONSIDERATION**

Plaintiffs-Counterdefendants, David S. Litman and Malia A. Litman (the "Litmans") and Robert B. Diener and Michelle S. Diener (the "Dieners")[1] file this Response to Hotels.com's Cross-Motion for Reconsideration in accordance with the Court's Order dated September 21, 2007.[2]

**A. Hotels.com Fails to Satisfy the Motion For Reconsideration Standard.**

The Court's analysis contained two fundamental conclusions regarding the complex and conflicting expert testimony on the proper lack of marketability discount: (1) "Mr. Mitchell's analysis best withstood the attacks of his counterparts and opposing counsel" and therefore his methodology should "carry the most weight"; and (2) his approach nevertheless had some weaknesses and therefore his conclusions about the amount of the discount should be adjusted. Op. at 77-82. The Court thus adjusted Mr. Mitchell's lack of marketability discounts by subtracting 25% from the lower range of Mr. Mitchell's discount conclusions.

Reasserting points it either raised or could have raised at trial, Hotels.com argues that the Court's 25% reduction of Mr. Mitchell's discounts – which actually cut Mr. Mitchell's discounts in half – did not reduce Mr. Mitchell's lack of marketability discounts sufficiently.[3] But motions for reconsideration are "not intended to give an unhappy litigant an additional chance to sway the court." *Stockton E. Water Dist. v. United States*, 76 Fed. Cl. 497, 499 (2007). Likewise, motions for reconsideration are not intended to allow a party to reassert arguments that the Court has already considered. *Pikeville Coal Co. v. United States*, 37 Fed. Cl. 304, 313 (1997). And a party may not use a motion for reconsideration to raise arguments

[1] Collectively, the Litmans and the Dieners are referred to herein as "Plaintiffs."
[2] Plaintiffs object to Hotels.com's motion as it was filed outside of the time permitted to file a motion for reconsideration under Rule 59.
[3] Unlike Plaintiffs' Motion for Reconsideration, Hotels.com is not arguing that the Court's valuation conclusions do not conform to its specific factual findings.

that it could have raised previously, but did not. *Bernard v. United States*, 12 Ct. Cl. 597, 598 (1987) ("Motions pursuant to [RCFC] 59 are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings").

While Plaintiffs disagree with the notion that there were any errors in Mr. Mitchell's contemporaneous and thorough lack of marketability discount analysis (apart from Mr. Mitchell's not including a specific key person discount), each of the issues raised by Hotels.com was or could have been addressed in Mr. Mitchell's testimony or in expert rebuttal testimony. Importantly, there was no rebuttal testimony from either Hotels.com's expert, Dr. Mukesh Bajaj ("Dr. Bajaj"), or from Defendant's expert, Francis X. Burns ("Mr. Burns"), raising any concern with respect to the criticisms outlined in Hotels.com's motion. Mr. Mitchell's testimony regarding each of the issues was expressly considered in the Court's detailed 91-page opinion.

The Court well knows Plaintiffs' exasperation with the numerous inconsistent positions taken by Hotels.com with respect to the value of the 9,999,900 shares of restricted stock issued to the TMF Liquidating Trust on February 24, 2000 (the "Restricted Shares"). *See* Op. at 30, n.6. Perhaps the most ironic portion of Hotels.com's Motion for Reconsideration is its latest new theory; that is, after a year of discovery, a two-week trial, and millions of dollars of legal fees expended, Hotels.com requests the Court to abdicate its adjudicative function and determine a lack of marketability discount based upon Mr. Burns's valuation analysis (which applied methodologies considered by the Court to be flawed) simply because he testified on behalf of the Department of Justice.

Hotels.com has demonstrated no error, much less a manifest injustice, that would warrant reconsideration of the Court's decision. Its motion should be denied.

**B. Mr. Mitchell's CAPM Beta Input Was Considered By the Court and Was Correct.**

Mr. Mitchell used a Beta of 1 in his CAPM analysis based upon publicly traded stocks in the lodging industry. Mr. Mitchell's reasoning for using a Beta derived from stocks in the lodging industry was explained in detail during his direct examination and was the subject of cross-examination. Tr. 1143-45. Mr. Mitchell explained that because Beta measures the sensitivity of a stock's price movements to movements in the market as a whole, lodging stocks were the best sources of Beta when determining the value of the Restricted Shares under the CAPM approach. That is because HRN was in the business of buying and selling hotel rooms, and the demand for its services would be driven by the same factors that influence the demand for the services provided by companies like Hilton and Marriott. Tr. 1028.

Hotels.com criticizes Mr. Mitchell for using lodging companies to determine Beta in his CAPM analysis and internet companies to determine volatility in his option pricing analysis. Hotels.com's criticism results from its failure to understand the difference between volatility and Beta, and what each measures. Volatility is the total risk attributable to a company's stock. It consists both of "systematic risk" and "specific company risk." Beta measures only systematic risk. Tr. 1024-28; *see also* SHANNON P. PRATT, ET AL., VALUING A BUSINESS: THE ANALYSIS AND APPRAISAL OF CLOSELY HELD COMPANIES 164 (4th ed. 2000). The fact that HRN is an internet company is a ***specific company risk***. Tr. 1027-28. As Mr. Mitchell opined, it is perfectly reasonable to expect HRN's stock to be highly volatile like other internet stocks because its total risk was high, not because its market risk (the relative risk of the lodging industry) was high.[4] Given the unique specific company risks associated with

[4] Mr. Mitchell's estimated volatility of 100% was the same estimate used by HRN in its public filings in connection with the IPO. Op. at 81.

internet stocks during the relevant time period, Mr. Mitchell's assumptions are perfectly reasonable.

