**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiffs.** | ) | **No. 05-956 T** |
| **ROBERT B. DEINER and MICHELLE S. DEINER,**<br><br>**Plaintiffs-Counterdefendants**<br><br>**vs.**<br><br>**THE UNITED STATES,**<br><br>**Defendant-Counterplaintiff.** | ) | **No. 05-971 T** |
| **HOTELS.COM, INC. AND SUBSIDIARIES (f/k/a HOTEL RESERVATIONS NETWORK, INC.**<br><br>**Plaintiff**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant** | ) | **No. 06-285 T**<br><br>**(Christine O. C. Miller)** |

**THE UNITED STATES' SUR-REPLY**
**TO THE LITMANS AND DIENERS'**
**MOTION FOR RECONSIDERATION**

Pursuant to this Court's Order of October 1, 2007, the United States submits this sur-reply brief to address the application, if any, of section 7491 to these consolidated cases and the Litmans and Dieners' claim that the Court made a "mathematical error" in its opinion of August 22, 2007.

## I. THIS COURT DID NOT MAKE A "MATHEMATICAL ERROR" BY SUBTRACTING TWENTY-FIVE PERCENTAGE POINTS FROM MR. MITCHELL'S PROPOSED DISCOUNTS

In their reply brief in support of their motion for reconsideration, the Litmans and Dieners assert a new argument, that was not made in their motion, allegedly supporting another change to this Court's valuation of the HRN restricted stock.[1] The Litmans and Dieners now argue that the Court erred by subtracting 25 percentage points from the discounts determined by Mark Mitchell instead of reducing his discounts by 25% (*i.e.* multiplying Mr. Mitchell's discounts by 25% and subtracting that sum from his discounts). (*See* Plaintiffs-Counterdefendants David Litman, Malia Litman, Robert Diener and Michelle Diener's Reply with Respect to Their Motion for Reconsideration, pp. 5 - 7) The Litmans and Dieners claim that this was a "mathematical error."

At the outset, it should be noted that, in support of their claim, the Litmans and Dieners mischaraterize both this Court's decision and the United States' position. They state in their reply brief that this Court ruled that "Mr. Mitchell's marketability discounts were overstated by 25%...." (*See* Litmans and Diener Reply Brief, p. 6) The Court did not, however, make such a finding. Rather, the Court found several weaknesses in Mr. Mitchell's analysis and then decided

[1] Asserting this new argument in their reply brief was improper. *See e.g.*, *Pacific Gas and Electric Company v. United States*, 69 Fed. Cl. 784, 817 (2006) ("reply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.")

to remedy these deficiencies by subtracting 25 percentage points from the lower range of his discounts. It explicitly subtracted 25 percentage points from each of Mr. Mitchell's discount figures for the four tranches, and set forth the results in the chart on page eighty-two of its Memorandum and Opinion. Clearly, a finding that Mr. Mitchell's discounts were overvalued by 25% and deciding to subtract 25 percentage points from Mr. Mitchell's discounts are two different *substantive* rulings about the appropriate value of the HRN restricted stock, and not a mere "mathematical error."

The Litmans and Dieners also claim that the United States, in its response to their motion for reconsideration, somehow implied that "a percentage adjustment [*i.e.* 25%] would have been a logical way to implement the Court's conclusions." (*See* Litmans and Dieners' Reply Brief, p. 6) This is not true. The United States did not make any such argument, and is not arguing, that the Court should have reduced Mr. Mitchell's discounts by 25% rather than subtracting 25 percentage points from his discounts. (*See* United States' Response Brief, p. 3, citing the Court's Memorandum and Opinion, p. 82) To claim otherwise, is an obvious mischaracterization of the United States' response brief.

Aside from the mischaracterizations, the only argument that the Litmans and Dieners can muster in support of their claim of a "mathematical error" is that, in light of the Court's finding that Mr. Mitchell's *methodology* was the most persuasive, the Court's stock valuations are too far from those of Mr. Mitchell, and that the Court must have, therefore, intended to only multiply Mr. Mitchell's discounts by 25%, and subtract that smaller sum from his discounts. This is nonsensical. The Court found significant problems with Mr. Mitchell's implementation of, and inputs for, his valuation methodologies, and, therefore, had ample reason to adjust Mr. Mitchell's

discounts by the full amount that it did. It was also entitled to do it in the direct manner that it did – using Mr. Mitchell's discounts as a starting point and subtracting the 25 percentage points it deemed warranted. In fact, subtracting 25 percentage points places the Court's valuation squarely within the range of values presented at trial by the parties and their experts. *See e.g., Okerlund v. United States*, 532 Fed. Cl. 341, 345 - 46 (2002); and *United States v. Northern Paiute Nation et al.*, 393 F.2d 786, 800 (Ct. Cl. 1968).

Moreover, as the Litmans and Dieners themselves acknowledge, the Court need not accept any expert's opinion in total, and the general approval of a *methodology* does not also require a blind acceptance of the inputs assumed, and conclusions reached, with the methodology. The valuation reports of the IRS and Deloitte & Touche (which the Litmans and Dieners introduced into evidence) demonstrate that one can use the same methodology as Mr. Mitchell and determine discounts for the HRN stock of dramatically different amounts. Indeed, the IRS and Deloitte valuations are even farther from Mr. Mitchell's than this Court's, even though they used the same methodology. The Court's valuation conclusions, therefore, do not contradict its statements regarding Mr. Mitchell's methodology, as the Litmans and Dieners now claim.

