# In the United States Court of Federal Claims

Nos. 05-956T, -971T & 06-285T
(Filed November 16, 2007)

```
* * * * * * * * * * * * * * * * * * * * * * *   *
DAVID S. and MALIA A. LITMAN,                    *
                                                 *   Tax; pleadings and practice;
        Plaintiffs-Counterdefendants,            *   motion for reconsideration;
                                                 *   RCFC 59(a)(1); weighing expert
        v.                                       *   testimony; burden of proof, 26
                                                 *   U.S.C. ("I.R.C.") § 7491 (2000).
THE UNITED STATES,                               *
                                                 *
        Defendant.                               *
                                                 *
_____        *
                                                 *
ROBERT B. and MICHELLE S.                        *
DIENER,                                          *
                                                 *
        Plaintiffs-Counterdefendants,            *
                                                 *
        v.                                       *
                                                 *
THE UNITED STATES,                               *
                                                 *
        Defendant.                               *
                                                 *
_____        *
                                                 *
HOTELS.COM, INC., and Subsidiaries               *
(f/k/a HOTEL RESERVATIONS                        *
NETWORK, INC.),                                  *
                                                 *
        Plaintiffs,                              *
                                                 *
        v.                                       *
                                                 *
THE UNITED STATES,                               *
                                                 *
        Defendant.                               *
                                                 *
* * * * * * * * * * * * * * * * * * * * * * *   *
```

John W. Porter, Houston, TX, for plaintiffs-counterdefendants Litmans and Dieners. Jeffrey A. Lamken, Baker Botts, LLP, of counsel.

Kim Marie K. Boylan, Washington, DC, for plaintiffs Hotels.com. Kari M. Larson, Latham & Watkins, LLP, of counsel.

Cory A. Johnson, Washington, DC, with whom was Acting Assistant Attorney General Richard T. Morrison, for defendant. Mary M. Abate, Department of Justice, of counsel.

## ORDER ON CROSS-MOTIONS FOR RECONSIDERATION

**MILLER**, Judge.

On August, 22, 2007, an opinion issued determining the value of restricted shares of HRN stock transferred to TMF Liquidating Trust and Mr. Pells. See Litman v. United States, 78 Fed. Cl. 90 (2007). On September 6, 2007, plaintiffs-counterdefendants, David S. Litman and Malia A. Litman (collectively, the "Litmans") and Robert B. Diener and Michelle S. Diener (collectively, the "Dieners"), moved for reconsideration pursuant to Rule 59(a)(1) of the Rules of the Court of Federal Claims. Plaintiffs, Hotels.com, Inc. & Subsidiaries ("Hotels.com"), cross-moved for reconsideration on September 20, 2007. 1/ The Litmans and the Dieners' reply brief filed September 27, 2007, raised a new contention of error, not set forth in their original motion for reconsideration, with respect to which the court ordered supplemental briefing. See Order entered Oct. 1, 2007. 2/ Supplemental briefing concluded October 10, 2007.

---

1/ The Litmans and the Dieners objected to Hotels.com's motion "as it was filed outside of the time permitted to file a motion for reconsideration under Rule 59." Litmans/Dieners' Br. filed Oct. 1, 2007, at 2 n.2. Hotels.com's motion, filed September 20, 2007, indeed, was filed beyond the ten-day period following the entry of judgment on August 22, 2007. See RCFC 59(b). By order filed September 21, 2007, the court determined to "treat this motion for reconsideration as timely filed." The motion was in the nature of a cross-motion, filed as a response to the Litmans and the Dieners' timely filed motion.

2/ The court notes defendant's objection to the Litmans and the Dieners' assertion of a new argument in their reply brief as "improper." Def.'s Br. filed Oct. 10, 2007, at 2 n.1 (citing Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 784, 817 (2006)).

**FACTS**

A full explication of facts, discussed at length in the court's trial opinion, is unnecessary. See Litman, 78 Fed. Cl. at 92-105. Recitation of the facts germane to the parties' contentions is incorporated into the discussion.

