**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | **No. 05-956 T** |
| **vs.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiffs.** | ) | |

| | | |
|---|---|---|
| **ROBERT B. DEINER and MICHELLE S. DEINER,** | ) | |
| **Plaintiffs-Counterdefendants** | ) | **No. 05-971 T** |
| **vs.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant-Counterplaintiff.** | ) | |

| | | |
|---|---|---|
| **HOTELS.COM, INC. AND SUBSIDIARIES (f/k/a HOTEL RESERVATIONS NETWORK, INC.** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **No. 06-285 T** |
| **THE UNITED STATES,** | ) | **(Christine O. C. Miller)** |
| **Defendant** | ) | |

**THE UNITED STATES' RESPONSE BRIEF**
**IN OPPOSITION TO HOTELS.COM'S**
**CLAIM FOR REFUND OF PENALTIES PAID**

2997537.1

**Introduction**

In now seeking to obtain a refund of the penalties it paid, Hotels.com ignores – once again – the actual factual and procedural record in this case, and tries to rewrite history. At the outset, Hotels.com's argument that its liability for penalties is not at issue in this case, should be disposed of. It is belied by its own earlier filings. As Hotels.com's Complaint states, the IRS assessed $491,338 of penalties against Hotels.com in February 2006, and Hotels.com paid that penalty to the United States. Hotels.com then filed its Complaint seeking a refund of the penalty and additional taxes it had paid. (Hotels.com's Complaint, ¶¶ 27, 28, and 31) In its Answer, the United States denied that Hotels.com was entitled to a refund of the penalty or taxes, thereby explicitly putting at issue Hotels.com's liability for penalties. Then, in its pretrial memorandum, the United States advised Hotels.com and this Court that *one of the issues to be tried* was "whether plaintiffs are liable for penalties under § 6662 of the Code...." (The United States' Pretrial Memorandum of Contentions of Fact and Law, pp. 17 (issue No. 4) and 27). At trial, in this *de novo* refund proceeding, it was then Hotels.com's burden to prove that it was entitled to a refund of the penalties. Any argument that penalties are not at issue is, therefore, wrong.

Hotels.com's attempt to avoid the merits of the issue of penalties is not surprising given the evidence actually introduced at trial and the facts found by this Court. As detailed below, the evidence does not support a claim by Hotels.com that HRN (Hotels.com's predecessor) acted with due care or reasonable cause and good faith in computing the tax consequences of the issuance of the HRN restricted stock in 2000. To the contrary, the evidence shows that although HRN was acutely aware of its obligation to compute and pay its taxes based on a fair market value for the stock, it did not do so. The evidence also shows that one of the alternative theories

that Hotels.com advanced (unsuccessfully) at trial – that the parties had allegedly agreed to report the stock at $16 per share for tax purposes – was *not* relied upon or even considered by HRN when it filed its 2000 return. That rejected trial theory cannot, therefore, provide a reasonable cause for HRN's failure to compute and pay its taxes based on a fair market value for the stock.

Because HRN admittedly understated its tax by more than 10%, based on the Court's valuation, and negligently failed to report and compute its taxes based on a fair market valuation for the HRN restricted stock, penalties are warranted against Hotels.com under § 6662, and this Court should deny its claim for refund of the penalties.[1]

## Facts

### I. THE EVIDENCE DEMONSTRATES THAT WHEN HRN FILED ITS 2000 RETURN, IT WAS AWARE OF ITS OBLIGATION TO REPORT A FAIR MARKET VALUE FOR THE HRN RESTRICTED STOCK

The valuation dispute between the Mr. Litman and Mr. Diener and HRN began when a draft 2000 HRN tax return was sent to Mr. Diener in September 2001. (Trial Trans. p. 356 - 362) That draft return had been prepared by Ernst &Young, and listed the HRN restricted stock at a value of $16 per share (the IPO price) on the "*assumption*" that Mr. Litman and Mr. Deiner would agree to it; E&Y asked HRN to let it know whether the Mr. Litman and Mr. Diener, in fact, agreed with the draft return. (LD Exhibit 37, emphasis added) Upon receiving the return, Mr. Diener immediately told Mel Robinson, HRN's Chief Financial Officer, that he and Mr. Litman had previously obtained a fair market valuation, and that they did not agree with HRN

