**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **DAVID S. LITMAN and MALIA A. LITMAN,**<br>**Plaintiffs-Counterdefendants,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-956T** |
| **ROBERT B. DIENER and MICHELLE S. DIENER,**<br>**Plaintiffs-Counterdefendants,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant-Counterplaintiff** | ) | **No. 05-971T** |
| **HOTELS.COM, INC. and Subsidiaries (f/k/a**<br>**HOTEL RESERVATIONS NETWORK, INC.)**<br>**Plaintiffs,**<br>**v.**<br>**THE UNITED STATES,**<br>**Defendant** | ) | **No. 06-285T**<br>**(Judge Christine O.C. Miller)** |

**HOTELS.COM'S REPLY PURSUANT TO THE COURT'S DECEMBER 2007 ORDER**

As stated in this Court's Opinion (at 91), and explained in Hotels.com's Brief Pursuant to the Court's December 17, 2007 Order (Hotels.com's "Brief"), IRC § 6662 accuracy-related penalties are not warranted against Hotels.com. For the first time, in its second post-Opinion filing on penalties (the Government's "Response"), the Government sets forth a new litigating position on penalties. These belated new arguments, factual assertions, and misstatements, made more than seven months after the close of evidence, fail to support the imposition of penalties. In addition, the Government's failure to address many of the arguments set forth in Hotels.com's Brief further buttresses the Court's enunciated view that penalties against Hotels.com are not warranted.

## I. THE GOVERNMENT ABANDONED ITS NOTICE OF DEFICIENCY POSITION AND THEREFORE ITS "PROTECTIVE" ASSERTION OF PENALTIES IS NO LONGER ENTITLED TO ANY PRESUMPTION OF CORRECTNESS

As the Court stated (Opinion at 86), the Government's notice of deficiency ("Notice") is generally entitled to a presumption of correctness. That presumption, however, is not absolute. Union Pac. RR Co., Inc. v. United States, 208 Ct. Cl. 1, 145 (1975), cert. denied, 429 U.S. 827 (1976). In discussing the presumption of correctness that attaches to the Commissioner's determination of taxes, the Court of Claims stated, "[p]resumptions are not evidence, and they disappear in the face of substantial evidence tending to disprove them." *Id.* (citations omitted). Here, the Government itself presented substantial evidence "tending to disprove" its presumption. By introducing the opinion of its expert, Mr. Burns, thereby establishing its litigating position that the fair market value of the stock was $12.75 per share (an amount that does not support either a substantial valuation misstatement or substantial understatement penalty against Hotels.com), the Government chose to disprove its own presumption. Accordingly, any penalty assertions in the Notice are no longer entitled to a presumption of correctness. *Id.*

Further, as discussed in Hotels.com's Brief (at 9-10), the Government's belated attempt to bootstrap its "whipsaw" position in the Notice to claim that its now-abandoned Notice position is entitled to a presumption of correctness should be rejected. The Government failed to address Hotels.com's argument and, instead, attempts to sidestep this issue in its Response by merely reiterating the general purpose of whipsaw notices—to hold both of the taxpayers accountable until one consistent value can be determined. Hotels.com agrees that this is the purpose of whipsaw notices, and would agree that even whipsaw notices are entitled to a presumption of

correctness if the Government maintains its protective whipsaw position throughout the litigation. But that is not what occurred here.

Unlike any other whipsaw case research has disclosed, and unlike the IRS in the case cited by the Government,[1] the Government here abandoned its whipsaw Notice and, instead, staked out and litigated a firm valuation position at odds with its Notice position. In so doing, penalties that were mathematically possible under the whipsaw Notice were no longer applicable. The Government's Pretrial Brief implicitly acknowledges this in its cautious statement that substantial understatement and valuation misstatement penalties "may be appropriate for Hotels.com"—but only if the Government's new litigating position on valuation were rejected. Government's Pretrial Brief at 27. Simply put, the Government abandoned its whipsaw notices, thereby losing any presumption of correctness that would otherwise attach.