Despite Hotels.com's protestations, there is no expert testimony or other authority to support Hotels.com's position that Mr. Mitchell's Beta calculation was wrong. Hotels.com introduced no evidence to support a Beta different from that used by Mr. Mitchell. In his 76-page rebuttal report, Hotels.com's expert did not challenge Mr. Mitchell's use of a Beta of 1 from the lodging stocks for his CAPM analysis. *See* HC 197. Since Dr. Bajaj was clearly not shy in expressing his criticisms of Mr. Mitchell's analysis, we must presume that he found no fault with Mr. Mitchell's choice of a Beta. Likewise, Mr. Burns did not testify at all regarding Mr. Mitchell's Beta calculation. Regardless, the Court explicitly considered Mr. Mitchell's Beta calculation in reaching its lack of marketability valuation conclusions. Op. at 55. No basis for reconsideration exists. *Pikeville Coal Co.*, 37 Fed. Cl. at 313.

### C. Mr. Mitchell's Option Pricing Analysis Inputs Were Considered By the Court and Were Correct.

The Court noted that Mr. Mitchell used six inputs to determine a lack of marketability discount using the Black-Scholes option pricing model: "1) the time to expiration, 2) the expected future volatility of the underlying security, 3) the price of the underlying security, 4) the exercise price of the option, 5) the risk-free rate, and 6) dividend yield." Op. at 51, *quoting* L/D 60 at 28. The Court also noted that Mr. Mitchell's report explained that "the exercise price must equal the future value of the current price of the security, compounded using the risk free rate." Op. at 51, *quoting* L/D 60 at 20.

Hotels.com complains that Mr. Mitchell's use of an exercise price equal to the initial value of the HRN stock compounded at the risk-free rate over the life of the restrictions is akin to "anticipating any future events." To the contrary, Mr. Mitchell's application of the risk-

free rate is simply a correct application of the Black-Scholes option pricing analysis. The option pricing analysis models the impact of restrictions on sale by providing an estimate of the value of the foregone option to sell during the restriction period. Op. at 50-52; Tr. 1014-24. Accordingly, the effect of the transfer restrictions can be priced as an average strike put option. The exercise price is calculated as the arithmetic average of the forward prices, and this average is determined by a distribution with a mean equal to the risk-free rate and standard deviation based upon the stock's expected volatility. Tr. 1014-24. Mr. Mitchell correctly calculated the exercise price to be equal to $16 per share compounded by the risk-free rate during the period in which the Restricted Shares could not be contractually or practically sold. *See, e.g.*, John D. Finnerty, "The Impact of Transfer Restrictions on Stock Prices," Am. Fin. Ass'n. 2003 Washington, D.C. Meetings (October 2002).[5]

Although both Dr. Bajaj and Mr. Burns raised numerous objections to different facets of Mr. Mitchell's option pricing analysis, neither criticized his use of an exercise price equal to the initial value of the stock compounded at the risk-free rate. *See* HC 197; Tr. 1125-1481, 1523-1709. Mr. Mitchell's option pricing analysis inputs were the subject of direct and cross examination (*see* Tr. at 1015, 1158-60) and were considered by the Court in reaching a decision. The fact that both Ruth Haney (the IRS in-house expert) and Deloitte & Touche (Hotels.com's initial expert) used a different exercise price in their option pricing analysis does not undercut Mr. Mitchell's analysis, as neither was called to testify by Hotels.com to explain their position. Hotels.com's criticisms are not a proper basis for a motion for reconsideration.

[5] Mr. Finnerty's article was marked (but not introduced into evidence) as L/D 87, and can also be located at http://ssrn.com/abstract=342840.

**D. Mr. Mitchell's Testimony Regarding the Legal and Practical Restrictions Inherent in the Restricted Shares After the Expiration of Four Years Was Considered By the Court and Was Correct.**

As the Court found, the Restricted Shares had contractual, statutory and practical restrictions on their sale. The sale restrictions included, among other things: (1) contractual holding periods, (2) S.E.C. Rule 144 volume restrictions on the number of Restricted Shares that could be sold after holding periods expired, (3) the requirement that approval of HRN's parent company be obtained before any Restricted Shares could be sold, (4) that the public float was initially only half the size of the Restricted Shares issued to the TMF Liquidating Trust, so practically the Restricted Shares could not be sold without drastically lowering the market price, and (5) the practical market restriction on sale due to the fact that the TMF Liquidating Trust was owned by the CEO and President of HRN and any sale by Messrs. Litman and Diener would erode investor confidence.