## II. THE COURT DID NOT ERR BY NOT EXPRESSLY DECIDING WHETHER SECTION 7491 SHIFTED THE BURDEN OF PROOF

Generally, the burden of proof is on the taxpayer in a tax refund suit. *See e.g. Welch v. Helvering,* 290 U.S. 111, 115 (1993). Under section 7491, the burden may be shifted "with respect to any factual issue" if the taxpayer introduces "credible evidence" with respect to that issue, and proves that each of certain other conditions is met. 26 U.S.C. § 7491(a). One of the conditions that a taxpayer must prove is an exhaustion of all administrative remedies within the

IRS. *See e.g. Okerlund v. United States*, 53 Fed. Cl. 341, 356 n.24 (2002), *aff'd*, 365 F.3d 1044 (Fed. Cir. 2004). In their pretrial memorandum, the Litmans and Dieners claimed that the burden of proof should be shifted to the United States in this case regarding the valuation of the HRN restricted stock.[2] The Litmans and Dieners then had the burden of proving at trial that they met all the conditions for shifting the burden of proof. *Okerlund*, 53 Fed. Cl. at 356 n.24.

The United States believes, however, that the Court does not need to determine whether the burden of proof should be shifted. It was, and remains, unnecessary to the Court's determination of a value for the HRN restricted stock.

As the Court knows, plaintiffs in these consolidated cases whipsawed the IRS by reporting different values for the stock in their respective 2000 income tax returns. The IRS, therefore, issued (inconsistent) notices of deficiencies to the two sides of the transaction, adopting the valuation reported by the other side. This was the appropriate response by the IRS. *See e.g. Fayeghi v. Commissioner*, 211 F.3d 504, 508 (9th Cir. 2000). The issue for trial was the determination of one, consistent value for the HRN restricted stock.

At trial, all three parties submitted admissible factual and expert evidence regarding the stock's value. This issue could be, and was, in fact, decided based simply on this evidence, without regard to the burden of proof. *See e.g. Blodgett v. Commissioner*, 394 F.3d 1030, 1039 (8th Cir. 2005) (tax court did not err in not shifting the burden of proof because both parties

---

[2] In support of their claim, the Litmans and Dieners stated that the court in *Okerlund* shifted the burden to the United States. (See Litmans and Dieners Pretrial Memorandum, p. 22) This is incorrect. The *Okerlund* court did not find that the burden of proof should be shifted – it found that it was irrelevant. In fact, the court determined the stock's value "[s]etting aside the issue of whether the Act's preconditions have been met," and did not decide the burden issue because, for one of the years at issue (1994), plaintiff prevailed under both the "original rule and 26 U.S.C. 7491(a)(1)." *Okerlund*, 53 Fed. Cl. at 356.

introduced evidence and burden was irrelevant to outcome); *Hunt & Sons, Inc. v. Commissioner*, 83 T.C.M. (CCH) 1345, 2002 WL 398703 at 4 (2002) ("Both parties introduced evidence as to the fair market rental values....We will therefore determine the fair market rental values of these properties on the basis of the preponderance of the evidence rather than on an allocation of the burden of proof."); and *Emmit v. Commissioner*, 82 T.C.M. (CCH) 197, 20001 WL 812249 at 5 fn. 3 (2001) ("We need not decide whether sec. 7491(a) affects the placement of the burden of proof here, because we resolve the issues on the basis of a preponderance of the evidence in the record.") Despite having raised this issue in their pretrial memorandum, the Litmans and Dieners do not renew it as a basis for their motion for reconsideration. Thus, they make no contention that the shifting of the burden of proof would have been determinative of the HRN restricted stock's valuation.

Indeed, the only case which the Litmans and Dieners cited in their pretrial memorandum in support of that burden shifting argument is consistent with the Eighth Circuit's conclusion in *Blodgett* (at 1039) that "a shift in the burden of preponderance has real significance only in the rare event of an evidentiary tie." The court in *Okerlund* decided the value of stock in a closely-held corporation for two tax years, 1992 and 1994. For the 1992 valuation, the taxpayer and the United States introduced expert testimony. The Court determined the value, without reference to the burden of proof, by adopting, with adjustment, aspects of the valuations of both experts. *Okerlund* 53 Fed. Cl. at 352 and 354 - 55. For the 1994 valuation, the United States did not introduce any expert testimony, and the taxpayer claimed the burden of proof should be shifted because it introduced "credible evidence" of value. The Court, however, made no finding on the burden shifting issue. *Okerlund*, 53 Fed. Cl. at 356.

Here, it is likewise irrelevant. Even if the Court were to determine that the burden of proof could be shifted, and that the United States' own expert's valuation methodology was not the most persuasive, that would not affect the Court's valuation conclusion. The United States can meet its burden through "evidence in the record that impeaches, undermines, or indicates error in the taxpayer's valuation." *Thompson v. Commissioner*, 2007 WL 2404434 at 3 (2nd Cir. 2007). The Court can then reach a determination of value based on its own analysis of the evidence. That is what happened here.

Respectfully submitted,

*s/ Cory A. Johnson*
Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Richard T. Morrison
Acting Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Mary M. Abate*
Of Counsel

Attorneys for The United States

Dated: October 10, 2007