**DISCUSSION**

The Litmans and the Dieners request that the court reconsider its August 22, 2007 trial opinion by adding an "additional 7.5% key person discount" to each tranche of the lack of marketability discounts determined by the court and that the court reconsider its "25% across-the-board reduction from the lower end of Mr. Mitchell's range of discounts." Litmans/Dieners' Br. filed Sept. 6, 2007, at 5, 7. In a novel argument, asserted for the first time in their reply brief filed September 27, 2007, the Litmans and the Dieners ask the court to "revise its conclusions" arising out of what they characterize as a "mathematical error" in which the court "subtracted 25% from the base of the lower range of Mr. Mitchell's conclusions, instead of multiplying as is necessary to make a percentage adjustment." Litmans/Dieners' Br. filed Sept. 27, 2007, at 6, 7 (emphasis omitted).

Hotels.com cross-moves for reconsideration arguing that the court's "omitting further reductions to Mr. Mitchell's valuation conclusion for significant additional errors in his methodology would constitute manifest injustice to Hotels.com." Hotels.com's Br. filed Sept. 20, 2007, at 7 (emphasis omitted). Specifically, Hotels.com asserts that the court should recognize the following errors in Mr. Mitchell's valuation: (1) Mr. Mitchell used an incorrect or incomparable Beta input in his CAPM analysis; (2) Mr. Mitchell improperly compounded the strike price of the HRN stock by the risk-free rate of 6.5% per year in computing his put option discounts; and, (3) Mr. Mitchell's holding period for the fourth tranche of stock failed to account for the registration rights available to the Litmans and the Dieners. Finally, Hotels.com asserts that "an ultimate discount conclusion significantly at odds with [defendant's expert] Mr. Burns' approximately 20 percent weighted average discount is manifestly unjust, regardless of the methodology used." Id. at 14.

1. Standard of review on motion for reconsideration

RCFC 59(a)(1) provides that the court may grant "[a] new trial or rehearing or reconsideration . . . to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The court may take additional testimony, amend findings of fact and conclusions of law, and direct entry of a new judgment in determining a motion for reconsideration. Id.

3

Granting reconsideration lies within the court's discretion. Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 499 (2007); see also Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 262 (Fed. Cir. 2000) (table)). This requires the movant to establish a "manifest error of law or mistake of fact," by showing "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." Stockton E. Water Dist., 76 Fed. Cl. at 499 (internal quotations omitted). Reviving unsuccessful arguments and/or making new arguments not previously presented is impermissible in a motion for reconsideration as such a motion is "not intended to give an unhappy litigant an additional chance to sway the court." See id. at 500 (internal quotations omitted); see also White Mountain Apache Tribe v. United States, 9 Cl. Ct. 32, 35 (1985) ("'The reargument of cases cannot be permitted upon the sole ground that one side or the other is dissatisfied with the conclusions reached by the court.'" (quoting Roche v. Dist. of Columbia, 18 Ct. Cl. 289, 290 (1883))).

    2. The Litmans and the Dieners' motion

Although the Litmans and the Dieners' motion neglects to set forth the applicable standard of review for a motion for reconsideration, they regard the court's omission of a 7.5% key-person discount, the court's 25% across-the-board reduction to the lack of marketability discounts, and the court's alleged "mathematical error" to constitute manifest error or manifest injustice. Hotels.com challenges the Litmans and the Dieners' showing to warrant reconsideration, as they have not asserted a change in the law, discovery of new evidence, or "manifest injustice." See Hotels.com's Br. filed Sept. 20, 2007, at 3. However, in the interest of providing a full explication of all the issues involved in this case, the court addresses the concerns raised by the Litmans and the Dieners.

    1) Key-person discount

The Litmans and the Dieners urge the court to apply a 7.5% key-person discount to its determination of lack of marketability discounts. They put forward an "undisputed 'key person' valuation impact resulting from the importance of Messrs. Litman and Diener to HRN." Litmans/Dieners' Br. filed Sept. 6, 2007, at 2. The Litmans and the Dieners cite to a number of cases incorporating a key-person discount into a valuation when a corporation's performance is dependent upon the services of an individual. See Furman v. Comm'r, 75 T.C.M. (CCH) 2206, 2219 (1998); Babin v. Comm'r, 64 T.C.M. (CCH) 1357, 1362 (1992); Estate of Feldmar v. Comm'r, 56 T.C.M. (CCH) 118, 130 (1988).