[1] As the United States indicated in its Status Report Regarding Hotels.com's Liability for Penalties, the amount of penalties at issue is now reduced to $341,859 based on the Court's valuation of the HRN restricted stock.

reporting the stock and computing its tax at the $16 IPO price. (Trans. p. 496) Mr. Diener confirmed this in his September 24, 2001, email to Mel Robinson and Viren Ghandi, HRN's Senior Director of Finance. (Joint Ex. 22)

Mr. Robinson then consulted with Eric DeGraw and Bill Severance, the Tax Director and Controller, respectively, of USA Networks, Inc., HRN's parent company at the time. (Trans. 491, 498**)** Mr. Robinson testified as follows:

> I know we ended up deciding, as a result of those discussions, that the company needed to have an appraisal of the stock done for – to establish our own position for tax purposes. I ended up taking the recommendation of Eric DeGraw that Deloitte and Touche be used for that, since there was an issue about whether E&Y's advice was proper.
>
> And there was a valuation done pretty quickly by Deloitte, that we ended up ultimately relying on for purposes of establishing a value of the stock for the company's tax return. Those were some of the steps that were taken. (Trans. p. 498)

Eric DeGraw, whose deposition, in part, was admitted into evidence, testified similarly. He testified that E&Y, in the draft return, had simply used the GAAP book value for the stock, and that this was *not* appropriate for tax purposes in this case.[2] (Degraw dep. p. 50 - 51) Mr. DeGraw, as Tax Director, understood that the stock had to be reported, and HRN's tax computed, using a "fair market value." (DeGraw dep. p. 40 - 41) *See also*, 26 U.S.C. § 1060. He testified it therefore was necessary to retain Deloitte & Touche to provide a fair market valuation of the stock:

> Q: I think you said earlier that your learning of the Diener and

[2] It is a fundamental principle of tax law that the treatment of a transaction or asset under tax law and Generally Accepted Accounting Principles (GAAP) may be different. *See Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 540 - 544 (1979).

Litman valuation is what caused you to go out and get this valuation from Deloitte & Touche; is that correct?
A: Corrrect.
Q: And why did that cause you to go out and retain Deloitte & Touche?
A: Because under tax, generally for tax purposes, if buyer and seller file consistent 8594s, they won't challenge the fair market value. However, once I learned that they were filing with a different valuation, I couldn't rely on that. So I needed to get, in order to prepare a tax return that I was comfortable with, I needed to get my own valuation.
Q: So there was a difference between the value they used and the GAAP valuation HRN had used, so you went out to retain Deloitte & Touche?
A: Correct.
Q: Did you consider using the valuation that the Dieners and – that Mr. Dieners and Mr. Litman had used?
A: No
Q: Why not:
A: I felt it was prudent to get my own valuation. (DeGraw dep. p. 56-7)

Mr. DeGraw also discussed the valuation dispute with Dara Khosrowshahi, USA's Vice President of Strategic Planning, before Deloitte & Touche was hired, and advised him that because of the "inconsistent" valuations, the "numbers would be scrutinized and *we would need our own valuation*." (DeGraw dep. p. 107, emphasis added). According to Mr. DeGraw, Mr. Khosrowshahi, after learning of the inconsistency and its importance, did not offer any opinion or guidance as to how the stock should be valued. (DeGraw dep. pp. 107)

HRN did not, of course, file its return with the erroneous Form 8594 as initially drafted by E&Y. Rather, because of the dispute about valuation, and because it needed to obtain its own fair market valuation, HRN filed the form with the statement "Information is Being Gathered. Will Be Supplied At A later Date." (Joint Ex 16, p. HC002068; Trans. p. 516) Mr. Ghandi

testified that he wrote this at the instruction of either E&Y or someone else at HRN. (Trans. 738)[3]