As discussed further below, the Government's Pretrial Brief makes no mention at all of a section 6662(c) negligence or intentional disregard of rules penalty ("negligence penalty") in its discussion of penalties that "may be appropriate for Hotels.com." The Government is similarly ambiguous in its post-Opinion Status Report, stating only that a negligence penalty is "potentially applicable." Government's Status Report at 6. Tellingly, the Government asserts no factual basis supporting such a penalty. For these further reasons, any presumption of correctness that originally attached to the Notice has disappeared.

## II. THE GOVERNMENT'S FAILURE TO PROSECUTE PENALTIES OPERATES AS A WAIVER

The Government's assertion of a new litigating position and factual arguments seven months after trial, in its second post-Opinion filing on penalties, is too late. *Cf.* Principal Life Ins. Co. v. United States, 76 Fed. Cl. 326, 328 (2007) (government not entitled to raise setoff at

[1] Sherbo v. Commissioner, 255 F.3d 650 (8th Cir. 2001).

"last possible moment". . . . "To hold otherwise would encourage a lack of due diligence by defendant in timely asserting defenses and leave plaintiffs in refund suits guessing as to the true litigating hazards associated with their cases—in both instances, introducing a level of gamesmanship into refund suits that has no place in a judicial forum governed by procedural rules that are supposed to apply to both parties."); Gingerich v. United States, 78 Fed. Cl. 164, 167-68 (2007) (government's argument was untimely when raised for the first time in post-trial, post-decisional proceedings to compute final judgment). *Compare also* Goulding v. United States, 929 F.2d 329, 333 (7th Cir. 1991) (government's argument waived where not raised until motion for summary judgment filed over eighteen months after refund suit had commenced). The Government has an obligation to set forth its litigating position and the facts on which it relies in a timely and fair manner. The Government has not done so.

Comparing the Government's pre-trial penalty assertions against the Litmans and Dieners to its penalty discussions regarding Hotels.com highlights the Government's failure to affirmatively assert penalties against Hotels.com. The Government unequivocally argued in its Pretrial Brief that the penalties asserted against the Litmans and Dieners in the Notices were still applicable. With respect to the substantial understatement penalty, the Government unequivocally stated that "[b]ased on its valuation of the stock, . . ., the United States believes that both the Litmans and Dieners substantially understated their tax." Government's Pretrial Brief at 26. By contrast, and contrary to the Government's assertion that it has consistently sought penalties against Hotels.com, the Government did not set forth an unequivocal assertion of penalties against Hotels.com in its Pretrial Brief. Instead, it indecisively suggested that certain of the penalties contained in the Notice "may be appropriate for Hotels.com" and "[w]hether Hotels.com . . . is subject to penalties for those reasons [substantially understating its tax or

substantially overstating the value of the HRN stock], is dependent on the value for the stock ultimately determined in this case. 26 U.S.C. § 6662(d) and (e)." *Id.* at 27 (emphasis added). In any event, under the Government's valuation position set forth in its Pretrial Brief, those penalties could not mathematically apply.

The Government likewise unequivocally asserted in its Pretrial Brief that the Litmans and Dieners were subject to a negligence penalty because they "disregard[ed] . . . applicable rules and regulations" by failing to "file a Form 8594 for the year 2000," and failed to disclose their value for the HRN stock in either their personal returns or in the TMF Trust return. *Id.* at 26. Again, by contrast, nowhere in the Government's Pretrial Brief does it assert that a negligence penalty should be applied to Hotels.com, nor does it provide a factual basis for the application of such a penalty. In fact, in the one paragraph of its Pretrial Brief addressing penalties with respect to Hotels.com, there is no cite or reference at all to the applicable section of the Internal Revenue Code (I.R.C. § 6662(c)).[2] *Id.* at 27.

In its post-Opinion Status Report, the Government again failed to take an unequivocal position as to penalties against Hotels.com, even though ordered by the Court to do so. Instead, the Government <u>took no position on penalties</u>, asked the Court to decide whether or not they should apply, and stated that it was "mindful of the Court's statement in its August 22 decision that it 'does not consider [penalties] to be warranted.'" Government's Status Report at 4, 7.