Hotels.com alleges that Mr. Mitchell failed to account for registration rights, alleging that the Restricted Shares could be registered and would become freely tradable at the end of the four-year contractual restriction period. As a consequence, Hotels.com argues that Mr. Mitchell's effective holding period should have been limited to four years. Mr. Mitchell recognized the existence of registration rights for the Restricted Shares (*see* L/D 60 at 6). But Mr. Mitchell also properly recognized that the anticipated holding period was not limited to four years because legal and practical restrictions to selling the Restricted Shares existed even after the four-year contractual restrictions expired and the shares were registered. Mr. Mitchell noted

> The size of the block is significant relative to total shares outstanding and relative to the anticipated float subsequent to the initial public offering. While the prospect of registration would reduce the expected holding period after four years, issues related

> to the affiliate status of the holder of the shares and the ability to effectively register and sell all of the shares impact our discount analysis.

L/D 60 at 6, n.1.

The Court also stated that "[i]t was Mr. Mitchell's assessment that, because the block of 9,999,900 restricted shares issued to TMF Liquidating Trust was larger than the public float – approximately 6 million shares – the ability of the holders of the restricted HRN shares to resell their stock was negatively affected." Op. at 49, *quoting* Tr. at 1007. Likewise, the Court stated that "[i]n determining the time-to-expiration of the restrictions variable, Mr. Mitchell considered two factors: (1) the contractual restrictions imposed by the ARAPA and (2) the size of the block of shares being sold. Mr. Mitchell estimated 'how much of that block [of shares] could be sold [in] each quarter pursuant to Rule 144.'" Op. at 51, *quoting* Tr. at 1018.

Like the previous points raised by Hotels.com, there is no expert testimony or other authority to support Hotels.com's position that Mr. Mitchell's assumption of a 5.5 year holding period for the four-year contractually Restricted Shares was erroneous. Dr. Bajaj did not challenge Mr. Mitchell's holding period assumptions. *See* HC 197. And even Mr. Burns assumed that the fourth tranche of stock had a holding period of 4.5 years, which is longer than the contractual restriction period. *See* D 39 at 23 and Exh. 1. Mr. Mitchell's analysis was considered by the Court in determining the lack of marketability discount. Hotels.com has shown no basis for reconsideration.

**E. Hotels.com's "New" Claim That the Court Should Adopt Mr. Burns's Valuation Analysis Is Disingenuous.**

After over a year of costly discovery, a two-week trial, and a detailed 91-page opinion from the Court, Hotels.com requests the Court to adopt Mr. Burns's valuation analysis

as though this case had never been litigated. Hotels.com describes the government as "a stakeholder" and argues that therefore it would be "manifestly unjust" for the Court to reject the opinion of its expert, "regardless of the methodology used." Hotels.com Cross-Motion for Reconsideration at 13-14. In essence, Hotels.com is asking the Court to abdicate its adjudicatory function and blindly accept a lack of marketability discount analysis the Court recognized as flawed (Op. at 77-81) simply because Hotels.com does not like the Court's valuation conclusion.

In the Opinion, the Court noted Plaintiffs' justified exasperation with Hotels.com's ever changing positions. Op. at 30, n.6. Since this litigation began, Hotels.com has repeatedly thrown numerous "alternative" positions up against the wall in hopes that one would stick. Its trial positions regarding the date of issuance and the value of the Restricted Shares were inconsistent with the positions taken and assertions made in its tax returns and its claims for refund during the six years leading up to this suit. The "new" positions asserted by Hotels.com at trial were simply an attempt to obtain a financial windfall – an increase to the amount of goodwill to be deducted over a 15-year period that is approximately $110 million greater than the goodwill claimed on its tax returns using the Deloitte & Touche analysis.

Hotels.com's latest "new" position is no different. It is yet another attempt to drive the value of the Restricted Shares higher than Hotels.com's pre-litigation reporting position – a reporting position based on the Deloitte & Touche valuation that adopted the same option pricing methodology relied upon by Mr. Mitchell and which produced a value for the Restricted Shares over $25 million less than the value determined by Mr. Burns. Hotels.com should not be permitted to continue to trifle with the judicial process by changing positions and arguments every time the wind blows in a different direction. The shortcomings in Mr. Burns's

expert report were expressly recognized by the Court and his lack of marketability discount conclusions were rejected. Op. at 77-81. Mr. Burns's lack of marketability discount analysis should not be adopted simply because he was employed in this case by the Department of Justice.

**F. Conclusion.**

Plaintiffs respectfully request the Court to deny Hotels.com's Cross-Motion for Reconsideration. Plaintiffs also request such other and further relief to which they may be entitled.

Respectfully submitted,

Dated: October 1, 2007

By: s/ John W. Porter

John W. Porter
Attorney of Record
BAKER BOTTS L.L.P.
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
(713) 229-1597
(713) 229-2797 (Fax)

Jeffrey A. Lamken
Of Counsel
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7978
(202) 585-4060 (Fax)

COUNSEL FOR PLAINTIFFS-COUNTERDEFENDANTS DAVID S. LITMAN, MALIA A. LITMAN, ROBERT B. DIENER AND MICHELLE S. DIENER