4

While the Litmans and the Dieners recognize that their own expert, Mr. Mitchell, did not include an additional and separate key-person discount in his determination of lack of marketability discounts, they point to the testimony of Mr. Khosrowshahi, Expedia's CEO; Mr. Kuhn, former general counsel to USA Networks; and Mr. Robinson, former Chief Financial Officer of HRN, in support of their contention that the importance of Messrs. Litman and Diener is "undisputed." Litmans/Dieners' Br. filed Sept. 6, 2007, at 3-4. Their motion sets out the testimony of defendant's expert, Mr. Burns, regarding his hypothetical put-option analysis which made "'an adjustment of 7-1/2 percent to the discount based on research that's been done which indicates 5 to 10 percent is really the range of the key-person impact.'" Id. at 5 (quoting Litman, 78 Fed. Cl. at 133). The Litmans and the Dieners posit that the court "found that the marketability of the Restricted Shares would likely be 'depressed due to the signal that a big sell-out by these officers would portend,'" and yet "the lack of marketability discounts applied by the Court do not take this undisputed fact into account." Id. (quoting Litman, 78 Fed. Cl. at 138).

The Litmans and the Dieners' contentions on this point are unsupportable. Mr. Mitchell, the Litmans and the Dieners' expert at trial and the expert whose methodology the court credited with the most weight, did not see fit to use an additional and separate key-person discount in his valuation. Mr. Mitchell was not alone in omitting an additional and separate key-person discount, as the put-option method valuation prepared by Deloitte & Touche for Hotels.com's valuation of the stock for tax purposes similarly did not include such a figure. Both Mr. Mitchell and Deloitte & Touche stated that their analyses considered the factors set forth in Revenue Ruling 77-287 which includes, among many other factors, whether parties subject to the restrictions are "officers or directors of the company" and "whether the interest being valued represents a majority or minority ownership." Rev. Rul. 77-287, 1977 C.B. 319. It is not to be assumed that Mr. Mitchell's as well as Deloitte & Touche's valuations, which considered the factors listed in Revenue Ruling 77-287, including the roles of Messrs. Litman and Diener and the size of their holdings, omitted by oversight an additional and separate key-person discount.

As the Litmans and the Dieners state, the court may weigh the credibility of an expert's testimony and either accept the opinion in its entirety, accept portions of the opinion, or reject it altogether. See, e.g., Peracchio v. Comm'r, 86 T.C.M. (CCH) 412, *3 (2003) ("Although we may largely accept the opinion of one party's expert over that of the other party's expert, we may be selective in determining what portions of each expert's opinion, if any, to accept." (citations omitted)); Parker v. Comm'r, 86 T.C. 547, 562 (1986) (determining that court need not adopt expert report in total and may find one expert most persuasive on one issue while finding a different expert more persuasive on another); see also Litmans/Dieners' Br. filed Sept. 27, 2007, at 4. In weighing the expert testimony, the court found that Mr. Mitchell's valuation methodology carried the most weight, in part, because

5

his methodology took best account of the many factors that played a role in the lack of marketability discounts, including the practical restrictions on the ability to sell the restricted shares due to the roles of Messrs. Litman and Diener at HRN and the "signal that a big sell-out by these officers would portend." See Litman, 78 Fed. Cl. at 138 (discounting Dr. Bajaj's valuation method against Mr. Mitchell's). Given the findings of this court resolving this issue and the approach of the Litmans and the Dieners' own expert, the Litmans and the Dieners' argument that the omission of an additional and separate key-person discount constitutes manifest error or manifest injustice amounts to quibbling. Instead, any inclusion of such an additional and separate key-person analysis would lead to double counting, as the method employed by Mr. Mitchell, and adopted by the court in considering this same issue, took account of the "key-person" attributes of Messrs. Litman and Diener as a practical constraint on the marketability of the restricted shares justifying the lack of marketability discounts found by the court. The Litmans and the Dieners' grounds for reconsidering this issue are unsubstantial.