## II. HOTELS.COM OBTAINED A FAIR MARKET VALUATION OF THE HRN RESTRICTED STOCK, BUT FAILED TO THEN USE IT FOR ITS 2000 TAXES

Shortly after HRN filed its 2000 return, USA Networks hired Deloitte to provide a fair market valuation of the stock for tax purposes. (LD Ex. 48) In a report dated October 18, 2001, Deloitte determined that the Section 7.15 shares had to be discounted by 40% and the Section 7.11.3 shares had to be discounted by 33% . (LD Ex. 51, p. 26) Although this valuation was specifically obtained for the purpose of amending the 2000 return and correcting the amortization deductions related to the HRN restricted stock, amended schedules and a completed Form 8594 were *never filed*. HRN continued, therefore, to claim tax benefits *(i.e.* excessive amortization deductions) based on the undiscounted assumed $16 per share value for the year 2000, notwithstanding that everyone involved in addressing the issue at the time believed that the $16 position was incorrect, and that HRN instead had to use a fair market valuation, such as that determined by Deloitte. (*See e.g.* DeGraw dep. pp. 49 - 51, 73 - 74, 87 - 88; Trial Trans. pp. 498, 519 - 20, 748; and LD Ex. 9, p. 1).

---

[3] Although, the disclosure of the $16 per share value was deleted from the Form 8594 because HRN recognized that it needed to obtain a fair market valuation for the restricted stock, it failed to also change that erroneous GAAP value in its amortization schedules attached to its 2000 return. The actual deduction for goodwill in 2000 related to the restricted stock was, therefore, still based on the assumed $16 per share GAAP value. The goodwill associated with the stock (we now know) is listed in a schedule labeled "General Depreciation and Amortization," at a total of $159,998,400 (9,999,900 shares x $16 per share) (Joint Ex. 16, p. HC002075) The amortization schedule does not indicate at all what created this goodwill, whether it is related to the issuance of restricted stock or how it was computed. Indeed, in this case, that is what Form 8594 is for.

In fact, HRN did use the Deloitte fair market valuation for its 2001 through 2003 returns, reporting the value of the HRN restricted stock at about $10 per share. (LD Ex. 125, Interrogatory Answers 5 and 16) (HRN amortizes a portion of the claimed goodwill each year.) Hotels.com has not explained why it did not amend its incomplete 2000 return to reflect Deloitte's fair market valuation of the restricted stock, as relied on and reported for the years 2001 through 2003.

## III. THERE IS NO EVIDENCE THAT THE REASON HRN FAILED TO CORRECT ITS AMORTIZATION SCHEDULE AND FILE A COMPLETED FORM 8594 WITH A FAIR MARKET VALUATION WAS AN ALLEGED BELIEF THAT THERE WAS AN AGREEMENT TO VALUE THE STOCK AT $16 PER SHARE

In contrast to the abundant evidence detailed above, demonstrating that HRN and USA Networks understood that they had to compute HRN's taxes based on a fair market value for the stock, the record is devoid of evidence that anyone actually believed the assumed $16 per share value to be correct for tax purposes. The most telling fact may be that HRN never filed a completed Form 8594 (as it said it would do on the incomplete form it did file) with a $16 per share valuation disclosed. If HRN actually believed that $16 was the correct tax position, it could have, and should have, disclosed that . *See* 26 U.S.C. § 1060 and Treas. Reg. § 1.1060-1(e).[4] Likewise, if it actually believed there was an agreed value for tax purposes, there was no need for it to have retained Deloitte to prepare a fair market valuation (or for HRN to rely on that valuation in later years).