The Government's tardy challenge to Hotels.com's reasonable and good faith tax reporting position is especially problematic in light of its own expert's support at trial for that tax

[2] Research has disclosed no case where a court imposed an IRC § 6662(c) penalty when it had not been asserted by the government.

reporting position.[3] The Government should not be permitted to belatedly assert a new theory on penalties, at the last possible moment in its second post-Opinion filing on penalties—especially when it had ample opportunity, in both its Pretrial Brief and its post-Opinion Status Report, and chose not to do so. To allow otherwise would unfairly prejudice Hotels.com and is inconsistent with generally-accepted rules of practice. *See* Gingerich, 78 Fed. Cl. at 167, citing Shell Petroleum, Inc. v. United States, 182 F.3d 212, 219 n.14 (3d Cir. 1999) ("Post-trial briefs are not generally appropriate places to raise one's theory of the case."). *See also* Walsh v. United States, 163 F. Supp. 421 (D. Neb. 1958) (holding that taxpayer bears burden on only those arguments presented by the government at trial, and not those raised for the first time in post-trial briefs).

## III. IF PENALTIES ARE PROPERLY AT ISSUE, NO PENALTIES AGAINST HOTELS.COM ARE WARRANTED

Regardless of whether the Government's Notice position regarding penalties against Hotels.com is entitled to any presumption of correctness, or whether the Government failed to prosecute penalties against Hotels.com thereby waiving any right to do so now, Hotels.com had reasonable cause and good faith for its tax reporting position on its 2000 return.

### A. The Government Has Cited No Basis Supporting A Negligence Penalty

Even if a negligence penalty were properly at issue, the Government has never provided any factual basis to support its imposition.[4] The cornerstone of the Government's new position is that "HRN did not report *any* purported fair market value on its return for 2000." Response at

---

[3] Mr. Burns testified that the parties had an agreement as to value, and the agreed value was between $11 and $16. Tr. at 1689, 1695.

[4] As discussed above, the Government completely abandoned any assertion of negligence penalties against Hotels.com in its Pretrial Brief, and merely asserted that the substantial understatement and substantial valuation misstatement penalties "may" apply if the Court were to find a value for the HRN stock other than that asserted by the Government in its new litigating position on valuation. Similarly, it asserts only that a negligence penalty is "potentially applicable" in its post-Opinion Status Report.

14 (emphasis in original). Such an argument lacks good faith in light of the testimony by the Government's own expert. Mr. Burns testified that where two adverse parties with knowledge of all relevant facts agree to a value, that value constitutes fair market value. Tr. at 1679-80. Mr. Mitchell, the Litmans' and Dieners' expert, agreed with this definition of fair market value. Tr. at 1151-52. Mr. Burns also testified that the parties had negotiated and agreed to a fair value between $11 and $16 per share with full knowledge of all of the restrictions. Tr. at 1689, 1695.[5] The Government relied on only one expert. Mr. Burns' opinion established the Government's litigating position on valuation. The Government should not now be permitted to ignore the portion of its expert's testimony that is in direct conflict with its new litigating position on penalties, raised for the first time post-trial, and not until its second post-Opinion filing on penalties.

The Government's second purported basis for the "potential" application of a negligence penalty relates to the Form 8594 filed with Hotels.com's 2000 tax return. As discussed in Hotels.com's Brief at 6-7, any perceived deficiency in a Form 8594 cannot support imposition of a negligence penalty.[6] The Government's complete failure to respond to this position is not surprising given the language contained on the instructions to that Form (Brief at 6), and should be construed as acquiescence to Hotels.com's argument. *Cf.* Martin v. Town of Westport, 329 F.

[5] Mr. Burns testified that the parties "agreed to a price of anywhere between 11 and $16, so in my view, that's an indication that they believed, even with all the restrictions piled on top of the stock, that a price between 11 and $16 was fair" (Tr. at 1689) and "did agree that [the stock value] could be no less than $11 and no more than 16, so in my mind, that frames what they believed to be a fair market value for those shares with all the restrictions contained therein." Tr. at 1695.