2) The 25% reduction to Mr. Mitchell's discounts

The Litmans and the Dieners also complain generally that "the Court's determination of lack of marketability discounts through a 25% across-the-board reduction from the lower end of Mr. Mitchell's range of discounts . . . . substantially underestimates the valuation impact of the onerous restrictions imposed upon the Restricted Shares." Litmans/Dieners' Br. filed Sept. 6, 2007, at 7. In reciting the sale restrictions on the HRN stock, the Litmans and the Dieners note that "[t]he Court recognized that each of these onerous restrictions existed and further recognized that the restrictions warranted a discount from the $16 per share IPO price." Id. at 6 (citing Litman, 78 Fed. Cl. at 137-40). The Litmans and the Dieners do not, and cannot, contend that the opinion's detailed analysis of the facts and expert testimony presented overlooked any of the restrictions employed in Mr. Mitchell's methodology. What the Litmans and the Dieners fail to recognize, however, is that "[a]lthough the court generally approve[d] of Mr. Mitchell's approach, weaknesses were revealed that g[a]ve the court pause," and which required the court to "subtract[] 25% from the lower range of his marketability discounts" "[i]n order to account for the weaknesses." Litman, 78 Fed. Cl. at 140. As defendant points out, the Litmans and the Dieners' argument is a "disagree[ment] with the Court's adjustments of their expert's valuation assumptions." Def.'s Br. filed Sept. 20, 2007, at 7. Because "[m]otions for reconsideration should not be entertained upon the sole ground that one side or the other is dissatisfied with the conclusions reached by the court," the Litmans and the Dieners have failed to assert a proper ground for reconsideration of the court's 25% subtraction from the lack of marketability discounts proffered by Mr. Mitchell. Stockton E. Water Dist., 76 Fed. Cl. at 499 (internal quotations omitted).

3) "Mathematical error"

The Litmans and the Dieners seek reconsideration based on a claimed "mathematical error" when "the Court subtracted 25% from the base of the lower range of Mr. Mitchell's conclusions, instead of multiplying as is necessary to make a percentage adjustment." Litmans/Dieners' Br. filed Sept. 27, 2007, at 6 (emphasis omitted). They argue that, "[i]f Mr. Mitchell's analysis is to 'carry the most weight,' then it necessarily follows that the final marketability discounts, and attendant stock values, would be closer to those proposed by Mr. Mitchell than they would be to those of other experts," yet "the ultimate result reached by the Court is closer to the opinion of Mr. Burns than it is to the opinion of Mr. Mitchell." Id. The Litmans and the Dieners fault the finding that "Mr. Mitchell's marketability discounts were overstated by 25%," so the correct implementation of that ruling arguably requires the court to "apply that conclusion as a percentage adjustment, rather than simply subtracting it" from the lack of marketability discounts. Id. at 6-7.

Both defendant and Hotels.com properly relegate this argument as a "mischaracterizat[ation]" and "misapprehen[sion]" of the court's opinion. See Def.'s Br. filed Oct. 10, 2007, at 2; Hotels.com's Br. filed Oct. 10, 2007, at 2. The pertinent findings in the opinion serve best to illuminate the Litmans and the Dieners' misapprehension:

> Of the three expert witnesses, the court found Mr. Mitchell's *methodology* of determining a marketability discount to carry the most weight. Both Dr. Bajaj and Mr. Burns provided the court with valuable expert testimony, but Mr. Mitchell's analysis best withstood the attacks of his counterparts and opposing counsel. Mr. Mitchell's approach had its own weaknesses, however, and the court's marketability discount of the HRN restricted stock has been adjusted accordingly.

Litman, 78 Fed. Cl. at 137 (emphasis added). A finding by the court that "Mr. Mitchell's *methodology* of determining a marketability discount [shall] carry the most weight" does not inexorably lead to an adoption of Mr. Mitchell's results. Id. (emphasis added). In fact, the opinion noted that, "[a]lthough the court generally approves of Mr. Mitchell's *approach*, weaknesses were revealed that give the court pause. . . . In order to account for the weaknesses in Mr. Mitchell's analysis, . . . the court has subtracted 25% from the lower range of his marketability discounts." Id. at 140 (emphasis added). Thus, nothing in the court's opinion should encourage the Litmans and the Dieners to argue that the court's assessment of expert testimony required adopting the precise results determined by Mr. Mitchell or utilizing lack of marketability discounts "closer to those proposed by Mr. Mitchell." Litmans/Dieners' Br. filed Sept. 27, 2007, at 6.