Additionally, there was no testimony or documentary evidence that Dara Kosrowshahi – the witness Hotels.com called at trial to try to support its agreed value theory – ever told anyone

[4] In fact, HRN indicated on the incomplete Form 8594 filed with the 2000 return that the "buyer and seller" did *not* agree to an allocation of the sales price (*i.e.* a value for the stock.). (Joint Ex. 16, p. HC002067, Item 5).

that HRN did not need to determine or use a fair market value for the restricted stock for tax purposes because there was an alleged agreement to report it at $16 per share. He didn't do so when the dispute over valuation arose, when HRN's 2000 return was being prepared, when Deloitte was hired, or when the decision was made to use the Deloitte $10 per share valuation. In sum, whenever he would be expected to assert such an alleged agreement, there is no evidence that he, or anyone else, ever did. (Trans. pp. 795 - 96, 832, 833, 835 -36, 839, 846, 872, 876 - 77)

Thomas Kuhn was also called as a witness at trial by Hotels.com. As General Counsel of USA Networks, he oversaw the acquisition of the Litmans and Dieners' business by USA, the HRN initial public offering, and the drafting of the related agreements. He was *not even asked* by Hotels.com whether an agreement to value the shares at $16 per share was ever intended or existed. (Trans. pp. 884 - 950)

The minutes of the HRN Audit Committee also demonstrate that no one believed that an alleged agreed value existed. At a October 19, 2001, meeting of the committee, Mel Robinson informed the committee that HRN had valued the stock at $160 million for GAAP purposes in its financial statements and "also *initially* valued the shares at $160 million for tax purposes." (LD Ex. 64, p. 2, emphasis added) He then stated that "in connection with the filing of the Company's *final* income tax return for the 2000 fiscal year, the Company commissioned a valuation study of the shares for tax purposes by Deloitte & Touche." (LD Ex. 64, p. 2, emphasis added) The committee then discussed this fair market valuation, the different valuation position taken by Mr. Litman and Mr. Diener, and the possibility of an IRS challenge. An E&Y representative present at the meeting stated that the "requirement to file a final tax return resulted in the Company obtaining a independent appraisal leading to the change in valuation." (LD Ex. 64, p. 2).

The committee again discussed the differing fair market valuations of HRN and the Litmans and Dieners, and the possibility of an audit, at its January 25, 2002, meeting. (LD Ex. 65, p. 4) Significantly, Gregory Porter, HRN's General Counsel, Terri Reynolds, the Assistant General Counsel, and several E&Y representatives were present at one or both of these meetings, in addition to the committee members and Mr. Robinson. According to the minutes, no one ever claimed or suggested that there was an agreed value, and that a fair market valuation was unnecessary to properly compute and pay HRN's taxes.

## **Argument**

### I. **HOTELS.COM BEARS THE BURDEN OF PROOF**

This is a *de novo* proceeding in which Hotels.com bears the burden of proof that it is entitled to a refund. *See e.g. Sara Lee Corporation v. United States*, 29 Fed. Cl. 330, 334 (1993). Hotels.com also bears the burden of proof as to whether it is liable for penalties. *See e.g. Sparkman v. Commissioner*, 2007 WL 4293314 (9th Cir. 2007); *Mortensen v. Commissioner*, 440 F.3d 375, 385 (6th Cir. 2006); and *Neonatology Associates, P.A. v. Commissioner* 299 F.3d 221 (3rd Cir. 2002). (See also this Court's August Opinion, p. 86). This Court's determination as to the applicability of penalties is reviewed for clear error. *See e.g., Hansen v. Commissioner*, 471 F.3d 1021, 1028, (9th Cir. 2006) and *Hayden v. Commissioner*, 204 F.3d 772, 775 (7th Cir. 2000).

### II. **THE APPLICABLE GROUNDS FOR PENALTIES**

As the United States advised the Court in its status report regarding penalties, there are two grounds for Hotels.com's liability for the 20% penalty. First, based on the Court's valuation of the restricted stock, and as Hotels.com admits, HRN understated its tax by over 10% in 2000. (Hotels.com's Brief, p. 3) It is, therefore, liable for a penalty under § 6662(b)(2) and (d). Second,

HRN negligently failed to compute, report and pay its taxes for 2000 based on a fair market valuation for the restricted stock, which it knew it was required to do. Instead, it used an assumed $16 per share value that it knew to be wrong, and never corrected it. Accordingly, Hotels.com is also liable for a penalty under § 6662(b)(1) and(c).