[6] As discussed below, Hotels.com believes that the Form 8594, as filed, was proper under the circumstances. Also, as stated in our Brief at 7, even if the Court were to conclude that the Form 8594 was not properly completed, the maximum $50 penalty would not be applicable under the good faith exception.

Supp. 2d 318, 325 (D. Conn. 2004) (construing failure to respond to argument set forth in brief supporting motion for summary judgment as conceding the argument).

The Government's new allegation in support of an IRC 6662(c) penalty—that Hotels.com was required to have filed an amended tax return—also does not support imposition of a negligence penalty. As discussed above, and contrary to the Government's assertion in its recently-filed Response, it did not propound this argument in its Pretrial Brief, or in its post-Opinion Status Report. Like its erroneous allegation related to the Form 8594, its allegation that Hotels.com was obligated to file an amended return, and that its failure to do so potentially subjects it to a negligence penalty, is also incorrect. Tellingly, the Government cites no authority for its position. This is perhaps because there is no general requirement to file an amended return[7] and, in any event, the failure to file an amended return cannot support a negligence penalty. It is hornbook law that "[f]or any particular taxpayer, period, and tax, the Code contemplates the filing of only one return," Saltzman, IRS Practice and Procedure, ¶ 4.03[3] (rev. 2d ed. 2005), and the IRS itself rejected a suggestion to recommend a legislative change to IRC § 6012 "to include a requirement to file an amended return . . . when the taxpayer becomes aware of its need for amendment."[8] 1996 FSA Lexis 401 (Mar. 12, 1996).

Moreover, the IRS makes clear that if such a requirement were enacted, which it was not, the applicable penalty for failure to file an amended return would be the same penalty applicable to a failure to file an original return—not the negligence penalty. *Id.* Thus, there is no support

---

[7] There are certain limited situations where an amended return is required. In those instances, the requirement to file is explicit. *See, e.g.*, Treas. Reg. §§ 1.263(e)-1(a)(3)(ii) (describing situation where an amended return "shall" be filed); 1.1033(a)-2(c)(2) (same). These situations are inapplicable here, and the Government does not contend otherwise.

[8] As discussed herein and in our Brief, Hotels.com does not believe that there was any need for amending its 2000 return. Its 2000 tax return position was reasonable and was taken in good faith.

for application of a negligence penalty, even if the Government were correct and Hotels.com had been required to file an amended return.

The Government also fails to address Hotels.com's position that even if the negligence penalty were properly asserted here, Hotels.com meets the reasonable cause and good faith exception under IRC § 6664. As discussed in our Brief at 7-8, the decision to file the Form 8594, as modified, came either from Hotels.com's tax advisors, Ernst & Young LLP ("EY"), or from Mr. Diener's tax advisors at KPMG.[9] Therefore, as previously discussed and not contested by the Government, and as discussed in more detail below, Hotels.com acted with reasonable cause and in good faith in filing the modified Form 8594.

Finally, as discussed below, Hotels.com's 2000 tax return position was reasonable and was taken in good faith. This also would preclude application of any negligence penalty, even if one were properly asserted.

**B. Hotels.com Acted In Good Faith And Had Reasonable Cause For Its Tax Return Position.**

To the extent the Court finds that any penalties have been properly asserted by the Government, Hotels.com acted in good faith and had reasonable cause for reporting the $159 million value of additional goodwill on its 2000 return. First, Hotels.com reasonably relied on EY to prepare its tax returns. Tr. at 736, 738, DeGraw dep. at 23-24, 30-32. EY, a professional tax return preparer, had prepared Hotels.com's federal tax returns for 1999 and 2000. DeGraw dep. at 24, 30. Hotels.com provided EY with the information necessary to prepare its 2000 federal tax return. Tr. at 743-44. Moreover, EY was familiar with Hotels.com's federal tax

---

[9] Hotels.com's reliance on its own tax return preparer or Mr. Diener's tax advisors at KPMG supports Hotels.com's good faith basis for filing the redacted Form 8594. The Government's argument that Hotels.com is attempting to piggy-back on this Court's finding that the Litmans and Dieners are not subject to penalties misses the mark.

matters related to the acquisition of HRN by IAC because EY had performed the tax due diligence related to the acquisition in 1999. DeGraw dep. at 19. EY also had performed valuation work for Hotels.com in connection with Hotels.com's 2000 IPO. Tr. at 934-35.