The contention that the court mathematically erred in implementing its adjustment to Mr. Mitchell's lack of marketability discounts also misapprehends and mischaracterizes the court's trial opinion. The court did not find, as the Litmans and Dieners represent, that "Mr. Mitchell's marketability discounts were overstated by 25%." Id. The court held: "In order to account for the weaknesses in Mr. Mitchell's analysis, . . . the court has subtracted 25% from the lower range of his marketability discounts . . . ." Litman, 78 Fed. Cl. at 140. "Clearly, a finding that Mr. Mitchell's discounts were overvalued by 25% and deciding to subtract 25 percentage points from Mr. Mitchell's discounts are two different *substantive* rulings about the appropriate value of the HRN restricted stock, and not a mere 'mathematical error.'" Def.'s Br. filed Oct. 10, 2007, at 3. The Litmans and the Dieners' contentions on this point are without merit.

### 3. Hotels.com's motion

Hotels.com asserts that it is entitled to reconsideration "on the ground that omitting further reductions to Mr. Mitchell's valuation conclusion for significant additional errors in his methodology would constitute manifest injustice to Hotels.com." Hotels.com's Br. filed Sept. 20, 2007, at 7. Hotels.com asserts that Mr. Mitchell's lack of marketability discounts should be reduced further because he used an inaccurate CAPM Beta input, improperly compounded the strike price of HRN stock by the 6.5% risk-free rate, and failed to account for registration rights available in the fourth tranche of stock. Hotels.com also urges the court to recognize that Mr. Mitchell's valuation is a "complete outlier" to those offered by the other two experts at trial and that "an ultimate discount conclusion significantly at odds with [defendant's expert] Mr. Burns' approximately 20 percent weighted average discount is manifestly unjust, regardless of the methodology used." Id. at 13-14. While defendant responds that "the new adjustments [sought by Hotels.com] are based on an impermissible attempt to introduce new evidence that was not presented at trial, a misunderstanding of the valuation analysis and/or an inappropriate combining of adjustments for separate valuation approaches," Def.'s Br. filed Oct. 1, 2007, at 2, 3/ the court nonetheless will address Hotels.com's concerns that the court's omissions result in manifest injustice.

---

3/ The Litmans and the Dieners object to the court's consideration of Hotels.com's motion for reconsideration at all, "as it was filed outside the time permitted to file a motion for reconsideration under Rule 59." Litmans/Dieners' Br. filed Oct. 1, 2007, at 2 n.2; see supra note 1.

1) <u>CAPM Beta input</u>

Hotels.com argues that "Mr. Mitchell used a Beta of 1 [in his CAPM analysis], which heavily biased and substantially overstated his computed discounts," because the "lodging industry Beta choice was not comparable to that of HRN, . . . an Internet company." Hotels.com's Br. filed Sept. 20, 2007, at 8.  Hotels.com proffers that other Internet companies – those cited by Mr. Mitchell in his volatility calculation – have Beta input values closer to 2 or 3 and that such Beta inputs would lead to lower discount percentages under a CAPM analysis than those determined by Mr. Mitchell using a Beta input of 1.

As part of the CAPM analysis, a Beta input "is the 'index of the market rise of [the] stock.'" <u>Litman</u>, 78 Fed. Cl. at 123 (quoting Transcript of Proceedings <u>Litman v. United States</u>, Nos. 05-956T, -971T, & 06-285T, at 1026-27 (Fed. Cl. Apr. 30-May 9, 2007) ("Tr.")).  It measures the systematic risk of the stock, *i.e.*, the market risk that a stock's price will rise or fall with the rise and fall of the market generally.  <u>See</u> Tr. at 1026-27.  Mr. Mitchell used a Beta input of 1 for the HRN stock, corresponding with the lodging industry, explaining,

> "[I]f we think about how sensitive they'll be to general economic conditions, they're going to react the way a stock like Hilton or Marriott reacts.  That is, if there's a reduction in travel for any reason, if the economy is bad, unemployment is up and the demand for hotel rooms declines, that is what's going to impact the sensitivity of HRN stock to the overall market."