Hotels.com essentially advances four arguments why it should not be liable for penalties: (1) the Court did not find penalties warranted for the Litmans and Dieners; (2) the Litmans and Diener are at fault for HRN understating its tax and filing an incorrect return; (3) the United States did not assert at trial that the whipsaw notices of deficiency sent to the Litmans, Dieners and HRN correctly valued the stock; (4) Hotels.com is not liable for the negligence and understatement penalties because it had reasonable cause for *not* computing and paying its taxes based on a fair market value for the stock. The first three defenses are baseless attempts to avoid addressing HRN's own conduct and the merits of the penalty issue. The fourth is not supported by the record.

## III. PENALTIES ARE WARRANTED AGAINST HOTELS.COM

### A. Hotels.com Cannot Simply Piggyback on the Court's Finding that the Litmans and Dieners are Not Subject to Penalties

This Court held that the Litmans and Dieners were not liable for penalties because they met their burden and proved at trial that the reasonable cause defense to penalties applied to them. (August 22, 2007, Opinion, pp. 85 - 89). The Court based its decision on the fact that the Litmans and Dieners obtained a fair market valuation for the stock from Mark Mitchell and then relied upon that valuation for the TMF Liquidating Trust's return and for computing capital gains in their personal tax returns.

The situation is much different for Hotels.com. First, the Court has not made factual

findings regarding any reasonable cause and good faith claim by Hotels.com. Second, in contrast to the Litmans and Dieners, HRN did not base its 2000 tax return on a fair market valuation, even though, as detailed above, it understood that it needed to do so. And, when HRN later obtained a valuation, it did not actually use it for computing and paying its 2000 taxes. Penalties are therefore warranted for Hotels.com, even though the Court found that they were not warranted for the Litmans and Dieners.

**B. Hotels.com Cannot Avoid Penalties By Blaming the Litmans and Dieners**

Hotels.com also argues that it cannot be liable for penalties, because it was the Litmans and Dieners who failed to tell HRN, until September 2001, just before HRN's tax return was due, that they had previously obtained a fair market valuation for the restricted stock. This ignores, of course, that HRN also did not communicate with the Litmans and Dieners about a valuation for the stock until the E&Y draft was sent to Mr. Deiner. Moreover, HRN understood when it filed its 2000 return that it had its own independent and separate duty to determine a fair market value value for the stock, and pay its taxes on that basis. *See* 26 U.S.C. § 1060 and Treas. Reg. §1.1060-1(e) (Joint Ex 24; Trans. p. 498; and DeGraw Dep. pp. 30, 40, 45 - 46 and 56-7) The irrelevance of Hotels.com's effort to shift blame to the Litman's and Diener's is underscored by the fact that, even when HRN obtained its own valuation, it did not use it to compute and pay its taxes for 2000, even though it did so for the years 2001, 2002, and 2003.

**C. The Fact that the Stock Value Proposed by the United States' Expert Was Different than that in the Whipsaw Notices Does Not Negate Hotels.com's Liability for Penalties**

Hotels.com acknowledges that courts, including this one, have uniformly held that the IRS is entitled to issue contradictory whipsaw notices. (August 22, 2007, Opinion, p. 35 and

Hotels.com's Brief, p. 9) Hotels.com nevertheless seems to argue that because the United States did not pursue these two contradictory whipsaw values at trial, but instead argued for one consistent value, this Court cannot now impose penalties that are applicable under § 6662. This is without basis and contravenes the approved purpose of whipsaw notices – *i.e.*, holding both of the taxpayers who take inconsistent positions accountable until one consistent value can be determined. *See e.g. Sherbo v. Commissioner*, 255 F.3d 650, 655 (8th Cir. 2001).