In preparing Hotels.com's 2000 federal tax return, Bo-Yee Fung, the EY tax professional responsible for preparing the return, had discussions with Hotels.com's Senior Director of Finance, Viren Gandhi. LD Ex. 37. Because Mr. Gandhi lacked tax expertise, he and Hotels.com relied on EY for tax advice and tax return preparation. Tr. at 736, 738, DeGraw dep. at 23-24, 30-32. Based on the documents necessary to prepare the return and following discussions with Hotels.com, EY prepared the 2000 return. Tr. at 743-44. This return included a completed Form 8594 setting forth the company's position regarding its increase in goodwill as understood by EY based on conversations with Mr. Gandhi, and the information received by EY in connection with preparing that Form. LD Ex. 37, JX 23, Tr. at 743-44, Opinion at 23. Mr. Fung explained to Mr. Gandhi in his transmittal letter that, consistent with their discussion, EY was assuming that the seller, HRN, agreed with the allocation on the Form 8594 as drafted. LD Ex. 37, JX 23. Mr. Fung asked Mr. Gandhi to confirm that the sellers' expectation was not contrary to their expectation. LD Ex. 37.

This return was sent to Mr. Gandhi on September 19, 2001. Opinion at 23-24. Mr. Gandhi signed the return on September 19, and a copy of the return was forwarded to Mr. Diener. JX 16, Opinion at 24.

On September 24, Mr. Diener sent an email to Messrs. Robinson, Gandhi, and Litman, indicating (1) that he and Mr. Litman were not in agreement with the Form 8594 as drafted, (2) the return was due that day, and (3) that "[w]e are therefore filing the HRN return . . . with 'To

be determined' on the Form 8594 per the advise [*sic*] of KPMG."[10] JX 22, Opinion at 24. Although Mr. Diener had Hotels.com's entire 2000 tax return, his focus was only on the Form 8594. He did not state or even suggest that the valuation position or amortization deductions claimed on the 2000 tax return by Hotels.com be changed, or that any other changes be made with respect to the return prior to filing.[11] Mr. Diener did not include anyone at IAC on this email. Further, Mr. DeGraw testified that he had no knowledge of Messrs. Litman or Diener, or anyone else at Hotels.com, having any objections to Hotels.com's 2000 tax return as prepared by EY or any objections to the draft Form 8594 prepared by EY. DeGraw dep. at 41-42.

Although Mr. Diener's communication informing Hotels.com for the first time that neither he nor Mr. Litman agreed with the Form 8594 was made at the last possible moment, any disagreement with the Form 8594 does not negate Hotels.com's good faith and reasonable belief as to the fair value it reported for the stock and its claimed amortization deductions, or its good faith and reasonable reliance on EY's advice and expertise. This is especially so in light of Messrs. Litman and Diener's failure to object to any other aspect of Hotels.com's 2000 tax return

---

10 Hotels.com also disagrees with the Litmans and Dieners' reconstruction of the facts. Litman and Diener Response to Hotels.com's Brief ("LD Response"). For example, counter to Litmans and Dieners' assertion, Mr. Diener did not "promptly notif[y]" Messrs. Gandhi and Robinson of their disagreement with the Form 8594. LD Response at 2-3. The notification was made five days after Mr. Diener's receipt of the Form 8594 drafted by EY, and not until the day the return was due. JX 22. Messrs. Diener and Litman had taken a contrary position for estate planning purposes more than a year earlier (Opinion at 17, 20), a contrary tax return position five months earlier (Opinion at 20-22) and, in spite of their fiduciary duties as the two highest ranking officers of HRN, never informed the company of their position. In any event, Messrs. Litman's and Diener's failure to timely disclose information about the position they had taken for their own personal tax planning and reporting is inconsistent with the fiduciary duty they owed to the company and cannot be the grounds on which penalties against the company are based.