<u>Litman</u>, 78 Fed. Cl. at 123 (quoting Tr. at 1028).  Mr. Mitchell further explained the Beta input figure relative to the volatility figure:

> [V]olatility is distinct from Beta.  Beta is correlated volatility, measures the correlation of a stock's volatility to the market, but a high Beta stock doesn't necessarily need to be a high volatility stock.
>
> The reason I used different stocks for volatility measures was that I thought the price of their stock was more likely to be – was best modeled by looking at internet stocks.  However, when I'm thinking in terms of this [CAPM] model and I'm simply thinking about sensitivity to movements in the market, I think it's going to look like a lodging stock when you're talking about whether it goes up or down more than the market.

Tr. at 1028.

Hotels.com's argument on this issue revisits its cross-examination of Mr. Mitchell regarding his use of different companies as models to derive the volatility figure from those used to derive the Beta input. A motion for reconsideration is not an opportunity for a party to reassert arguments previously made and considered by the court. See Pikeville Coal Co. v. United States, 37 Fed. Cl. 304, 313 (1997). Without having offered any expert testimony or other authority to support its assertions that Mr. Mitchell's use of a Beta input of 1 was incorrect, Hotels.com should be loath to complain about the court's acceptance of Mr. Mitchell's justification for relying on that Beta input as expressed in the court's trial opinion. See Litman, 78 Fed. Cl. at 123. The court thus finds no error entitling Hotels.com to the relief that it seeks.

### 2) Compounding by the risk-free rate

Hotels.com further complains that Mr. Mitchell "compounded the strike price of the HRN stock by the risk free rate," of 6.5% per year, thus "greatly increas[ing] the discounts that would otherwise be found using the Black-Scholes Put Option analysis" in opposition to "Mr. Mitchell's view that anticipating future events is inappropriate." Hotels.com's Br. filed Sept. 20, 2007, at 11.

As defendant and the Litmans and the Dieners point out, Hotels.com's assertion of error highlights not an error in Mr. Mitchell's methodology, but, instead, its general disagreement with the Black-Scholes option pricing analysis. See Def.'s Br. filed Oct. 1, 2007, at 7-8; Litmans/Dieners' Br. filed Oct. 1, 2007, at 6.

> [T]he exercise prices of the hypothetical options Mr. Mitchell uses increase by the risk free rate over time. These exercise prices, however, are the prices at which the option holder is entitled to sell ("put") the HRN stock to his or her counter-party at the various expiration dates, and these prices are determined as a matter of agreement in the hypothetical option contracts at the time the option contracts are entered into – here, February 24. The exercise prices are not a prediction of future stock prices.

Def.'s Br. filed Oct. 1, 2007, at 7 (emphasis omitted) (citations omitted). Because the compounding of the strike price by the risk-free rate is an application of the Black-Scholes pricing analysis and not an impermissible anticipation of future events, Hotels.com's argument is unpersuasive. The validity of Mr. Mitchell's methodology already was considered by the court, Litman, 78 Fed. Cl. at 140-41, and presents no colorable ground for reconsideration.

### 3) Registration rights available in the fourth tranche

Hotels.com finds error in Mr. Mitchell's "failure to account for the registration rights held by the Litmans and Dieners" in his "using an excessively long five and one-half year holding period for the fourth tranche of stock." Hotels.com's Br. filed Sept. 20, 2007, at 12. This claim of an additional error, apart from those recognized by the court, is entirely groundless. The court explicitly found error in Mr. Mitchell's failure to "take into account the fact that the restrictions could lift early," and "the possible value of tag-along rights," thus leading the court to "subtract[] 25% from the lower range of his marketability discounts" "[i]n order to account for the weaknesses." Litman, 78 Fed. Cl. at 141. The court need not return to this issue.

### 4) Mr. Burns' valuation

Hotels.com predicates reconsideration on Mr. Burns' analysis as a touchstone of reasonableness. Recognizing the Government to be a "stakeholder" in this case, Hotels.com asserts that "Mr. Burns, the government's expert, had no motive either to overstate or understate his valuation discount conclusion," and thus a court finding of a "discount conclusion significantly at odds with Mr. Burns' approximately 20 percent weighted average discount is manifestly unjust, regardless of the methodology used." Hotels.com's Br. filed Sept. 20, 2007, at 13-14. As the Litmans and the Dieners point out, Hotels.com's position amounts to a request that "the Court abdicate its adjudicatory function and blindly accept a lack of marketability discount analysis the Court recognized as flawed." Litmans/Dieners' Br. filed Oct. 1, 2007, at 9. The shortcomings in Mr. Burns' methodology and analysis were documented in the opinion. Litman, 78 Fed. Cl. at 137-40. It was the court's duty at trial to resolve the dispute between the parties as to the proper valuation of the HRN stock, not to defer to defendant's expert because the Government stood to recover from either the Litmans and the Dieners, on the one hand, or Hotels.com, on the other. Hotels.com is not entitled to reconsideration on this ground.