Additionally, the fact that the valuation proposed by the United States' expert at trial was different than that used in the whipsaw notices does not preclude Hotels.com's liability for penalties. Liability for penalties is dependent on this Court's determination of a stock value in this *de novo* proceeding, and the application of § 6662 to the facts proven at trial. Indeed, as the United States has already advised Hotels.com and the Court, the penalty now at issue is reduced to $341,859 because of the Court's valuation decision[5]

### D. Hotels.com Was Negligent In Failing to Compute and Pay Its 2000 Taxes Based on a Fair Market Value for the Restricted Stock

Negligence for purposes of the § 6662(b)(1) penalty is defined to include any "failure to make a reasonable attempt to comply with the provisions of" Title A of the Internal Revenue Code. 26 U.S.C. § 6662(c). To disprove negligence, a taxpayer must demonstrate that he or she exercised due care and did what a reasonably prudent person would have done under similar circumstances. *See Mortensen v. Commissioner*, 440 F.3d 375, 385 (6th Cir. 2006) and

[5] Hotels.com's argument that the negligence penalty could not have been asserted in the notice of deficiency if the notice had used the valuation later proposed by Mr. Burns is wrong. The negligence penalty would still be applicable because HRN did not file its tax return using a fair market value for the restricted stock, even though it understood that was its obligation. The negligence penalty is not dependant on any particular amount of understatement of tax or valuation misstatement. *See* 26 U.S.C. § 6662(c).

*Neonatology Associates v. Commissioner*, 299 F.2d 221, 233 (3rd Cir. 2002) (standard is an objective one). Hotels.com has not met this standard with regard to HRN's 2000 return.

As set forth above, HRN knew when it filed its 2000 return that it needed a fair market valuation of the stock to compute its taxes. That is why it filed an incomplete Form 8594 telling the IRS it was "gathering information." That is also why it obtained a valuation, the *first* step towards exercising due care. HRN never followed-through, however, with the necessary *second* and *third* steps of actually reporting the correct valuation and resulting taxes to the IRS, and then paying those taxes. Such a knowingly incomplete attempt to comply with the tax law is negligence. Put another way, the purported due care of a taxpayer must actually be reflected in the taxpayers reporting and payment of tax. Here, that was not true for tax year 2000. This Court should not hold that it is objectively reasonable for a taxpayer, who understands the correct tax treatment of a transaction, to nevertheless not compute and pay his or her taxes in conformity with that understanding.[6]

Hotels.com's argument that the United States is trying to defend the negligence penalty under § 6662 based simply on HRN's failure to file a completed Form 8594 is wrong. (Hotels.com's Brief, p. 7) That incomplete form is only one piece of evidence, along with all the other testimony and documentary evidence cited above, showing that Hotels.com knew of its obligation to pay tax based on a fair market value for the restricted stock. Indeed, Hotels.com's arguments that it had reasonable cause and good faith for filing the form with the notation that

---

[6] Indeed, finding that a taxpayer's due care (supporting a reasonable cause defense) does not need to be reflected in a taxpayer's return and payment of tax would encourage taxpayers to play the "audit lottery." "The principle purpose of this penalty is to deter taxpayers from playing the audit lottery, that is taking undisclosed questionable reporting positions and gambling that they [will] not be audited." *Caulfield v. Commissioner*, 33 F.3d 991, 994 (8th Cir. 1994).

"information is being gathered" (instead of the $16 assumed value) supports a finding that HRN understood its obligations (but didn't comply with them). (Hotels.com's Brief, pp. 7 -8).

The United States is also not defending the penalty on the basis that Hotels.com guessed wrong about a fair market valuation for the stock in computing its income tax for 2000. (Hotels.com's Brief, p. 8) Rather, the United States maintains the penalty is due because HRN did not report *any* purported fair market value on its return for 2000. HRN knew that the assumed $16 figure was *not* an attempt to determine a fair market value (and was wrong for tax purposes), but computed and paid its tax on that basis anyway, and never corrected it.

### E. HRN Understated Its Tax by More that 10%

As noted above, Hotels.com admits that, based on this Court's valuation for the stock, HRN understated its tax by more than 10% in 2000. *See* 26 U.S.C. § 6662(d). Hotels.com nevertheless argues that it is not liable for the understatement penalty because HRN had reasonable cause for the understatement. *See* 26 U.S.C. § 6664(c). Because a reasonable cause defense is potentially applicable to both the understatement and negligence penalty, it is addressed separately below. Hotels.com seems to raise, however, one claim that is specific to the understatement penalty. It argues that the filing of the incomplete Form 8594 and amortization schedules, that do not describe at all a valuation of restricted stock or what the goodwill listed is related to, are somehow "consistent with the purpose behind IRC § 6662(d)(2)(B)." (Hotels.com's Brief, p. 5) That section provides that an understatement may be reduced by that portion of the understatement that is attributable to the "tax treatment" of an item for which there was "substantial authority" or for which there was adequate disclosure and a reasonable basis. 26 U.S.C. § 6662(d)(2)(B). *See also* Treas. Reg. § 1.6662-4.

A reduction of the understatement pursuant to § 6662(d)(2)(B) is not applicable here. This is not a situation in which HRN examined and weighed relevant legal authorities on a debatable issue of tax law, and took a substantially supported position that it disclosed to the IRS. Here, HRN undisputably knew that it had to compute its tax based on a fair market value for the restricted stock, but did not do so. Additionally, it did not disclose its failure to use a fair market value to the IRS as required on a Form 8275 or 8275-R, or on Form 8594. *See* Treas. Reg. § 1.6662-4(f).

**F. Hotels.com Has Not Proven A Reasaonable Cause and Good Faith Defense to Penalties**

Finally, Hotels.com argues that HRN acted with reasonable cause and good faith in computing its 2000 taxes, because HRN allegedly "believed" that the $16 value used in its amortization schedules was "negotiated and agreed to by the parties." (Hotels.com's Brief, p. 3) Reasonable cause and good faith are determined on a case-by-case basis, taking into account all the pertinent facts and circumstances. *See* 26 U.S.C. § 6664(c) and Treas. Reg. § 1.6664-4(a). Here, the pertinent facts flatly contradict Hotels.com's reasonable cause argument.

As detailed above, the $16 value was *not* initially included by E&Y in the draft return because it believed the parties had agreed to it. Indeed, it was later *deleted* from the Form 8594 specifically because HRN and USA knew that the Litman and Dieners strenuously disagreed with it. Moreover, there is no evidence that it was left unchanged in the amortization schedules of the 2000 return because HRN or USA believed at the time that $16 per share was an agreed valuation. The evidence is, in fact, to the contrary – HRN and USA knew that there were differing positions on valuation, and that HRN needed to obtain its own valuation and recompute its taxes based on that valuation.

Hotels.com argued the agreed value theory at trial. A theory presented at trial, however, cannot be the basis for a finding of good faith and reasonable cause when the evidence demonstrates that the theory was *not actually relied upon at the time* HRN filed its return (or even later when it filed its 2001, 2002 and 2003 returns). In part because of a lack of evidence that anyone relied upon such an alleged agreement at the time, this Court found that there was no such agreement: "The testimony of Messrs. Litman, Diener and Kosrowshahi regarding the negotiations fortifies the finding and conclusion that the agreement between the parties was not for the value of earn-out or the fair market value of the shares, but rather, was a self-correcting way of calculating the number of shares that Messrs. Litman and Diener would receive in the event of an IPO." (August 22, 2007, Opinion, p. 43)[7]

## Conclusion

For all the above reasons, this Court should deny Hotels.com's claim for refund of penalties, and find that it is liable for a penalty under both § 6662(b)(1) and § 6662(b)(2).

[7] As here, taxpayers may present new theories at trial to support their previous reporting position. If there is no evidence that the new theory was actually relied upon, however, it can not provide a basis for a reasonable cause defense to penalties. Instead, the taxpayer avoids penalties only if the court agrees with its new theory and, therefore, finds that there is no underpayment of tax in the first place, against which to apply penalties.

Respectfully submitted,

*s/ Cory A. Johnson*

Cory A. Johnson
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington D.C. 20044
202-307-3046

Richard T. Morrison
Acting Assistant Attorney General
Steven I. Frahm
Assistant Chief, Court of Federal Claims Section

*s/ Steven I. Frahm*
Of Counsel

Dated: January 17, 2008