11 Mr. Diener's failure to object to Hotels.com valuing the restricted stock at $159 million and claiming the related amortization deductions is consistent with the Litmans' and Dieners' belief that there was no requirement that they, on the one hand, and Hotels.com, on the other, value the stock consistently. Litmans' and Dieners' Objections to Hotels.com's Motion for Consolidation at 4.

including the goodwill basis reported on the return and the amortization amounts claimed. JX 16 at HC002075. Mr. Diener's revelation only impacted Hotels.com's ability to file a Form 8594 advising the IRS of an "agreement" between the parties regarding value and its allocation among the sold/acquired assets. Consequently, Hotels.com could not file a Form 8594 indicating the parties had agreed to report the value consistently. To do otherwise would have been misleading.

The Government's implication that Hotels.com's tax return position was incorrect because Messrs. Litman and Diener belatedly asserted that they had reported a different value for the stock is meritless. Mr. Khosrowshahi, IAC's lead negotiator of the economic terms of IAC's acquisition of Hotels.com and the subsequent exchange of earnout rights for stock as part of the IPO, had no knowledge that Messrs. Litman and Diener intended from the outset to value their stock inconsistently with the company's position. Tr. at 770, 795-96, 825-26, 837, 867, 869, and 872. They did not advise Hotels.com or IAC that they were obtaining a valuation of the stock in February 2000. Tr. at 795, Opinion at 17, 20 (valuation obtained in February 2000). They also did not advise Hotels.com or IAC that they had taken an inconsistent position on the TMF Liquidating Trust tax return in April 2001. Tr. at 867, 869, 872, Opinion at 20-22 (inconsistent position taken on TMF tax return in April 2001). Moreover, the Government's assertion that the Litmans and Dieners were not told that their tax return positions violated the parties' agreement is incorrect. Government's Response at 7-8. Mr. Khosrowshahi testified that after IAC learned of Messrs. Litman's and Diener's contrary tax return position, they were told that their tax reporting position was inconsistent with the parties' agreement and that "their [personal reporting] position was just plain wrong." Tr. at 874-75.

After the 2000 return was filed, Mr. Khosrowshahi was advised that because the Litmans and Dieners had obtained their own valuation, Hotels.com was obtaining a valuation as additional support in its files in the event the IRS questioned the transaction:

> Eric [DeGraw] found out that Bob and Dave had had kind of an external valuation, so he felt that it made sense for us to get a third party valuation… So he thought it would behoove us to have something for the files just in case there was questions asked because these guys had done their own valuation.

Tr. at 836. Mr. Khosrowshahi was not informed that the valuation was going to be obtained in order to file an amended Hotels.com tax return. Moreover, at the time the valuation was commissioned, neither Mr. DeGraw nor Mr. Khosrowshahi could have known whether the value ultimately determined by Deloitte would be higher, lower, or the same as the value used by EY and reported on the 2000 tax return. Mr. DeGraw's decision to obtain a valuation "for the files" was a strategy determination that Mr. Khosrowshahi did not question.[12]

The Government's penalty argument relies heavily on the audit committee minutes' omission of any discussion of the ARAPA's impact on Hotels.com's 2000 tax reporting position, but conveniently ignores the fact that no one present, other than Messrs. Litman and Diener, had any personal knowledge of the ARAPA and the related negotiations. Government Response at 8-9. Although the minutes reflect that the committee was told an amended return would be filed, the minutes make clear that no one involved with the ARAPA discussed the matter with the audit committee other than Messrs. Litman and Diener. Mr. Robinson joined Hotels.com after the IPO

---

[12] Any implication by the Government that Hotels.com was obligated to obtain a valuation in order to avoid penalties is incorrect. Again, the Government provides no authority for its view. Government's Response at 12-14. Even Mr. Burns agrees that the proper standard is fair market value and that if two adverse parties, with knowledge of the facts agree on a value, that agreed value is fair market value. Tr. at 1679-80. Mr. Mitchell agreed. Tr. at 1151-52. Moreover, because Mr. Burns opined that the parties had agreed to a fair market value for the shares, including all restrictions, of between $11 and $16 per share, Tr. at 1689, 1695, the Government's position is baseless.

and, therefore, had no personal knowledge of the transactions. Tr. at 490. Mr. Porter, Hotels.com's General Counsel, also joined the company after the IPO and, therefore, had no personal knowledge of the transactions. JX 7 at HC00612. Mr. Fung, the EY tax professional who had prepared the 2000 tax return, was not present at the meetings, and there is no evidence that the EY personnel present at the meeting had any tax background at all. LD Ex. 64. Most significantly, Mr. Khosrowshahi was not a member of the audit committee, and although he was a Board member, and despite being the lead economic negotiator in connection with the transaction at issue <u>on behalf of Hotels.com</u>, he was not present at the meetings and there is no indication he was consulted. LD Exs. 64, 65.

In any event, the company's tax reporting position was consistent with Mr. Khosrowshahi's belief that the parties had agreed to value the shares consistently because Litman and Diener understood that the tax shield's $81.6 million value relating to the earnout payments was a key component of the ARAPA negotiations.[13] Tr. at 769-70, 837, 867, 869. As explained above, IAC had separately communicated to Messrs. Litman and Diener that the contrary position they had taken on their personal tax returns was wrong.

While the Court ultimately determined, after nearly two weeks of trial, that the ARAPA as executed did not reflect the agreement reached by the parties, that finding in no way negates Hotels.com's good faith reasonable basis for its 2000 tax return position.[14] Further, Hotels.com

---

[13] The ARAPA defines "purchase price" in section 3.1. This definition includes the shares issued pursuant to section 7.11. The computation of the section 7.11.3 shares includes the section 7.15 shares. Section 3.4(ii) of the ARAPA requires that the parties take tax return positions consistent with the terms of the agreement. JX 4.

[14] In the event any party eventually appeals this Court's decision, nothing contained herein or in our Brief should be construed as constituting a waiver of any of Hotels.com's positions.

was well within its rights to litigate the issue, and exercising this prerogative does not support penalty imposition.[15] The facts, when viewed in their totality, simply do not support penalties.

## IV. THE GOVERNMENT HAS ACQUIESCED TO ADDITIONAL POSITIONS ASSERTED BY HOTELS.COM BY FAILING TO ADDRESS THEM

In its Brief, Hotels.com asserted that penalties are not warranted in novel areas of law or in cases of first impression. Hotels.com's Brief at 8. The Government's failure to address this position should be viewed as acquiescence thereof. *Cf.* Martin, 329 F. Supp. 2d at 325. The Government's silence as to Hotels.com's position that payment of penalties here was a jurisdictional requirement (Hotels.com's Brief at 10 and fn.13), and that the Government should not be permitted to bootstrap a jurisdictional prerequisite into a finding that, after it abandoned its Notice position, it continued to pursue penalties, also should be viewed as acquiescence thereof. *Cf.* Martin, 329 F. Supp. 2d at 325.

## V. CONCLUSION

For the reasons discussed above and in its Brief, Hotels.com respectfully requests that the Court find, as it did with the Litmans and Dieners and as it stated in its Opinion, that no penalties

[15] Hotels.com's adoption of a more conservative tax reporting position in later years, which resulted in claimed amortization deductions lower than it and the Government believed it was entitled (based on the Government's litigating position at trial), also does not impact Hotels.com's reasonable good faith basis for its 2000 reporting position.

against Hotels.com are warranted, and accordingly, that plaintiff Hotels.com is entitled to a full refund of penalties paid, plus interest, and interest provided by law.

Dated: January 28, 2008

Respectfully submitted,

s/ Kim Marie K. Boylan
Kim Marie K. Boylan
Latham & Watkins, LLP
555 11th Street, NW
Washington, DC 20004
(202) 637-2235
Attorney of Record

Kari M. Larson
Jennifer S. Crone
Latham & Watkins, LLP
Of Counsel