### 4. Burden of proof

Finally, upon review of the record, it was brought to the court's attention that the trial opinion made no mention of the burden-shifting effect of 26 U.S.C. ("I.R.C.") § 7491 (2000), in the discussion on burden of proof. The court required briefing on the applicability of I.R.C. § 7491 in an order filed October 1, 2007. Although, generally, in a tax refund suit, the taxpayer bears the burden of proof, United States v. Gen. Dynamics Corp., 481 U.S. 239, 245 (1987); see also Helvering v. Taylor, 293 U.S. 507, 514 (1935), under I.R.C. § 7491, "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by

subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." I.R.C. § 7491(a)(1). 4/

The court's opinion neglected to discuss the burden-shifting effect of I.R.C. § 7491 in a tax refund suit. Assuming that the Litmans and the Dieners satisfied the prerequisites of I.R.C. § 7491(a)(2), 5/ any finding of a shift in the burden of proof would not affect the court's ultimate determination of the value of HRN restricted stock. Upon an evaluation of evidence and expert testimony submitted by all three parties to the case, the court determined the value of the HRN stock by a preponderance of the evidence, without regard to the burden

―――――――――――

4/ Invocation of burden-shifting I.R.C. § 7491 is conditioned by enumerated prerequisites to be demonstrated by the taxpayer:

> Paragraph (1) shall apply with respect to an issue only if--
>
> (A) the taxpayer has complied with the requirements under this title to substantiate any item;
>
> (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and
>
> (C) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).
>
> Subparagraph (C) shall not apply to any qualified revocable trust (as defined in section 645(b)(1)) with respect to liability for tax for any taxable year ending after the date of the decedent's death and before the applicable date (as defined in section 645(b)(2)).

I.R.C. § 7491(a)(2).

5/ Hotels.com argues that the Litmans and the Dieners have not established that they "cooperated" with the IRS as required by I.R.C. § 7491(a)(2). Hotels.com charges that the Litmans and the Dieners "failed to exhaust their administrative remedies," including appeal rights before the IRS, thus not entitling them to the burden-shifting effect of I.R.C. § 7491. Hotels.com's Br. filed Oct. 10, 2007, at 5. As it would be inappropriate for the court to adopt an argument that the Government, as the party that would be expected to raise this construction, has neither advanced nor supported, the court declines to explore this contention.

of the proof. See Litman, 78 Fed. Cl. at 145. As the court made its decision upon its own analysis of all of the admissible evidence and expert testimony presented, the issue whether the Litmans and the Dieners were charged with the burden of proof is irrelevant. See Blodgett v. Comm'r, 394 F.3d 1030, 1039 (8th Cir. 2005) ("In a situation in which both parties have satisfied their burden of production by offering some evidence, then the party supported by the weight of the evidence will prevail regardless of which party bore the burden of persuasion, proof or preponderance. Therefore, a shift in the burden of preponderance has real significance only in the rare event of an evidentiary tie." (citation omitted)); Okerlund v. United States, 53 Fed. Cl. 341, 356 (2002) (finding that court need not determine whether burden shifted under I.R.C. § 7491 because plaintiff prevailed on issue of value whether plaintiff carried the burden or it had shifted).

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Reconsideration is granted insofar as this order addresses I.R.C. § 7491, and the opinion entered on August 22, 2007, is amended accordingly.

2. The Litmans and the Dieners have not sustained their burden of proof regarding their motion for reconsideration. Accordingly, the Litmans and the Dieners' motion for reconsideration is denied.

3. Hotels.com also has failed to carry its burden of proof regarding its motion for reconsideration. Accordingly, Hotels.com's motion for reconsideration is denied.

4. Paragraphs 2 and 4 of the opinion and order entered on August 22, 2007, are modified insofar as the filing dates are extended to December 14, 2007, and December 7, 2007, respectively.

s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge